# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC and JAMES FRANCE <br><br> Defendants. | Civil Action No. 3:24-cv-886-FDW-SCR |

**OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

I.      BOTTOM LINE UP FRONT ............................................................................1

II.     INTRODUCTION ........................................................................................1

III.    BACKGROUND ..........................................................................................4

IV.     STANDARD OF REVIEW ............................................................................8

V.      ARGUMENT ...............................................................................................9

        A.      Plaintiffs Fail To Demonstrate A Likelihood Of Irreparable Harm ......................9
        B.      Plaintiffs' Expansive Requests Are Not Narrowly Tailored To The
                Preliminary Injunction ............................................................................10
        C.      Plaintiffs Do Not Identify Any Information That Is At Risk Of Destruction ........12
        D.      The Procedural Posture And Timing Of Plaintiffs' Motion Do Not Support
                Expedited Discovery ...............................................................................13

VI.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT RECIPROCAL
        DISCOVERY REGARDING THE NARROW ISSUES INVOLVING THE
        AGREEMENTS.........................................................................................14

VII.    CONCLUSION...........................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas, LLC*,
No. 5:15CV115-BR, 2015 WL 12600175 (E.D.N.C. June 30, 2015) ....................................11

*Clean Juice Franchising, LLC v. Charleston Juicing, LLC*,
No. 3:23-CV-00894-RJC-SCR, 2024 WL 1363927 (W.D.N.C. Mar. 29, 2024) ...........8, 9, 12

*Dimension Data N. Am., Inc. v. NetStar-1, Inc.*,
226 F.R.D. 528 (E.D.N.C. 2005) ................................................................................................9

*Lewis v. Alamance Cnty. Dept. of Soc. Services*,
No. 1:15-CV-298-LCB-LPA, 2015 WL 2124211 (M.D.N.C. May 6, 2015) .....................9, 11

*Me2 Productions, Inc. v. Does 1-16*,
No. 4:16-CV-279-FL, 2016 WL 7017268 (E.D.N.C. Dec. 1, 2016) .......................................12

*Merz N. Am., Inc. v. Viveve Med. Inc.*,
No. 2:17-CV-15-BR, 2017 WL 11613694 (E.D.N.C. May 5, 2017)................................11, 13

*Teamworks Innovations, Inc. v. Starbucks Corp.*,
No. 1:19-CV-1240-TDS-LPA, 2020 WL 406360 (M.D.N.C. Jan. 24, 2020) .................10, 12

*United Healthcare Services, Inc. v. Richards*,
No. 3:09-CV-215-RJC-DCK, 2009 WL 4825184 (W.D.N.C. Dec. 2, 2009)..........................11

## STATUTES

15 U.S.C. § 15b........................................................................................................................11

## RULES

Fed. R. Civ. P.
26.................................................................................................................................................1
26(d)(1) ......................................................................................................................................8

Local Civil Rule
16.1(f)..........................................................................................................................................8
26.1..............................................................................................................................................8

## OTHER AUTHORITIES

*Actions Detrimental with Denny Hamlin*, https://www.youtube.com/watch?v=7X-
b4euC34A (Oct. 7, 2024)............................................................................................................6

Dale Earnhardt Jr.'s Dirty Mo Media, *Lead Attorney, Jeffrey Kessler, Explains 23XI and Front Row's Antitrust Lawsuit Against NASCAR*, https://www.youtube.com/watch?v=Q4tuOUbEhiY (Oct. 2, 2024)......................................2, 7

NASCAR, *How the NASCAR regular season works*, https://nascar101.nascar.com/2021/07/26/how-the-nascar-regular-season-works/..............................................................................................................................4

Jenna Fryer, *NASCAR, teams at 'significant impasse' over charters*, Associated Press, https://apnews.com/article/nascar-owners-boycott-40d028af65c240c835176476344391a3 (Apr. 5, 2023) ..............................................5

Matt Weaver, *Lawyer for race teams suing NASCAR lays his case*, https://sportsnaut.com/lawyer-for-race-teams-suing-nascar-lays-his-case/ (Oct. 2, 2024) ......................................................................................................................7

Newsweek, *23XI Racing and FRM Request Permission to Compete With charters in 2025 Despite Lawsuit*, https://www.newsweek.com/sports/racing/23xi-racing-frm-request-permission-compete-charters-2025-despite-lawsuit-1966757# (Oct. 9, 2024) ......................................................................................2

