UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-00886-FDW-SCR

| | |
|---|---|
| 2311 RACING LLC<br>FRONT ROW MOTORSPORTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES FRANCE<br>NATIONAL ASSOCIATION FOR STOCK<br>CAR AUTO RACING, LLC,<br><br>Defendants. | <u>**ORDER**</u> |

**THIS MATTER** is before the Court on the Motion for Preliminary Injunction, (Doc. No. 20), filed by Plaintiffs 2311 Racing LLC ("23XI") and Front Row Motorsports, Inc. ("Front Row"). This matter has been fully briefed, (Doc. Nos. 20, 21, 30, 31, 33, 34), and the Court held a hearing on November 4, 2024, during which each side provided additional arguments. For the reasons set forth below, Plaintiff's Motion for Preliminary Injunction is DENIED WITHOUT PREJUDICE.

### I. FINDINGS OF FACT

This matter arises from a dispute between Plaintiffs and Defendants regarding alleged monopolization of premier stock car racing and the terms of the 2025 Charter Agreements, which allow teams to participate in Defendants' racing events. (Doc. No. 1, pp. 4–13.) Plaintiffs 23XI and Front Row are two teams that compete in Defendant National Association for Stock Car Auto Racing's ("NASCAR") Cup Series. (Id., pp. 4, 14–15.) NASCAR is privately owned and managed by the France family, including its current CEO and Chairman, Defendant James France. (Id., p. 16.)

1

In 2016, NASCAR implemented a Charter Agreement system that guaranteed each chartered car entry into every Cup Series race for the term of the Charter Agreement. (Id, p. 7.) The 2016 Charter Agreements expired on December 31, 2020. (Id.) If the teams gave NASCAR written notice, the 2016 Charter Agreements renewed and extended until December 31, 2024. (Id.) Teams can compete in NASCAR's events without a charter, but they must qualify for one of the open, non-chartered spots, which generate revenue from prize money and sponsorships. (Id., pp. 33, 36–37; Doc. No. 20-1, p. 11.)

In October 2020, 23XI acquired a 2016 Charter and began racing one car, and in fall 2021, 23XI purchased a second 2016 Charter. (Doc. No. 1, pp. 14–15.) In 2016, Front Row received two 2016 charters from NASCAR and signed two corresponding Charter Agreements, which run through December 31, 2024. (Id., p. 15.) As such, both teams currently race two full-time cars in the Cup Series and both teams are in the process of acquiring a third charter. (Id., pp. 15–16.)

Joint negotiations for the 2025 Charter Agreements began in 2022, and in March 2024, NASCAR began negotiating with teams individually. (Id., p. 10.) The final 2025 Charter Agreements include a release provision that is the subject of this lawsuit. (Id., pp. 11–12.) Plaintiffs allege this release provision will bar them from bringing antitrust claims arising out of the formation of the 2025 Charter Agreements against Defendants. (Id., p. 33). In relevant part, the release provision reads:



(Doc. No. 21-5, pp. 44–45, § 10.3.) The open team agreements also include this provision. (Doc. No. 34, p. 5.) Plaintiffs 23XI and Front Row are the only two teams that did not sign the 2025

Charter Agreements. (Doc. No. 1, p. 12.) At the hearing, Defendant NASCAR represented it withdrew the offered 2025 Charter Agreements to Plaintiffs 23XI and Front Row, and therefore there are no pending negotiations. (Minute Entry, November 4, 2024.)

Plaintiffs seek a preliminary injunction ordering the following:

a. Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with Defendants, shall grant two NASCAR Cup Series Charter Member Agreements to 23XI Racing with the same terms as the NASCAR Cup Series Charter Member Agreements that NASCAR offered to 23XI on September 6, 2024;

b. Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with Defendants, shall grant two NASCAR Cup Series Charter Member Agreements to Front Row Motorsports with the same terms as the NASCAR Cup Series Charter Member Agreements that NASCAR offered to Front Row Motorsports on September 6, 2024; and

c. Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with Defendants, shall be enjoined from enforcing Section 10.3 of any NASCAR Cup Series Charter Member Agreement that is granted, or transferred (pursuant to the pending transactions with Stewart-Haas Racing, LLC), to either Plaintiff as a defense to any antitrust claim that either Plaintiff is pursuing in this action.

