2311 RACING LLC d/b/a 23XI RACING and
FRONT ROW MOTORSPORTS, INC.,

        Plaintiffs,

        v.

NATIONAL ASSOCIATION FOR STOCK
CAR AUTO RACING, LLC and JAMES
FRANCE,

        Defendants.

ORAL ARGUMENT REQUESTED

Civil Action No. 3:24-cv-886-FDW-SCR

Public Redacted Version

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**RENEWED MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Preliminary Statement ............................................................................................... 1

New Circumstances ..................................................................................................... 2

Argument ...................................................................................................................... 4

I.    Plaintiffs Are Suffering Irreparable Harm Now. ..................................... 5

    A.   ██████████████████████ . ............................... 6

    B.   ████████████████ ........................................ 6

    C.   Plaintiffs Are Being Forced to Risk Losing Their Antitrust Rights or Forego a One-Time Opportunity to Purchase SHR Charter Agreements. ...................................................................................... 8

II.    Plaintiffs Are Likely to Succeed on the Merits. ..................................... 8

III.    The Balance of Equities Favors Plaintiffs. ........................................... 11

IV.    The Public Interest Supports an Injunction. .......................................... 12

V.    At a Minimum, The Court Should Rule That Plaintiffs' Claims are Outside the Scope of the Release. ........................................................ 12

Conclusion .................................................................................................................. 13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brennan Petroleum Prod. Co. v. Pasco Petroleum Co.*,
    373 F. Supp. 1312 (D. Ariz. 1974) ...................................................................7

*Broussard v. Meineke Discount Muffler Shops*,
    958 F. Supp. 1087 (W.D.N.C. 1997), *rev'd on other grounds*, 155 F.3d 331
    (4th Cir. 1998) .............................................................................................12

*Carter v. Twentieth Century-Fox Film Corp.*,
    127 F. Supp. 675 (W.D. Mo. 1955) ..............................................................13

*Coleson v. Inspector Gen. of Dep't of Def.*,
    721 F. Supp. 763 (E.D. Va. 1989) .................................................................13

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
    111 F.4th 337 (4th Cir. 2024) .................................................................8, 10

*E. Tenn. Nat. Gas Co. v. Sage*,
    361 F.3d 808 (4th Cir. 2004) ..........................................................................6

*Eco Fiber Inc. v. Vance*,
    2024 WL 3092773 (W.D.N.C. June 21, 2024) (Whitney, J.) ........................7

*Le v. Zuffa, LLC*,
    2023 WL 5085064 (D. Nev. Aug. 9, 2023) ....................................................9

*Lossiah v. United States*,
    2019 WL 1553667 (W.D.N.C. Apr. 10, 2019) ..............................................13

*Lutz v. Case Farms*,
    2020 WL 5111217 (W.D.N.C. Aug. 31, 2020)..............................................10

*Madison Square Garden, L.P. v. NHL*,
    2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) ...............................................13

*Marland v. Trump*,
    498 F. Supp. 3d 624 (E.D. Pa. 2020) ..............................................................7

*In re Microsoft Antitrust Litig.*,
    333 F.3d 517 (4th Cir. 2003) ..........................................................................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985).......................................................................................13

*Mt. Valley Pipeline v. 6.56 Acres of Land*,
   915 F.3d 197 (4th Cir. 2019) .................................................6

*Nassau Sports v. Hampson*,
   355 F. Supp. 733 (D. Minn. 1972) .................................................6

*Navient Sols., LLC v. United States*,
   141 Fed. Cl. 181 (2018) .................................................6

*Ohio v. NCAA*,
   706 F. Supp. 3d 583 (N.D. W. Va. 2023) .................................................12

*Omega World Travel, Inc. v. Trans World Airlines*,
   111 F.3d 14 (4th Cir. 1997) .................................................10

*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York*,
   749 F.2d 124 (2d Cir. 1984) .................................................11

*Sierra On-Line, Inc. v. Phx. Software, Inc.*,
   739 F.2d 1415 (9th Cir. 1984) .................................................8

