UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, and JAMES FRANCE,<br><br>Defendants. | Civil Action No. 3:24-cv-886-KDB-SCR |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR PARTIAL STAY OF INJUNCTION PENDING APPEAL**

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND .............................................................................................................3

III. ARGUMENT ...................................................................................................................5

    A. Defendants Are Likely To Succeed On The Merits..................................................5

    B. NASCAR Will Be Irreparably Harmed Absent A Partial Stay ................................9

    C. A Stay Will Not Substantially Harm Plaintiffs.......................................................10

    D. The Public Interest Supports A Stay .......................................................................11

IV. CONCLUSION..............................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Dobson*,
  2006 WL 1431667 (W.D.N.C. May 22, 2006) ........................................................................11

*C. Dept. of Wildlife and Marine Resources v. Marsh*,
  866 F.2d 97 (4th Cir. 1989) ...................................................................................................11

*Ciena Corp. v. Jarrard*,
  203 F.3d 312 (4th Cir. 2000) ...................................................................................................5

*Democracy N. Carolina v. N. Carolina State Bd. of Elections*,
  2020 WL 4288103 (M.D.N.C. July 27, 2020) ..........................................................................5

*Epic Games, Inc. v. Apple Inc.*,
  493 F. Supp. 3d 817 (N.D. Cal. 2020) ...................................................................................11

*Gulf Oil Corp. v. Brock*,
  778 F.2d 834 (D.C. Cir. 1985) ...............................................................................................11

*Hosp. Staffing Sols., LLC v. Reyes*,
  736 F. Supp. 2d 192 (D.D.C. 2010) .......................................................................................10

*In re Harrell*,
  351 B.R. 221 (Bankr. M.D. Fla. 2006) ...................................................................................11

*In re Microsoft Corp. Antitrust Litig.*,
  333 F.3d 517 (4th Cir. 2003) ...................................................................................................6

*Madison Square Garden, L.P. v. Nat'l Hockey League*,
  2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) ..........................................................................8

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................................................1

*Omega World Travel v. Trans World Airlines*,
  111 F.3d 14 (4th Cir. 1997) .....................................................................................................8

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*,
  636 F.3d 1150 (9th Cir. 2011) ...............................................................................................11

*Rowland v. Minn. Life Ins. Co.*,
  2020 WL 534499, *aff'd,* 993 F.3d 253 (4th Cir. 2021) ..........................................................7

*Stewart v. Hooters of Am., Inc.*,
  432 Fed. Appx. 903 (11th Cir. 2011) ...................................................................................4, 9

*U.S. v. Smalls*,
    720 F.3d 193 (4th Cir. 2013) ..................................................................................................5

*United States v. Sineneng-Smith*,
    590 U.S. 371 (2020) ..................................................................................................................6

*Winter v. Nat. Res. Def. Council, Inc.*,
    55 U.S. 7 (2008) ........................................................................................................................6

## STATUTES

Sherman Act ..............................................................................................................1, 3, 5, 8

## RULES

Fed. R. App. P. 8(a) ..........................................................................................................1

Fed. R. Civ. P.
    62(c) ..........................................................................................................................1
    65(a)(1) .....................................................................................................................5
    65(c) ..........................................................................................................................9

I.  INTRODUCTION

Pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, Defendants move this Court to stay its December 18, 2024 Order granting Plaintiffs a preliminary injunction, except for the Court's requirement that NASCAR guarantee entry of two cars from Front Row and two cars from 23XI in each race of the 2025 Cup Series. Doc. No. 74; *see also* Fed. R. App. P. 8(a). Such a stay pending appeal is warranted for several reasons. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

*First*, Defendants are likely to succeed on appeal. Respectfully, this Court's decision ordering NASCAR to approve Plaintiffs' purchases of two Stewart-Haas Racing, LLC ("SHR") Charters was both procedurally and substantively improper, as Defendants were never given the opportunity to brief issues related to those transfers, nor were these issues even part of Plaintiffs' complaint. In addition, this Court's decision to let Plaintiffs race two cars under the 2025 Charter's terms—minus the release—contradicts Fourth Circuit precedent, as Plaintiffs' complaint challenges as unlawful Charter terms *beyond* the release. And this Court's conclusion that the Charter's release provision is likely unlawful stems from a misunderstanding of that provision, which does not operate prospectively—as confirmed by Plaintiffs' counsel. Numerous cases confirm that retrospective releases of antitrust claims do not, by themselves, constitute Sherman Act violations.

