UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, and JAMES FRANCE, <br><br> Defendants. | Civil Action No. 3:24-cv-886 |

**STIPULATED ORDER REGARDING THE PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

To expedite the flow of discovery material and to facilitate the consistency in the format of the Documents to be produced by the Parties in this case, Plaintiffs and Defendants (Plaintiffs and Defendants individually are referred to as a "Party;" and collectively "Parties"), by and through their respective counsel hereby stipulate and agree to the terms of this Stipulated Order Regarding the Production of Documents and Electronically Stored Information ("ESI Order"):

IT IS HEREBY STIPULATED, subject to the approval of the Court that:

1. This ESI Order shall govern the production of Documents and electronically stored information ("ESI") by the Parties in the above captioned litigation ("this Action").

2. This ESI Order shall also govern productions made by any third party who is subpoenaed in this Action unless otherwise agreed to by the issuing Party and the third party. Accordingly, this ESI Order shall be attached to any subpoena issued in this Action.

3. The production specifications in this ESI Order apply to paper records and ESI that are produced in the first instance in this Action. The terms and specifications of this ESI Order

1

shall only apply to productions made after the date of entry of this ESI Order. Productions in this Action that were delivered before the date of entry of this ESI Order are exempt from the terms of the ESI Order, unless the Producing Party and Receiving Party otherwise agree. Furthermore, productions received from third parties shall be produced to the other Parties in the format that such Documents and/or information was produced by the third parties, unless the Parties agree otherwise. Similarly, productions made by a Party in another matter, that are being reproduced in this matter, may be produced in the format that such Documents and/or information were produced in the other matter. The Parties agree to meet and confer to the extent that the Receiving Party requests that the Documents be produced in a format as described in this ESI Order.

4. To the extent a technical term is not defined herein, those technical terms shall be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

A. **Definitions:**

1. "Document" or "Documents" are used in their broadest sense, to the full extent permitted by Rules 26 and 34 of the Federal Rules of Civil Procedure ("Federal Rules").
2. "Electronically stored information" or "ESI," as used herein has the same meaning as contemplated by the Federal Rules.
3. "Family" means email and all related attachments.
4. "Paper Records" or "Hard Copy Documents" means Documents existing in paper form at the time of collection.

5. "Native Format" means and refers to an electronic Document's associated file structure defined by the original creating application. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

6. "Metadata" refers to application and system information of a Document that contains data about the Document, as opposed to describing the content of a Document, as the term is described and used in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

7. "Optical Character Recognition" or "OCR" means the process of recognizing and creating a Document containing visible text within an image.

8. "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

9. "Confidentiality Designation" means the legend affixed to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – OCO" Discovery Material as defined by, and subject to, the terms of the Stipulated Protective Order entered in this Action.

10. "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

11. "Producing Party" has the same meaning as provided in the Protective Order.

12. "Receiving Party" has the same meaning as provided in the Protective Order.

13. "Duplicate ESI" means exact duplicate Documents (based on MD5 or SHA-1 hash values).

B. **Paper Records:** Paper records will be scanned or otherwise converted into electronic form in the following format:

1. All Documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11-inch page size, except for Documents requiring higher resolution or different page size.

2. In scanning paper Documents, to the extent reasonably discernable, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., paper Documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize Documents correctly and will commit to address situations where there are improperly unitized Documents.

3. Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

C. **Objective Coding Fields**: The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) source location/custodian.

D. **OCR Text Files**: Document-level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the Document with which it is associated. The text files will not contain the redacted portions of the Documents.

E. **ESI:** The Parties will produce responsive, complete families of ESI in TIFF format according to the following specifications:

1. All TIFF formatted Documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11-inch page size, except for Documents requiring different resolution or page size.

2. An image load file, in standard Opticon format, showing the Bates number endorsed onto the lower right corner of each page but not obscuring the content on any page and the appropriate unitization of the Documents, will accompany all Document images.

