UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC and JAMES FRANCE, <br><br> Defendants. | Civil Action No. 3:24-cv-886-KDB-SCR <br><br> **PUBLIC REDACTED VERSION** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A BOND**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1
ARGUMENT .......................................................................................................................2
CONCLUSION ....................................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ark. Best Corp. v. Carolina Freight Corp.*,
   60 F. Supp. 2d 517 (W.D.N.C. 1999) ...................................................................................3

*Bartell v. Grifols Shared Servs. NA, Inc.*,
   618 F. Supp. 3d 275 (M.D.N.C. 2022) ..................................................................................3

*Blom ASA v. Pictometry Int'l Corp.*,
   757 F. Supp. 2d 238 (W.D.N.Y. 2010) ..................................................................................3

*Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*,
   23 F. App'x 134 (4th Cir. 2001) ............................................................................................3

*Doe v. Hanover Cnty. Sch. Bd.*,
   No. 3:24CV493, 2024 WL 3850810 (E.D. Va. Aug. 16, 2024) .............................................3

*Farm Lab. Org. Comm. v. Stein*,
   No. 1:17CV1037, 2018 WL 3999638 (M.D.N.C. Aug. 21, 2018) .........................................3

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
   174 F.3d 411 (4th Cir. 1999) ............................................................................................ 3, 5

*Md. Dep't of Human Res. v. United States Dep't of Agric.*,
   976 F.2d 1462 (4th Cir. 1992) ................................................................................................2

*Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) ..............................................................................3

*Planned Parenthood S. Atl. v. Stein*,
   680 F. Supp. 3d 595 (M.D.N.C. 2023) ..................................................................................1

*Robie v. Price*,
   No. 2:17-CV-03089, 2017 WL 3097529 (S.D.W. Va. July 20, 2017) ...................................3

*Shibumi Shade, Inc. v. Beach Shade LLC*,
   No. 5:21-CV-256-FL, 2022 WL 390839 (E.D.N.C. Feb. 8, 2022), *appeal
   dismissed*, No. 2023-1051, 2022 WL 17661183 (Fed. Cir. Dec. 14, 2022.) ..............................3

*United States v. Clarkson*,
   No. C.A.8:05-2734-HMHBHH, 2007 WL 1988257 (D.S.C. July 3, 2007) ...............................1

*US Airline Pilots Ass'n v. Velez*,
   No. 3:14-CV-00577-RJC, 2015 WL 5258725 (W.D.N.C. Aug. 27, 2015) .................................3

**Other Authorities**

Fed. R. Civ. P. 65 ................................................................................................................5

Kyle Dalton, *Denny Hamlin Calls Out NASCAR CEO for His Actions at Daytona*,
 Heavy. (Feb. 23, 2024), https://heavy.com/sports/nascar/denny-hamlin-
 nascar-ceo-daytona/ ........................................................................................................6

Matt Weaver, *League president Steve Phelps offers rare comments about teams
 suing NASCAR*, Sportsnaut (Oct. 31, 2024), https://sportsnaut.com/nascar-
 news-president-steve-phelps-rare-statement-lawsuit/ .....................................................6

Sergei Madison, *Michael Jordan's 23XI Racing Sparks NASCAR Revival with
 NFL Crossover*, Motorcycle Sports (Dec. 23, 2024),
 https://motorcyclesports.net/michael-jordans-23xi-racing-sparks-nascar-
 revival-with-nfl-crossover ...............................................................................................6

**INTRODUCTION**

Defendants' Motion for a Bond (Dkt. 78, the "Motion") rests on the unsupported assertion that making payments to Plaintiffs in exchange for their participation in the 2025 NASCAR season pursuant to all of the terms of the 2025 Charter Agreement (except for its prohibited release term) constitutes harm to NASCAR. This is false. The limited relief issued by this Court requires *both* Plaintiffs and Defendants to comply with the terms set forth in the 2025 Charter Agreement during the 2025 Cup Series season, which means that Plaintiffs must comply with a number of terms that provide significant benefits to NASCAR that they would not have to comply with if they competed as "open" participants. *See* Order Granting Injunction, Dkt. 74 at 19–20. These economic benefits to NASCAR provided by Plaintiffs are the consideration for NASCAR providing certain Pool Money payments in exchange. This is why the Court has already found that "Defendants will not be significantly harmed (and perhaps not harmed at all) by Plaintiffs being allowed to race as chartered cars on the same terms as other chartered teams." Dkt. 74 at 18.

