UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC and JAMES FRANCE <br><br> Defendants. | Civil Action No. 3:24-cv-886-KDB-SCR |

## REPLY IN SUPPORT OF MOTION FOR A BOND

Plaintiffs' opposition is a far cry from the allegations in their Complaint that the Charter Agreements are "one-sided," "onerous" and offered to Charter teams on a "take-it-or-leave it basis." (Compl. ¶108). Now, Plaintiffs concede that the Charters are arm's-length commercial contracts whereby NASCAR provides substantial benefits to Charter teams. *See* Opposition at 1, 4-5 (describing benefits provided to teams). That has ramifications with respect to NASCAR's request that the Court impose the bond that Rule 65(c) requires and, also, for the merits of the case. The Court's injunction imposes a de facto contract for the 2025 season; a bond is necessary to allow NASCAR to recover benefits provided to Plaintiffs through that forced agreement in the event NASCAR succeeds on appeal or ultimately on the merits.

The reality is that Charters are immensely valuable to teams. They certainly were to the teams that received them from NASCAR for free in 2016 and 2025, and their value is confirmed by the fact that Plaintiffs sought to buy additional Charters *during the supposedly "one-sided" negotiations and sought to close on those deals before entry of the Court's preliminary*

*injunction*—something they never would have done if the Charters were actually compromised of onerous terms set by a monopolist. The terms under which NASCAR now must deal with Plaintiffs are highly lucrative for those teams (including because they require NASCAR to pay each Plaintiff millions of dollars per year—and according to Plaintiffs, allow them to obtain additional millions in sponsorship revenues that they do not share with NASCAR). Yet, Plaintiffs now argue in opposition that Charters hold *no* value beyond the contract terms, arguing there is no cognizable injury for which Defendants can seek a bond. That is simply not true.

But for the issuance of the injunction, NASCAR would have used these funds for "the growth and promotional opportunities for the sport." (Doc. No. 21-5, at p. 17 (2025 Charter Agreement § 4.1)). In fact, NASCAR had already published increased prize money for the 2025 NASCAR Cup racing season. These larger race purses coupled with increased NASCAR spending on promotional programming and other growth initiatives would have encouraged additional Open teams to compete. Forcing NASCAR to pay Plaintiffs instead of further investing in its sport will harm these race teams, drivers, and competitors, along with NASCAR. Instead of working with existing teams to expand or enticing new investors to join the sport, NASCAR will instead have to pay Plaintiffs. Both Federal Rule of Civil Procedure 65(c) and Fourth Circuit precedent that Plaintiffs themselves cite make clear that a bond must issue for that harm NASCAR will suffer if NASCAR succeeds on appeal or ultimately on the merits. *See Maryland Dept. of Human Res. v. U.S. Dept. of Agric.*, 976 F.2d 1462, 1483 (4th Cir. 1992).

Plaintiffs' entire Opposition is premised on a fundamental misunderstanding of where the parties stand in relation to each other and a failure to appreciate the gulf that exists between an arm's-length contractual relationship (which NASCAR and each race team that signed a 2025 Charter agreement have) and a court-mandated relationship (which NASCAR and Plaintiffs now

have). NASCAR and the 2025 Charter teams negotiated and mutually agreed to enter into a contractual relationship in which each side gave something up and, in return, got something it wanted. Plaintiffs had that same opportunity in September 2024, and they rejected it.[1] But they now speak of the Court-mandated relationship in which they find themselves with NASCAR as if it were the same thing. It is not. But for the Court's preliminary injunction orders, NASCAR would not be obligated to pay each Plaintiff Pool Money as identified in its Motion for Bond (Doc. No. 78 at 2)—if not more—during the 2025 Cup Series. And, if NASCAR is a wrongfully enjoined party, it will be entitled to recover and be reimbursed for those payments and distributions made. In short, NASCAR is being forced to pay millions of dollars pursuant to de facto contracts it doesn't want. That is the potential cognizable injury that Plaintiffs whistle past in their Opposition. And that is the potential cognizable injury that necessitates a bond.

