IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00886-KDB-SCR

| | |
|---|---|
| 2311 RACING, LLC AND FRONT ROW MOTORSPORTS, INC., <br><br> **Plaintiffs,** <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC AND JAMES FRANCE <br><br> **Defendants.** | <u>**ORDER**</u> |

**THIS MATTER** is before the Court on Defendants National Association for Stock Car Auto Racing, LLC ("NASCAR") and James France's Motions to Dismiss, (Doc. Nos. 56, 57), and NASCAR's Motion for Bond, (Doc. No. 78), with respect to the Court's Preliminary Injunctions in favor of Plaintiffs. (Doc. Nos. 74, 94). The Court has carefully considered these motions, the parties' briefs and exhibits and oral argument on the motions from the parties' counsel on January 8, 2024. For the reasons and to the extent discussed below, the Court will **DENY** Defendants' Motions to Dismiss and NASCAR's Motion for Bond, without prejudice to NASCAR being permitted to later seek recovery of monetary damages incurred as the result of the Preliminary Injunction, if it is overturned on appeal.

I. MOTION TO DISMISS

To permit plaintiffs to pursue all plausible claims, even those that are later found to be unsupported or simply unsuccessful, the Federal Rules of Civil Procedure set a high threshold for

1

a court to dismiss claims at the outset of a lawsuit. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Still, Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see Twombly*, 550 U.S. at 555 (a claim will not survive a motion to dismiss if it contains nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements."). That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citation and quotation marks omitted). In other words, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

The parties to this action cast their existential dispute in starkly different terms. According to Plaintiffs, NASCAR (led by the dynastic France family) is the iron-fisted monopolistic ruler of

premier stock car racing that has imposed "anticompetitive 'take it or leave it' terms" on Plaintiffs and other top-tier racing teams. In Defendants' telling, NASCAR and the France family are the founders and guiding lights of a beloved and valuable racing series, who have fairly negotiated mutually beneficial "Charter Agreements" that reflect reasonable commercial terms between NASCAR and the race teams.

What is the actual evidence and how does it inform a correct legal conclusion? These questions cannot be determined on motions to dismiss in this action, where Plaintiffs have sufficiently alleged one or more plausible antitrust claims against Defendants within the applicable period of limitations. *See* Doc. Nos. 74, 89 (granting and reaffirming limited Preliminary Injunction based, in part, on likelihood of success on the merits).[1] Instead, the answers must be found when the parties have a full opportunity to pursue discovery of the relevant facts and then at trial, where the jury will be able to weigh the evidence and assess the credibility of the witnesses (unless the case is resolved sooner by the parties or the Court). Therefore, the Court will **DENY** the Defendants' Motions to Dismiss.

## II. MOTION FOR BOND

On December 18, 2024, the Court entered a limited injunction for the 2025 NASCAR Cup racing season that requires NASCAR to allow Plaintiffs to each race two chartered cars under the terms of the 2025 Charter Agreement (other than the Release which Defendants contend would

---

[1] The Court's earlier analysis of Plaintiffs' Complaint focused on their claims against NASCAR, in particular the Release contained in the 2025 Charter Agreements. The Court also finds that Plaintiffs have sufficiently alleged antitrust claims against James France individually. Taking as true Plaintiff's overall factual allegations of Mr. France's ownership and executive position and the specifics of NASCAR's alleged wrongful conduct, Plaintiffs have plausibly alleged that he directed, controlled and/or ratified that conduct. Mr. France has clear notice of the claims against him (as reflected in the substantial and detailed defense already mounted by his counsel) and will have ample opportunity to challenge the allegations of his control as the case proceeds.

3

bar Plaintiffs' antitrust claims in this action). *See* Doc. No. 74. Also, in that Order and then later on December 26, 2024, the Court enjoined NASCAR from refusing to approve the transfer of Charter Agreements from Stewart-Haas Racing ("SHR") to each of the Plaintiffs. Doc. Nos. 74, 94. Therefore, in total, the injunction requires NASCAR to allow each Plaintiff to race three cars under the terms of the 2025 Charter Agreement for the 2025 NASCAR Cup Series.

The day following the entry of the injunction, NASCAR filed a Motion for Bond, asking that the Court require each Plaintiff to post a bond in excess of $10 million for each car being allowed to race based on the harm it alleges it will suffer in being forced to do so under the charter terms. Plaintiffs in turn oppose the motion, arguing that the bond requirement should be waived or bond set at a nominal amount because NASCAR will not suffer any harm in allowing Plaintiffs to race under the same charter terms applicable to the 30 other chartered cars.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a preliminary injunction may issue "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In determining an appropriate amount of an injunction bond, the Court "should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Norris v. City of Asheville*, No. 1:23-CV-200103-MR-WCM, 2024 WL 1261206, at *9 (W.D.N.C. Mar. 25, 2024) (cleaned up). The Court has discretion to set the bond in any amount it considers proper or to waive the bond requirement altogether. *US Airline Pilots Ass'n v. Velez*, No. 3:14-CV-00577-RJC, 2015 WL 5258725, at *7 (W.D.N.C. Aug. 27, 2015) (citing *Pashby v. Delia,* 709 F.3d 307, 332 (4th Cir. 2013). The amount of security required depends on the probability and "gravity of the potential harm to the enjoined party," and a court is

4

justified in waiving the bond requirement when it finds that the likelihood of harm to the enjoined party is remote. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 n.3 (4th Cir. 1999).

