**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE,<br><br>Defendants. | |
| NASCAR EVENT MANAGEMENT, LLC,<br><br>Counter-Plaintiff,<br><br>v.<br><br>2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK,<br><br>Counter-Defendants. | No. 3:24-cv-886-KDB-SCR |

**[PUBLIC REDACTED VERSION]**

**NASCAR'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND COUNTERCLAIM**

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................................................1

II. BACKGROUND OF AMENDMENT ............................................................................2

III. LEGAL STANDARD ....................................................................................................7

IV. ARGUMENT ................................................................................................................7

- A. NASCAR's Amendment Satisfies The Requirements Of Federal Rule of Civil Procedure 16(b)(4) .........................................................................7
- B. NASCAR's Amendment Satisfies The Requirements Of Federal Rule of Civil Procedure 15(a)(2) .........................................................................8

V. CONCLUSION ..............................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Earthkind v. Lebermuth Co.*,
2020 WL 8771419 (W.D.N.C. Dec. 1, 2020) (Bell, J.) ....................7, 8, 9

*Estate of Rink v. VICOF II Trust*,
2022 WL 1445233 (W.D.N.C. May 6, 2022) (Bell, J.) ....................7, 9

*Hamilton v. Duke Energy Corp.*,
2023 WL 5186876 (W.D.N.C. Aug. 11, 2023)....................9

*Recon Grp. v. Lowe's Home Ctrs.*,
743 F. Supp. 3d 737 (W.D.N.C. 2024) (Bell, J.) ....................8

### RULES

Fed. R. Civ. P. 15 ....................1, 7, 8, 9

Fed. R. Civ. P. 16 ....................1, 7, 8

Pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure, Counter-Plaintiff NASCAR Event Management, LLC ("NASCAR") moves for leave to amend its Counterclaim. Doc. No. 111. Attached hereto as Exhibit A is a copy of NASCAR's Proposed First Amended Counterclaim.

## I. INTRODUCTION

Shortly after the deadline for NASCAR to file its counterclaim, 23XI and Front Row produced more than 200,000 pages of emails, texts, and memoranda.[1] Those documents indisputably confirm what NASCAR alleged in its counterclaim: 23XI, Front Row, and Curtis Polk knowingly entered into illegal agreements with other teams on issues such as fixing the compensation that they received from NASCAR and allocating how that compensation would be divided among the co-conspirator teams. These illicit agreements, as the paper trail reveals, were carried out both directly and by using Jonathan Marshall of the Race Team Alliance ("RTA") as a conduit.

Although its existing counterclaim more than adequately states a claim for relief (as explained in NASCAR's concurrently filed oppositions to Counterclaim Defendants' motions to dismiss), NASCAR seeks leave to file an amended counterclaim that includes excerpts of these recently produced documents because they confirm—beyond any doubt—that 23XI and Front Row reached unlawful agreements with each other and other teams, and that Curtis Polk was the

---

[1] On March 5, 2025, NASCAR filed its Answer to Plaintiffs' Amended Complaint, which included a single counterclaim, alleging that Counterclaim Defendants 2311 Racing LLC d/b/a 23XI Racing ("23XI"), Front Row Motorsports, Inc. ("Front Row"), and Curtis Polk (collectively, "Counterclaim Defendants") participated in an illegal conspiracy to restrain trade in violation of Section 1 of the Sherman Act. Doc. No. 111, ¶¶ 83-94. In particular, NASCAR alleged that 23XI, Front Row, and Curtis Polk knowingly entered agreements with other teams on issues such as fixing the pricing that they received from NASCAR and allocating how that compensation would be divided among the co-conspirator teams.

ringleader of the concerted effort to set compensation received by the teams, boycott NASCAR events, interfere with NASCAR's negotiations with media partners, and reach unlawful agreements. Given this newfound information, NASCAR seeks leave to amend its counterclaim to account for the new, additional factual information that confirms the existence and scope of Counterclaim Defendants' illegal conspiracy.

