UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| NASCAR Event Management, LLC,<br><br>    Counter-Plaintiff,<br><br>  v.<br><br>2311 Racing LLC d/b/a 23XI Racing, Front Row Motorsports, Inc., and Curtis Polk,<br><br>    Counter-Defendants. | Civil Action No. 3:24-cv-886-KDB-SCR<br><br>**PUBLIC REDACTED VERSION** |

**2311 RACING LLC D/B/A 23XI RACING, CURTIS POLK, AND FRONT ROW MOTORSPORTS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO NASCAR'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARDS ........................................................................................................ 3

ARGUMENT ........................................................................................................................ 4

I. NASCAR's Motion Should be Denied Because the Proposed Amendment Would be Futile ................................................................................................................. 4

    A. NASCAR's Proposed Amendments Do Not Overcome NASCAR's Failure to Plausibly Allege Concerted Action in Restraint of Trade ...................... 4

    B. None of NASCAR's "New" Allegations Fix the Fatal Flaws in its Section 1 Claim ............................................................................................................ 7

    C. NASCAR's Proposed Amended Counterclaim Does Not Remedy Its Failure to Sufficiently Allege a Relevant Market or Market Power ..................... 10

    D. NASCAR's Proposed Amended Counterclaim Does Not Fix Its Failure to Show Antitrust Injury ............................................................................................ 10

II. NASCAR's Motion for Leave to Amend Should Also be Denied as Untimely and Prejudicial ............................................................................................................ 12

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Needle, Inc. v. NFL*,
  560 U.S. 183 (2010) ...................................................................................................... 8

*Booth v. Maryland*,
  337 F. App'x 301 (4th Cir. 2009) .................................................................................. 3

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
  441 U.S. 1 (1979) ....................................................................................................... 4, 8

*Carter v. Dominion Energy, Inc.*,
  529 F. Supp. 3d 525 (W.D. Va. 2021) ............................................................................ 3

*Columbia Broad. Sys., Inc. v. Am. Soc. of Composers, Authors & Publishers*,
  620 F.2d 930 (2d Cir. 1980) ........................................................................................... 5

*E. & G. Gabriel v. Gabriel Bros.*,
  1994 WL 369147 (S.D.N.Y. July 13, 1994) ................................................................. 10

*E. I. du Pont de Nemours & Co. v. Kolon Indus. Inc.*,
  637 F.3d 435 (4th Cir. 2011) ........................................................................................ 10

*Earthkind, LLC v Lebermuth Co. Inc.*,
  2020 WL 8771419 (W.D.N.C. Dec. 1, 2020) ................................................................. 2

*Five Smiths, Inc. v. NFLPA*,
  788 F. Supp. 1042 (D. Minn. 1992) ................................................................................ 7

*Hatteras/Cabo Yachts, LLC v. M/Y EPIC*,
  2020 WL 1668045 (E.D.N.C. Apr. 3, 2020) ................................................................... 3

*Hunt Valley Baptist Church, Inc. v. Baltimore County*,
  2019 WL 3238950 (D. Md. July 17, 2019) ..................................................................... 3

*Jiang v. Duke Univ.*,
  2025 WL 360805 (M.D.N.C. Jan. 31, 2025) ................................................................... 7

*Katyle v. Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) .......................................................................................... 3

*NCAA v. Bd. of Regents of Univ. of Okla.*,
  468 U.S. 85 (1984) .......................................................................................................... 8

*United States ex rel. Nicholson v. Medcom Carolinas, Inc.*,
  42 F.4th 185 (4th Cir. 2022) ...................................................................................12

*Sara Lee Corp. v. Pro Sports, Inc.*,
  2004 WL 537926 (M.D.N.C. Mar. 12, 2004) ....................................................3, 12

*US Airline Pilots Ass'n v. AWAPPA, LLC*,
  615 F.3d 312 (4th Cir. 2010) .........................................................................................3

*Williams v. Marshall*,
  2025 WL 815978 (S.D.W. Va. Feb. 20, 2025) ...........................................................7

**Statutes**

Sherman Act § 1................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 11......................................................................................................11

Fed. R. Civ. P. 12(b)(6)..............................................................................................7

Fed. R. Civ. P. 15..................................................................................................3, 7

## INTRODUCTION

Apparently recognizing that its Counterclaim is legally deficient, NASCAR filed this motion for leave to amend before the Court even had a chance to rule on Plaintiffs' pending motion to dismiss. However, even with its new allegations, the Amended Counterclaim suffers from the same fatal flaws as its predecessor. Accordingly, this Court should recognize the futility of NASCAR's attempt to amend and deny this motion seeking leave to amend and dismiss NASCAR's Counterclaim with prejudice.

