# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

NASCAR Event Management, LLC,

        Counter-Plaintiff,

        v.

2311 Racing LLC d/b/a 23XI Racing, Front Row Motorsports, Inc., and Curtis Polk,

        Counter-Defendants.

Civil Action No. 3:24-cv-886-KDB-SCR

**ORAL ARGUMENT REQUESTED**

## COUNTER-DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COUNTERCLAIM

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.      NASCAR's Amended Counterclaim Should Be Dismissed with Prejudice ...................... 2

      A.      NASCAR cannot allege a restraint of trade ................................................ 2
      B.      NASCAR has not alleged a *per se* violation as a matter of law ............................ 6
      C.      NASCAR has not stated a claim under the rule of reason .................................... 8
      D.      NASCAR has not alleged any concrete injury in fact ........................................ 9
      E.      NASCAR has made no specific allegations to plausibly show Front Row's participation in the alleged conspiracy ............................................... 10

II.     The Industry-Wide Relief Sought by NASCAR to Void Charter Terms Renders the Other Racing Teams Necessary Parties ...................................................... 11

CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Needle, Inc. v. Nat'l Football League,*
560 U.S. 183 (2010)................................................................................................3, 9

*Amari v. Griffin,*
339 F.R.D. 91 (W.D. Va. 2021)...........................................................................13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................................10

*In re Blue Cross Blue Shield Antitrust Litig.,*
308 F. Supp. 3d 1241 (N.D. Ala. 2018).................................................................3

*Broad. Music, Inc. v. Columbia Broad. Sys.,*
441 U.S. 1 (1979).................................................................................2, 5, 7, 8

*Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors & Publishers,*
744 F.2d 917 (2d Cir. 1984)...................................................................................3

*Camacho v. Major League Baseball,*
297 F.R.D. 457 (S.D. Cal. 2013) .........................................................................13

*Churchill Downs Inc. v. Thoroughbred Horsemen's Grp., LLC,*
605 F. Supp. 2d 870 (W.D. Ky. 2009)................................................................6, 7

*Cloverleaf Enters. Inc. v. Maryland Thoroughbred, Horsemen's Ass'n, Inc.,*
730 F. Supp. 2d 451 (D. Md. 2010)........................................................................7

*Columbia Broad. Sys., Inc. v. Am. Soc'y of Composers, Authors & Publishers,*
562 F.2d 130 (2d Cir. 1977), *rev'd sub nom. BMI v. CBS, Inc.,* 441 U.S. 1
(1979)..........................................................................................................................5

*Columbia Broad. Sys. v. Am. Soc'y of Composers, Authors & Publishers,*
620 F.2d 930 (2d Cir. 1980)................................................................................2, 5

*Compact v. Metro. Gov't of Nashville & Davidson Cnty.,*
594 F. Supp. 1567 (M.D. Tenn. 1984)...................................................................7

*In re Cotton Yarn Antitrust Litig.,*
505 F.3d 274 (4th Cir. 2007) ...............................................................................11

*Delta Fin. Corp. v. Paul D. Comanduras & Assocs.,*
973 F.2d 301 (4th Cir. 1992) ...............................................................................12

Case 3:24-cv-00886-KDB-SCR     Document 143     Filed 05/22/25     Page 3 of 23

*E.E.O.C. v. Peabody W. Coal Co.*,
    610 F.3d 1070 (9th Cir. 2010) ........................................................................12

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*,
    80 F.4th 223 (3d Cir. 2023) ............................................................................12

*Fed. Trade Comm'n v. Syngenta Crop Prot. AG*,
    711 F. Supp. 3d 545 (M.D.N.C. 2024) .............................................................8

*Five Smiths, Inc. v. NFLPA*,
    788 F. Supp. 1042 (D. Minn. 1992) ..................................................................3

*Georgia v. Pa. R.R. Co.*,
    324 U.S. 439 (1945) .......................................................................................11

*Gunvor SA v. Kayablian*,
    948 F.3d 214 (4th Cir. 2020) ..........................................................................13

*Harmon v. BankUnited, FSB*,
    2009 WL 10727188 (D. Md. Apr. 14, 2009) ...................................................12