Newsweek, *NASCAR Responds To 23XI Racing and FRM Injunction Request in Bold Statement*, https://www.newsweek.com/sports/racing/nascar-responds-23xi-racing-frm-injunction-request-bold-statement-1967390 (Oct. 10, 2024).........................2

Nick DeGroot, *Daytona 500 Results*, https://www.motorsport.com/nascar-cup/news/daytona-500-results-nascar-cup-stenhouse-wins/10434062/ (Feb. 20, 2023) ..........................................................................................................2

Toby Christie, Racing America, *With a Lawsuit in Place, the Times They are A-Changin' in NASCAR*, https://www.si.com/onsi/racing-america/news/christie-with-lawsuit-in-place-the-times-they-are-a-changin-in-nascar-01j975fwzabt (Oct. 2, 2024) .......................................................................................................1

iii

## I.    BOTTOM LINE UP FRONT

Plaintiffs have filed a meritless suit against NASCAR alleging baseless antitrust claims in order to obtain commercial agreements they previously rejected, and to attempt to extort more favorable contract terms.  This Court should deny Plaintiffs' Motion for Expedited Discovery ("Motion"), as it is a one-sided, non-reciprocal request for relief more akin to a motion to compel. The requested discovery is also unnecessary in order to resolve the pending Motion for a Preliminary Injunction, is not narrowly tailored, and seeks to expand the usual scope of early discovery contemplated by Rule 26 of the Federal Rules of Civil Procedure.  Plaintiffs' overreaching requests belie their true aim: to use the antitrust discovery process as a weapon.[1] Reasonableness and the totality of the circumstances confirm that the Motion should not be granted.

## II.    INTRODUCTION

Plaintiffs' Motion seeks expedited discovery purportedly related to their Motion for a Preliminary Injunction.  (Doc Nos. 20, 21.)  Plaintiffs' Motion for a Preliminary Injunction asks this Court to Order NASCAR to enter into bi-lateral commercial agreements ("Charter Agreements") with Plaintiffs that Plaintiffs previously rejected, and which are no longer available. Not only do Plaintiffs want this Court to force NASCAR to sign Charter Agreements with Plaintiffs, but Plaintiffs ask this Court to excise a term from those Charter Agreements that they apparently now do not like, but which they previously accepted in their current Charter

---

[1]     Toby Christie, Racing America, *With a Lawsuit in Place, the Times They are A-Changin' in NASCAR*,  https://www.si.com/onsi/racing-america/news/christie-with-lawsuit-in-place-the-times-they-are-a-changin-in-nascar-01j975fwzabt (Oct. 2, 2024) ("We know what we know from public information. We will find out a ton more through discovery," Plaintiffs' counsel Kessler explained. "That is one of the advantages of federal antitrust litigation.  We will be able to obtain financials.").

Agreements (and which all other racing teams accepted in their 2025 Charter Agreements). The deadline for Plaintiffs to sign 2025 Charter Agreements expired weeks ago, and NASCAR has taken steps, consistent with its contractual obligations to other Charter Teams, to plan for a season with only 32 Charters. Plaintiffs do not need these Charter Agreements to race, and indeed have stated publicly that they will be racing in NASCAR regardless.[2] The idea that Plaintiffs would race without a Charter is not new or unprecedented; in fact, both Front Row and 23XI ran so-called Open cars in addition to their Charter cars in the 2023 Daytona 500, finishing in 13th and 11th places, respectively.[3] As Defendants' forthcoming opposition to Plaintiffs' Motion for a Preliminary Injunction will make clear, the Court should deny the requested injunctive relief.

Plaintiffs' Motion for a Preliminary Injunction focuses on one specific provision in the Charter Agreements—Section 10.3—which provides NASCAR with releases from Charter Teams.[4] Plaintiffs do not mention that Section 10.4 provides Charter Teams with reciprocal releases. Nonetheless, Plaintiffs' instant Motion is not narrowly tailored to obtain relevant