(Doc. No. 20, pp. 3–4.)

## II. STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits; (2) a strong prospect of irreparable harm if the injunction is not granted; (3) the balance of equities favors the movant; and (4) an injunction is in the public's interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). A party's failure on any element precludes injunctive relief from issuing. See Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth., 771 F.3d 201, 207 (4th Cir. 2014). The moving party bears the burden of "clearly establish[ing]" that such

"extraordinary" relief should issue. Di Biase, 872 F.3d at 230; Winter, 555 U.S. at 24. The court must "separately consider each Winter factor" to determine whether each has been "satisfied as articulated." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009), vacated on other grounds, Citizens United v. FEC, 558 U.S. 310 (2010), aff'd, Real Truth About Obama, Inc. v. FEC, 607 F.3d 355 (4th Cir. 2010) (per curiam). "Ultimately, a plaintiff's entitlement to preliminary injunctive relief is a matter of discretion with the Court." Hebb v. City of Asheville, 655 F. Supp. 3d 388, 393 (W.D.N.C. 2023).

### III. CONCLUSIONS OF LAW

Plaintiffs allege that without a preliminary injunction, they will face irreparable harm through several avenues. First, Plaintiffs assert they will "risk" losing sponsors if competing as open teams. (Doc. No. 21-2, p. 10; Doc. No. 21-3, p. 10). Specifically, Plaintiffs allege that there is a risk their sponsors "could abandon [them] if they have to compete as open teams and do not qualify for all of their races." (Doc. No. 21, p. 17.) For instance, 23XI's sponsorship agreements require that each sponsored car runs in every Cup Series race, so failure to qualify for a race could reduce the amount of sponsorship money it receives. (Doc. No. 21-3, p. 10.)

Second, Plaintiffs allege they will "risk" the loss of their drivers. Both teams allege their drivers may leave if they do not have access to a chartered car. (Doc. No. 21, p. 17.) For example, 23XI driver Tyler Reddick is permitted to terminate his contract with the team if there is no Charter Agreement in place for his car. (Doc. No. 21-3, p. 10; Doc. No. 21-7, p. 11, § 4(c).)

Third, Plaintiffs assert that racing as open teams "could threaten [their] continued existence." (Doc. No. 21, p. 18.) Both teams allege they will lose substantial amounts of revenue without charters. (Id.)

Fourth, Plaintiffs allege they may lose goodwill with fans and sponsors if they fail to qualify for a race. (Doc. No. 21-2, p. 10.)

Finally, Plaintiffs allege that "NASCAR has the power to exclude open competitors completely" under the 2025 Charter Agreement. (Doc. No. 21, p. 18.)

A plaintiff seeking a preliminary injunction must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22. A showing of the "*possibility* of irreparable harm" is not sufficient. Id. (emphasis added). Instead, a plaintiff "must make a clear showing of irreparable harm . . . ." Talleywhacker, Inc. v. Cooper, 465 F. Supp. 3d 523, 542 (E.D.N.C. 2020) (quoting Scotts Co. v. United Indus. Corp., 315 F.3d 264, 283 (4th Cir. 2002)). Furthermore, "the required irreparable harm must be neither remote nor speculative, but actual and imminent." Id. (quoting Scotts Co., 315 F.3d at 283). A preliminary injunction is improper where the alleged harm is "not present or immediate but merely problematic, conditioned on possible future events . . . ." Direx Israel, Ltd. v. Breakthrough Med. Corp. et al, 952 F.2d 802, 816 (4th Cir. 1991).

Here, although Plaintiffs have alleged that they will face a risk of irreparable harm, they have not sufficiently alleged present, immediate, urgent irreparable harm, but rather only speculative, possible harm. That is, although Plaintiffs allege they are on the brink of irreparable harm, the 2025 racing season is months away—the stock cars remain in the garage.