*T-Mobile Ne. LLC v. Riverhead Water Dist.*,
   2016 WL 373968 (E.D.N.Y. Jan. 29, 2016) .................................................7

*Va. Impression Prods. Co. v. SCM Corp.*,
   448 F.2d 262 (4th Cir. 1971) .................................................13

*Vitkus v. Blinken*,
   79 F.4th 352 (4th Cir. 2023) .................................................5

*W. Penn Allegheny Health Sys. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010) .................................................10

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008) .................................................5

**Other Authorities**

Areeda & Hovenkamp, *Antitrust Law* ¶ 2214a (2017) .................................................9

Jeff Gluck and Jordan Bianchi, *Michael Jordan's 23XI, Front Row Motorsports
   explain why they're NASCAR charter holdouts*, THE ATHLETIC (Sept. 8, 2024),
   https://www.nytimes.com/athletic/5753700/2024/09/08/michael-jordan-
   nascar-23xi-front-row-charters/ .................................................11

Matt Weaver, *NASCAR makes bold move to end charter negotiations but two teams didn't budge*, Sᴘᴏʀᴛsɴᴀᴜᴛ (Sept. 10, 2024), https://sportsnaut.com/nascar-charter-update-michael-jordan-denny-hamlin-no-deal/ ..................................................................................11

*NASCAR Cup Series Standings & Stats*, NASCAR, https://www.nascar.com/standings/nascar-cup-series/ (last visited Nov. 21, 2024) ..................................................................................................2

Williston on Contracts § 73:7 (4th ed. 2024) ...............................................................13

## PRELIMINARY STATEMENT

Consistent with this Court's November 8, 2024 Order (Dkt. 43 at 7, the "Order"), Plaintiffs are renewing their motion for a preliminary injunction because circumstances have changed. What the Court determined to be only a "risk" of irreparable harm just two weeks ago has come to fruition: Plaintiffs face a "present prospect" of irreparable harm ████████████████████ ████. The need for an immediate preliminary injunction is crystal clear.

In the days since the Court entered the Order, the following changed circumstances have occurred:

- ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████

- ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████

- ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████

- NASCAR removed the release provision from its "open" agreement for 2025, but not from the Charter Agreements that Plaintiffs have contracted to purchase from Stewart-Haas Racing ("SHR"). Those transactions are required to close ████████ ████████████████████████████, and no later than ████████████████████

[REDACTED] Plaintiffs are now faced with the Hobson's choice of whether to complete these transactions—and risk Defendants prevailing on their claim that the release bars Plaintiffs' antitrust claims—or forfeit the irreplaceable opportunity to purchase an additional charter.

These changed circumstances provide undeniable proof that unless an injunction is issued now, Plaintiffs' irreparable harm, which has already started, will be continuing and severe.

As for the other preliminary injunction elements, the prior proceeding demonstrated that Defendants have no basis to dispute that Plaintiffs have a substantial likelihood of succeeding in their monopolization claim.  This showing has only gotten stronger due to Defendants' removal of the release provision from the open agreement, confirming that it is not necessary to protect any legitimate NASCAR interest.  Similarly, the fact that NASCAR has acted to allow Plaintiffs to race open cars confirms that the balance of equities supports Plaintiffs, as Defendants will be in business with them during the pendency of the litigation in any event.

## NEW CIRCUMSTANCES



---

[1] [REDACTED]

[2] Ex. ___ refers to the exhibits to the concurrently filed declaration of Jeffrey L. Kessler.





## **ARGUMENT**

A plaintiff seeking a preliminary injunction "must demonstrate that he is likely to succeed

on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in his favor, and that an injunction is in the public interest." *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023). Based on changed circumstances, Plaintiffs ask the Court to issue a preliminary injunction that will: (i) allow Plaintiffs to race their existing two cars during the pendency of the litigation under the terms of the 2025 Charter Agreement NASCAR previously offered to Plaintiffs; and (ii) enjoin Defendants from enforcing the Section 10.3 release against Plaintiffs' antitrust claims in either the 2025 Charter Agreements for Plaintiffs' two existing cars, or the Charter Agreements that SHR is selling to Plaintiffs. But even if the Court determines it is still premature to grant a preliminary injunction, it should, at a minimum, rule that Plaintiffs' antitrust claims fall outside the scope of the release in the SHR Charter Agreements so that Plaintiffs can close those transactions without risking their antitrust rights.