*Second*, NASCAR will suffer irreparable harm without a stay. The Court's decision forcing NASCAR to approve Plaintiffs' SHR Charter transfers is not a "limited" injunction for the 2025 Cup Series season. Instead, it will effectively force NASCAR into a seven-to-fourteen year contractual relationship with Plaintiffs with respect to these Charters—even though Plaintiffs have not met multiple required conditions for these Charters' assignment. Moreover, it would be difficult, perhaps even impossible, to unwind these court-ordered transfers once they have occurred. Entering a stay *before* these transfers occur is crucial to prevent the consequences of an

1

erroneous injunction from becoming irreversible. On top of that, this Court's order permitting Plaintiffs to race under the 2025 Charter terms will inflict irreparable harm on NASCAR. For example, it requires NASCAR to disclose confidential information to Plaintiffs—an action that is inherently irreparable.

*Third*, Defendants seek only a partial stay of this Court's preliminary injunction—that is, a stay of the Court's order except for the Court's requirement that NASCAR guarantee entry of two cars from Front Row and two cars from 23XI in each 2025 Cup Series race. This partial stay would address each of Plaintiffs' irreparable-harm allegations—which focus on Plaintiffs' purported inability to assure drivers and sponsors that they would compete in each Cup Series race—without forcing NASCAR to extend all the benefits of an agreement that Plaintiffs rejected and refused to sign. The relief NASCAR requests thus will not substantially injure Plaintiffs.

*Finally*, the public interest supports a partial stay, as this Court's order forces NASCAR into unwanted contractual relationships with Plaintiffs. At the same time, the partial stay will not prevent Plaintiffs from entering two cars from Front Row and two cars from 23XI in each race of the 2025 Cup Series, as they wish.

Because all four of these factors weigh in favor of staying the injunction pending appeal, Defendants respectfully request the Court grant this Motion.

Defendants also respectfully ask that the Court act on this motion on an emergency basis because Plaintiffs have represented that their transactions with SHR must close by December 20, 2024, and Plaintiffs do not intend to delay their closing. *See* Doc. No. 52-2 ¶ 18; Doc. No. 52-1 ¶ 10. Those transactions could bind Defendants to unwanted contractual relationships for years without the requested partial stay. This Court's immediate intervention is warranted.

## II. BACKGROUND

On October 2, 2024, Plaintiffs filed this lawsuit, alleging that NASCAR had "used [its] monopsony power to impose manifestly anticompetitive terms" on teams in the 2016 and 2025 Charters. Doc. No. 1. To address these purported antitrust violations, Plaintiffs requested that the 2016 and 2025 Charters be "adjudged to be unreasonable restraints of trade in violation of Section 1 of the Sherman Act." *Id.* at 41. They also requested that the Court declare the release in Section 10.3 of the Charters unlawful, enjoin Defendants from "enforcing the release in Section 10.3 of the 2025 Charter Agreement(s) for the duration of this action," and require Defendants to "permit Plaintiffs to sign such a renewed 2025 Charter Agreement without being subject to any claimed release of antitrust claims." *Id.* Plaintiffs' Complaint did not seek any relief related to the SHR Charter transfers.

On October 9, 2024, Plaintiffs moved for a preliminary injunction that aligned with their complaint: (1) requiring Defendants grant Plaintiffs two 2025 Charter agreements each, and (2) enjoining NASCAR from enforcing Section 10.3 of each agreement. Doc. No. 20 at 3-4. On November 8, 2024, after conducting a hearing on the arguments, the Court issued an order denying Plaintiffs' request for a preliminary injunction. Doc. Nos. 42, 43.

On November 26, Plaintiffs filed a renewed motion for a preliminary injunction seeking that (1) Plaintiffs be allowed "to race under the terms" of the 2025 Charter agreements for two cars, and (2) NASCAR be enjoined from enforcing Section 10.3 of the agreement as to Plaintiffs. Doc. No. 51 at 3-4. On December 9, Defendants filed an opposition to this renewed request. Doc. Nos. 59, 60.