3. Each imaged version of an electronic Document will be created directly from the original electronic Document.

4. TIFFs shall be produced as black and white, single-page TIFF images in accordance with the technical specifications set out above, unless agreed with the opposing Party or ordered by a court. Upon written request that identifies a reasonable number of individual Documents at issue by Bates number, a Party shall produce color images for those Documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher. To the extent there is Metadata that identifies a Document as containing comments, tracked changes, speaker's notes, or other hidden text, or to the extent that a Receiving Party identifies by Bates number such a Document, and that Document is not produced in Native Format pursuant to this ESI Order, such Document should be produced with all comments, tracked changes, speaker's notes, or other hidden text, and any other hidden content made visible in the first instance.

5. All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the Native Format electronic Document (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's

5

notes, and text from hidden worksheets, slides, columns and rows. In the case of Documents with redacted text, OCR'ed text of the redacted Documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing. For Documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

6. Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES0000000l .TXT).

7. In the case of emails, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

8. The following Metadata fields associated with each electronic Document will be produced, to the extent they are available. The field names set forth below are provided for illustrative purposes. Metadata field names may be different so long as the field as named contains the information identified in the field descriptions provided below. The Parties need not rename default Metadata fields. No Party shall be required to manually populate any Metadata fields that do not exist as a Document is maintained in the ordinary course of business.

| Field Name | Field Description | Required For Email | Required For Non- E-Mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or Document(s) produced (Last Name, First Name format) as available | X | X |

6

| Field | Description | Email | Non-email |
|---|---|---|---|
| Duplicate Custodian (or similar name) | Name of duplicate custodian(s) of email(s) or Document(s) produced | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first Document in an attachment range (only in emails with attachments) | X | X |
| EndAttach | Ending Bates number of the last Document in attachment range (only in emails with attachments) | X | X |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email Document | | X |
| To | To or Recipient field extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |
| EmailSubject | Subject line extracted from an email message | X | |
| Filename | Original name of Document as appeared in original location | | X |
| Title | Title field extracted from the metadata of a non-email Document | | X |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or DateRecvd, but not both) | X | |
| DateRecvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or DateRecvd, but not both) | X | |
| DateCreated | Date that a non-email Document was created (mm/dd/yyyy format) | | X |
| DateLastModified | The application recorded time on which the Document was last modified | | X |
| TimeSent | Time email was sent (hh:mm:ss format) (a given email will have either | X | |

| | | | |
|---|---|---|---|
| | a TimeSent or TimeRecvd, but not both) | | |
| TimeRecvd | Time email was received (hh:mm:ss format) (a given email will have either a TimeSent or TimeRecvd, but not both) | X | |
| FileExtension | The file extension for the Document | | X |
| FilePath | File path storage location of the Document or email if the source application allows for the creation of folders | X | X |
| NativeLink | Relative path to any Documents produced in Native Format | X | X |
| TextLink | Relative path to any OCR/extracted text Documents in the production set | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| Confidentiality Designation | Confidentiality Designation for produced Documents | X | X |
| Redaction | Identifies if a Document has been redacted | X | X |
| Conversation_ID | For Teams and other chat data, identifies all messages and family items that belong to the same conversation | | X |
| ConversationType | For Teams and other chat data, identifies the content type (e.g., 1:1 Chat, Group Chat, Channel Post) | | X |

9. Native Format Production of Documents:

    a. Unless redactions have been applied to the Document, the Parties will produce the following ESI types in Native Format:

        i. Excel spreadsheets (.xls, .xlsx, .xlsm, .xlsb, .csv file formats)

        ii. Audio/video multimedia files

        iii. Animations

        iv. PowerPoint or comparable presentations

8

b. A Receiving Party may request that a reasonable number of individual Documents (identified by Bates number) be produced in Native Format. The Producing Party shall consider such requests and accommodate them if reasonable.

c. Any Document produced in Native Format will be produced according to the following specifications:

   i. A unique Bates number and Confidentiality Designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be: "23XI_00000000l_Confidential.xls"

   ii. The Native Format Documents shall be accompanied by reference information that sets forth, for each Document, sufficient information to allow the Parties to track and authenticate the Native Format Documents produced, including: (i) the name of the custodian from whose files the electronic Document is produced; (ii) an appropriately calculated MD-5 Hash Value; (iii) the original name of the Document; and (iv) a Bates number.

   iii. Any Document produced in Native Format need not be imaged. Instead, a single-page placeholder image shall be provided that indicates the Document was produced in Native Format and contains the Bates number and Confidentiality Designation of the corresponding Document.

   iv. Native Excel or other spreadsheet files may be redacted by overwriting the data contained in a particular cell, row, column or tab so as to make clear the reason for the redaction (e.g., "Redacted Privilege").