Defendants' two-page Motion fails to offer an explanation for how they will suffer *any* cognizable harm when both parties are obligated to comply with the duties and obligations set forth in the 2025 Charter Agreement for next season—much less the type of showing that would entitle them to Plaintiffs posting bonds in the extraordinary amount of $█████████ each. The only difference between Plaintiffs and the other racing teams is that Plaintiffs will not be subject to having the release provision bar this antitrust action. But, as this Court knows, being subject to the antitrust laws is not a cognizable harm for which Plaintiffs can seek a bond. *See Planned Parenthood S. Atl. v. Stein*, 680 F. Supp. 3d 595, 600 (M.D.N.C. 2023) (waiving bond requirement where injunction restricted defendant from engaging in likely unlawful conduct); *United States v. Clarkson*, No. C.A.8:05-2734-HMHBHH, 2007 WL 1988257, at *3 (D.S.C. July 3, 2007) (defendant "will not suffer irreparable harm by being forced to comply with the law").

NASCAR does not make Pool Money payments, pursuant to the 2025 Charter Agreement, as a gift to the racing teams who obtain Charter Agreement rights. The payments are made in exchange for the season-long obligations the teams undertake to NASCAR, including the commitment to compete in every Cup Series race and two exhibition races, the granting of the right to use the teams' intellectual property rights in commercial deals for NASCAR's benefit, the teams' participation in various media promotions, and the teams' agreement to the restrictive covenant not to compete which prohibits them from participating in any competing events. These commitments are especially valuable consideration from Plaintiffs, as NASCAR has publicly recognized the benefits it receives from having team owners like Michael Jordan and Denny Hamlin be a part of NASCAR. And with respect to the two transferred Stewart-Haas Racing, LLC ("SHR") Charter Agreements, if the transfers did not take place, NASCAR would still have to make these same Pool Money payments to whomever held those Charter Agreement rights.

Simply put, there is no harm to NASCAR in having to make Pool Money payments to Plaintiffs in exchange for their commitments to fulfill their obligations under the 2025 Charter Agreement. There is thus no potential cognizable injury for which Defendants can seek a bond. As the Court has already found, "applying the charter terms to Plaintiffs' race cars will not harm NASCAR at all. NASCAR has the same terms with 30 other cars and has repeatedly represented to the Court that those terms reflect a fair and *beneficial* deal for all concerned." Dkt. 89 at 9. (emphasis in original). No bond is required in such circumstances.

## ARGUMENT

Because Defendants cannot show the likelihood of any cognizable harm, the Court should waive the bond requirement. *Md. Dep't of Human Res. v. United States Dep't of Agric.*, 976 F.2d 1462, 1483 n.23 (4th Cir. 1992) ("recognizing a district court's discretion to set a bond amount of zero where the enjoined or restrained party faces no likelihood of material harm"). Where, as here,

2

"there is an absence of proof [by the enjoined party] showing a likelihood of harm, *certainly no bond is necessary*." *Robie v. Price*, No. 2:17-CV-03089, 2017 WL 3097529, at *7 (S.D.W. Va. July 20, 2017) (waiving bond) (emphasis added). Courts routinely exercise their discretion to waive an injunction bond (or set the amount at zero) in such situations.[1] *See, e.g., US Airline Pilots Ass'n v. Velez,* No. 3:14-CV-00577-RJC, 2015 WL 5258725, at *7 (W.D.N.C. Aug. 27, 2015) ("The Court has discretion to set the bond in any amount it considers proper or to waive the bond requirement altogether.") (citing *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013)); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) ("The amount of the bond . . . depends on the gravity of the potential harm to the enjoined party[.]"); *Doe v. Hanover Cnty. Sch. Bd.*, No. 3:24CV493, 2024 WL 3850810, at *17, n.21 (E.D. Va. Aug. 16, 2024) ("This bond can even be waived entirely when the defendant would not suffer any harm from the injunction."); *Bartell v. Grifols Shared Servs. NA, Inc.*, 618 F. Supp. 3d 275, 292 (M.D.N.C. 2022) (same); *Shibumi Shade, Inc. v. Beach Shade LLC*, No. 5:21-CV-256-FL, 2022 WL 390839, at *18 (E.D.N.C. Feb. 8, 2022) (same), *appeal dismissed*, No. 2023-1051, 2022 WL 17661183 (Fed. Cir. Dec. 14, 2022); *Blom ASA v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 247 (W.D.N.Y. 2010) (determining that no bond was required where an "injunction does no more than preserve the preexisting status quo, in which the parties were engaged in an ongoing contractual relationship (which presumably was mutually beneficial to [both parties]"); *Farm Lab. Org. Comm. v. Stein,*