Plaintiffs argue that NASCAR will not be harmed by the injunctions because Plaintiffs will fulfill the Charter terms other than the release provision. They thus contend (at 5-6) that even if this Court's injunctions mandating NASCAR to allow Plaintiffs to operate under the terms of the Charters for the 2025 Cup Series Season are overturned, Plaintiffs will not have to return *any* Pool Money payments received under the terms of these court-mandated Charters. In other words, Plaintiffs claim that even if the injunction is overturned, they are entitled to keep every penny of the many millions that they received only because of the injunction. That cannot be correct.

---

[1] Although Plaintiffs argued that they could not sign the release in Section 10.3 of the 2025 Charter Agreement without releasing their antitrust claims, Plaintiffs repeatedly signed the same release in 2023 and 2024, at the same time NASCAR was allegedly acting like a "monopolist" in negotiations. *See* (Doc. 38-2 (Open Team Owner Agreement, entered into by NASCAR and Plaintiff 23XI) at § 11); (Doc. 38-4 (Open Team Owner Agreement, entered into by NASCAR and Plaintiff Front Row Motorsports) at § 11).

3

If NASCAR prevails, as a wrongfully enjoined party or on the merits of the case, it is clearly entitled to reimbursement for these Pool payments and distributions—which were made under legal compulsion, not a voluntary agreement. *See Maryland Dept. of Human Res.*, 976 F.2d at 1483. That is so even if, as Plaintiffs claim, the Charters provide NASCAR with benefits, such as the use of Plaintiffs' team members' names and likenesses. NASCAR would have received many of these same indirect benefits had Plaintiffs just raced as Open teams and would have received them without the obligation to make higher payouts to Plaintiffs. Such benefits do not come close to outweighing the substantial, concrete benefits NASCAR is now forced to provide Plaintiffs.[2]

Moreover, the mutual releases have value to the parties—and the release of NASCAR in Section 10.3 has value to NASCAR. It allows NASCAR to avoid potentially costly litigation and allows the parties to work in a more amicable way. This litigation has already imposed legal costs on NASCAR and strained NASCAR's relationship with Plaintiffs as Plaintiffs' counsel has publicly compared NASCAR to an abusive spouse to the press. Without this Court's injunction, NASCAR would not be in a Charter agreement with Plaintiffs, let alone one that lacks a release.

Plaintiffs further miss the mark when they argue that NASCAR is not harmed because it would make the same payments to other Charter teams had they purchased the Stewart-Haas Racing ("SHR") Charters.[3] Not so. The parties, pursuant to fundamental contract law, never had a meeting of the minds. Plaintiffs openly stated that they disagreed with the terms, interpretation,

---

[2] Even if Plaintiffs were correct that NASCAR receives benefits by Plaintiffs racing as NASCAR teams, that just means that the bond amount would be decreased, not that no bond should issue. In addition, Plaintiffs make no effort to quantify the benefits they provide to NASCAR.

[3] Even if the Court finds that NASCAR will not be harmed by paying the amounts under the SHR Charters, that just means the requested bond amount should be reduced by 1/3, not that a bond should not issue on the other two de facto charters each Plaintiff receives.

4

application and enforcement of the Charter Agreement. NASCAR is now forced to be in contractual privity with teams that do not share its interest in growing the Cup Series, and which take away from the opportunities to provide more teams (including Open teams) with incentives to race in NASCAR Cup Series races. Instead, NASCAR now must pay millions of dollars to Plaintiffs, who, along with their counsel, have repeatedly made public statements intended to damage the image and goodwill of NASCAR.

Plaintiffs claim (at 8) that the Court already found that there would be no harm to NASCAR if the injunctions were to issue. However, the Court assessed only whether NASCAR had suffered "irreparable" harm, not whether the injunctions would lead to "costs and damages," which is the standard for requiring a bond under Rule 65. Further, the Court's analysis addressed the logistics of "readjust[ing] prize money schedules" to account for 36 teams. It did not mention the possibility of Plaintiffs unjustly retaining millions of dollars if the preliminary injunction were overturned or if Plaintiffs ultimately lost on the merits. *See id.* In fact, Plaintiffs overlook that the Court expressly left open that it would consider "any monetary loss as a result of Plaintiffs' being allowed to race with chartered cars" as part of the pending Motion for Bond (Doc. No. 89 at 9-10 n. 5).