In support of its motion and at oral argument, NASCAR described the monetary harm it would suffer as the result of the injunction as having to pay Plaintiffs the "Pool Money" that NASCAR has agreed to pay chartered teams in the 2025 Charter Agreement. Specifically, NASCAR argues that in the absence of the injunction, it would redistribute a portion of Plaintiffs' share of the Pool Money to other teams as increased prize money for various races and use the rest to grow or promote the sport. *See* Doc. No. 52-19 at 17 (section 4.1 of the 2025 Charter Agreement describing the reallocation of race purses to those who compete in the event and allowing NASCAR to retain the rest of the pool money (primarily the fixed payments made to teams) "to use during the then current Season at its reasonable discretion for the mitigation of the loss of Competitors[2] and the growth or promotional opportunities for the sport."). However, the Court finds that, at least at this point in the litigation, NASCAR has failed to particularly establish how it (as distinguished from third parties) will be monetarily harmed, or in what amount, by having to pay Plaintiffs as chartered teams.

To the extent that the redistributed pool money would have gone into larger race purses, Plaintiffs' share of that money would have depended on how their cars finished in the races, which is not a harm directly related to the injunction because Plaintiffs' cars could, according to

---

[2] Because NASCAR contends that Plaintiffs would have raced as "open" cars if the injunction had been denied, this portion of the provision appears to be inapplicable (i.e. there would in any event have been no overall "loss of Competitors").

5

NASCAR, have competed in those races as "open" cars with similar results.[3] With respect to the reallocation of the teams' fixed amount of pool money (approximately $5,000,000 annually per charter in 2025 (Doc. No. 52-19 at 63)), NASCAR states that it might use that money to encourage new teams to become involved or promote the sport, but has not provided the Court with any specifics, saying only that the finalization of its plans is "forthcoming." Further, Plaintiffs represented to the Court at oral argument that NASCAR has told its chartered teams that it intends to retain a portion of the fixed pool money to defray its legal costs in defending this lawsuit (an assertion which was not disputed by NASCAR). Payments for ongoing legal expenses to defend this action on the merits (whether or not permitted by the 2025 Charter Agreements) would not be "harm" resulting from the injunction for which a bond should be ordered.

Moreover, any harm to NASCAR from making chartered payments to Plaintiffs would have to take into account the benefits NASCAR receives from Plaintiffs complying with their obligations as chartered teams. While NASCAR sought to minimize the value that it will receive from Plaintiffs at oral argument, NASCAR has previously argued at length that the balance of payments and obligations for chartered teams is beneficial rather than harmful to NASCAR so, at least impliedly, the consideration paid to the chartered teams represents fair compensation for their obligations. However, NASCAR persuasively argued that its benefit from Plaintiffs racing as chartered teams may not be the same as received from the other chartered teams, in that Plaintiffs have not and will not be pulling their oars in the same direction as NASCAR and the other charter

---

[3] Plaintiffs disagree that competing as "open" cars would give them a comparable competitive opportunity as "chartered" cars (and the Court credited that argument in entering the Preliminary Injunction). However, the overall point that Plaintiffs would have earned prize money according to their race finishes regardless of the injunction remains the same.

teams.[4] Nonetheless, the alleged harm to NASCAR of allowing Plaintiffs to race chartered cars on the same terms as the other 30 chartered teams is presently both uncertain and unquantified.[5] Therefore, the Court, in its discretion, will waive the security requirement of Rule 65(c) and will not require Plaintiffs to post a bond for the issuance of the Preliminary Injunctions. However, by this ruling, the Court does not foreclose NASCAR's ability to later pursue reimbursement for harm it contends that it has suffered as a result of a wrongfully entered injunction.[6]

---

[4] NASCAR noted at oral argument that the 2025 Charter Agreement reflects the intention of the parties that chartered teams will work together with NASCAR to enhance the goodwill of the sport and that Plaintiffs' attorneys' derogatory statements about NASCAR undermine that goodwill. While the Court will not speculate on how the various narratives engendered by this dispute might ultimately help or hurt the popularity of the 2025 NASCAR Cup Series, it will consider any future non-privileged derogatory statements by *either party* about the other in assessing the balance of benefits and obligations that the parties provided each other in ruling on a motion by NASCAR seeking reimbursement for harm resulting from the injunction. To be clear, the Court encourages and expects the parties to zealously advocate for their clients' interests (including asserting allegations against the opposing parties) in their written and oral submissions to the Court, which are privileged. However, out of court statements may be of a different character and could inform the Court's view of the level of mutual benefits obtained by the parties.

[5] The fact that NASCAR is not permitted to enforce the Release during the pendency of the injunction cannot support a bond. Although NASCAR argues that the Release is valuable to it because it would allow it to avoid the instant litigation, the Court's finding that the Release is likely unlawful means that any alleged harm from not enforcing the Release need not be bonded. *See Planned Parenthood S. Atl. v. Stein*, 680 F. Supp. 3d 595, 600 (M.D.N.C. 2023) (waiving bond requirement where injunction restricted defendant from engaging in likely unlawful conduct).

[6] For example, NASCAR suggested that other chartered teams might in the future demand that NASCAR make additional payments to them if the injunction is overturned on appeal.

## III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motions to Dismiss (Doc. Nos. 56, 57) are **DENIED;**

2. NASCAR's Motion for Bond is **DENIED** without prejudice to NASCAR later seeking reimbursement for monetary harm incurred if the Preliminary Injunction is overturned; and

3. This case shall proceed towards trial on the Plaintiffs' claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: January 10, 2025

Kenneth D. Bell
United States District Judge