## II. BACKGROUND OF AMENDMENT

In 2020, Curtis Polk, Michael Jordan, and Denny Hamlin formed an organization called 23XI for the purpose of creating a racing team that would enter cars into NASCAR Cup Series races.

Thereafter, 23XI owner Hamlin asked Mr. Polk to take a lead role organizing the Charter teams to negotiate collectively with NASCAR regarding the terms of the 2025 Charter because of Mr. Polk's prior involvement in the NBA. In the NBA, there is a labor union representing players which allows players (and also the NBA teams acting through the league) to negotiate collectively because of the non-statutory labor exemption from the antitrust laws. There is no such union in NASCAR, which means that there is no non-statutory labor exemption and teams are fully subject to the antitrust laws if they reach agreements between each other.

Notwithstanding this critical difference from the NBA, 23XI President Steve Lauletta explained that [REDACTED] "[REDACTED]" Hamlin then told Mr. Polk that "[REDACTED]" NASCAR. Thereafter, Mr. Polk organized a meeting of multiple team owners in an effort to [REDACTED].



The RTA then became a conduit for the teams to reach an agreement.[2] Minutes of a 2022 RTA Meeting "." The RTA also set out "." This "."

Mr. Polk then explained his "." He said that Mr. Polk to his and multiple teams . One team responded, Another team said that and that and "." A third team replied, we "." And a fourth team said, "."

23XI, Front Row, and their co-conspirator teams' collective efforts led to higher payouts and better Charter terms for the teams than those that could have been achieved without unlawful agreements. Indeed, Mr. Marshall of the RTA reported to Mr. Polk and the TNC in the middle of negotiations with NASCAR that that '".'" But the terms were not good enough for Mr. Polk, 23XI, and Front Row. Mr. Polk and the TNC then engaged in efforts to discourage other teams from engaging in individual negotiations with NASCAR; in other words,

2 The RTA is a purported trade association that was formed to advocate for the interests of race teams. Its website says: "The RTA is a forum for open dialogue among its race Team members about issues of common interest, provides a point of contact for those who wish to engage with the Teams collectively and a vehicle through which the Teams can speak with a single, common voice." 23XI and Front Row are both members of the RTA.

Mr. Polk was engaged in efforts to maintain the conspiracy and proposed a unified effort to attempt to extract even more from NASCAR.

23XI, Front Row, the RTA and other teams recognized that [REDACTED]. [REDACTED] said: "[REDACTED]." Nonetheless, a co-conspirator team principal said: "[REDACTED]"

Even though the TNC, the RTA, and teams recognized that [REDACTED], weeks later, Mr. Marshall of the RTA circulated an email outlining [REDACTED]. One of those [REDACTED] This hurts NASCAR and competition because it reduces the incentives for new teams to enter and race open—and depresses competition on the track.

Mr. Polk, Mr. Marshall, and other members of the TNC then engaged in efforts to ensure that teams remained unified as part of an effort to prevent teams from "[REDACTED]" and dealing directly with NASCAR. Polk explained that [REDACTED] "[REDACTED]" [REDACTED]. He said, "[REDACTED]." And Hamlin and others from 23XI emphasized to other teams [REDACTED] "[REDACTED]." Polk also met with "[REDACTED]" including Front Row to

"[redacted]." These efforts worked. No team signed prior to September 6, 2025, and no team agreed to a smaller payout or less preferential terms in the hopes of getting the Charter signed.

Polk also led an effort to interfere with NASCAR's negotiations with media partners as part of an effort to force NASCAR to provide the teams with better terms in the 2025 Charter. He did so even though he knew that [redacted] A member of the TNC said [redacted] And Polk said, [redacted] Polk then sent an email in which he explained that he had [redacted]. As he wrote: [redacted] Polk's plan and actions, including interference with media partners, led to better terms for teams. On the other hand, NASCAR was unable to achieve [redacted] it had sought to achieve with its media rights fees (in the area of [redacted]).