NASCAR cannot state a plausible Section 1 claim because it has not, and cannot, allege any anticompetitive restraint of trade under the controlling Supreme Court authority of *BMI*. Specifically, NASCAR does not, and cannot, dispute that it agreed to the challenged joint negotiations over the terms of the 2025 Charter Agreement (as it did in the 2016 Charter Agreement) and it does not, and cannot, dispute that the teams also engaged in individual negotiations with NASCAR. *See* Countercl.-Defs.' Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike ("MTD Br."), Dkt. No. 115-1 at 10–12; 23XI-Polk Reply Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike ("Reply Br."), Dkt. No. 126 at 2–4. These individual negotiations are well-established in the record before this Court, including in NASCAR's "new allegations" in the Counterclaim. *See, e.g.,* Dkt. No. 20-11 (NASCAR President Steve Phelps September 11, 2024 letter to 23XI with Charter Negotiation Timeline describing multiple rounds of individual negotiations with teams); Am. Countercl. Compl., Dkt. No. 132-2 ¶¶ 67, 76, 98. The fact that these individual negotiations resulted in NASCAR obtaining its desired terms for the 2025 Charter Agreement is also well-established. NASCAR's First Answer, Dkt. No. 58 ¶ 23 ("[NASCAR] admit[s] that 23XI Racing and Front Row Motorsports were the only two Cup Series teams that declined to sign the 2025 Charter Agreement."). Because such facts preclude any viable Section

1 claim against the race teams for participating in joint negotiations that NASCAR agreed to, NASCAR's amendment is futile.

Moreover, NASCAR's untimely motion to amend should be denied for the additional reason that it would disrupt the orderly preparation of this expedited case for trial and thus be unduly prejudicial to Plaintiffs. The case is on a compressed schedule, with a trial set for December 1, 2025. NASCAR's proposed amendment comes more than a month after the court-ordered deadline to amend the pleadings. Granting NASCAR's amendment would require Plaintiffs to expend significant resources—including with respect to additional motion practice, depositions, and expert work—without knowing whether NASCAR's Amended Counterclaim will be part of the case or not. The Court should exercise its discretion to reject this futile amendment, which would detract from and impede the parties' ability to be ready for the December 1 trial.

Finally, because NASCAR made the unusual decision to rely on specifically identified discovery documents with its motion to amend purportedly supporting its Amended Counterclaim allegations, Plaintiffs are submitting discovery documents that support the conclusion that the Amended Counterclaim is futile. *See Earthkind, LLC v Lebermuth Co. Inc.*, 2020 WL 8771419, at *1 (W.D.N.C. Dec. 1, 2020) (considering discovery documents submitted by the party opposing amendment in assessing futility of amendment). Indeed, documents exchanged in discovery confirm that it was NASCAR's plan all along to string the teams along in joint discussions before peeling the teams off for individual negotiations. *See* Ex. 1[1], NASCAR-00117409 at 409 █████

---

[1] Ex. _ refers to the exhibits to the concurrently filed declaration of Jeffrey L. Kessler.

██████ This Court, however, can deny NASCAR's motion on futility grounds based solely on its review of the Amended Counterclaim allegations.

## LEGAL STANDARDS

The district court has "broad discretion concerning motions to amend pleadings" under Rule 15. *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam). "[O]ne of the grounds for denial of a motion to amend under Rule 15 is where a proposed amendment would be futile." *Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525, 548 (W.D. Va. 2021). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011). If "the proposed amendments . . . would have no impact on the outcome of the motion to dismiss," the leave to amend should be denied. *US Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 320 (4th Cir. 2010).

Additionally, a motion to amend under Rule 15 may be denied if it will prejudice the opposing party. *Sara Lee Corp. v. Pro Sports, Inc.*, 2004 WL 537926, at *1 (M.D.N.C. Mar. 12, 2004). "[P]rejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position." *Hunt Valley Baptist Church, Inc. v. Baltimore County*, 2019 WL 3238950, at *4 (D. Md. July 17, 2019) (citation omitted). A motion to amend may be denied on prejudice grounds when "the amendment would require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial or would significantly delay the resolution of the dispute." *Hatteras/Cabo Yachts, LLC v. M/Y EPIC*, 2020 WL 1668045, at *3 (E.D.N.C. Apr. 3, 2020) (cleaned up) (citation omitted). Such considerations have particular force here, where an expedited trial is scheduled for December 1 and the court-imposed deadline for amending the pleadings

passed more than a month ago. Pretrial Order and Case Management Plan, Dkt. No. 84 at 1 (setting deadline for Amendment of the Pleadings as March 15, 2025).