*Hennessey v. Nat'l Collegiate Athletic Ass'n*,
    564 F.2d 1136 (5th Cir. 1977) ........................................................................11

*Home Buyers Warranty Corp. v. Hanna*,
    750 F.3d 427 (4th Cir. 2014) ..........................................................................11

*McEvoy v. Diversified Energy Co. PLC*,
    2023 WL 6192768 (N.D.W. Va. June 1, 2023) ...............................................13

*Meredith Corp. v. SESAC, LLC*,
    2011 WL 856266 (S.D.N.Y. Mar. 9, 2011) .......................................................6

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ..........................................................................10

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
    472 U.S. 284 (1985) .........................................................................................3

*Radio Music License Comm. v. Global Music Rights, LLC*,
    Case No. 2:19-cv-03957 Dkt. No. 163 (N.D. Cal. June 20, 2019) ...................6

*Saunders v. Phila. Dist. Att'y's Off.*,
    546 F. App'x 68 (3d Cir. 2013) .......................................................................11

*Seale v. Peacock*,
    32 F.4th 1011 (10th Cir. 2022) .......................................................................11

*Team Cam, LLC v. Reliable Contracting Co.*,
    2025 WL 1019262 (D. Md. Apr. 4, 2025) ................................................................7

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*,
    173 F.3d 915 (4th Cir. 1999) ....................................................................12, 13

*Transportes Penon Blanco Sapi De C.V. v. Volvo Grp. N. Am.*,
    2025 WL 951958 (M.D.N.C. Feb. 28, 2025), *report and recommendation*
    *adopted*, 2025 WL 951592 (M.D.N.C. Mar. 28, 2025) ........................................12

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940) ................................................................................7

*US Airways Grp. v. Brit. Airways PLC*,
    989 F. Supp. 482 (S.D.N.Y. 1997) ....................................................................10

**Statutes**

15 U.S.C. § 1 ................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................8, 13

Fed. R. Civ. P. 19 ................................................................................ *passim*

## INTRODUCTION

Counter-Defendants 2311 Racing LLC d/b/a 23XI Racing ("23XI"), Front Row Motorsports, Inc. ("Front Row") and Curtis Polk submit this memorandum in response to the Court's request for supplemental briefing on: (1) Counter-Defendants' motions to dismiss NASCAR's counterclaim in light of its amendment; and (2) whether the non-party NASCAR teams are necessary parties that must be joined under Federal Rule of Civil Procedure 19.

As previously discussed in Counter-Defendants' opposition to NASCAR's motion to amend, Dkt. No. 129, NASCAR's amended counterclaim does not fix the fatal flaws in NASCAR's original counterclaim, because it fails to allege facts plausibly showing an actionable Section 1 conspiracy. Specifically, the amended counterclaim does not, and cannot, allege facts plausibly showing that the chartered racing teams agreed not to engage in individual negotiations with NASCAR. To the contrary, the amended counterclaim concedes (as it must) that such individual negotiations occurred and led to the 2025 Charter Agreement. Further, NASCAR's amended counterclaim still fails to plausibly plead any rule of reason violation, a relevant market, anticompetitive effects, or concrete injury, and alleges no facts to plausibly connect Front Row to the alleged conspiracy. Indeed, NASCAR does not and cannot even plead that racing teams compete against one another in any relevant market when negotiating the common terms of the Charter Agreement with NASCAR, because the basic economic terms of the Charter Agreement for which the racing teams have jointly negotiated are going to be the same for all chartered teams.

For these reasons, the amended counterclaim does not state a claim for an actionable restraint of trade as a matter of law and it should be dismissed with prejudice.

While the Court need not reach the Rule 19 issue because of the amended counterclaim's fatal flaws, NASCAR cannot seek relief that would invalidate the contractual right of guaranteed entry into Cup Series races for ***all*** chartered teams without joining the teams whose rights would

1

be rescinded. Am. Countercl. Compl., Dkt. No. 136 at 40–41. Under Rule 19(a), those chartered teams' contractual rights cannot be eliminated without their joinder in the litigation. If this request to vacate their contractual rights is not stricken or withdrawn, the absent charter teams would be necessary parties.