---

[2]    *See, e.g.* Doc. No. 20-3, ¶ 47 ("[W]e are determined to race next year even if we have to do so on an 'open' basis. . . ."); Newsweek, *23XI Racing and FRM Request Permission to Compete With charters in 2025 Despite Lawsuit*, https://www.newsweek.com/sports/racing/23xi-racing-frm-request-permission-compete-charters-2025-despite-lawsuit-1966757# (Oct. 9, 2024) (quoting joint statement that "The 23XI and Front Row Motorsports teams are fully committed to competing in next year's Cup Series."); Newsweek, *NASCAR Responds To 23XI Racing and FRM Injunction Request in Bold Statement*, https://www.newsweek.com/sports/racing/nascar-responds-23xi-racing-frm-injunction-request-bold-statement-1967390 (Oct. 10, 2024) (quoting 23XI co-owner, stating: "We have the resources that if we want to race, we'll race."); Dale Earnhardt Jr.'s Dirty Mo Media, *Lead Attorney, Jeffrey Kessler, Explains 23XI and Front Row's Antitrust Lawsuit Against NASCAR*, at 14:19-14:55, https://www.youtube.com/watch?v=Q4tuOUbEhiY (Oct. 2, 2024) ("They are both determined that they will compete no matter what. . . . If they don't get an injunction, they will have to compete as open teams next year, but they will be there no matter what.").

[3]    Nick DeGroot, *Daytona 500 Results*, https://www.motorsport.com/nascar-cup/news/daytona-500-results-nascar-cup-stenhouse-wins/10434062/ (Feb. 20, 2023)

[4]    For the full text of Section 10.3, see the 2025 Charter Agreement, (Doc. No. 21-5, § 10.3), or the 2016 Charter Agreement, (Doc. No. 21-4 § 10.3).

2

information regarding the release provisions, but instead seeks "*[a]ll* **documents**" regarding seven topics from six NASCAR executives (including the President, CEO, and COO) for a period spanning nearly **nine years** as well as all contracts with speedways during the same timeframe. (Doc. No. 22-1, pp. 5-6.)  And incredibly, Plaintiffs' Motion asks this Court to order Defendants to satisfy these sweeping requests within only five business days.

Plaintiffs cannot meet the standard to permit early discovery.  *First,* Plaintiffs cannot show they would be irreparably harmed without access to early discovery, because the materials requested are not necessary for Plaintiffs to support their Motion for a Preliminary Injunction. Indeed, Plaintiffs' Motion for a Preliminary Injunction includes over 400 pages of argument and exhibits, including the relevant contracts in dispute and citations to over 100 public sources.  And Plaintiffs have assured the Court that they already have the information they believe they need to demonstrate their claim "*prior to having any access to expedited discovery*."  (Doc. No. 22, pp. 8-9 (emphasis added).)  In other words, Plaintiffs do not claim they lack some critical evidence in Defendants' possession that is necessary in order for the Court to rule on their Motion for a Preliminary Injunction.  *Second*, Plaintiffs' requests are not narrowly tailored; instead, they seek "[a]ll documents" found in the custodial files of six NASCAR senior executives, as well as all contracts between NASCAR and racetracks with certain provisions for a period spanning about nine years.  *Third*, Defendants have implemented a litigation hold ensuring that documents will be maintained, and the procedural posture of this case counsels against early discovery and in favor of proceeding within the Federal Rules of Civil Procedure and this Court's Standing Orders. Defendants respectfully request the Court deny Plaintiffs' Motion.

In the alternative, should the Court determine Plaintiffs have demonstrated good cause exists to expedite some discovery (which they have not), then the Court should order reciprocal

discovery for all parties limited to non-privileged documents sufficient to show discussions regarding the meaning and purpose of Section 10.3 of the 2016 and 2025 Charter Agreements and the reciprocal release of NASCAR's claims against Charter Teams in Section 10.4.

## III.   BACKGROUND

Prior to 2016, teams that raced in NASCAR-sanctioned events were not guaranteed racing slots in any race and had to compete to qualify for their entry into each race. In 2014, numerous teams joined together to form the Race Team Alliance ("RTA"), and at the teams' request, NASCAR negotiated with the RTA to form a new "Charter" system. After significant negotiations between the RTA and NASCAR (each represented by sophisticated legal counsel), the parties agreed on the 2016 Charter Agreements. Under the 2016 Charter Agreements, each racing team with a Charter (1) is guaranteed entry in every Cup Series race (and is required to participate in every race),[5] (2) receives guaranteed payments based on Charter team membership, performance, and past performance, and (3) receives a Charter with no payment to NASCAR that can be sold by the team. There are 36 Charter Agreements allowed but 40 slots for racing teams in each Cup Series race. If a race team does not have a Charter Agreement, they are considered an "Open" team. Open teams can do what teams did before 2016: compete to qualify for a race. Open teams are eligible to win the race purse for each race. Among other terms, the 2016 Charter Agreements include reciprocal releases and waivers of claims between the parties at Sections 10.3 and 10.4. (Doc. No. 21-4, pp. 45-46.) These types of releases are standard in commercial contracts.