First, Plaintiffs have not alleged a "present prospect" that they will be harmed by the loss of sponsors. Direx Israel, Ltd., 952 F.2d at 816. Instead, they have alleged a possibility that they will lose sponsorship agreements. (Doc. No. 21-2, pp. 10–11; Doc. No. 21-3, p. 10.) Such potential harm of loss of sponsorship is too speculative to give rise to a preliminary injunction.

5

Second, Plaintiffs have not alleged a "present prospect" of the loss of their drivers. Instead, they allege that their drivers may leave if Plaintiffs compete as open teams. (Doc. No. 21-2, p. 11; Doc. No. 21-3, p. 10; Doc. No. 21-7, p. 11.) Presently, this harm is too speculative to merit a preliminary injunction.

Third, although injunctive relief may be available "where the moving party's business cannot survive absent a preliminary injunction," Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994), Plaintiffs have not alleged that their business *cannot* survive without a preliminary injunction. Instead, they allege that their businesses *may not* survive without a preliminary injunction. (Doc. No. 21-2, p. 12; Doc. No. 21-3, p. 11.) This allegation does not indicate an "impending threat of [Plaintiffs'] operations not surviving the pendency of this matter." Eco Fiber Inc. v. Vance, No. 3:24-cv-465-FDW-DCK, 2024 WL 3092773, at *4 (W.D.N.C. June 21, 2024) (finding irreparable harm where Plaintiff alleged it had already lost almost $250,000 and had laid off the majority of its employees).

Fourth, although loss of goodwill may justify injunctive relief, Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 442 F. App'x 776, 785 (4th Cir. 2011), at this stage, Plaintiffs have alleged only a potential loss of goodwill, contingent on a host of events occurring, including speculation about how third parties may or may not act.

Finally, the possibility that NASCAR may exclude open teams, (Doc. No. 21, p. 18), is merely speculative. Based on the parties' representations at the hearing, the Court understands Plaintiffs could sign open contracts today and continue racing in 2025. Instead, they have chosen not to because they have been unable to negotiate a contract without the provision of which they complain. As such, this speculative harm does not warrant the extraordinary relief of a preliminary injunction.

Altogether, the harm Plaintiffs allege is "uncertain." Direx Israel, Ltd., 952 F.2d at 816. "[I]t is impossible to ascertain *when* [the harm] might occur," nor can the Court "say with confidence that the harm is more likely than not to occur *at all*." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 530 (4th Cir. 2003), abrogated on other grounds by eBay Inc. v. MercExchange, LLC, 547 U.S. 388, (2006). At this stage, the teams are no closer to irreparable harm than they are to the command, "Drivers, start your engines," at the first race of the 2025 season. Accordingly, "the proper conclusion to draw is that [Plaintiffs have] failed to make the clear showing required." Id.

### IV. CONCLUSION

At this time, Plaintiffs have not met their burden as required for a preliminary injunction. Should circumstances change, Plaintiffs may file a renewed motion for preliminary injunction. Therefore, the Court denies Plaintiffs' motion without prejudice. However, the Court intends to assign this case to the fast track as defined in this Court's standing orders. The Court DIRECTS Defendants to file an answer by the already-established responsive pleading deadline of December 2, 2024, even if it is accompanied by a motion to dismiss. The Court also DIRECTS the parties to conduct the Initial Attorneys Conference as soon as possible after the responsive pleading is filed and to file the Rule 26(f) report no later than December 16, 2024, so that a case management order can promptly issue.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (Doc. No. 20), is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that:

a. Defendants are **DIRECTED** to file an answer by the responsive pleading deadline of December 2, 2024, even if it is accompanied by a motion to dismiss;

b. The Parties are **DIRECTED** to file the Rule 26(f) report no later than December 16, 2024.

**IT IS SO ORDERED.**   Signed: November 8, 2024

Frank D. Whitney
United States District Judge

8

Case 3:24-cv-00886-FDW-SCR    Document 42    Filed 11/08/24    Page 8 of 8