## I.     Plaintiffs Are Suffering Irreparable Harm Now.

In Plaintiffs' prior motion, they demonstrated that, without a preliminary injunction, they would face irreparable harm by losing irreplaceable drivers, sponsors, and competitive opportunities, and those losses, if permitted to grow, would drive them out of business. *See* Dkt. 21 at 11–14. The Court found that, at that time, Plaintiffs could show "only speculative, possible harm." Order at 5. Changed circumstances require a different conclusion, as the irreparable harm is now present, immediate, and urgent.

"The traditional office of a preliminary injunction is to protect … the court's ability to render a meaningful judgment on the merits." *In re Microsoft Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). An irreparable injury qualifies as present and immediate if—as is the case here— it is likely to occur before judgment. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (plaintiff must show it is "likely to suffer irreparable harm *before a decision on the merits can be rendered*") (emphasis added).

**A.** 

constitutes irreparable harm that "cannot fully be rectified by the final judgment after trial." *Mt. Valley Pipeline v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019); *see also Nassau Sports v. Hampson*, 355 F. Supp. 733, 736 (D. Minn. 1972) (services of professional athlete are "unique" and loss of "the unique services … represents irreparable injury"); *Navient Sols., LLC v. United States*, 141 Fed. Cl. 181, 184 (2018) ("Losing key personnel … may also constitute irreparable harm.").

**B.**

---

4

5 . *See E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 829 (4th Cir. 2004) (irreparable harm where "[w]ithout a preliminary injunction, [plaintiff] would be forced to breach these contracts").



This damage to sponsorships is precisely the type and magnitude of lost business and good will this Court has found constitutes irreparable harm, warranting an injunction. *See, e.g.*, *Eco Fiber Inc. v. Vance*, 2024 WL 3092773, at *4 (W.D.N.C. June 21, 2024) (Whitney, J.) (loss of 30% of sales that threatened sustainability of business constitutes irreparable harm); *Marland v. Trump*, 498 F. Supp. 3d 624, 641 (E.D. Pa. 2020); *T-Mobile Ne. LLC v. Riverhead Water Dist.*, 2016 WL 373968, at *2 (E.D.N.Y. Jan. 29, 2016).

███████████████████████████ sponsors are making their 2025 Cup Series decisions now, and are asking if Plaintiffs will be able to race chartered cars. *See* Jenkins Decl. ¶¶ 2–3. Plaintiffs are suffering irreparable injury to their goodwill with sponsors because they cannot provide assurances that they will have charter rights. *See id.*; Lauletta Decl. ¶¶ 2–10; *see also Brennan Petroleum Prod. Co. v. Pasco Petroleum Co.*, 373 F. Supp. 1312, 1316 (D. Ariz. 1974) (injunction should be granted when the "complained-of action results … in loss of … the ability to compete as effectively in the marketplace"). While Defendants argue that Plaintiffs can compete as open teams, only one team has tried this in the past for an entire season, and that effort failed. Ex. 22 ¶ 83.

**C.** **Plaintiffs Are Being Forced to Risk Losing Their Antitrust Rights or Forego a One-Time Opportunity to Purchase SHR Charter Agreements.**

Under the terms of their purchase agreements with SHR, █████████████████

████████████████████████████████████████ Lauletta Decl. ¶ 18; Jenkins

Decl. ¶ 10; *see* Ex. 10 § 1.2. NASCAR has not removed the release from the SHR Charter