On December 12, three days after Defendants filed their opposition brief, Plaintiffs filed a "notice" of a proposed preliminary injunction where they sought the same two elements of relief as in their November 26 filing, but added alongside two new requests: (1) that this Court enjoin

3

Defendants from enforcing any release whatsoever against Plaintiffs (including a different release in a joinder agreement never presented to the Court), and (2) that Defendants "must approve the transfer of SHR's [Charter Agreement] to Front Row" notwithstanding the fact that a basic tenet of contract law is that assignment of a signed contract cannot alter the terms of that contract. Doc. No. 65 at 2-3; *Stewart v. Hooters of Am., Inc.*, 432 Fed. Appx. 903, 905 n.2 (11th Cir. 2011) ("[A]n assignment does not modify, delete, or add to the provisions of the contract but rather redirects the rights descending from the document."). On the same day, Plaintiffs filed their reply. Doc. No. 66.

Defendants moved to strike the portions of Plaintiffs' "notice" seeking to introduce new requests for relief, as well as the portions of the reply brief, including exhibits, pertaining to that new relief—which Plaintiffs had never previously requested in their Complaint or prior preliminary-injunction requests. Doc. No. 68. Defendants also requested the opportunity to respond to Plaintiffs' brand-new grounds for relief with an opposition and evidence. *Id.* However, the Court denied Defendants any chance to respond to Plaintiffs' new requests, through briefing or otherwise. Dec. 18, 2024 Text-Only Order Denying Defendants' Motion to Strike.

On December 18, 2024, the Court granted Plaintiffs' motion for a preliminary injunction, awarding them both their initial requested relief from November 26 and the new, additional relief requested on December 12. Doc. No. 74 at 19-20. Beyond the requested relief, the Court *further* enjoined NASCAR from refusing to approve 23XI's request to purchase a signed 2025 Charter Agreement from SHR. *Id.* Plaintiffs had never sought relief in their Complaint or in any of their motions for preliminary injunction regarding 23XI's requested transfer of a signed contract between SHR and NASCAR. *Compare* Doc. No. 74 at 19-20 *with* Doc. No. 66.

4

Since the issuance of this order, Plaintiffs have claimed that SHR transactions subject to the order must close imminently—by December 20, 2024.

## III. ARGUMENT

### A. Defendants Are Likely To Succeed On The Merits

Defendants are likely to succeed on the merits of their appeal of the Court's decision. The Court's directive on issues related to the SHR Charters is improper, as Defendants were never given the opportunity to brief these issues, nor were they even part of Plaintiffs' complaint. And the Court's separate decision to let Plaintiffs use a preliminary injunction to secure Charters—despite Plaintiffs' complaint challenging Charter terms other than the release as unlawful—contradicts Fourth Circuit precedent. Moreover, it is well-settled that retrospective releases of antitrust claims do not constitute Sherman Act violations.

1. The Court's decision, briefly mentioned at the very end of the opinion, to preliminary enjoin NASCAR from refusing to approve Plaintiffs' purchases of the two SHR Charters, and nullifying the releases in those Charters, is respectfully in error.

*First* and foremost, Defendants were not given the required notice of this sought-after preliminary-injunctive relief, as mandated by FRCP 65(a)(1). *Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th Cir. 2000) ("Because a preliminary injunction is unlimited in duration, its entry always requires notice to the opposing party sufficient to give that party an opportunity to prepare an opposition to entry of an injunction."). Indeed, Plaintiffs did not introduce this issue until after Defendants filed their opposition brief, on the same day Plaintiffs filed their *reply brief* in support of their motion—which is far too late to bring up new issues. *See, e.g.*, *U.S. v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013) ("[N]ew arguments cannot be raised in a reply brief."); *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, 2020 WL 4288103, at *5 (M.D.N.C. July 27, 2020) ("[R]eply affidavits should not present new issues to which the opposing party will not have an

opportunity to respond."). Defendants had no opportunity to oppose Plaintiffs' injunctive requests regarding these transfers. Nor could Defendants submit any evidence on them. Granting Plaintiffs' relief under these circumstances was improper.

*Second*, granting this relief was improper because Plaintiffs' *complaint* does not request any relief at all related to these SHR transfers. A preliminary-injunction motion is not a tool for pursuing collateral or unrelated relief that does not advance the goals of the underlying complaint. As the Fourth Circuit has made clear, preliminary-injunctive relief "may never be granted" when it addresses matters which will not be "dealt with in any final injunction that may be entered," as the whole point of preliminary relief is to "preserve the court's ability to enter ultimate relief on the merits *of the same kind*." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525-26 (4th Cir. 2003) (emphasis added). Mandating these Charter transfers fails to achieve that purpose.