**F. Redacted Documents:**

1. The Parties reserve the right to withhold Documents and/or redact any information covered by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, rule, or statute prior to producing Documents in this Action. To the extent a Party redacts such information, the redaction must be labeled with the specific type(s) of privilege, rule or statute being asserted. Any Documents or information redacted or withheld from production on the basis of the attorney-client privilege or attorney work product doctrine must be included on a privilege log with enough information for the Receiving Party to validate the privilege claimed. The Parties agree that redacted documents need not be logged. Nevertheless, a Party may request a log entry for redacted documents where the claim of privilege is not clear on its face.

2. Extracted text will ***not*** be provided for Documents that have been redacted (e.g., for privilege), because the extracted text would reveal the redacted information. Instead, these Documents should be run through an OCR process to capture the visible text only and the results produced in lieu of the original extracted text. Redacted Documents which would otherwise be required to be produced in Native Format under terms of this ESI Order need not be produced in Native Format. To the extent that such redactions prevent the Document from being appropriately readable and the unreadable information is discoverable or necessary to contextualize the otherwise discoverable information contained in the Redacted Documents, the Parties will meet and confer to address the issue and provide the discoverable material in a readable format, which may include Documents with redactions in Native Format.

G. **Data Load Files/Cross-Reference Files:** Fielded data should be exchanged via a document-level-database load file in standard Concordance (DAT) file format. All image data should be delivered with a corresponding image load file in one of two formats; standard IPRO (LFP) or Opticon (OPT). The total number of image files referenced in the image load file should match the total number of images in the production delivery. This section is subject to the Parties' vendors being able to process the data; if not, the Parties will meet and confer.

H. **De-duplicating Documents and De-NISTing Documents:**

1. Each Party will de-duplicate ESI globally for exact duplicate Documents (based on MD5 or SHA-1 hash values at the parent Document level). This will result in the Producing Party producing only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Duplicate Custodians" (or similarly named) field. The Parties shall de-duplicate stand-alone Documents against stand-alone Documents and shall de-duplicate top-level email Documents against top-level email Documents. De-duplication shall not break apart families.

2. Common system and program files as defined by the NIST library need not be processed, reviewed or produced.

I. **Email Threading:** In order to limit the volume of duplicative content produced from email threads, use of email-threading analytics software is permitted to exclude email messages wholly contained and reviewable within later-in-time messages from the same email threads that are produced provided, however, that all responsive prior or lesser-included emails with attachments are produced. If a Producing Party proposes to use email threading to limit the volume of content produced from email threads, the Producing Party shall advise the Requesting Party.

J. **Proprietary or Third-Party Software:** To the extent that information produced pursuant to this ESI Order cannot be rendered or viewed without the use of proprietary or third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format.

K. **Production Media:** The Parties shall produce Documents electronically via a secure File Transfer Protocol ("FTP") rather than through physical media (e.g., CD, DVD, or hard drive), unless such electronic transmission is impracticable, or the otherwise Parties agree on a different method of transmission. The produced Documents shall be password protected and/or encrypted.

L. **Identification and Collection of Documents and ESI:**

1. The parties agree to meet and confer in good faith regarding the scope of discovery, including custodians that will be subject to discovery, non-custodial sources subject to discovery, applicable date range restrictions, and search methodologies to include search terms and/or technology assisted review. No party shall engage in the use of Technology Assisted or AI-assisted review of documents for production without per-document human review without first alerting the Requesting Party of their desire to do so and then meeting and conferring with the Requesting Party on an appropriate protocol governing the use of the selected technology that provides for adequate disclosure of metrics, control set details, prompts, validation and elusion testing, and other pertinent information to ensure the Producing Party's use of the technology has been robust, defensible, and reliable.

    a. <u>Documents Known to Be Responsive.</u>

        i. Documents or ESI identified as part of this Action or reasonably known by the Producing Party to be responsive to a discovery request (subject to any

objection or claim of privilege or other protection) shall be produced without regard to whether it was responsive to any search methodology described herein or developed in accordance with this ESI Order, unless Counsel specifically identifies the Documents or ESI being withheld and has a specific objection for withholding each/any withheld Document or ESI.