---

[1] Alternatively, the Court has the discretion to order a nominal bond where, as here, Plaintiffs made a strong showing of likelihood of success on the merits and Defendants have not substantiated any material harm to them from the injunction. *See, e.g.*, *Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 F. App'x 134, 139 (4th Cir. 2001) (affirming $500 bond because "[defendant] would suffer little harm if enjoined from further selling its infringing [product]"); *Ark. Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 521 (W.D.N.C. 1999) (issuing a nominal $500 bond because "[c]ircumstances in the instant case warrant the posting of only a nominal bond in that Plaintiffs have shown a strong likelihood of success on the merits.").

No. 1:17CV1037, 2018 WL 3999638, at *30 (M.D.N.C. Aug. 21, 2018) (waiving bond requirement where "no harm, pecuniary or otherwise, will result to [Defendant]" with issuance of the injunction) (internal quotation marks omitted), *report and recommendation adopted*, No. 1:17CV10372018, WL 4518696 (M.D.N.C. Sept. 20, 2018).

Here, the Court has already considered the possibility of harm to Defendants from the preliminary injunction and has found that no such harm exists. As explained by the Court: "Defendants will not be significantly harmed (and perhaps not harmed at all) by Plaintiffs being allowed to race as chartered cars on the same terms as other chartered teams." Dkt. 74 at 18. "Indeed, Defendants' criticism of the Court's requirement that Plaintiffs abide by the terms of the 2025 Charter Agreements is puzzling because those terms, including the 'Goodwill' provision, are *for NASCAR's benefit* and reflect the Court's effort to enter the least intrusive injunction." Dkt. 89 at 5 (emphasis in original); *see also id*. at 1–2 (noting the absence of harm to Defendants if the injunction is allowed to proceed); *id*. at 4–5 ("NASCAR has the same benefits and obligations it has with other race teams"). "NASCAR has the same terms with 30 other cars and has repeatedly represented to the Court that those terms reflect a fair and *beneficial* deal for all concerned." *Id*. at 9 (emphasis in original).

The 2025 Charter Agreement terms impose significant season-long obligations on Plaintiffs in exchange for the Pool Money payments they will receive, including:

-  Given the prominence of Plaintiffs' racing teams, this participation commitment has added value to Defendants.

- ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████ An open team is not subject to these restrictions.

- ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████; Dkt. 1 ¶ 6 (NASCAR's Cup Series media deal for 2025–2031 is worth $1.1 Billion per year). Plaintiffs will also be required to grant NASCAR the right to use the "███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████

This list is merely illustrative of the many season-long obligations the 2025 Charter Agreement will impose upon Plaintiffs and other racing teams in consideration for the sharing of Pool Money. There is thus no cognizable harm to NASCAR from being required to abide by the terms of chartered team participation which NASCAR, itself, used its monopsony power to impose.

The purpose of a Rule 65 bond is for "*reimbursing* an enjoined party for *harm* it suffers as a result of an improvidently issued injunction." *Hoechst*, 174 F.3d at 421 n.3 (emphases added). Here, because Defendants will suffer no harm from the injunction, even if it were overturned on appeal, the only purpose of the requested bond would be to impose an undue financial burden on Plaintiffs for asserting their antitrust rights and to provide Defendants with an improper financial windfall if the injunction is dissolved. There is simply no basis for Defendants to ever receive a

5

Case 3:24-cv-00886-KDB-SCR    Document 97    Filed 01/02/25    Page 9 of 14

return of the Pool Money payments made in exchange for Plaintiffs fulfilling the terms of the 2025 Charter Agreement—terms that Defendants themselves presented as an agreement that all the chartered racing teams were required to accept.

Indeed, the benefit to Defendants of having Plaintiffs participate in all activities—including the two exhibition races, practices, qualifying events, and the accompanying media obligations—for the entire 2025 Cup Series season is substantial. As the Court knows, NASCAR has publicly declared how much it has valued having sports superstars, Michael Jordan and Denny Hamlin, to help promote interest in NASCAR.[2] And Front Row has been a valued team in NASCAR for close to 20 years. NASCAR will not suffer any injury by being required to maintain the status quo, in which Plaintiffs continue to compete with Charter Agreement rights.