Plaintiffs cite (at 2-5) a number of cases that stand for the uncontroversial proposition that a bond need not issue where there is no likelihood of harm to the enjoined party. But none of those cases have any relevance here, where NASCAR has shown such a harm. The very first case that Plaintiffs cite (at 2) in support of that proposition, *Maryland Dep't of Hum. Res.*, actually shows why a bond must issue here. 976 F.2d 1462. In that case, the Fourth Circuit held that the district court committed reversible error by "failing to require Maryland to post an injunction bond." *Id.* at 1483. There, the injunction exposed the defendant to "substantial financial losses." *Id.* So too here, where NASCAR will need to pay millions of dollars to Plaintiffs and lose the likely benefit

5

of extra competition from Open teams competing for larger race purses that would have been paid but for the issuance of the injunction.

Here, as in *Maryland*, as a result of the court's preliminary injunctions NASCAR is likely to have to pay Plaintiffs millions of dollars while this case is pending.[4]  Rule 65 explicitly requires a party granted a preliminary injunction to "give[] security in an amount that the court considers proper to pay *the costs and damages sustained* by any party found to have been wrongfully enjoined or restrained." *See* Fed. R. Civ. P. 65(c) (emphasis added).  NASCAR will undeniably incur costs and sustain damages and NASCAR's proposed bond acts as security to reimburse NASCAR for any additional Prize Money Plaintiffs will receive for participation in 2025 Cup Series races. *See e.g.*, (Doc. No. 78 at 2 (detailing the payments and distributions the preliminary injunction forces NASCAR to make to Plaintiffs)).  Issuing a bond here is consistent with "the purpose underlying Rule 65(c) . . . to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 423 n. 3 (4th Cir.1999).  It is further necessary because "an understated an understated bond could cause irreparable harm" to NASCAR. *Lab'y Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 466 n.14 (M.D.N.C. 2015) (quoting *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir.2000)).

Accordingly, NASCAR respectfully requests the Court grant its Motion for a Bond, (Doc. No. 78), and order each Plaintiff to post a bond for the amount identified therein.

---

[4] Plaintiffs half-heartedly argue in a footnote (at 3 n.1) that this Court should issue a nominal bond. In the cases cited by Plaintiffs, the court required only a nominal bond because selling a clearly infringing product did not present a likely harm. Doc. No. 98 at 3 n.1 (citing *Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 F. App'x 134, 139 (4th Cir. 2001); *Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 520 (W.D.N.C. 1999)).  That is not the case here.

Dated: January 7, 2025	Respectfully submitted,

By:	*/s/ Tricia Wilson Magee*
Tricia Wilson Magee (N.C. Bar No. 31875)
**SHUMAKER, LOOP, & KENDRICK, LLP**
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Tel: 704-945-2911
Fax: 704-332-1197
tmagee@shumaker.com

Christopher S. Yates*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8240
Facsimile: (415) 395-8095
chris.yates@lw.com

Lawrence E. Buterman*
**LATHAM & WAKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Anna M. Rathbun*
Christopher J. Brown*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
anna.rathbun@lw.com
chris.brown@lw.com

* Admitted *pro hac vice*

*Counsel for Defendants NASCAR and Jim France*

7

## ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 7th day of January, 2025.

*/s/ Tricia Wilson Magee*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **REPLY IN SUPPORT OF MOTION FOR A BOND** was electronically filed using the Court's CM/ECF system, which will automatically send notice of filing to all parties of record as follows:

Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
dwilliams@winston.com


Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
jkessler@winston.com


Jeanifer Parsigian
Michael Toomey
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
jparsigian@winston.com
mtoomey@winston.com


Matthew DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
mdalsanto@winston.com

*Counsel for Plaintiffs 23XI Racing and
Front Row Motorsports Inc.*

This the 7th day of January, 2025.

/s/ Tricia Wilson Magee