The agreed-upon collective efforts continued to result in better economic and other terms in the 2025 Charter for 23XI, Front Row, and their co-conspirators. As 23XI President Lauletta explained to Polk: "[redacted]." Even Polk acknowledged that [redacted] "[redacted]." After NASCAR presented an improved proposal in August of 2024, Marshall circulated an email in



which he informed the teams that "[redacted] 23XI's President then asked Mr. Marshall if [redacted] "[redacted]." The reason that teams were willing to take the deal was that the collective efforts had led to an increased share of media revenues being shared with teams. That was reflected in the value of Charters—which had grown from an average price of [redacted]. Even Polk recognized that [redacted].

Polk and 23XI continued their efforts to pressure teams not to sign the 2025 Charter. Polk communicated with other teams as part of an effort to [redacted][3] Ultimately, most team owners realized that their collective efforts and agreements between teams on compensation to Charter holders and other price terms, resulted in a far more favorable Charter than teams could have achieved absent coordination and alignment. 23XI and Front Row agreed not to sign, in part because as Hamlin had explained "[redacted]" and as Polk had [redacted], [redacted].

---

3 [redacted] This indicates that depositions will reveal even more unlawful agreements and conduct than document discovery has uncovered to date.

## III. LEGAL STANDARD

When considering whether to grant leave to amend after the deadline passes to amend the pleadings, "the Court conducts a two-step analysis." *Estate of Rink v. VICOF II Trust*, 2022 WL 1445233, at *7 (W.D.N.C. May 6, 2022) (Bell, J.).

First, "the movant must satisfy Federal Rule of Civil Procedure 16(b)(4), which states that a scheduling order may be modified to amend a pleading 'only for good cause and with the judge's consent.'" *Id*. (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)). In considering whether to modify a case schedule under these circumstances, the Court considers "the danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Estate of Rink*, 2022 WL 1445233, at *7.

Second, the moving party must satisfy the requirements of Rule 15(a)(2), which instructs that "[t] he court should freely give leave when justice so requires." *Id.* at *8. "This is a liberal standard" and motions to amend should "be granted in the absence of a declared reason, such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, futility of the amendment, etc." *Id.* (citation omitted).

## IV. ARGUMENT

### A. NASCAR's Amendment Satisfies The Requirements Of Federal Rule of Civil Procedure 16(b)(4)

Good cause exists to allow the amended counterclaim because the requested amendment is "based on additional facts and information provided by [a party's] supplemental document production." *Earthkind v. Lebermuth Co*., 2020 WL 8771419, at *1 (W.D.N.C. Dec. 1, 2020) (Bell, J.). In response to NASCAR's requests for production served in December 2024, 23XI and

Front Row produced hundreds of thousands of pages of documents a week *after* the March 15, 2025 deadline for amendment of the pleadings. Doc. No. 84. These document productions provided further support for NASCAR's counterclaim, but they were not available to NASCAR at the time that NASCAR filed its counterclaim. NASCAR worked diligently to review these materials and promptly sought leave to amended the counterclaim.[4] NASCAR's amended counterclaim alleges the same claim and is based on the same underlying factual scenario. Counterclaim Defendants are therefore not prejudiced because they were already on notice of the alleged claim and should be fully aware of the documents and materials that they themselves produced.

Further, this amended counterclaim should not affect the schedule in any way, including the currently scheduled December 1, 2025 trial date. Both sides committed during the Court's April 3, 2025 hearing, after NASCAR filed its initial counterclaim, to be trial ready by that date. Allowing an amendment to the counterclaim would simply permit NASCAR a fair opportunity to supplement its allegations in support of its claim based on new information uncovered during the discovery process. Therefore, all factors weigh in favor of the Court finding good cause for NASCAR to amend its counterclaim under Rule 16. *See Earthkind,* 2020 WL 8771419, at *1-2.