# ARGUMENT

## I. NASCAR's Motion Should be Denied Because the Proposed Amendment Would be Futile

### A. NASCAR's Proposed Amendments Do Not Overcome NASCAR's Failure to Plausibly Allege Concerted Action in Restraint of Trade

Rather than cure the failure of NASCAR's existing Counterclaim to allege facts plausibly showing an actionable restraint of trade, NASCAR's proposed amended complaint confirms that NASCAR cannot plead such a restraint. NASCAR cannot allege that the challenged joint negotiations by the racing teams involved an agreement to forego individual negotiations with NASCAR. MTD Br. at 11–12; Reply Br. at 2–4; *see Broad. Music, Inc. v. Columbia Broad. Sys., Inc. ("BMI")*, 441 U.S. 1, 23–24 (1979).

Instead, the new allegations in the proposed Amended Counterclaim ***confirm*** that NASCAR was able to successfully conduct individual negotiations with the racing teams regarding the 2025 charter renewal, and that there was no agreement preventing it from doing so. Am. Countercl. Compl. ¶ 67 ▮▮▮ *id*. ¶ 76 ▮▮▮ ; *id*. ¶ 98 ▮▮▮

As demonstrated in Counterclaim-Defendants' motion to dismiss, the lack of any alleged agreement to block individual negotiations by the racing teams is fatal to NASCAR's claim that the joint negotiations through the TNC constituted a restraint of trade. *See* MTD Br. at 11–12; Reply Br. at 2–4; *see BMI*, 441 U.S. at 23–24 (1979); *Columbia Broad. Sys., Inc. v. Am. Soc. of*

*Composers, Authors & Publishers*, 620 F.2d 930, 936 (2d Cir. 1980) ("We agree with the defendants that if that opportunity is fully available, and if copyright owners retain unimpaired independence to set competitive prices for individual licenses to a licensee willing to deal with them, the blanket license is not a restraint of trade.").

The "new" allegations in NASCAR's proposed Amended Counterclaim include a list of quotations, from documents produced in discovery, where team representatives discussed the importance of trying to maintain unity in the joint negotiations with NASCAR. Am. Countercl. Compl. ¶ 52 ▮); *see also id.* ¶¶ 58, 62, 66, 80, 87, 94, 96, 98, 105, 107, 112, 119. But none of those quotations provide any evidence, or support any claim, that the racing teams ever agreed not to negotiate individually. Indeed, NASCAR makes no such allegation, and nor could it. NASCAR knows that it was able to engage in individual negotiations when it chose to do so, and that it was able to use those negotiations to obtain the terms that it was demanding in the 2025 Charter Agreement.

NASCAR's negotiations with individual teams of the 2025 Charter Agreement terms were not blocked by any agreement of the teams. This fact is undisputed—but in any event readily confirmed in the Amended Counterclaim and NASCAR's document productions. Because NASCAR has relied on document productions to support its proposed amendment, Counterclaim-Defendants are attaching samples of documents evidencing the individual negotiations and the futility of permitting NASCAR to file its proposed Amended Counterclaim. *See* Ex. 2, NASCAR-00084503 at 505 ▮ ▮; *id.* at 504 ▮ ▮ ▮; Ex. 3, NASCAR-00259813 at 814 ▮



Indeed, the documents further show that NASCAR successfully used such individual negotiations to obtain the agreement of all of the racing teams, except for 23XI and Front Row, to the final terms of the 2025 Charter Agreement that NASCAR demanded. NASCAR's First Answer, Dkt. No. 58 ¶ 23 ("[NASCAR] admit[s] that 23XI Racing and Front Row Motorsports were the only two Cup Series teams that declined to sign the 2025 Charter Agreement."); *id*. ¶ 107 ("NASCAR engaged in individual negotiations with certain teams to address their individual requests regarding the 2025 Charter Agreements while still negotiating with the teams negotiating collectively."); Ex. 9, NASCAR-00400805 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 10, NASCAR-00471651 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████; Ex. 11, 23XI_0011649 ████████████

████████████████████████████████████████.