## ARGUMENT

### I. NASCAR's Amended Counterclaim Should Be Dismissed with Prejudice

#### A. NASCAR cannot allege a restraint of trade

NASCAR's counterclaim, even as amended, must be dismissed because it does not, and cannot, set forth allegations to plausibly state an actionable conspiracy in restraint of trade in violation of Section 1. Specifically, the amended counterclaim alleges that Counter-Defendants participated in an agreement with the other chartered racing teams, who belonged to the RTA, to engage in joint negotiations over the terms of the 2025 Charter Agreement with NASCAR and to engage in other joint activities in support of those negotiations, just as NASCAR and the RTA did for the 2016 Charter Agreement. Am. Countercl. Compl., Dkt. No. 136 ¶¶ 42–44, 131–33. But under controlling authority, it is not an agreement in restraint of trade for competitors to engage in joint negotiations with a willing counterparty, like NASCAR, when they do not also agree to preclude individual negotiations as an alternative. 23XI Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 115-1 at 10–12; 23XI Reply Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 126 at 2–4. In such a situation, the agreement to jointly negotiate is not a "restraint" of trade because it does not restrain any of the participants from also engaging in individual negotiations if the counterparty chooses that alternative. *See Broad. Music, Inc. v. Columbia Broad. Sys.*, 441 U.S. 1, 23–24 (1979) ("*BMI*"); *Columbia Broad. Sys. v. Am. Soc'y of Composers, Authors & Publishers*, 620 F.2d 930, 936 (2d Cir. 1980) (*"CBS"*) ("[T]he opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual

rights is fully available."); *Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 933 (2d Cir. 1984) ("[S]ince the blanket license restrains no one from bargaining over the purchase and sale of music performance rights, it is not a restraint unless it were proven that there are no realistically available alternatives.").

While NASCAR has argued that this principle only applies in the context of the joint licensing of intellectual property, *see* NASCAR Reply Mem. of Law in Supp. of Mot. to Amend, Dkt. No. 132 at 8–10, that is not correct. The principle laid down by the courts—that joint buying or selling can provide an efficient alternative to individual negotiations that does not restrain trade where it does not preclude or restrict individual decision-making by competitors—has general application. *See Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 295 (1985) ("Wholesale purchasing cooperatives . . . are not a form of concerted activity characteristically likely to result in predominantly anticompetitive effects."); *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241, 1275 (N.D. Ala. 2018) ("Cooperative purchasing arrangements also do 'not necessarily stifle competition,' as they can be used . . . to 'exploit[ ] the productive efficiencies that result from conducting business on a larger scale.'") (citation omitted). This is especially true in the context of a sports league, like NASCAR, where it is undisputed that many of the Charter Agreement terms to be negotiated with the teams have to be the same for all of the teams in order to have a league (*e.g.*, the amount of prize money to be awarded for the races, the number of races to be run, and the conditions of the competition). *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 202 (2010) ("The fact that NFL teams share an interest in making the entire league successful and profitable, and that they must cooperate in the production and scheduling of games, provides a perfectly sensible justification for making a host of collective decisions."); *Five Smiths, Inc. v. NFLPA*, 788 F. Supp. 1042, 1049 (D. Minn. 1992) (joint

"negotiating tactics" by the NFL Players Association and player-agents was insufficient to state a Section 1 claim).

Here, NASCAR's amended counterclaim does not and cannot allege that the teams agreed to preclude or even restrict individual negotiations with NASCAR. To the contrary, it is undisputed that when the joint negotiations did not produce a result to NASCAR's liking, NASCAR changed course and conducted individual negotiations with each of the chartered teams, which led to the execution of the 2025 Charter Agreement by all of those teams, on NASCAR's desired terms, with the exception of 23XI and Front Row. Am. Countercl. Compl., Dkt. No. 136 ¶ 67 ("[T]eams had individual discussions with NASCAR"); *id.* ¶ 76 ("NASCAR also sought to simultaneously negotiate with the teams individually"); *id.* ¶ 98 ("[C]ertain Charter teams did have individual meetings with NASCAR regarding negotiating the Charter Agreement.").[1]