---

[5]     NASCAR's Cup Series is a stock car racing competition consisting of 26 regular season races in which drivers earn points with the top 16 points earners advancing to the NASCAR playoffs, which consists of ten races. *See* NASCAR, *How the NASCAR regular season works*, https://nascar101.nascar.com/2021/07/26/how-the-nascar-regular-season-works/.

Both Plaintiffs agreed to the provisions of the 2016 Charter Agreements. Front Row was part of the RTA when the agreements were negotiated and signed two 2016 Charter Agreements in 2016. Front Row subsequently acquired additional Charter Agreements from other teams later in 2016 and in 2018, and thus further agreed to the mutual releases when those transactions occurred. 23XI acquired its first 2016 Charter Agreement in October 2020 and another 2016 Charter Agreement in November 2021. In other words, Plaintiff 23XI bought into the system that already existed as of 2020 and 2021, *after* the acquisitions and other conduct that Plaintiffs claim violate the antitrust laws. When acquiring these Charter Agreements, 23XI agreed to be bound by the terms of the 2016 Charter, including Section 10.3. NASCAR agreed to a reciprocal release in Section 10.4. The 2016 Charter Agreements expire on December 31, 2024. (Doc. No. 1, ¶ 38.)

From February 2022 through September 2024, Plaintiffs individually and together with other teams as part of the RTA and the Team Negotiating Committee negotiated with NASCAR on the terms of the 2025 Charter Agreements. (*Id*. at ¶ 103.) The same counsel from the negotiations for the 2016 Charter represented the RTA in the negotiations for the 2025 Charter. One of the major changes Plaintiffs sought was to make the Charters permanent in duration, which NASCAR refused, causing Plaintiffs along with other teams to boycott a meeting with NASCAR senior executives.[6] After two-and-a-half years of negotiation, the exchange of multiple drafts of documents, countless meetings, and numerous conversations (*see* Doc. No. 20-11 (Ltr. from NASCAR to 23XI owners, Sept. 11, 2024)), NASCAR needed to bring negotiations to a close for a variety of reasons including that the 2025 race season was approaching. Indeed, NASCAR needed to determine the ownership structure within the Cup Series as that would affect a multitude

---

[6]    Jenna Fryer, *NASCAR, teams at 'significant impasse' over charters*, Associated Press, https://apnews.com/article/nascar-owners-boycott-40d028af65c240c835176476344391a3 (Apr. 5, 2023).

of factors, including car counts, parts availability, competition requirements, purse and point allocations, and payouts. (*See e.g.,* Doc. 21-5 (2025 Charter). p. 61 (requiring communication of purses to teams in about two weeks).)

On September 6, 2024, NASCAR presented the teams with its best and final offer. Thirteen race teams (constituting approximately 90% of the Charter members) signed the 2025 Charter Agreement. Plaintiffs did not. Plaintiffs rejected NASCAR's offer, citing various concerns. (Doc. No. 20-10.) Despite their representations to the Court in their motion, Section 10.3 of the 2025 Charter Agreements was not one of those stated concerns. In fact, in the two-and-a-half years of negotiation, NASCAR does not believe that Section 10.3 was ever raised as a concern by either Plaintiff, Charter Members, or their attorneys. Tellingly, Section 10.3 is nowhere mentioned in the long correspondence sent by Plaintiffs to NASCAR just a month ago. (*Compare* Doc. No. 20-10 (Ltr. from 23XI letter to NASCAR, Sept. 6, 2024) *with* Doc. No. 21, p. 11 (referring to 10.3 as "a mandatory provision that Defendants contend would release the antitrust claims of any team that signs the Agreement," which Plaintiffs could not sign without "risk [of] forfeiting their antitrust rights").)

The release in Section 10.3 of the 2025 Charter Agreements is exactly the same as the release in Section 10.3 of the 2016 Charter Agreements that both Plaintiffs had already signed or assumed.[7] Although Plaintiffs' Motion for a Preliminary Injunction and press commentary both speak of a midnight deadline on September 6, 2024, NASCAR continued to engage with 23XI and

---

[7] Plaintiffs suggest—and have expressly said to the press—that Section 10.3 was "put in there in the twelfth hour." (*Actions Detrimental with Denny Hamlin*, https://www.youtube.com/watch?v=7X-b4euC34A, at 11:05-11:48 (Oct. 7, 2024) (Mr. Hamlin, co-owner of 23XI)). That is simply not true. Section 10.3 (and Section 10.4's reciprocal release by NASCAR of teams) was part of the 2016 Charter, was accepted by Mr. Hamlin's team 23XI when it first purchased a Charter in 2020 and then again in 2021, and was in all drafts of the 2025 Charter exchanged for two years.