Agreements even though it has removed it from the open agreement. *See* Ex. 3. This puts Plaintiffs

in present jeopardy of having to choose, within three weeks, whether to close their transactions

and risk releasing their antitrust claims or forego the irreplaceable opportunity to purchase charter

rights for another car. To prevent this immediate irreparable harm, Plaintiffs request the Court to

enjoin Defendants, for the duration of this case, from seeking to enforce the release in the SHR

Charter Agreements against their antitrust claims to "prevent[] the irreparable loss of rights before

judgment." *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## II. Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are likely to succeed in their antitrust claims because the undisputed facts show

that NASCAR has "use[d] [its] monopoly power to foreclose competition, to gain a competitive

advantage, or to destroy a competitor." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,

111 F.4th 337, 353 (4th Cir. 2024) (internal quotations omitted). Plaintiffs' prior fact and expert

declarations established NASCAR's monopoly power in the relevant market, (*see* Ex. 21 ¶¶ 31–

36; Ex. 22 ¶¶ 31–34; Dkt. 21 at 7–11), NASCAR's exclusionary conduct to maintain that

monopoly, (*see* Dkt. 21 at 9–11), and antitrust injury to Plaintiffs (*id.* at 11; Ex. 21 ¶¶ 68-80).

Plaintiffs incorporate that evidence in support of this renewed motion. Exs. 21–25; Dkts. 21, 34.

Defendants' prior opposition offered a grab bag of attacks, but none disputed the facts of

Defendants' monopolization or undermined Plaintiffs' showing of a likelihood of success. *See*

Dkt. 34 at 3–4.

**Market Definition.**  Defendants accused plaintiffs of "gerrymandering" the market, but NASCAR's proposed market for capital that can be invested in any business has no economic support.  Ex. 22 ¶¶ 22–34. By contrast, Plaintiffs' showing of a monopsonized input market for stock car racing teams is strongly supported by both the case law and expert testimony.  *See, e.g.*, *Le v. Zuffa, LLC*, 2023 WL 5085064, at *16 (D. Nev. Aug. 9, 2023) ("The relevant input market is 'the market for Elite Professional MMA Fighter services.'"); Ex. 21 ¶¶ 19-30; Dkt. 21 at 8–9; Dkt. 34 at 3 n.1).

**Exclusionary Conduct.**  Defendants have no answer to Plaintiffs' undisputed factual showing, and expert analysis, of multiple instances of exclusionary conduct used to maintain the NASCAR monopoly that, under the Fourth Circuit's *Dukes Energy* holding, must be evaluated as a whole, and must be found to constitute unlawful monopolization.  Dkt. 21 at 2–4, 8–11. Covenants restricting the limited supply of racetracks and teams needed by another racing series to compete, acquisitions of NASCAR's closest competitor and top-tier race tracks, and the use of a release to prevent racing teams from challenging NASCAR's monopoly are predatory acts of monopolization, not competition on the merits.  *See* Ex. 21 ¶¶ 13, 37-50, 64-65. And while Defendants claim that there are 128 racetracks "available for any competitor," Ex. 16 at 35:3–4, most of these tracks are not viable alternatives because they lack the size, seating capacity, or shape needed to host premier races.  Ex. 22 ¶¶ 60–62.

**NASCAR Is Not a Joint Venture Sports League.**  NASCAR cites case law about the reasonable restrictions of joint venture sports leagues, but those cases have no application to the exclusionary acts of NASCAR, which is not a joint venture sports league.  Areeda & Hovenkamp, *Antitrust Law* ¶ 2214a (2017).  It is undisputed that NASCAR is owned and controlled by the France family and the racing teams are independent contractors that are required to invest tens of

millions of dollars each year to operate their independent businesses. *See* Ex. 17 §13.6; Ex. 22 ¶ 43.

**Statute of Limitations.** NASCAR's argument that the statute of limitations blocks Plaintiffs' claims is a non-sequitur. Plaintiffs challenge numerous exclusionary acts of monopolization within the four-year limitations period, including the restrictive covenants in the 2025 Charter Agreements, the release in the 2025 Charter Agreements, and the new overt acts by NASCAR each year to enforce its restrictive covenants on racetracks. This is more than sufficient to challenge continuing acts of monopolization. *See W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 109 n.15 (3d Cir. 2010); *Duke Energy*, 111 F.4th at 355.