*Third*, specifically regarding the Court's order that NASCAR approve *23XI's* purchase of a SHR Charter, Plaintiffs never once requested that relief before the Court entered it. On the contrary, Plaintiffs' belated "notice" of preliminary injunction and reply brief in support of the motion were quite specific—Plaintiffs sought approval only "of the SHR transfer *to Front Row*." Doc. No. 66 at 4 (emphasis added). The Court's decision to grant relief pertaining to the SHR transfer to *23XI* as well disregards the fundamental rule that parties, not courts, are responsible for presenting the theories "entitling them to relief." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (requiring party seeking preliminary injunction to affirmatively demonstrate each element).

*Finally*, although the Court correctly recognized the important "public interest in supporting freedom of contract," Doc. 74 at 19, it failed to recognize that its injunction *undermines* that very freedom. SHR (along with 12 other teams encompassing 32 Charters) reached the

6

Case 3:24-cv-00886-KDB-SCR     Document 76-1     Filed 12/19/24     Page 10 of 19

required meeting of the minds with NASCAR on the terms of the 2025 Charter, which includes a release. *See Rowland v. Minn. Life Ins. Co.*, 2020 WL 534499, at *9, *aff'd,* 993 F.3d 253 (4th Cir. 2021) ("If the terms of the offer are changed or any new ones added by the acceptance, there is no meeting of the minds and, consequently, no contract."). Plaintiffs and NASCAR did not. Moreover, the Court's order did not address the fact that the signed Charters between SHR and NASCAR explicitly set forth multiple conditions that must be satisfied in order for a signed Charter to be assigned. Plaintiffs have not met multiple such conditions, including because they challenge—and thus will not agree to adhere to—the Goodwill provision in the Charter. Declaration of Christopher S. Yates, Exs. A-Q. In addition, the acquisition of a SHR Charter by Plaintiff 23XI is improper as proposed to NASCAR given multiple questions regarding compliance with the Team Owner and Control Person requirements of the Charter. *Id.*, Exs. K-N. There also remain questions regarding whether Plaintiffs are "Prohibited Persons" within the meaning of the Charter given numerous public statements to the press undermining NASCAR's brand and goodwill.

The Court's order does not take into account these contractual grounds for denying the transfers. Instead, it mistakenly assumes that any objection to the transfer was based entirely on the release-of-claims issue. Doc. 74 at 3 n.2. That is incorrect. But more important, any subjective motivation cannot override the express conditions precedent in a contract, or warrant granting injunctive relief that was not timely or properly requested at the outset of the case. Additionally, the Court ignored that all disputes regarding NASCAR's contractual right to object to a transfer of a signed SHR Charter are subject to an arbitration provision. NASCAR would have elaborated on these points, and others, had it been given the opportunity to respond to Plaintiffs' new motion.

7

2. The Court's order allowing Plaintiffs to race "under the 2025 Charter Agreement terms applicable to all charter terms, with the exception that the 'release' language in Section 10.3 [] shall not be enforceable" is also flawed.

*First*, it ignores that Plaintiffs' requested relief directly contradicts their own complaint, which contends that the 2025 Charter is anticompetitive for "numerous" reasons, Doc. 1 ¶ 110, including because of the "Goodwill" provision in Section 6.6, *id.* ¶¶ 17, 94-96, 114, 140, 153. Paradoxically, the relief Plaintiffs have sought and now received will *bind Plaintiffs* to the very provisions they are simultaneously challenging as anticompetitive, including the Section 6.6 Goodwill provision. The Fourth Circuit's decision in *Omega World Travel v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997), squarely forecloses granting such contradictory relief.

*Second*, and regardless, the Court's finding that Section 10.3 itself constitutes a Sherman Act violation is both factually and legally flawed. The Court concluded that Section 10.3 is likely unlawful in part because it operates as a "prospective waiver" of Plaintiffs' right to file antitrust claims against NASCAR. Doc. 74 at 14. But Defendants never asserted that Section 10.3 bars claims concerning *future* conduct—and Plaintiffs' counsel argued that it does not release "anything going forward." Doc. No. 41 at 41:10-14. Nor does that provision's plain language—pertaining to conduct that has already occurred—suggest any prospective scope. Instead, Section 10.3—and its mutual release by NASCAR of claims against teams in Section 10.4—operates retrospectively. Moreover, releases of both retroactive and ongoing conduct have been upheld in the face of similar antitrust challenges, including in a case against the National Hockey League. *Madison Square Garden, L.P. v. Nat'l Hockey League*, 2008 WL 4547518, at *9-10 (S.D.N.Y. Oct. 10, 2008).