b. <u>Search Terms and Culling of ESI.</u>

   i. The Parties agree to meet and confer about search terms used in the Producing Party's Documents and to exchange information about the search terms, date filters, or other culling methods used to identify potentially responsive materials.

   ii. The Receiving Party may propose additional terms or culling parameters. The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to identify responsive Documents, including opportunities for the Parties to propose modified search terms

c. <u>Custodians.</u>

   i. The Parties shall meet and confer in good faith to identify an agreed list of custodians for whom custodial hardcopy and ESI records will be collected and searched within 30 days following service of any Party's first request for the production of documents.

d. <u>Non-Custodial Data Sources.</u>

> i. To promote communication and cooperation, as soon as practicable, the Parties agree to begin exchanging information concerning non-custodial sources of ESI where relevant and responsive ESI is likely to be stored. The Parties shall meet and confer in good faith to discuss non-custodial sources of ESI, including a description of the source and the information contained therein based upon reasonable investigation by the Party identifying the non-custodial ESI source.

**M. Mobile Electronic Device Documents, Data and Logs:** The Parties shall meet and confer to address the scope and production format of any responsive Documents and data collected from any mobile electronic device.

**N. Collaboration/Chat Software Programs (Teams/Slack):** Where a discovery request requires production of information from any collaboration tools or short messaging applications, (e.g., Microsoft Teams, Slack, Google Chat), the Parties shall meet and confer on the appropriate approach to identifying, searching, and producing data from such sources.

**O. Parent-Child Relationships for ESI Documents:** Parent-child relationships shall be preserved to the extent possible. Attachments that are part of the email file (i.e., embedded within the .msg file, except files that are created as part of processing and would not be viewable in the ordinary course of viewing the document) are to be produced contemporaneously and sequentially immediately after the parent document. Any Party whose production is likely to contain "modern" or "hyperlinked" attachments to emails (that is, files associated with a transmittal email through a link or other reference to a shared or external storage location or resource (e.g., OneDrive or SharePoint for Microsoft 365, Google Drive for Google Workplace)) shall notify the other Parties of this likelihood *before* performing ESI

collections so that the Parties can meet and confer about the appropriate approach for discovery of these records. The Parties recognize that a wide variety of capabilities exist as to such records and that it is difficult to prescribe a standard without information as to each Party's individual capabilities.

P.  **Miscellaneous Provisions**.

   a. Except as to the formatting for production agreed to herein, all documents (electronic or otherwise) shall be produced as kept and maintained by the producing Party in the ordinary course of business.

   b. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with these specifications. No Party may seek relief from the Court concerning compliance with these specifications unless it has conferred with the other Party.

   c. Nothing in these specifications shall be interpreted to require disclosure information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents. All productions shall be subject to the Protective Order entered by the Court in this Action.

   d. Any practice or procedure set forth herein may be varied by agreement of the Parties or Court order. Further, the Parties each retain the right to seek exceptions, amendments, or modifications to this ESI Protocol by party agreement or from the Court. Should any Party subsequently determine in good faith that it cannot proceed as required by this ESI Order or that the ESI Order requires modification, the Parties

will meet and confer to resolve any dispute at least fourteen days before seeking Court intervention.

**SO ORDERED**.

Signed: December 20, 2024

Kenneth D. Bell
United States District Judge

STIPULATED AND AGREED TO on December 16, 2024

By:   s/ *Jeffrey L. Kessler*

Jeffrey L. Kessler*
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer Parsigian*
Michael Toomey*
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto*
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc.*

By:   s/ *Tricia Wilson Magee*

Tricia Wilson Magee (N.C. Bar No. 31875)
**SHUMAKER, LOOP, & KENDRICK, LLP**
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Tel: 704-945-2911
Fax: 704-332-1197 tmagee@shumaker.com

Christopher S. Yates*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8240
Facsimile: (415) 395-8095
chris.yates@lw.com

Lawrence E. Buterman*
**LATHAM & WAKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Anna M. Rathbun*
Christopher J. Brown*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
anna.rathbun@lw.com
chris.brown@lw.com

*Admitted *pro hac vice*

*Counsel for Defendants NASCAR and Jim France*