Finally, Defendants' contention that they will be harmed by the portion of the Court's order enjoining them from blocking the transfer of the SHR charters because it "bind[s] the parties" beyond 2025 (Mot. at 2) is frivolous. As the Court explained, it has retained the equitable power to order the unwinding of the SHR transactions through a sale of the Charter Agreements if the court of appeals reverses the injunctive relief or should Defendants prevail on the merits. Dkt. 83 at 1 n.1. Moreover, it is particularly outrageous for Defendants to request a bond to cover the Pool Money payments made with respect to the transferred SHR Charter Agreements, as those payments

---

[2] *See* Dkt. 88 at 7 (citing Matt Weaver, *League president Steve Phelps offers rare comments about teams suing NASCAR*, SPORTSNAUT (Oct. 31, 2024), https://sportsnaut.com/nascar-news-president-steve-phelps-rare-statement-lawsuit/ (NASCAR President Steve Phelps stating, "I love that Michael Jordan is in our sport. I personally like Michael and think he's good for the sport."); Kyle Dalton, *Denny Hamlin Calls Out NASCAR CEO for His Actions at Daytona*, HEAVY. (Feb. 23, 2024), https://heavy.com/sports/nascar/denny-hamlin-nascar-ceo-daytona/ (NASCAR President Steve Phelps stating, "Denny Hamlin's . . . doing a tremendous job. . . . I'd like to have 36 Denny Hamlins.")); *see also* Sergei Madison, *Michael Jordan's 23XI Racing Sparks NASCAR Revival with NFL Crossover*, MOTORCYCLE SPORTS (Dec. 23, 2024), https://motorcyclesports.net/michael-jordans-23xi-racing-sparks-nascar-revival-with-nfl-crossover/ ("Michael Jordan's Legacy Paves the Way for NASCAR's Comeback").

would have had to be made by NASCAR in any event to whomever held these Charter Agreement rights.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion for a Bond should be denied outright, or alternatively, should only be granted with respect to the nominal amount of no more than $500.

Dated: January 2, 2025              Respectfully submitted,

                                    WINSTON & STRAWN LLP


                               By:  /s/ Jeffrey L. Kessler
                                    Jeffrey L. Kessler
                                    **WINSTON & STRAWN LLP**
                                    200 Park Avenue
                                    New York, NY 10166
                                    Tel: (212) 294-6700
                                    Fax: (212) 294-4700
                                    jkessler@winston.com

                                    Danielle T. Williams
                                    **WINSTON & STRAWN LLP**
                                    300 South Tryon Street
                                    16th Floor
                                    Charlotte, NC 28202
                                    Tel: (704) 350-7700
                                    Fax: (704) 350-7800
                                    dwilliams@winston.com

                                    Jeanifer Parsigian
                                    Michael Toomey
                                    **WINSTON & STRAWN LLP**
                                    101 California Street
                                    San Francisco, CA 94111
                                    Tel: (415) 591-1000
                                    Fax: (415) 591-1400
                                    jparsigian@winston.com
                                    mtoomey@winston.com

                                    Matthew R. DalSanto
                                    **WINSTON & STRAWN LLP**
                                    35 W. Wacker Drive
                                    Chicago, IL 60601
                                    Tel: (312) 558-5600
                                    Fax: (312) 558-5700
                                    mdalsanto@winston.com


                                    *Counsel for Plaintiffs 2311 Racing LLC d/b/a
                                    23XI Racing and Front Row Motorsports Inc.*

# CERTIFICATE OF COMPLIANCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

*Counsel for Plaintiffs 23 11Racing LLC d/b/a 23XI Racing and Front Row Motorsports Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A BOND** was electronically filed using the Court's CM/ECF system, which will automatically send notice of this filing to counsel of record for all parties, and I caused an unredacted copy of the foregoing to be served on counsel of record for all parties, including:

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Christopher S. Yates
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

Lawrence E. Buterman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com

Anna M. Rathbun
Christopher J. Brown
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
chris.brown@lw.com

*Counsel for Defendants National Association for Stock Car Auto Racing, LLC and James France*

                                              *Jeffrey L. Kessler*
                                                Jeffrey L. Kessler