### B. NASCAR's Amendment Satisfies The Requirements Of Federal Rule of Civil Procedure 15(a)(2)

Because NASCAR satisfies the good cause standard under Rule 16, it also satisfies the "liberal standard" imposed by Rule 15(a)(2). *See*, *e.g.*, *Earthkind,* 2020 WL 8771419, at *2; *Recon Grp. v. Lowe's Home Ctrs.*, 743 F. Supp. 3d 737, 749 (W.D.N.C. 2024) (Bell, J.) (granting

---

[4] 23XI and Front Row produced approximately 50,000 additional pages of documents on April 11, 2025. NASCAR is in the process of reviewing those documents and, based on an initial inspection, NASCAR believes that this production contains further support for its counterclaim.

leave to file an amended complaint); *Hamilton v. Duke Energy Corp.*, 2023 WL 5186876, at *1-2 (W.D.N.C. Aug. 11, 2023) (granting motion for leave to amend). When determining whether a party meets the liberal standard imposed by Rule 15(a)(2), a court should grant leave unless there is a showing of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to Counterclaim Defendants, or futility of the amendment. *Estate of Rink*, 2022 WL 1445233, at *8. None of those factors is present here.

As discussed in Section IV.A., there is no evidence of undue delay, bad faith, dilatory motive, or undue prejudice. NASCAR worked diligently to amend its counterclaim shortly after additional facts in support of that counterclaim came to light. Further, NASCAR has not previously failed to cure pleading deficiencies in its counterclaim because its claim has not been previously dismissed and NASCAR has not previously sought leave to amend its counterclaim.

Finally, NASCAR's amendment is not futile. The Fourth Circuit's definition of a futile claim is one that "is clearly insufficient or frivolous on its face." *Earthkind,* 2020 WL 8771419, at *2 (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th. Cir. 1986)). This standard is much lower than the standard for evaluating a Rule 12(b)(6) motion. *See Earthkind,* 2020 WL 8771419, at *2 ("While leave to amend may be futile when an amended complaint could not survive a Rule 12(b)(6) motion, it does not follow that every motion seeking amendment should be decided, as Plaintiffs implicitly suggest, as a motion under Rule 12(b)(6). Such a requirement would render superfluous the Fourth Circuit's definition of a futile claim as one that is 'clearly insufficient or frivolous on its face,' and would run contrary to the Fourth Circuit's well-established 'policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a).'"). As identified in NASCAR's contemporaneously filed oppositions to Counterclaim Defendants' motions to dismiss, NASCAR's counterclaim is not deficient. And the

additional factual allegations in the proposed amended counterclaim based on Counterclaim Defendants' own documents make abundantly clear that Counterclaim Defendants violated Section 1 of the Sherman Act.[5] Accordingly, amendment would not be futile.

## V. CONCLUSION

NASCAR respectfully requests that the Court grant leave to amend its counterclaim.

---

[5] As this Court already explained when evaluating NASCAR Defendants' motions to dismiss, the critical question is: "What is the actual evidence and how does it inform a correct legal conclusion?" Doc. No. 104 at 3. And the same answer applies here: "[T]he answers must be found when the parties have a full opportunity to pursue discovery of the relevant facts and then at trial, where the jury will be able to weigh the evidence and assess the credibility of the witnesses (unless the case is resolved sooner by the parties or the Court)." *Id.* The parties can present their respective legal arguments again after fully developing their factual support at summary judgment, or ultimately, at trial.

Dated: April 16, 2025

Respectfully submitted,

By: */s/ Christopher Yates*

Christopher S. Yates*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

Lawrence E. Buterman*
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com

Anna M. Rathbun*
David L. Johnson*
Christopher J. Brown*
Christina R. Gay*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
david.johnson@lw.com
chris.brown@lw.com
christina.gay@lw.com

Tricia Wilson Magee (N.C. Bar No. 31875)
**SHUMAKER, LOOP, & KENDRICK, LLP**
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Telephone: (704) 945-2911
Facsimile: (704) 332-1197
tmagee@shumaker.com

*Admitted *pro hac vice*

*Counsel for Counter-Plaintiff NASCAR*