Because NASCAR's Amended Counterclaim cannot allege that individual negotiations were not an option, NASCAR's Rule 15 motion should be denied as futile. *See Williams v. Marshall*, 2025 WL 815978, at *13 (S.D.W. Va. Feb. 20, 2025) (denying motion to amend because it would be futile when "[n]othing in [p]laintiff's proposed amendment(s) would alter the analysis previously provided herein and the new allegations would also be subject to dismissal under Rule 12(b)(6)."); *Jiang v. Duke Univ.*, 2025 WL 360805, at *6 (M.D.N.C. Jan. 31, 2025) (same).[2]

### B. None of NASCAR's "New" Allegations Fix the Fatal Flaws in its Section 1 Claim

NASCAR has put forward a series of purportedly "new" allegations in its proposed amendments, but none of them are capable of remedying the many pleading deficiencies in NASCAR's effort to cobble together a counterclaim.

First, NASCAR's new allegations in the Amended Counterclaim that Cup Series teams shared information among themselves in the course of formulating their joint negotiation proposals to NASCAR add nothing material to NASCAR's failed Section 1 claim. Am. Countercl. Compl. ¶ 89 ███████████████████████████████████████ *id.* ¶¶ 98, 104, 114.

---

[2] NASCAR mischaracterizes the documents in its proposed Amended Counterclaim. For example, NASCAR references a document (23XI_0250429) that it claims showed Mr. Polk ████████████████████████████████████ Countercl.-Pl.'s Mot. to Amend, Dkt. No. 123 at 6. But the referenced document shows that Polk was actually stating ████████████████████████████████. Similarly, NASCAR (at 3) mischaracterizes what the racing teams sometimes referred to as the "Polk Doctrine." NASCAR suggests that the "Polk Doctrine" was a call for the teams to refrain from breaking ranks and staying united against NASCAR. But the actual point sometimes referred to as the Polk Doctrine was that: ████████████ ████████████ Am. Countercl. Compl. ¶ 95. Neither of these references provide any support for NASCAR's Section 1 claim.

Information sharing, without more, is not a Section 1 violation. *See e.g. Five Smiths, Inc. v. NFLPA*, 788 F. Supp. 1042, 1054 (D. Minn. 1992). This is especially true in a case like this, in which a group of teams in a sports leagues shared information as a part of joint negotiations, agreed to by the counterparty, for contracts that by necessity were to have terms common to all the teams. Many cases involving sports leagues, where some cooperation is needed if the product is to be available at all, confirm that joint action of horizontal competitors is not *per se* unlawful. *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 117 (1984) ("Our decision not to apply a per se rule to this case rests in large part on our recognition that a certain degree of cooperation is necessary if the type of competition that petitioner and its member institutions seek to market is to be preserved."); *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 204 (2010) (same). Indeed, it is not a Section 1 violation at all where, as here, the agreement to conduct joint negotiations did not prohibit individual bargaining as an alternative. *See BMI*, 441 U.S. at 23–24.[3]

*Second*, NASCAR's proposed conclusory allegations in the Amended Counterclaim that Counterclaim-Defendants " ███████████████ " (Am. Countercl. Compl. ¶ 129) and ███████████████ (*id.* ¶ 132) are nothing more than references to the joint negotiation proposals that NASCAR agreed the teams should present. *See* Ex. 12, 23XI_0013275 at 276 ███████████████

---

[3] NASCAR's Counterclaim allegation that the amount of "███████████████ " during the individual negotiations is highly misleading. Am. Countercl. Compl. ¶ 98. ███████████████ *See* Ex. 13, 23XI_0304650 at 656 (Feb. 4, 2023 Charter Proposal); Ex. 14, 23XI_0304649 ███████████████ The more accurate framing is that the money *never increased* through either joint negotiations or individual negotiations. NASCAR does not allege that after making this offer it ever tried to get any team to agree to less money through either joint or individual negotiations.