None of the new allegations in NASCAR's amended counterclaim fix this legal deficiency. As shown in Counter-Defendants' opposition to NASCAR's motion to amend the counterclaim, NASCAR's new allegations cherry-pick quotes from documents produced in discovery in which the chartered teams discussed trying to maintain unity in the joint negotiations in which NASCAR agreed to participate. NASCAR Mem. of Law in Supp. of Mot. to Amend, Dkt. No. 123-1 at 5–6. But *none* of these new allegations suggest that the teams agreed to refrain from individual negotiations, refused any request by NASCAR to engage in such individual negotiations, or fixed the terms of such individual negotiations. It is undisputed that all of the other racing teams agreed with NASCAR's "final" Charter Agreement terms through individual negotiations, while Counter-

---

[1] *See also* NASCAR's First Answer, Dkt. No. 58 ¶ 23 ("[NASCAR] admit[s] that 23XI Racing and Front Row Motorsports were the only two Cup Series teams that declined to sign the 2025 Charter Agreement."); *id.* ¶ 107 ("NASCAR engaged in individual negotiations with certain teams to address their individual requests regarding the 2025 Charter Agreements while still negotiating with the teams negotiating collectively.").

Defendants reached the opposite conclusion. *See supra* at 4. In fact, NASCAR said these individual negotiations were necessary to meet individual teams' specific requests. *See* NASCAR's First Answer, Dkt. No. 58 ¶ 107 ("NASCAR engaged in individual negotiations with certain teams to **address their individual requests** regarding the 2025 Charter Agreements while still negotiating with the teams negotiating collectively.") (emphasis added). It is also undisputed that NASCAR agreed to engage in joint negotiations with the RTA members for the renewal of charters more than two years before the 2016 Charter Agreements were scheduled to expire because of the mutual benefit that such negotiations would provide to both NASCAR and the teams. *See* Am. Countercl. Compl., Dkt. No. 136 ¶ 59 ("Shortly thereafter, in June 2022, the TNC, led by Polk, presented NASCAR its initial proposal and represented that the proposal had been agreed upon by all 16 teams holding 36 Charters at the time.").

NASCAR's efforts to distinguish the *BMI* line of cases are unpersuasive. With respect to *BMI*, NASCAR's reference to the history of the ASCAP consent decree, *see* NASCAR Reply Mem. of Law in Supp. of Mot. to Amend, Dkt. No. 132 at 9, just underscores our point: the decree was modified to allow for individual negotiations like those conducted by NASCAR to produce the 2025 Charter Agreement. *See Columbia Broad. Sys., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 562 F.2d 130, 134 (2d Cir. 1977), *rev'd sub nom. BMI*, 441 U.S. 1 (1979) ("And a prospective licensee is theoretically free to negotiate for non-exclusive performance rights with any ASCAP member, without interference by ASCAP."). Similarly, the question in dispute in *CBS*—whether individual negotiations were "feasible," *see* Dkt. No. 132 at 9–10; 620 F.2d at 937—is plainly answered by NASCAR's amended counterclaim, which admits that individual negotiations were not just feasible — they took place and led to individual agreements.

The new cases cited in NASCAR's reply brief, *see* Dkt. No. 132 at 10, lend it no support. In *Meredith Corp. v. SESAC, LLC*, 2011 WL 856266 (S.D.N.Y. Mar. 9, 2011), the court allowed the Section 1 claim to proceed past a motion to dismiss only because the plaintiffs (local TV stations) plausibly alleged they had no choice but to accept jointly negotiated blanket licenses for TV theme show music which they did not desire. *Id.* at *14. NASCAR cannot and does not make any such allegation here. And the docket entries that NASCAR cites from the *Radio Music License Committee* case in California are completely inapposite: those citations are to a complaint written by NASCAR's law firm and a two-page order containing no legal reasoning.[2]

### B. NASCAR has not alleged a *per se* violation as a matter of law

Counter-Defendants showed in their motion to dismiss briefing why NASCAR cannot allege a *per se* claim. 23XI Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 115-1 at 12–17; 23XI Reply Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 126 at 5–7. NASCAR's new allegations focus solely on the efforts of the racing teams to pursue voluntary joint negotiations with NASCAR over the terms of the 2025 Charter Agreement, but such joint negotiations do not fit into any category of *per se* unlawful conduct. *See* Counter-Defs. Mem. of Law in Opp. to Mot. to Amend, Dkt. No. 129 at 7–9.