Front Row regarding their purported concerns, pointed out that NASCAR and the Teams had reached a mutually acceptable resolution on the majority of them, and extended both teams' time to sign the agreements to allow Front Row until September 17 and 23XI until September 20. (Doc. No, 20-15; Doc. No. 20-13, p. 3.)[8] Plaintiffs did not timely sign, and under basic contract law, the offer was thus rejected, leaving no offer existing to be accepted. When the extended deadlines to sign expired, NASCAR took down the AdobeSign and moved on to planning a 2025 season with 32 instead of 36 Charters. NASCAR carries contractual obligations to the 13 teams that accepted its offers of 2025 Charters, and consistent with the terms of the 2025 Charters, NASCAR is working on reallocating funds that Plaintiffs would have received to increase prize money and other special awards for the 2025 season for the benefit of teams that timely executed 2025 Charters, as well as Open teams who can compete to win the increased prize money and other special awards. (Doc. No. 20-13, p. 3; Doc. No. 21-5 at p. 64.)

Weeks after rejecting NASCAR's offer of 2025 Charter Agreements, Plaintiffs filed this instant action on October 2, 2024. Plaintiffs did not seek either expedited discovery or a motion for preliminary injunction at that time; instead, Plaintiffs' counsel focused on podcast appearances and statements to the press.[9] On October 9, Plaintiffs filed a Motion for a Preliminary Injunction, asking this Court to: (1) effectively rewrite the 2025 Charter Agreement (by stripping it of Section

---

[8]     Mr. Jenkins, the owner of Plaintiff Front Row Motorsports, even thanked NASCAR for "the additional time for our due diligence" in a letter sent on September 17, 2024. (Doc. No. 20-15.)

[9]     *See, e.g.*, Dale Earnhardt Jr.'s Dirty Mo Media, *Lead Attorney, Jeffrey Kessler, Explains 23XI and Front Row's Antitrust Lawsuit Against NASCAR*, https://www.youtube.com/watch?v=Q4tuOUbEhiY (Oct. 2, 2024); Matt Weaver, *Lawyer for race teams suing NASCAR lays his case*, https://sportsnaut.com/lawyer-for-race-teams-suing-nascar-lays-his-case/ (Oct. 2, 2024) (describing press conference and SiriusXM interview).

10.3 though not Section 10.4) and (2) require NASCAR to provide those bespoke Charters each to Front Row and 23XI, which differ from those signed by the other 13 teams.

Despite Plaintiffs' allegations that the Charter Agreements are anticompetitive and that they will not be able to compete as Charter members in the 2025 season at all, Front Row and 23XI each entered into agreements to acquire other team's Charters, subject to NASCAR's approval of such transfers. Accordingly, Plaintiffs also ask the Court to: (1) require Defendants to approve those Charter transfers and (2) retroactively excise Section 10.3 from those *signed* agreements. And again, Plaintiffs seek to have this Court eliminate Section 10.3 while at the same time leaving in place the reciprocal release the racing teams first obtained from NASCAR during the negotiations for the 2016 Charter, as set forth in Section 10.4.

Regardless of whether Plaintiffs receive their requested preliminary injunction, Plaintiffs have publicly stated that they intend to race in NASCAR next year, even as Open teams. *Supra* at pp. 1-2.

## IV. STANDARD OF REVIEW

Fed. R. Civ. P. 26(d)(1) generally prohibits discovery prior to the parties conferring pursuant to Rule 26(f), and Local Civil Rule 26.1 states that "discovery does not commence until issuance of the Scheduling Order." A party may seek early court-enforceable discovery only upon a proper showing and an order of the Court. *See* LCvR 16.1(f).

Courts within the Fourth Circuit, including courts in this District, analyze requests for early discovery under "a reasonableness or good cause standard" and consider: (1) "whether the party seeking the information would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference," (2) "whether the discovery requested is narrowly tailored," (3) "whether the information sought would be unavailable or subject to destruction in the absence of expedited production," and (4) the procedural posture of the case. *See Clean Juice Franchising,*

*LLC v. Charleston Juicing, LLC*, No. 3:23-CV-00894-RJC-SCR, 2024 WL 1363927, at *2 (W.D.N.C. Mar. 29, 2024); *see also Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531–32 (E.D.N.C. 2005) (applying same test).