**Plaintiffs Do Not Claim That Charter Agreement Rights are Unlawful.** Finally, Defendants wrongly invoke the decision in *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14 (4th Cir. 1997), to argue that Plaintiffs cannot seek an injunction to obtain charter agreement rights during the pendency of the litigation because Plaintiffs are purportedly claiming that the Charter Agreements are unlawful in their entirety. Dkt. 31 at 2, 5-6. As Plaintiffs have made clear, they are only contending that very small portions of the more than 100-page charter agreements—the restrictive covenants and release terms—are exclusionary acts when used by a monopolist like Defendants. There is thus no bar precluding Plaintiffs from seeking an injunction to race under the charter terms previously offered to them other than the anticompetitive release. *See Lutz v. Case Farms*, 2020 WL 5111217, at *4 (W.D.N.C. Aug. 31, 2020) (distinguishing *Omega* because plaintiff sought enforcement of agreement "to the extent [it] do[es] not violate [federal law]" and therefore plaintiff's "request for a preliminary injunction [wa]s not inconsistent with the relief he request[ed] in his [c]omplaint").

To be clear, Plaintiffs do claim that the commercial terms of the 2025 Charter Agreements have been imposed by NASCAR at monopsony levels that have caused damages to all racing teams. And contrary to Defendants' arguments, numerous racing teams have stated that the terms of the Charter Agreements were forced on them.[6] But that does not change the fact that Plaintiffs need the assurance of racing each week, with charter rights, to avoid irreparable harm until they can prevail in this action and competition is restored.

## III.    The Balance of Equities Favors Plaintiffs.

The balance of equities strongly favors Plaintiffs. *See* Dkt. 21 at 14; Dkt. 34 at 5. While Plaintiffs will suffer irreparable harm in the absence of the injunction, Defendants will not suffer cognizable harm if, during the litigation, Plaintiffs are able to compete under the terms of the 2025 Charter Agreement without the release. *See Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York*, 749 F.2d 124, 126 (2d Cir. 1984). Indeed, this conclusion is underscored by Defendants' decision, since the prior hearing, to remove the release from the open agreements offered to Plaintiffs for the 2025 season. *See* Kessler Decl. ¶ 3; Ex. 3. Defendants cannot now credibly claim that they need the release to protect any legitimate interest of NASCAR. Nor can they claim harm from having to associate with Plaintiffs during the pendency of the litigation if the injunction is granted, because they will be doing so anyway under the open agreements they have offered Plaintiffs. *Id.*

---

[6] *See, e.g.*, Matt Weaver, *NASCAR makes bold move to end charter negotiations but two teams didn't budge*, SPORTSNAUT (Sept. 10, 2024), https://sportsnaut.com/nascar-charter-update-michael-jordan-denny-hamlin-no-deal/; Jeff Gluck and Jordan Bianchi, *Michael Jordan's 23XI, Front Row Motorsports explain why they're NASCAR charter holdouts*, THE ATHLETIC (Sept. 8, 2024), https://www.nytimes.com/athletic/5753700/2024/09/08/michael-jordan-nascar-23xi-front-row-charters/.

**IV.    The Public Interest Supports an Injunction.**

The public interest will be served if Defendants cannot enforce their anticompetitive release.  *See, e.g.*, *Ohio v. NCAA*, 706 F. Supp. 3d 583, 600 (N.D. W. Va. 2023).  The public will also benefit if Plaintiffs can continue to compete with charter rights, so that fans can come out to see the teams and drivers they support in every Cup Series race.

**V.    At a Minimum, The Court Should Rule That Plaintiffs' Claims are Outside the Scope of the Release.**

If the Court determines that Plaintiffs' request for a preliminary injunction is still premature, it should, at a minimum, rule now that the release in Section 10.3 of the SHR Charters are inapplicable to Plaintiffs' antitrust claims.  Such a ruling would allow Plaintiffs to close on their charters with SHR without risking the irreparable loss of their antitrust rights.