The fact is that Plaintiffs agreed to Section 10.3 on numerous prior occasions, including as recently as March of 2024. NASCAR's argument is simply that anything historical (such as the

8

acquisitions and other past actions identified in Plaintiffs' complaint) that is within the scope of Section 10.3 was released by Plaintiffs' acceptance of that term on multiple occasions, including earlier this year.

For all these reasons, as well as those laid out in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, *see* Doc. Nos. 31 and 60, Defendants are likely to succeed on the merits on appeal.[1]

## B. NASCAR Will Be Irreparably Harmed Absent A Partial Stay

All of the other factors favor a stay pending appeal, too. NASCAR will be irreparably harmed if the Court requires it to approve the transfer of SHR's charters to Front Row and 23XI, on Plaintiffs' preferred terms. Doing so will eliminate NASCAR's rights under the Charter—a binding contract that SHR already executed—to review and object to transfers when appropriate. It also will destroy the arbitration provision in the SHR Charter, which requires disputes about NASCAR's withholding of approval be subject to arbitration between *SHR* and NASCAR. The injunction thus interferes with the sanctity to contract, undermining the bedrock principle that an assignment of a signed contract cannot "modify, delete, or add to the provisions of the contract." *Stewart*, 432 Fed. Appx. at 905 n.2. And it will force NASCAR into a seven-plus year agreement with Plaintiffs in a transaction that would be difficult, if not impossible, to unwind.[2]

---

[1] Because the Court is familiar with these arguments as to the timely raised issues, Defendants do not repeat them in detail here. But Defendants incorporate the arguments raised on those issues in their prior briefing as well.

[2] NASCAR is also filing a motion seeking a bond as required by FRCP 65(c) with respect to the injunction requiring Plaintiffs to be allowed to operate two cars under the terms of the 2025 Charter. NASCAR understands that Plaintiffs' primary basis for their claim of irreparable harm is that they will not have guaranteed entry into all Cup Series races. A stay of the injunction, except for the guaranteed-entry provision, would more appropriately address Plaintiffs' claimed harm without requiring NASCAR to allow Plaintiffs to receive all of the benefits of a Charter (including increased monetary payments that are *due to the Goodwill provision they challenge as*

9

Case 3:24-cv-00886-KDB-SCR    Document 76-1    Filed 12/19/24    Page 13 of 19

Further, requiring NASCAR to allow Plaintiffs to operate under the terms of the 2025 Charter also harms NASCAR as it provides Plaintiffs with a seat on the Team Owner Council pursuant to Section 3.5 of the Charter. Doc. No. 21-5. Under the terms of the 2025 Charter, NASCAR must consult with, and provide confidential information to, members of the Team Owner Council regarding sensitive commercial and competitive issues. *Id*. The Goodwill provision, which Plaintiffs are challenging as unlawful, specifically references this shared confidential information as a reason for the provision. Requiring NASCAR to provide Plaintiffs with confidential, competitively sensitive information while Plaintiffs simultaneously seek to remove the Goodwill provision risks irreparably harming NASCAR. *See, e.g.*, *Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010).

A stay of the injunction pending appeal is crucial to avoid this irreparable harm, as Plaintiffs have already stated that their transactions with SHR must close by December 20, 2024, and this Court's order permits them to secure that approval immediately. Doc. No. 52-2 ¶ 18; Doc. No. 52-1 ¶ 10. Without a stay, Plaintiffs will argue that NASCAR must approve those transactions in the coming days—locking the parties into a seven-plus year contractual relationship, and making the consequences of an erroneous injunction nearly impossible to reverse.

### C. A Stay Will Not Substantially Harm Plaintiffs

A stay will not harm Plaintiffs. They can still race as open teams, just as they had previously announced they would. But even if the Court disagrees, in the alternative, a partial stay of the injunction—except as to the guaranteed-entry provision, such that NASCAR would be required to guarantee entry of two cars from each Plaintiff in each race of the 2025 Cup Series or until the Fourth Circuit rules on Defendants' appeal—would address Plaintiffs' claims of

---

*anticompetitive*). An injunction that orders NASCAR to provide all of the benefits of the contract that Plaintiffs claim is anticompetitive runs afoul of *Omega*.