8

███████████████████████ Once again, as a matter of law, the formulation and presentation of such joint proposals to NASCAR is not a restraint of trade, as it is undisputed that they did not prevent individual negotiations by the teams over the charter agreement terms. *See* MTD Br. at 11–12; Reply Br. at 2–4. Indeed, it was not possible for such joint negotiations to take place without the teams agreeing upon what terms to jointly suggest. The discovery documents confirm that NASCAR welcomed such joint negotiations by the TNC and that it knew that it could subsequently follow up with individual negotiations with each of the teams. *See* Ex. 15, NASCAR-00397395 ████████████████████████████████████████

*Third*, NASCAR's proposed new allegations in the Amended Counterclaim that the racing teams ████████████████████████████████████, Am. Countercl. Compl. ¶¶ 107, 111, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ as it knows that 10 of 13 teams agreed to participate in August 2024.[4]

---

[4] *See* Ex. 16, RTA00009160 (Trackhouse Entertainment Group, LLC d/b/a Trackhouse Racing Netflix Agreement); Ex. 17, RTA00009169 (Glen Wood Company, Inc. d/b/a Wood Brothers Racing Netflix Agreement); Ex. 18, RTA00009178 (Rick Ware Racing, LLC Netflix Agreement); Ex. 19, RTA00009187 (RPAC Racing, LLC d/b/a Legacy Motor Club Netflix Agreement); Ex. 20, RTA00009196 (JTG/Daughtery Racing, LLC Netflix Agreement); Ex. 21, RTA00009205 (Penske Racing South, Inc. d/b/a Team Penske Netflix Agreement); Ex. 22, RTA00009214 (Joe Gibbs Racing, Inc. Netflix Agreement); Ex. 23, RTA00009223 (Roush Fenway Keselowski Racing, LLC Netflix Agreement); Ex. 24, RTA00009232 (Stewart-Haas Racing, LLC Netflix Agreement); Ex. 25, RTA00009241 (Spire Motorsports II, LLC Netflix Agreement).

## C. NASCAR's Proposed Amended Counterclaim Does Not Remedy Its Failure to Sufficiently Allege a Relevant Market or Market Power

Because NASCAR has failed to plead conduct that could be treated under the *per se* standard, its failures to adequately plead market definition or market power are fatal to its Sherman Act Section 1 claim. *See* MTD Br. at 10–20; Reply Br. at 8–9. NASCAR's proposed Amended Counterclaim still fails to identify or discuss the existence or non-existence of reasonably interchangeable substitutes. *See* Am. Countercl. Compl. ¶ 126. That does not suffice for pleading a relevant product market or market power. *See* MTD Br. at 17–18; Reply Br. at 8–9; *E. I. du Pont de Nemours & Co. v. Kolon Indus. Inc.*, 637 F.3d 435, 444 (4th Cir. 2011); *E. & G. Gabriel v. Gabriel Bros.*, 1994 WL 369147 (S.D.N.Y. July 13, 1994) ("[F]ailure to define [a] market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.") (citation omitted).

## D. NASCAR's Proposed Amended Counterclaim Does Not Fix Its Failure to Show Antitrust Injury

Finally, the proposed Amended Counterclaim does not cure NASCAR's failure to plead the antitrust injury required to support a Section 1 claim. As shown in Counterclaim-Defendants' motion to dismiss, NASCAR has not pled facts showing that it suffered any injury, let alone an antitrust injury, from the challenged joint negotiations or other concerted behavior identified in the Counterclaim. MTD Br. at 20–23; Reply Br. at 10–11.

The proposed Amended Counterclaim does not add any new, non-conclusory allegations to supply the missing element of antitrust injury. To the contrary, it reinforces the undisputed fact that NASCAR obtained the Charter Agreement terms that it desired through individual negotiations and forced them on the teams through a take-it-or-leave-it offer on the threat that they would take charters away completely. Am. Countercl. Compl. ¶¶ 67, 76, 98; *see supra* at 6. While the Amended Counterclaim makes the conclusory assertion that the joint negotiations enabled the

racing teams to achieve more favorable Charter Agreement terms, Am. Countercl. Compl. ¶ 136, it fails to offer any plausible facts to support this assertion in light of its repeated praise of the 2025 Charter Agreement as being good for NASCAR and the industry. *See* MTD Br. at 21; Reply Br. at 8–9.