NASCAR's reply cites group-boycott cases that provide no support for applying the *per se* rule here. NASCAR Reply Mem. of Law in Supp. of Mot. to Amend, Dkt. No. 132 at 10–11. In *Churchill Downs Inc. v. Thoroughbred Horsemen's Grp., LLC*, 605 F. Supp. 2d 870 (W.D. Ky.

---

[2] In any event, Latham & Watkins' complaint in *Radio Music License Committee* included allegations that individual negotiations with musical artists were ***not*** available to the plaintiff radio stations in that case. *Radio Music License Comm. v. Global Music Rights, LLC*, Case No. 2:19-cv-03957 Dkt. No. 163 ¶ 5 (N.D. Cal. June 20, 2019) (alleging that "the *exclusive* way to get permission to play *any* songs in its repertoire is by buying a license for *all* of them *only* from" the joint selling cooperative) (emphasis in original). That is precisely the allegation NASCAR cannot make in this case, and why its Section 1 claim fails as a matter of law.

2009), the plaintiffs alleged a group boycott by horse owners and horse trainers, who agreed to collectively block racetracks from conducting off-track betting. *Id.* at 873, 877. *Cloverleaf Enters. Inc. v. Maryland Thoroughbred, Horsemen's Ass'n, Inc.*, 730 F. Supp. 2d 451 (D. Md. 2010), involved an alleged group boycott to prevent a racetrack operator in Maryland from receiving simulcast racing signals. *Id.* at 463–64. By contrast, here, NASCAR has not alleged any facts plausibly showing a group boycott of any NASCAR races or exhibitions. NASCAR has not alleged Counter-Defendants or any race team ever skipped a Cup Series or exhibition race. Rather, NASCAR at most alleged a non-actionable *attempted* group boycott of an exhibition race, *see* 23XI Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 115-1 at 13–14, which NASCAR has since disclaimed as the basis for its Section 1 claim, *see* 23XI Reply Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 126 at 5.[3]

NASCAR's citation to *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) is also far off base. NASCAR Reply Mem. of Law in Supp. of Mot. to Amend, Dkt. No. 132 at 8. That was not a joint negotiations case; it concerned a criminal price-fixing scheme by major oil companies to set a price floor in the consumer market for gasoline sales. *Socony*, 310 U.S. at 219–20. There is no case that has ever applied the *per se* rule to the type of voluntary joint negotiations between sports teams and a sports league that are at issue here. And NASCAR has no response to the Supreme Court's holding in *BMI* that the full rule of reason—not the *per se* rule—applies to

---

[3] NASCAR also cites to other cases that are inapplicable because, unlike in this case, they involved actual group boycotts or other *per se* unlawful agreements. *See Compact v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F. Supp. 1567, 1568–69 (M.D. Tenn. 1984) (alleging a joint venture contract in which members agreed not to work on venture projects individually or outside the joint venture); *Team Cam, LLC v. Reliable Contracting Co.*, 2025 WL 1019262, at *8 (D. Md. Apr. 4, 2025) (alleging asphalt companies jointly pressured a horizontal competitor-plaintiff to make contract price adjustments, refused to sell asphalt to the plaintiff, and sabotaged the plaintiff's bids).

any claim that the establishment of prices in joint negotiations is a Section 1 violation. *See BMI*, 441 U.S. at 24–25 (rule of reason should be applied to joint negotiations).

### C. NASCAR has not stated a claim under the rule of reason

Nor has NASCAR stated a rule of reason claim. *See* 23XI Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 115-1 at 17–20; 23XI Reply Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 126 at 8–9. NASCAR's alleged relevant market still falls far short of meeting the Rule 12(b)(6) standard, because NASCAR has made no attempt to address the existence of reasonably interchangeable substitutes in its alleged market for the entry of teams in NASCAR Cup Series races, such as other racing teams or organizations, besides the RTA members, that might apply for charters. *See Fed. Trade Comm'n v. Syngenta Crop Prot. AG*, 711 F. Supp. 3d 545, 565 (M.D.N.C. 2024) (product market turns on "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself *and substitutes for it*") (emphasis added). NASCAR has still not met the basic pleading requirement of explaining the alleged reasonable substitutes (or lack thereof) available to NASCAR in its proposed market for the entry of cars into Cup Series races. *Compare* Am. Compl., Dkt. No. 107 ¶¶ 119–26, *with* Am. Countercl. Compl., Dkt. No. 136 ¶¶ 125–28.