## V.     ARGUMENT

Plaintiffs cannot demonstrate "reasonableness or good cause" for the expansive discovery on the expedited basis that they seek.  This discovery is unnecessary for the Court to determine the merits of Plaintiffs' Motion for a Preliminary Injunction.  Plaintiffs already have significant information about their allegations and contend that their Motion for a Preliminary Injunction "demonstrates Plaintiffs' ability to show a likelihood of irreparable harm *prior to* having any access to expedited discovery."  (Doc. No. 22, pp. 8-9 (emphasis added).)  In other words, Plaintiffs concede the discovery they request is not necessary to support their Motion for a Preliminary Injunction.  Moreover, Plaintiffs' claim they are entitled to this broad information because it goes to the likelihood of success on the merits, but their argument would make the "narrowly tailored" factor meaningless.  If Plaintiffs are correct, *any* early discovery that a party contends supports the ultimate merits of their case would constitute good cause.  That is not the law.  Plaintiffs have not identified—nor could they—any information that would be unavailable or subject to destruction in the absence of expedited production.  Finally, the timing and procedural posture of this preliminary injunction motion makes expedited discovery unnecessary and inappropriate here.

### A.     Plaintiffs Fail To Demonstrate A Likelihood Of Irreparable Harm

To satisfy the irreparable harm factor, "a party must show a likelihood of irreparable harm *without access to early discovery*."  *Clean Juice*, 2024 WL 1363927, at *2 (cleaned up) (emphasis added); *see also Lewis v. Alamance Cnty. Dept. of Soc. Services*, No. 1:15-CV-298-LCB-LPA, 2015 WL 2124211, at *2 (M.D.N.C. May 6, 2015).  Not only do Plaintiffs fail to make any such

showing, they go a step further by claiming to already have provided the Court with sufficient evidence to adjudicate their Motion for a Preliminary Injunction.

Plaintiffs contend their Motion for a Preliminary Injunction "demonstrates Plaintiffs' ability to show a likelihood of irreparable harm *prior to having any access to expedited discovery*." (Doc. No. 22, pp. 8-9 (emphasis added).)  Instead of establishing the required standard, Plaintiffs now claim their discovery requests "will create a more fulsome record . . . with stronger and more concrete evidence. . . ."  (*Id.*, p. 9.)  But this is neither the purpose of expedited discovery nor the applicable standard for determining whether irreparable harm exists for the purpose of evaluating a motion for expedited discovery.  Plaintiffs do not claim they lack some critical evidence that only Defendants have that Plaintiffs need to access in order for the Court to rule on their Motion for a Preliminary Injunction.

Without any specific identification of irreparable harm, Plaintiffs instead conflate the alleged irreparable harm needed to support their Motion for a Preliminary Injunction with their supposed irreparable harm from the lack of expedited discovery.  But the very case Plaintiffs cite for that proposition, *Teamworks Innovations, Inc. v. Starbucks Corp.*, makes clear that the question the Court must consider for the instant Motion is "whether Plaintiff has shown a likelihood of irreparable harm *without access to expedited discovery*."  No. 1:19-CV-1240-TDS-LPA, 2020 WL 406360, at *3 (M.D.N.C. Jan. 24, 2020) (emphasis added).  Plaintiffs do not argue that without discovery, the Court will lack some critical evidence that is necessary to their requested injunctive relief.  Accordingly, Plaintiffs will not be irreparably harmed by denial of their Motion.

## B. Plaintiffs' Expansive Requests Are Not Narrowly Tailored To The Preliminary Injunction

Plaintiffs seek expansive discovery into all portions of the allegations in the Complaint, including requests seeking "[a]ll documents" related to the "competitive purpose" of various

10

acquisitions in 2017 and 2018, the "purpose or effect" of terms in the Charter Agreements, and the "purpose or effect" of rules requiring the use of Next Gen car parts at NASCAR events.[10]  (Doc. No. 22, pp. 2-3.)  Courts repeatedly reject expedited discovery requests seeking "all documents" regarding a topic even when they "may be relevant to the overall case, [because] they are not narrowly tailored to the issues relevant to the preliminary injunction."  *See Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas, LLC*, No. 5:15CV115-BR, 2015 WL 12600175, at *5 (E.D.N.C. June 30, 2015) (collecting cases); *Lewis*, 2015 WL 2124211, at *3; *see also United Healthcare Services, Inc. v. Richards*, No. 3:09-CV-215-RJC-DCK, 2009 WL 4825184, at *1 (W.D.N.C. Dec. 2, 2009) (rejecting motion for expedited discovery as not narrowly tailored when it included multiple requests for all documents).