By its express language, the release should be held not to apply to Plaintiffs' antitrust claims because ████████████████████████████████████████████████ ██████████████████████████████████████████████████ Ex. 18 § 10.3.  Instead, Plaintiffs' Sherman Act claims contest Defendants' exclusionary actions to acquire and maintain their monopsony over the input market for premier stock car racing teams— conduct that is entirely different from the criteria used by NASCAR to enter into charters.  *See supra* at 8–11.

A ruling that the release does not apply would be consistent with the principle that such a release must be narrowly construed, particularly where, as here, the release uses specific terminology—"criteria" for entering the charter agreements—to limit its scope.  *See, e.g.*, *Broussard v. Meineke Discount Muffler Shops*, 958 F. Supp. 1087, 1100–01 (W.D.N.C. 1997), *rev'd*

*on other grounds*, 155 F.3d 331 (4th Cir. 1998); [7] Williston on Contracts § 73:7 (4th ed. 2024). The Court should hold that the only claims released are those that squarely fall within the parameters of the release terms. And the antitrust claims asserted here are far outside that scope. *Compare Va. Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262, 265–66 (4th Cir. 1971) (plaintiff's antitrust claims precluded by broad release), *with Lossiah v. United States*, 2019 WL 1553667, at *4 (W.D.N.C. Apr. 10, 2019) (plaintiff's claim not barred by more narrow release language).

Further, the Court can alternatively rule that the release is void, as against public policy, because: (a) it constitutes an unlawful exclusionary act to maintain NASCAR's monopoly power, *Carter v. Twentieth Century-Fox Film Corp.*, 127 F. Supp. 675, 679–80 (W.D. Mo. 1955), and (b) it cannot release future antitrust violations, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). While Defendants assert that releases of antitrust claims are "commonly enforced," Ex. 16 at 37:8–9, the case they cite differentiates between an enforceable release of past antitrust violations by the members of a "legitimate joint venture" from one imposed by a monopsonist, which raises "public policy concerns." *Madison Square Garden, L.P. v. NHL*, 2008 WL 4547518, at *6–7 (S.D.N.Y. Oct. 10, 2008). The Court should rule now that Defendants may not use their anticompetitive release in the SHR charter agreements as a weapon to preserve their monopoly.

## CONCLUSION

For the foregoing reasons, the Court should grant the requested preliminary relief.

---

[7] As the release at issue "impacts upon significant federal rights or interests, federal common law controls the interpretation of that release or agreement," not state law. *See Coleson v. Inspector Gen. of Dep't of Def.*, 721 F. Supp. 763, 766–67 (E.D. Va. 1989).

Dated: November 26, 2024　　　　Respectfully submitted,

WINSTON & STRAWN LLP


By: _/s/ Jeffrey L. Kessler_
Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer Parsigian
Michael Toomey
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com


*Counsel for Plaintiffs 2311 Racing LLC d/b/a*
*23XI Racing and Front Row Motorsports Inc.*

## CERTIFICATE OF COMPLIANCE

This motion complies with the word limitation set forth in Rule 3(b)(iv) of the Standing Order Governing Civil Case Management Before the Honorable Frank D. Whitney because, excluding the parts of the document exempted by Rule 3(b)(iv), the Motion contains a total of 4,171 words.

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: _/s/ Jeffrey L. Kessler_

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

_Counsel for Plaintiffs 2311Racing LLC d/b/a_
_23XI Racing and Front Row Motorsports Inc._

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR A PRELIMINARY INJUNCTION** was electronically filed using the Court's CM/ECF system, which will automatically send notice of this filing to counsel of record for all parties, including:

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Lawrence E. Buterman
**LATHAM & WAKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com

Christopher S. Yates
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

Anna M. Rathbun
Christopher J. Brown
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
chris.brown@lw.com

*Counsel for Defendants National Association for Stock Car Auto Racing, LLC and James France*

*Jeffrey L. Kessler*
Jeffrey L. Kessler