10
Case 3:24-cv-00886-KDB-SCR    Document 76-1    Filed 12/19/24    Page 14 of 19

irreparable injury and is a less restrictive alternative. *See* Doc. No. 74 at 10 (explaining that public interest supports a "limited preliminary injunction"); *see also Anderson v. Dobson*, 2006 WL 1431667, at *11 (W.D.N.C. May 22, 2006) (an injunction "should be tailored to restrain no more than what is reasonably required to accomplish its ends"); *C. Dept. of Wildlife and Marine Resources v. Marsh*, 866 F.2d 97, 100 (4th Cir. 1989) (limiting scope of preliminary injunction that was "broader than necessary"); *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 842 (D.C. Cir. 1985) ("an injunction must be narrowly tailored to remedy the harm shown"). A partial stay ensures that 23XI and Front Row can compete in Cup Series races prior to the Fourth Circuit ruling and alleviates any potential claimed harm that Plaintiffs could face pending the appeal.

### D. The Public Interest Supports A Stay

The public interest supports a stay because "there is significant public interest in requiring parties to adhere to their contractual agreements." *Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 852 (N.D. Cal. 2020). Likewise, forcing NASCAR into an unwanted contract with Plaintiffs, on Plaintiffs' preferred terms, goes against the public interest. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1162 (9th Cir. 2011). NASCAR and Plaintiffs never reached a "meeting of the minds" regarding the terms of the 2025 Charter, although NASCAR reached agreement with the other 13 teams on 32 Charters. Under basic contract law, a meeting of the minds requires agreement on all essential terms of a contract—such as the Goodwill provision, which was expressly a "material part of the consideration" for NASCAR. *In re Harrell*, 351 B.R. 221, 244 n.10 (Bankr. M.D. Fla. 2006). Absent mutual assent to the Goodwill provision, there can be no 2025 Charter agreement between NASCAR and any team—which means there can be no enforceable contract. At the same time, the partial stay will not prevent Plaintiffs from entering two cars from Front Row and two cars from 23XI in each race of the 2025 Cup Series.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant a stay of its preliminary injunction

Dated: December 19, 2024 

Respectfully submitted,

By:     */s/ Christopher S. Yates*
        Christopher S. Yates*
        **LATHAM & WATKINS LLP**
        505 Montgomery Street, Suite 2000
        San Francisco, CA 94111
        Telephone: (415) 395-8240
        Facsimile: (415) 395-8095
        chris.yates@lw.com

        Lawrence E. Buterman*
        **LATHAM & WAKINS LLP**
        1271 Avenue of the Americas
        New York, NY 10020
        Telephone: (212) 906-1200
        Facsimile: (212) 751-4864
        lawrence.buterman@lw.com

        Anna M. Rathbun*
        Christopher J. Brown*
        **LATHAM & WATKINS LLP**
        555 Eleventh Street, NW, Suite 1000
        Washington, DC 20004
        Telephone: (202) 637-2200
        Facsimile: (202) 637-2201
        anna.rathbun@lw.com
        chris.brown@lw.com

        Tricia Wilson Magee (N.C. Bar No. 31875)
        **SHUMAKER, LOOP, & KENDRICK, LLP**
        101 S Tryon Street, Suite 2200
        Charlotte, NC 28280
        Tel: 704-945-2911
        Fax: 704-332-1197
        tmagee@shumaker.com

        * Admitted *pro hac vice*

*Counsel for Defendants NASCAR and Jim France*

## ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 19th day of December, 2024.

*/s/ Christopher S. Yates*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR PARTIAL STAY OF INJUNCTION PENDING APPEAL** was electronically filed using the Court's CM/ECF system, which will automatically send notice of filing to all parties of record as follows:

Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
dwilliams@winston.com

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
jkessler@winston.com

Jeanifer Parsigian
Michael Toomey
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
jparsigian@winston.com
mtoomey@winston.com

Matthew DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
mdalsanto@winston.com

*Counsel for Plaintiffs 23XI Racing and Front Row Motorsports Inc.*

This the 19th day of December, 2024.