The documents produced in discovery further confirm NASCAR's inability to allege facts in the Amended Counterclaim plausibly showing that it did not obtain the economic terms that it sought in the 2025 Charter Agreement negotiations. For example, in March 2023, NASCAR's Senior Executive, Scott Prime, told others in NASCAR's senior leadership that ███████████████████████████████████████████████████████ Ex. 26, NASCAR-00398636 (Mar. 31, 2023 S. Prime Email to S. O'Donnell, S. Phelps). That is exactly the "huge win" that NASCAR's Amended Counterclaim admits that NASCAR achieved in its split of media revenues. Am. Countercl. Compl. ¶ 82. Similarly, the documents produced in discovery further demonstrate why NASCAR cannot plead any facts in the Amended Counterclaim to plausibly show that any concerted conduct of the Counterclaim-Defendants damaged NASCAR's new, record setting media deal. These documents reveal that NASCAR believed there was only a ████████ ███████████████████████████████████████████. *See* Ex. 27, NASCAR-00095422 (███████████████████████████████████████). Yet, that is exactly the record result which NASCAR concedes it achieved. *See* NASCAR's First Answer, Dkt. No. 58 ¶ 6. Simply put, it is not possible for NASCAR to fix its failure to plead specific facts plausibly showing antitrust injury in the Amended Counterclaim without violating Rule 11, as the undisputed facts do not support such an injury claim.

## II. NASCAR's Motion for Leave to Amend Should Also be Denied as Untimely and Prejudicial

NASCAR's proposed amendment comes more than a month after the deadline set by this Court to amend the pleadings. Pretrial Order and Case Management Plan, Dkt. No. 84 at 1 (setting deadline for Amendment of the Pleadings as March 15, 2025). That deadline was set for a reason: the Court has ordered a highly expedited schedule in which fact and expert discovery must be completed within a matter of months so that a trial can be conducted on December 1. Under this expedited schedule, it would be both highly disruptive and prejudicial to Counterclaim-Defendants to permit an untimely Amended Counterclaim, which would give rise to another round of briefing on a second motion to dismiss before the parties even know what additional Counterclaim issues would be part of the trial. Meanwhile, party document discovery has already been substantially completed and party depositions are scheduled to begin in just two weeks.

Although NASCAR claims that the Amended Counterclaim will not adversely affect the parties or the case schedule, that is incorrect. NASCAR's amendment, if granted, would force Counterclaim-Defendants to expend additional resources on further motion to dismiss practice while simultaneously taking and defending more than 30 depositions; conducting extensive document review; drafting expert reports; enforcing motions to compel against third parties; and arguing NASCAR's pending Fourth Circuit Appeal. All of this discovery would be proceeding while the parties would not know what Counterclaim issues, if any, will actually need to be tried. This is exactly the type of situation in which courts find that an untimely amendment to the pleadings will cause unfair prejudice and delay. *See, e.g.*, *Sara Lee*, 2004 WL 537926, at *1 (M.D.N.C. Mar. 12, 2004) ("The Court finds that the amendment is not timely, will disrupt the proceedings to some degree, and is made in violation of the scheduling order."); *United States ex rel. Nicholson v. Medcom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) ("Delay . . . is often

12

Case 3:24-cv-00886-KDB-SCR    Document 128    Filed 04/30/25    Page 16 of 20

evidence that goes to prove bad faith and prejudice.") (citation omitted). This is thus another compelling ground for denying the motion to amend.

## **CONCLUSION**

For all the foregoing reasons, NASCAR's motion for leave to amend should be denied. The Court should instead rule on the now fully briefed motion to dismiss the existing Counterclaim, which should be dismissed with prejudice because any leave to amend would be futile.

Dated: April 30, 2025

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

E. Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer E. Parsigian
Michael Toomey
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

*Counsel for 2311 Racing LLC d/b/a 23XI Racing, Front Row Motorsports, Inc., and Curtis Polk*

## **CERTIFICATE OF COMPLIANCE**

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

*Counsel for 2311Racing LLC d/b/a 23XI Racing, Front Row Motorsports Inc., and Curtis Polk*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **2311 RACING LLC D/B/A 23XI RACING, CURTIS POLK, AND FRONT ROW MOTORSPORTS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO NASCAR'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM** was electronically filed using the Court's CM/ECF system, which will automatically send notice of this filing to counsel of record for all parties, and I caused an unredacted copy of the foregoing to be served on counsel of record for all parties, including:

<div style="display:flex">

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Christopher S. Yates
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

Lawrence E. Buterman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com

Anna M. Rathbun
Christina R. Gay
David L. Johnson
Christopher J. Brown
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
christina.gay@lw.com
david.johnson@lw.com
chris.brown@lw.com

</div>

*Counsel for NASCAR Event Management, LLC*

　　　　　　　　　　　　　　　　　　　　*Jeffrey L. Kessler*
　　　　　　　　　　　　　　　　　　　　Jeffrey L. Kessler