Further, NASCAR has not alleged that Counter-Defendants and the other race teams conspired to restrain competition in any market where they *actually compete*. To be sure, NASCAR teams compete in some respects, such as for drivers and sponsors and against one another on the racetrack for prize money. But there is no allegation in the amended counterclaim, nor could there be, that teams compete with each other when jointly negotiating the common economic terms of the Charter Agreement with NASCAR. It is undisputed in the amended counterclaim that the Charter Agreement's economic terms were going to be the same for all chartered teams. *See* Am. Countercl. Compl., Dkt. No. 136 ¶ 82 ("NASCAR agreed to increase

the percentage of revenue **to the teams** by approximately 25%") (emphasis added). Just because sports teams within the same league compete against each other in some ways does not mean they compete in all respects; and here, NASCAR's amended counterclaim contains no allegations of competition between the teams when it comes to jointly negotiating the common terms of the Charter Agreement. *See Am. Needle*, 560 U.S. at 197, 204 (noting that some common rules and agreements among teams within a single sports league are necessary for the sports league to operate).

Indeed, the amended counterclaim still fails to make any factual allegations plausibly to support the claim that the joint negotiations had any anticompetitive effects or lacked any procompetitive justification in the alleged relevant market. *See* 23XI Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 115-1 at 18–20; 23XI Reply Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 126 at 8–9. Instead, it concedes that NASCAR obtained the final Charter Agreement terms that it demanded through individual negotiations and does not dispute the joint negotiations which preceded the individual negotiations offered procompetitive efficiencies to the charter negotiation process. *Id.*

**D.    NASCAR has not alleged any concrete injury in fact**

Similarly, the amended counterclaim does not cure NASCAR's failure to plead facts plausibly showing any concrete injury from the challenge joint negotiations, let alone an antitrust injury. *See* Counter-Defs. Mem. of Law in Opp. to Mot. to Amend, Dkt. No. 129 at 10–11. The amended counterclaim makes the wholly conclusory assertion that the joint negotiations caused NASCAR to pay "supracompetitive prices" to the teams in the 2025 Charter Agreement. *See* NASCAR Reply Mem. of Law in Supp. of Mot. to Amend, Dkt. No. 132 at 12. But NASCAR does not provide a plausible theory, backed by any non-conclusory allegations, to show how this can be the case in light of the fact that NASCAR admits that it abandoned the joint negotiations

and conducted individual negotiations with the teams that led to 13 teams signing the 2025 Charter Agreement on the terms demanded by NASCAR. *See supra* at 4. Making a conclusory assertion, with no factual support, that the joint negotiations caused NASCAR to pay the teams 25 percent more than it would have otherwise paid does not satisfy the pleading standard for injury. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007) ("Moreover, a 'naked assertion' of antitrust injury, the Supreme Court has made clear, is not enough; an antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *US Airways Grp. v. Brit. Airways PLC*, 989 F. Supp. 482, 489 (S.D.N.Y. 1997) (same).

### E.     NASCAR has made no specific allegations to plausibly show Front Row's participation in the alleged conspiracy

Finally, NASCAR's amended counterclaim against Front Row must be dismissed for the additional reason that NASCAR does not include specific allegations plausibly showing Front Row's participation in any conspiracy. *See* Front Row Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 116-1; Front Row Reply Mem. of Law in Supp. of Mot. to Dismiss & Mot. to Strike, Dkt. No. 127.

After Counter-Defendants pointed out the complete lack of specific factual allegations as to Front Row, NASCAR's amended counterclaim added a few more conclusory allegations mentioning Front Row by name. *See* Am. Countercl. Compl., Dkt. No. 136 ¶¶ 102, 104–05, 112–13. But these new allegations do not substantively go beyond the prior claims that Front Row participated in the RTA and its formulation of joint proposals to be presented to NASCAR through TNC. As previously shown, *see* Dkt. Nos. 116-1, 127, merely participating in a trade association like the RTA, or in its joint negotiations voluntarily agreed to by NASCAR, is not sufficient to show that Front Row participated in any actionable conspiracy against NASCAR.