Plaintiffs claim that all of the requested expedited discovery is warranted because it is "highly relevant to Plaintiffs' showing of a likelihood of success on the merits."  (Doc. No. 22, p. 8.)  This generalized claim of relevance is insufficient, unavailing, and arguably true in every civil case.  Indeed, in *Lewis*, the court rejected a similar argument noting that simply because requested documents "may bear relevance to the ultimate merits . . . and thus might plausibly support a likelihood of success on the merits under the preliminary injunction standard" does not mean that they are specifically relevant to obtaining a preliminary injunction.  2015 WL 2124211, at *3; *see also Merz N. Am., Inc. v. Viveve Med. Inc.*, No. 2:17-CV-15-BR, 2017 WL 11613694, at *2 (E.D.N.C. May 5, 2017) ("[T]he proposed discovery requests must be targeted or otherwise

---

[10]     With respect to timing, Plaintiffs request documents "from January 1, 2016 though the end of trial."  (Doc. No. 22-1, p.3.)  Not only is a nearly nine-year time period incredibly broad, it is also improper.  Antitrust claims such as those made by Plaintiffs have a four-year statute of limitation. 15 U.S.C. § 15b.  Therefore, conduct occurring before October 2, 2020, is time-barred, and discovery into it would be inappropriate.  There is no reason that the statute of limitations would toll here or that any exception would apply.

tailored to obtaining injunctive relief, and not simply be addressed to the ultimate merits of plaintiff's claims."); *Clean Juice*, 2024 WL 1363927, at *2 (adopting the reasoning in *Merz*).

Plaintiffs have not identified any particular evidence they need to support their motion or any particularized prejudice they will face without their broad and burdensome discovery. Indeed, to the contrary, Plaintiffs contend that the evidence they have put forth already is sufficient for the Court to consider (and grant) their motion. (*See* Doc. No. 22, pp. 8-9; Doc. No. 21, p. 19.)

The cases Plaintiffs cite do not support their arguments that their requests are narrowly tailored. In *Me2 Productions, Inc. v. Does 1-16*, the plaintiff sought discovery prior to a Rule 26(f) conference from an internet service provider to be able to identify the actual identities of defendants. No. 4:16-CV-279-FL, 2016 WL 7017268, at *1 (E.D.N.C. Dec. 1, 2016). The plaintiff there knew the defendants' IP address and plausibly claimed that discovery sought from the third-party internet service provider was the only way to identify the names of the defendants. *Id.* And in *Teamworks Innovations, Inc.*, the court actually held that the discovery requests were not narrowly tailored and only permitted a limited set of discovery narrowly tailored to identifying defendant's intent, which would be necessary to the determination of the preliminary injunction. 2020 WL 406360, at *4-5. Unlike the cases cited by Plaintiffs, Plaintiffs here have not identified any particular evidence they are missing (or is in the unique control of Defendants) and need to support their Motion for a Preliminary Injunction. Plaintiffs' generalized statements to the contrary are insufficient—and crediting them would mean that expansive expedited discovery would become the norm.

### C.     Plaintiffs Do Not Identify Any Information That Is At Risk Of Destruction

Plaintiffs do not make any claim that the requested materials are at risk of destruction in the absence of expedited production. Plaintiffs' failure to address this factor is unsurprising, because they cannot dispute that there is no risk that the requested materials could be destroyed or

12

become unavailable. Defendants have already implemented a litigation hold that preserves relevant materials, including those requested by Plaintiffs. This factor does not favor awarding the relief sought by Plaintiffs. *See Merz*, 2017 WL 11613694, at *4 (similar analysis, same conclusion).

### D. The Procedural Posture And Timing Of Plaintiffs' Motion Do Not Support Expedited Discovery

The timing of Plaintiffs' Motion with respect to the date of the preliminary injunction briefing and hearing also favors against granting relief. Under the Court's existing deadlines and hearing date, there is no reasonable way these materials could become part of the factual record before the preliminary injunction hearing. Plaintiffs' Reply in Support of their Motion for Expedited Discovery is due on October 23, and the Preliminary Injunction Hearing is scheduled for November 4. It would be unreasonable and unduly burdensome for Defendants to collect, review, and produce "all documents" responsive to these requests for six custodians across a period of almost nine years prior to the Preliminary Injunction Hearing.