10

Because NASCAR has already been allowed to amend its counterclaim in response to Counter-Defendants' motion to dismiss, the Court should find that it would be futile to give NASCAR another chance to amend, and the amended counterclaim should be dismissed with prejudice. *See Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022); *Saunders v. Phila. Dist. Att'y's Off.*, 546 F. App'x 68, 73 (3d Cir. 2013) (per curiam). Simply put, the joint negotiations of Counter-Defendants and the other racing teams agreed to by NASCAR, which followed the pattern of joint negotiations used by members of the RTA to negotiate the 2016 Charter Agreement, and which were ultimately abandoned by NASCAR in favor of individual negotiations, cannot state an actionable Section 1 claim.

## II. The Industry-Wide Relief Sought by NASCAR to Void Charter Terms Renders the Other Racing Teams Necessary Parties

Ordinarily, under Rule 19, co-conspirators in an antitrust conspiracy are "not necessary parties; a plaintiff can prove the existence of a conspiracy in an action against just one of the members of the conspiracy." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 284 (4th Cir. 2007); *see also Georgia v. Pa. R.R. Co.*, 324 U.S. 439, 463 (1945) ("In a suit to enjoin [an antitrust] conspiracy not all the conspirators are necessary parties."); *Hennessey v. Nat'l Collegiate Athletic Ass'n*, 564 F.2d 1136, 1147 (5th Cir. 1977) ("[I]t is permissible to sue but one of several alleged co-conspirators."). However, NASCAR's decision to seek equitable relief invalidating a critical term in all of the 2025 Charter Agreements renders the other racing teams necessary parties under Rule 19 (a), as their contractual rights cannot be voided in their absence. Am. Countercl. Compl., Dkt. No. 136 at 40–41.

"The first question under Rule 19(a) is 'whether a party is necessary to a proceeding because of its relationship to the matter under consideration.'" *Home Buyers Warranty Corp. v.*

*Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (quoting *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir. 1999)). Under Rule 19, a party is "necessary" to the action if it "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i).

Courts "are virtually unanimous in holding that in suits between parties to a contract seeking rescission of that contract, all parties to the contract . . . are necessary parties." *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305 (4th Cir. 1992). Applying this principle, courts have held that where a party (like NASCAR) seeks relief to rescind the contractual rights of a non-party, that party is necessary under Rule 19(a). *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 233 (3d Cir. 2023) ("[P]arties owning rights under disputed contracts . . . generally have a legally protected interest under Rule 19(a)(1)(B)(i)."); *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010) ("[N]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.") (citation omitted).[4]

Here, NASCAR is seeking equitable relief to rescind the contractual right of guaranteed entry into NASCAR Cup Series races for ***all*** chartered teams:

> NASCAR prays for judgment and relief as follows . . . [t]hat an injunction be issued to grant such relief as is necessary to restore competition including, the elimination of Section 3.1(a) of the 2025 Charter Agreement which provides for guaranteed entry into Cup Series races *if Counterclaim Defendants persist in seeking to have the Charter Agreements declared as unlawful under the antitrust*

---

[4] *See also Transportes Penon Blanco Sapi De C.V. v. Volvo Grp. N. Am.*, 2025 WL 951958, at *7 (M.D.N.C. Feb. 28, 2025), *report and recommendation adopted*, 2025 WL 951592 (M.D.N.C. Mar. 28, 2025); *Harmon v. BankUnited, FSB*, 2009 WL 10727188, at *4 (D. Md. Apr. 14, 2009).

*laws or seek the elimination of Section 6.6 or other provisions of the 2025 Charters mutually agreed upon by NASCAR and approximately ninety-percent of Charter holders.*

Am. Countercl. Compl., Dkt. No. 136 at 40–41 (emphasis added).[5]

As the Fourth Circuit explained in *Gunvor SA v. Kayablian*, in such circumstances, "fairness dictates" that the non-party teams "be given the opportunity to protect [their] separate and distinct interest as a party." 948 F.3d 214, 221 (4th Cir. 2020); *see Keal Driveaway Co.*, 173 F.3d at 918 ("Since the very purpose of [plaintiff]'s suit is to vacate the contract interpretation for which [non-party] fought, permitting this suit to proceed to judgment could 'impair or impede' [non-party]'s ability to protect its interests under its contract with [defendant]."); *Camacho v. Major League Baseball*, 297 F.R.D. 457, 462 (S.D. Cal. 2013) (holding that the parties to a sports league contract were necessary under Rule 19(a)).