And with respect to the one request that does not explicitly request "all documents," Request No. 1, Plaintiffs seeks all agreements between NASCAR and racetracks "which contain exclusivity provisions or other terms restricting the ability of the race tracks to host non-NASCAR racing events" since January 1, 2016, which would require review of hundreds of agreements and also likely implicates third party rights such as confidentiality and notice. Even if it were possible to collect, review, and produce these documents within five business days (it is not) and the Court granted Plaintiffs' request on the same date that Plaintiffs' file their Reply in Support of their Motion to Expedite Discovery, Defendants' discovery deadline would still fall on the date that Plaintiffs' Reply in Support of their Motion for Preliminary Injunction is due. Plaintiffs would be unable to make use of the requested materials in that reply brief.

13

**VI. IN THE ALTERNATIVE, THE COURT SHOULD GRANT RECIPROCAL DISCOVERY REGARDING THE NARROW ISSUES INVOLVING THE AGREEMENTS**

Should the Court conclude Plaintiffs have shown good cause exists to warrant some expedited discovery, discovery should be reciprocal in nature and limited to non-privileged documents directly related to the central issue Plaintiffs raise in their Motion for Preliminary Injunction. Instead of the broad, custodial collections for all topics Plaintiffs have requested, the Court could require Plaintiffs and Defendants to produce documents sufficient to show the meaning and purpose of Section 10.3 and the reciprocal release of NASCAR's claims against Teams in Section 10.4, in the 2016 and 2025 Charter Agreements. This would represent a more narrowly-tailored version of Plaintiffs' request number six, but would not require custodial productions and would be focused on the core issue raised by Plaintiffs' Motion for a Preliminary Injunction.

**VII. CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs' Motion for Expedited Discovery. If the Court orders some form of expedited discovery, Defendants respectfully request discovery be narrowly tailored, reciprocal, and require both Plaintiffs and Defendants to produce documents sufficient to show the meaning and purpose of Section 10.3 and the reciprocal release of NASCAR's claims against teams in 10.4 of the 2016 and 2025 Charter Agreement.

14

Dated: October 16, 2024

Respectfully submitted,

By:     _/s/ Tricia Wilson Magee_
        Tricia Wilson Magee (N.C. Bar No. 31875)
        **SHUMAKER, LOOP, & KENDRICK, LLP**
        101 S Tryon Street, Suite 2200
        Charlotte, NC 28280
        Tel: 704-945-2911
        Fax: 704-332-1197
        tmagee@shumaker.com

        Christopher S. Yates*
        **LATHAM & WATKINS LLP**
        505 Montgomery Street, Suite 2000
        San Francisco, CA 94111
        Telephone: (415) 395-8240
        Facsimile: (415) 395-8095
        chris.yates@lw.com

        Lawrence E. Buterman*
        **LATHAM & WAKINS LLP**
        1271 Avenue of the Americas
        New York, NY 10020
        Telephone: (212) 906-1200
        Facsimile: (212) 751-4864
        lawrence.buterman@lw.com

        Anna M. Rathbun*
        Christopher J. Brown*
        **LATHAM & WATKINS LLP**
        555 Eleventh Street, NW, Suite 1000
        Washington, DC 20004
        Telephone: (202) 637-2200
        Facsimile: (202) 637-2201
        anna.rathbun@lw.com
        chris.brown@lw.com


        * Admitted _pro hac vice_

        _Counsel for Defendants NASCAR and Jim
        France_

15

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that the foregoing document contains fewer than 4,500 words according to the word count feature in Microsoft Word and is therefore in compliance with the word limitation set forth in Judge Whitney's Scheduling Order.

This the 16th day of October, 2024.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Tricia Wilson Magee*
Tricia Wilson Magee (N.C. Bar No. 31875)
SHUMAKER, LOOP, & KENDRICK, LLP
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Tel: 704-375-0057
Fax: 704-332-1197
Email: tmagee@shumaker.com

</div>

16

## ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

1.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2.      Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 16th day of October, 2024.

*/s/ Tricia Wilson Magee*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** was electronically filed using the Court's CM/ECF system, which will automatically send notice of filing to all parties of record as follows:

Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
dwilliams@winston.com

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
jkessler@winston.com

Jeanifer Parsigian
Michael Toomey
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
jparsigian@winston.com
mtoomey@winston.com

Matthew DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
mdalsanto@winston.com

*Counsel for Plaintiffs 23XI Racing and
Front Row Motorsports Inc.*

This the 16th day of October, 2024.

*/s/ Tricia Wilson Magee*

18