Accordingly, if the amended counterclaim is not dismissed, and NASCAR persists in seeking relief that would void one of the most important charter rights of the non-party teams, those teams must be joined as necessary parties. *Amari v. Griffin*, 339 F.R.D. 91, 93 (W.D. Va. 2021) ("A 'necessary' party 'must' be joined if it is subject to service of process and if its joinder will not deprive the court of subject-matter jurisdiction.") (quoting Fed. R. Civ. P. 19(a)(1)).

## **CONCLUSION**

For the reasons set forth above, as well as in the prior briefing, the amended counterclaim should be dismissed with prejudice for failing to state a claim under Rule 12. Further, if the amended counterclaim is not dismissed, and the requested relief to invalidate Charter Agreement

---

[5] While Plaintiffs may seek an injunction preventing NASCAR from enforcing its anticompetitive non-compete provisions in the charter agreements, that relief does not implicate Rule 19 because it would only benefit the non-party teams and not cause them to lose any bargained-for contractual rights. *See McEvoy v. Diversified Energy Co. PLC*, 2023 WL 6192768, at *6 (N.D.W. Va. June 1, 2023) (holding that Rule 19(a) requires an interest that "could be prejudiced by the litigation").

rights of the other racing teams is not stricken by the Court or withdrawn by NASCAR, the other

racing teams will be joined as necessary parties under Rule 19(a).

Dated: May 22, 2025                    Respectfully submitted,

                                       WINSTON & STRAWN LLP


                    By:    */s/ Jeffrey L. Kessler*
                           Jeffrey L. Kessler
                           Neha Vyas
                           **WINSTON & STRAWN LLP**
                           200 Park Avenue
                           New York, NY 10166
                           Tel: (212) 294-6700
                           Fax: (212) 294-4700
                           jkessler@winston.com
                           nvyas@winston.com

                           E. Danielle T. Williams
                           **WINSTON & STRAWN LLP**
                           300 South Tryon Street
                           16th Floor
                           Charlotte, NC 28202
                           Tel: (704) 350-7700
                           Fax: (704) 350-7800
                           dwilliams@winston.com

                           Jeanifer E. Parsigian
                           Michael Toomey
                           **WINSTON & STRAWN LLP**
                           101 California Street
                           San Francisco, CA 94111
                           Tel: (415) 591-1000
                           Fax: (415) 591-1400
                           jparsigian@winston.com
                           mtoomey@winston.com

                           Matthew R. DalSanto
                           **WINSTON & STRAWN LLP**
                           35 W. Wacker Drive
                           Chicago, IL 60601
                           Tel: (312) 558-5600
                           Fax: (312) 558-5700
                           mdalsanto@winston.com

                           Josh Hafenbrack
                           **WINSTON & STRAWN LLP**
                           1901 L Street N.W.

Washington, D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com

Benjamin Gordon
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
bgordon@winston.com

*Counsel for 2311 Racing LLC d/b/a 23XI
Racing, Front Row Motorsports, Inc., and
Curtis Polk*

## CERTIFICATE OF COMPLIANCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

*Counsel for 2311 Racing LLC d/b/a 23XI Racing and Curtis Polk*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **COUNTER-DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO AMENDED COUNTERCLAIM** was electronically filed using the Court's CM/ECF system, which will automatically send notice of this filing to counsel of record for all parties, and I caused an unredacted copy of the foregoing to be served on counsel of record for all parties, including:

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Christopher S. Yates
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

Lawrence E. Buterman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com

Anna M. Rathbun
Christina R. Gay
David L. Johnson
Christopher J. Brown
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
christina.gay@lw.com
david.johnson@lw.com
chris.brown@lw.com

*Counsel for NASCAR Event Management, LLC*

_____
*Jeffrey L. Kessler*
Jeffrey L. Kessler