**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. <br><br> ──────────────────── <br><br> NASCAR EVENT MANAGEMENT, LLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> 2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK, <br><br> Counter-Defendants. | No. 3:24-cv-886-KDB-SCR |

**NASCAR'S SUPPLEMENTAL BRIEF IN OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS NASCAR'S COUNTERCLAIM**

# **CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

FACTUAL AND PROCEDURAL SUMMARY ........................................................................ 1

LEGAL STANDARD ............................................................................................................... 2

ARGUMENT ............................................................................................................................ 3

I.      NASCAR'S DAMAGES CLAIM DOES NOT REQUIRE JOINDER OF
        ADDITIONAL TEAMS ................................................................................................. 3

II.     THE POSSIBILITY OF INJUNCTIVE RELIEF DOES NOT REQUIRE
        JOINDER, UNLESS 23XI AND FRONT ROW FORCE THAT RESULT
        THROUGH THEIR OWN CLAIMS ............................................................................. 5

III.    JOINING OTHER TEAMS IS LEGALLY "FEASIBLE," BUT NOT
        REQUIRED ................................................................................................................. 10

IV.     THE AMENDED COUNTERCLAIM PLEADS AN ILLEGAL CONSPIRACY .......... 11

V.      THE RTA'S PURPORTED AMICUS BRIEF IS IMPROPER ........................................ 13

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*,
No. 24-2245 (4th Cir. May 9, 2024) ............................................................................................6

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) ...................................................................................................7

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959)....................................................................................................................9

*Bridgetree, Inc. v. Red F Mktg., LLC*,
2012 WL 896111 (W.D.N.C. Mar. 15, 2012)............................................................................4

*California v. Texas*,
593 U.S. 659 (2021)....................................................................................................................8

*Cont'l Airlines, Inc. v. United Air Lines, Inc.*,
120 F. Supp. 2d 556 (E.D. Va. 2000) ......................................................................................12

*Corcoran v. Peleus Ins. Co.*,
2021 WL 3472664 (D. Md. Aug. 6, 2021) ................................................................................3

*Crouse-Hinds Co. v. InterNorth, Inc.*,
634 F.2d 690 (2d Cir. 1980)......................................................................................................7

*CSR Ltd. v. Fed. Ins. Co.*,
40 F. Supp. 2d 559 (D.N.J. 1998) ............................................................................................12

*David v. Alphin*,
704 F.3d 327 (4th Cir. 2013) ....................................................................................................6

*Deutsche Bank Nat'l Tr. v. FDIC*,
717 F.3d 189 (D.C. Cir. 2013)...................................................................................................6

*Espin v. Citibank*,
2023 WL 6447231 (E.D.N.C. Sept. 29, 2023).........................................................................11

*Goodyear Dunlop Tires Operations v. Brown*,
564 U.S. 915 (2011)..................................................................................................................11

*In re Cotton Yarn Antitrust Litig.*,
505 F.3d 274 (4th Cir. 2007) .....................................................................................................4

*In re Google Play Store Antitrust Litig.*,
　　2024 WL 4438249 (N.D. Cal. Oct. 7, 2024)............................................................10

*In re High-Tech Emps. Antitrust Litig.*,
　　856 F. Supp. 2d 1103 (N.D. Cal. 2012) ..................................................................12

*Lomayaktewa v. Hathaway*,
　　520 F.2d 1324 (9th Cir. 1975) ..................................................................................7

*Mainstream Const. Grp. v. Dollar Props., LLC*,
　　2010 WL 2039671 (E.D.N.C. May 20, 2010) ...........................................................3

*Marshall v. James B. Nutter & Co.*,
　　816 F. Supp. 2d 259 (D. Md. 2011)........................................................................4, 5

*McKiver v. Murphy-Brown, LLC*,
　　980 F.3d 937 (4th Cir. 2020) ....................................................................................9

*Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*,
　　210 F.3d 246 (4th Cir. 2000) ....................................................................................7

*Pettiford v. City of Greensboro*,
　　556 F. Supp. 2d 512 (M.D.N.C. 2008) ...................................................................2, 3

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
　　390 U.S. 102 (1968)...................................................................................................8

*Sunbelt Rentals Inc. v. Guzman*,
　　2020 WL 5522997 (W.D.N.C. Aug. 27, 2020).........................................................2, 3

*Temple v. Synthes Corp.*,
　　498 U.S. 5 (1990).......................................................................................................4

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
　　451 U.S. 630 (1981)...................................................................................................4

*TransUnion LLC v. Ramirez*,
　　594 U.S. 413 (2021)...................................................................................................6

*Trump v. Hawaii*,
　　585 U.S. 667 (2018)...................................................................................................8

*United States v. Webb*,
　　2014 WL 1870732 (E.D.N.C. May 8, 2014) .............................................................3

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
　　668 F.2d 1014 (9th Cir. 1981) ..................................................................................4

*Wilson P. Abraham Const. Corp. v. Texas Indus., Inc.*,
   604 F.2d 897 (5th Cir. 1979), *aff'd*, 451 U.S. 630 (1981) ........................................................4

## STATUTES

15 U.S.C. § 26.................................................................................................................................8

28 U.S.C. § 1331.............................................................................................................................10

## RULES

Fed. R. Civ. P. 19...................................................................................................................2, 5, 8

## INTRODUCTION

The non-party racing teams that signed thirty-two separate Charter Agreements with NASCAR are not required parties to NASCAR's Counterclaim under Rule 19. It is well-settled that NASCAR's damages claim does not require joinder. As for the injunctive relief sought in the Counterclaim, the Court's decision with respect to Rule 19 will turn on the exact scope of the injunctive relief *Plaintiffs* are seeking. If Plaintiffs are seeking to rewrite the terms of all of the Charter Agreements (even though they did not sign them), then Rule 19 required Plaintiffs to join the other teams. If Plaintiffs are not seeking to rewrite the terms of the Charter Agreements, then Plaintiffs did not need to join the other teams—and NASCAR's conditional request for injunctive relief does not necessitate their joinder either. But if the Court ultimately concludes that Plaintiffs' frontal assault on both the Charter system and allegedly exclusionary provisions in the Charter Agreements necessitates joinder of the non-party racing teams, joinder is feasible because all of those teams are subject to the jurisdiction of this Court. In any event, dismissal of the Amended Counterclaim is not appropriate here.

## FACTUAL AND PROCEDURAL SUMMARY

NASCAR entered into separate Charter Agreements covering thirty-two separate cars in September 2024. Plaintiffs refused to sign NASCAR's offer for four Charters and, after rejecting NASCAR's offer, commenced litigation seeking both damages and injunctive relief. Both Plaintiffs' Complaint and their motion for a preliminary injunction identified multiple provisions of the Charter Agreements that Plaintiffs contend are exclusionary acts under Section 2 of the Sherman Act. For instance, Plaintiffs' motion for preliminary injunction identifies the following provisions as allegedly unlawful: "restrictive covenants preventing independent contractor charter teams from competing in non-NASCAR stock car racing events [and] restrictive provisions preventing use of Next Gen cars and parts in non-NASCAR events." Doc. 20-1 at 9. Similarly,

1

their Amended Complaint argues that the Charter Agreements contain "anticompetitive terms includ[ing] non-compete restrictions and Next Gen car requirements," Doc. 107 at ¶ 155, and seeks to have the Charter Agreements "be adjudged to be unreasonable restraints of trade," *id.* at 42 (prayer for relief).

NASCAR filed a Counterclaim against Plaintiffs on March 5, 2025, Doc. 111, and the Court allowed NASCAR to file an Amended Counterclaim on May 8, 2025, Doc. 133. NASCAR asserts a claim for damages caused by Plaintiffs' violation of Sherman Act Section 1 and, also, seeks conditional injunctive relief: "That an injunction be issued to grant such relief as is necessary to restore competition including, the elimination of Section 3.1(a) of the 2025 Charter Agreement which provides for guaranteed entry into Cup Series races *if* Counterclaim Defendants persist in seeking to have the Charter Agreements declared as unlawful under the antitrust laws or seek the elimination of Section 6.6 or other provisions of the 2025 Charters mutually agreed upon by NASCAR and approximately ninety percent of Charter holders." Doc. 136 at 40-41 (emphasis added). The Court requested supplemental briefs addressing "whether, in light of NASCAR's allegations and requested relief involving the 2025 Charters, the other chartered race teams not currently involved in this action are required parties pursuant to Rule 19." Doc. 133 at 2.

## LEGAL STANDARD

Rule 19 sets a high standard for when a person "must be joined as a party" to an ongoing case. Fed. R. Civ. P. 19(a)(1). If the person has not affirmatively "claim[ed] an interest related to the subject of the action," then Rule 19 requires joinder only if, "in that person's absence, the court cannot accord complete relief among existing parties." *Id.* at 19(a)(1)(A); *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 517 (M.D.N.C. 2008) ("Rule 19(a)(1)(A) focuses on the relief to existing parties."). This inquiry under Rule 19(a)(1)(A) "refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Sunbelt*

*Rentals Inc. v. Guzman*, 2020 WL 5522997, at *2 (W.D.N.C. Aug. 27, 2020).[1]  If the absent person is not a "required party, however, the inquiry ends."  *United States v. Webb*, 2014 WL 1870732, at *2 (E.D.N.C. May 8, 2014); *see also Mainstream Const. Grp. v. Dollar Props., LLC*, 2010 WL 2039671, at *2 (E.D.N.C. May 20, 2010) (same).

Even if an absent person is "required," the non-joinder of that person is rarely a basis to dismiss a civil claim.  "Courts are loath" to dismiss for non-joinder and "dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result."  *Webb*, 2014 WL 1870732, at *2.  A party seeking dismissal for non-joinder must prove *both* that the person is "required" (i.e., "necessary") to the action *and* that the person is "indispensable."  *Id*.  "[O]nly necessary persons may be indispensable, but not all necessary persons are indispensable."  *Pettiford*, 556 F. Supp. 2d at 522 n.7 (citation omitted).

## ARGUMENT

## I.  NASCAR'S DAMAGES CLAIM DOES NOT REQUIRE JOINDER OF ADDITIONAL TEAMS

There are no additional required parties to NASCAR's antitrust Counterclaim for damages. NASCAR has asserted one claim for damages arising out of 23XI, Front Row, and team owner Curtis Polk (among others) conspiring to eliminate competition among racing teams during the negotiation of the 2025 Charters and to artificially fix and elevate their terms to the benefit of the Counterclaim Defendants, in violation of Sherman Act Section 1.  *See generally* Doc. 136, Am.

---

[1]     Rule 19(a)(1)(B) provides another basis for an absent party to be deemed "required," but "[i]t is well established that where the absent party has not claimed an interest, Rule 19(a)(1)(B) does not apply."  *Sunbelt Rentals*, 2020 WL 5522997, at *2; *see also Corcoran v. Peleus Ins. Co.*, 2021 WL 3472664, at *4 (D. Md. Aug. 6, 2021) ("[A] prerequisite to finding required joinder under this provision is that the alleged required party 'claims an interest related to the subject of the action.'" (citation omitted)); *Webb*, 2014 WL 1870732, at *3 (finding that Rule 19(a)(1)(B) "plainly requires the absentee to claim an interest in the litigation").  No absent party has claimed an interest here, but the outcome described below would not change based on a Rule 19(a)(1)(B) analysis in any event.

Counterclaim. The fact that some or all of the teams that ultimately signed Charters in September 2024 were involved does not require the Court to join those teams to NASCAR's damages claim. It is "well-settled law" that Rule 19 "does not require the mandatory joinder of co-conspirators." *Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 265 (D. Md. 2011); *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 284 (4th Cir. 2007) ("[C]o-conspirators are not necessary parties in an action against a single conspirator."); *Bridgetree, Inc. v. Red F Mktg., LLC*, 2012 WL 896111, at *3 (W.D.N.C. Mar. 15, 2012) ("Merely because Plaintiffs may assert claims against the Chinese Defendants as co-conspirators does not render those parties mandatory under the Federal Rules of Civil Procedure."). "[C]ourts at every level, including the Supreme Court of the United States, the Federal Rules of Civil Procedure themselves, and numerous commentators have recognized that Rule 19 does not mandate joinder of co-conspirators." *Marshall*, 816 F. Supp. 2d at 265 (citations omitted).

Joinder of coconspirators is not required for NASCAR to pursue damages because all "[a]ntitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy," with no right of contribution from each other. *Wilson P. Abraham Const. Corp. v. Texas Indus., Inc.*, 604 F.2d 897, 904 n.15 (5th Cir. 1979), *aff'd*, 451 U.S. 630 (1981); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d at 284. Stated differently, any one of the three current Counterclaim Defendants can be required to pay the entirety of all damages NASCAR seeks arising from the entire conspiracy in which they participated (and which they led). *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981). Simply put, NASCAR is allowed to sue 23XI, Front Row, *or* Curtis Polk to obtain all damages, and thus Rule 19 cannot be a barrier to NASCAR's Counterclaim for damages going forward. *See In re Cotton Yarn Antitrust Litig.*, 505 F.3d at 284

(ruling that an antitrust plaintiff "could simply seek to hold one defendant liable for all damages caused by the conspiracy"); *see also William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1053 (9th Cir. 1981). "This principle was explicitly recognized by the drafters of Rule 19," which stated in the Advisory Committee Note to the 1966 amendment that Rule 19 "is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability *is merely a permissive party* to an action against another with like liability." *Marshall*, 816 F. Supp. 2d at 265 (quoting Fed. R. Civ. P. 19, Advisory Comm. Note, 1966 Am.).

## II. THE POSSIBILITY OF INJUNCTIVE RELIEF DOES NOT REQUIRE JOINDER, UNLESS 23XI AND FRONT ROW FORCE THAT RESULT THROUGH THEIR OWN CLAIMS

NASCAR's Counterclaim also includes a conditional request for injunctive relief which is dependent upon the injunctive relief Plaintiffs 23XI and Front Row are seeking. Whether non-party race teams must be joined under Rule 19 with respect to injunctive relief depends entirely on the scope of the injunction that *Plaintiffs* seek in the complaint they filed to start this litigation. Plaintiffs vaguely request that "an injunction be issued to grant such relief as is necessary to restore competition in the relevant market," Doc. 107 at 42, but they have suggested they seek to rewrite terms in the contracts that 13 non-party teams signed. *See, e.g.*, *supra* pp.1-2. If 23XI and Front Row seek to set aside or amend the terms in *all* of the 2025 Charters, then *they* should have joined the rest of the race teams that signed those Charters under Rule 19. But if Plaintiffs are instead seeking an order that mandates that NASCAR must let *only* 23XI and Front Row receive certain benefits of the 2025 Charters (e.g., guaranteed entry) without adhering to terms that were a material consideration for those benefits (e.g., exclusivity), then joinder of the teams that signed the 2025 Charters is unnecessary. In that scenario, Plaintiffs' requested injunctive relief would not change the terms of the 2025 Charters that other teams hold and agreed to. And in that situation, the injunctive relief that NASCAR seeks would be tailored to 23XI and Front Row, who are already

named Plaintiffs and Counterclaim Defendants here. Thus, whether the "other chartered race teams not currently involved in this action are required parties pursuant to Rule 19" does not depend on "*NASCAR*'s allegations and requested relief" at all. Doc. 133 at 2 (emphasis added). It depends entirely on the ill-defined relief that Plaintiffs seek through this lawsuit.[2]

Regardless of the scope of Plaintiffs' requested relief, one thing is clear: Plaintiffs are trying to use an antitrust lawsuit to secure even better contractual terms than they otherwise received during extensive negotiations over two and a half years. At minimum, Plaintiffs ask the Court to give them a preferential "Charter." And they might even be inviting this Court to alter more than thirty contracts with over a dozen other parties. That is a remarkable request from Plaintiffs who *never* agreed to the Charters—and who claim that NASCAR is an unlawful monopsonist.

If Plaintiffs are attempting to unwind or rewrite *all* of the 2025 Charters in the event that they prevail—because, in their view, this would "restore competition in the relevant market," Doc. 107 at 42—then *Plaintiffs* were required to join the absent Charter holders.[3] Joinder must occur if

---

[2]     The ambiguity in that request was apparent at oral argument before the Fourth Circuit. When the panel asked what Plaintiffs want from this lawsuit, counsel for Plaintiffs could not directly answer the question. *See, e.g.*, Oral Argument at 27:30-28:50, *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, No. 24-2245 (4th Cir. May 9, 2024), https://www.ca4.uscourts.gov/OAarchive/mp3/24-2245-20250509.mp3.

[3]     Rule 19 is not the only problem if Plaintiffs are seeking this form of relief. Article III requires that a plaintiff must show "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). And "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief that they seek." *Id.* at 431. Even assuming that terms in other teams' Charters could harm competition, it is wholly unclear how Plaintiffs can show an Article III injury to *them* sufficient to confer standing for this relief. After all, Plaintiffs "do not assert the existence of any contractual agreement assigning [other teams'] injuries and interests to them." *David v. Alphin*, 704 F.3d 327, 336 (4th Cir. 2013). And because Plaintiffs are "neither parties nor intended third-party beneficiaries" of Charters that they did not sign, they "lack prudential standing" as well. *Deutsche Bank Nat'l Tr. v. FDIC*, 717 F.3d 189, 194 (D.C. Cir. 2013).

23XI and Front Row seek such broad relief because "[n]o procedural principle is more deeply imbedded" than that, "in an action to set aside . . . a contract, all parties who may be affected by the determination of the action are indispensable." *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975). The Fourth Circuit has held that where a "contracting party" has "a direct interest in [a] district court's determination" regarding its contractual obligations, that interest would be impaired absent joinder. *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 251 (4th Cir. 2000). The Second Circuit has similarly held that where a non-party's rights under a contract "would clearly be prejudiced if the relief sought" were to be granted, then that non-party's "presence [was] required." *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980). The Ninth Circuit too has concluded that where a plaintiff seeks to alter the terms of a non-party's contract, the absent contractual counterparty is required. *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022-24 (9th Cir. 2002). Thus, if 23XI and Front Row claim to be pursuing relief that would change the terms in absent teams' 2025 Charters, then *Plaintiffs* must join all teams that are counterparties to those contracts.[4] In that event, and only in that event, where 23XI and Front Row seek to disturb the terms of those contracts, would NASCAR's prayer for injunctive relief extend to the terms under which the non-party teams compete in the NASCAR

---

[4]     The contract terms that Plaintiffs target are not simply for NASCAR's benefit. Consider, for instance, the Next Gen car requirements. Those requirements have led to lower costs for teams and have increased competitive balance in the form of less predictable and more exciting races. Indeed, Front Row (along with fourteen other teams) voted *in favor of* those requirements in 2019. *See* Doc. 31-4 ¶ 40. Or take the goodwill provision, which prevents teams from racing or owning interests in certain other racing series. That provision (Section 6.6) ultimately serves to protect the media-rights fees that the teams are the primary beneficiary of by preventing dilution of the product and avoiding consumer confusion. Doc. 31-3 ¶¶ 13, 35; *see also* Doc. 136, ¶ 5 ("Both of these exclusivity provisions have existed for over nine years and have benefited *both parties* respectively." (emphasis added)). In each case, if the Charters were amended so that these terms were eliminated, other teams' contractual interests would be impaired.

Cup Series.[5]  But that result would arise solely because 23XI and Front Row would seek to destroy the benefit of the bargain those other Charter holders reached with NASCAR.

As Plaintiffs have not joined the other Charter holders, they presumably are *not* seeking to change the terms under which any other team participates in the NASCAR Cup Series.[6]  Plaintiffs instead appear to be seeking an order that permits only 23XI and Front Row to operate as if they have modified 2025 Charters—that is, asking for Court-created "Charters" lacking certain terms that were part of the bargained-for agreement memorialized in the actual 2025 Charters.  If that is so, then there is no need for Plaintiffs to join the absent chartered race teams.  Those Charters with absent teams would remain in place, regardless of the disputes between the actual parties to this litigation.  Non-party teams' ability to protect their contractual interests would not be "impair[ed]" or "impede[d]" by their absence.  Fed. R. Civ. P. 19(a)(1).  While Plaintiffs' requested relief underscores the fundamental inappropriateness of bringing an antitrust lawsuit to reform a contract they did not enter to begin with, there is no Rule 19 issue if their requested relief is so limited.[7]

---

[5]     As described above, supracompetitive payments to all teams from the 2025 Charters may be remedied through damages imposed on any one of the current Counterclaim Defendants, and pursuit of those damages does not require joinder, or amendment of the 2025 Charters or the payments made to non-party teams under those agreements.

[6]     Here, yet another problem arises for Plaintiffs.  Without joinder, it is unlikely that the Court *could* grant such injunctive relief for Plaintiffs, given the fundamental rule that remedies "operate with respect to specific parties."  *California v. Texas*, 593 U.S. 659, 672 (2021); *see also, e.g.*, *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) ("[S]ince the outsider is not before the court, he cannot be bound by the judgment rendered."); *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring) ("[A]s a general rule, American courts of equity did not provide relief beyond the parties to the case."); *cf.* 15 U.S.C. § 26 (tying "injunctive relief" to "the parties" and what "courts of equity" granted).

[7]     To the extent that Plaintiffs mean to suggest that the Court could somehow enjoin NASCAR from enforcing the goodwill provision without rewriting the other Charters or joining the other teams, that ignores the practical effect of such an injunction, which is to alter bargained-for contractual terms.

If Plaintiffs' requested injunctive relief is cabined to only the terms under which Plaintiffs would participate in the NASCAR Cup Series (if they are permitted to participate as "Charter" teams at all), then NASCAR's requested injunctive relief does not require joinder of the absent teams either. That is because NASCAR's prayer for relief would be limited in scope to Plaintiffs' request. NASCAR has requested an injunction that includes amending the terms of any "Charter" that Plaintiffs would receive. *See* Doc. 136 at 40-41 (requesting injunction "*if* Counterclaim Defendants persist in seeking to have the Charter Agreements declared as unlawful under the antitrust laws or seek the elimination of Section 6.6 or other provisions of the 2025 Charters mutually agreed upon by NASCAR and approximately ninety percent of Charter holders" (emphasis added)). But NASCAR has *not* asked for an injunction against other teams that have come to mutually agreeable terms; that signed actual Charter Agreements with NASCAR; that want to work with NASCAR to grow the Cup Series so that it is better able to compete for fans, sponsors, and interest from media partners; and that remain non-parties to this litigation. Indeed, to the contrary, NASCAR affirmatively does not believe it would be appropriate for the Court to alter any of the terms, including the goodwill provision, in the existing Charters that were agreed to by NASCAR and the parties that reached agreement with NASCAR on terms.[8] And where the effective termination of a non-party's contract is "not a necessary or inevitable consequence of anything resolved in [the] suit," joinder is not required under Rule 19. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 951-52 (4th Cir. 2020).

In short, for this Court to determine whether "the other chartered race teams not currently involved in this action are required parties pursuant to Rule 19," Doc. 133 at 2, *Plaintiffs* 23XI and

---

[8]     As discussed above, damages can be imposed on Counterclaim Defendants without amending the non-parties' Charters.

Front Row must clarify the scope of the relief that they are seeking. But NASCAR's allegations and requested injunctive relief involving the 2025 Charters do not require joinder unless Plaintiffs are asking for absent teams' contracts with NASCAR to be rewritten—in which case Plaintiffs' claims require joinder (and NASCAR must then retain the ability to seek comparable injunctive relief in response).[9]

## III.   JOINING OTHER TEAMS IS LEGALLY "FEASIBLE," BUT NOT REQUIRED

As described above, NASCAR's position is that none of the relief requested in its Counterclaim requires joinder of non-party teams (although the scope of 23XI and Front Row's requested relief may require that outcome). But if the Court does determine that non-party teams must be joined, there is no legal barrier to doing so. The causes of action in both Plaintiffs' Amended Complaint and NASCAR's Amended Counterclaim arise under federal antitrust statutes, and thus federal-question jurisdiction applies, eliminating any concern about the diversity of the parties. *See* Doc. 107, ¶ 54 ("This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 . . . as this action arises under Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 2 of the Sherman Act (15 U.S.C. § 2)."); Doc. 136, ¶ 15 ("This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1337(a) because the action arises under Section 1 of the Sherman Act, 15 U.S.C. § 1 . . . ."). Furthermore, as is the case with the Counterclaim Defendants (and which they do not contest), each of the teams that signed a 2025 Charter is subject to personal jurisdiction here by virtue of either having its "principal place of business" in North

---

[9]     Any equitable remedies must be considered by the Court after a jury trial on both claims together. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508 (1959) ("Whatever permanent injunctive relief [the party] might be entitled to on the basis of the decision in this case could, of course, be given by the court after the jury renders its verdict. In this way the issues between the parties could be settled in one suit giving [counterclaimant] a full jury trial of every antitrust issue."); *cf. In re Google Play Store Antitrust Litig.*, 2024 WL 4438249, at *1 (N.D. Cal. Oct. 7, 2024) (determining whether injunction was appropriate following jury verdict).

Carolina, *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 924 (2011), or having "purposefully availed itself of the privilege of conducting business in the state" in connection with its participation in NASCAR and the disputes at issue, *Espin v. Citibank*, 2023 WL 6447231, at *5 (E.D.N.C. Sept. 29, 2023), including participating in NASAR Cup Series races in Charlotte, North Carolina, conducting NASCAR-related business through the Race Team Alliance (headquartered in Charlotte), and/or interacting with NASCAR's offices in Charlotte, North Carolina.[10]   In addition, each of the signatories to the 2025 Charters agreed to seek relief "exclusively from the U.S. District Court, or if it does not have jurisdiction, the North Carolina state courts, in each case located in Charlotte, North Carolina . . . with respect to any Dispute." Doc. 21-5, Section 12.4; *see also id.* at 55 (defining "Dispute" as any "disagreement, controversy or claim between the parties . . . that arises under or in connection with this Agreement").

## IV.    THE AMENDED COUNTERCLAIM PLEADS AN ILLEGAL CONSPIRACY

The Court's Order permitted "further argument in support of [the parties'] respective positions on the Motion to Dismiss in light of the Amended Counterclaim."  Doc. 133 at 2. NASCAR's position regarding the adequacy of its Section 1 allegations are sufficiently set forth in its Reply in Support of Leave to Amend, Doc. 132 at 5-12, Opposition to 23XI's Motion to Dismiss, Doc. 120, and Opposition to Front Row's Motion to Dismiss, Doc. 121. As described therein, NASCAR's Section 1 allegations were sufficient even without amendment.  NASCAR filed its Amended Counterclaim because the evidence Counterclaim Defendants and others produced after NASCAR's initial Counterclaim further confirmed and bolstered NASCAR's allegations. *See, e.g.*, Doc. 136, ¶¶ 47-122.  That newly produced evidence directly rebutted

---

[10]    If the Court determines that joinder is necessary, and the parties required to be joined dispute that they are subject to jurisdiction here, discovery already performed to-date can be presented to confirm the propriety of personal jurisdiction over the absent teams.

Counterclaim Defendants' counter-factual argument that there are no allegations that teams maintained the conspiracy in their individual discussions with NASCAR.[11]  *See* Doc. 132 at 7; Doc. 136, ¶¶ 8, 62, 64, 66-67, 76, 79, 80, 84, 86, 88-92, 96-98, 102, 106-07, 112-14, 116, 119, 136.  The Amended Counterclaim also directly rebuts Counterclaim Defendants' counter-factual argument that racing teams are not competitors as to the terms on which they race in NASCAR and *must* collude (according to Counterclaim Defendants).  As the allegations show, that factual dispute is disproven by more-than-seven decades of NASCAR competition during which teams could and did race without colluding, is irreconcilable with the conspirators' repeated statements that they must "stick together" to avoid taking competing positions in negotiations, and cannot be squared with the fact that over half of the teams were willing to accept NASCAR's proposals until the coconspirators pulled them back into the fold and convinced them not to go roque.  *See* Doc. 136, ¶¶ 3, 7, 51-52, 57-58, 62, 66, 88, 91, 92, 95-98, 103, 105, 107, 112, 116, 122, 129, 134-35.  The coconspirators also admitted in writing that they obtained a better financial deal by ceasing competition among the teams in negotiations.  Doc. 136 ¶¶ 103, 121.

     Abundant additional evidence supporting the existence of the illegal concerted action has come to light even since NASCAR filed its Amended Counterclaim, with more evidence surfacing

---

[11]  The absence of those allegations would not justify dismissal in any event.  *See* Doc. 120, at 11-14; Doc. 132, at 7-12.  The point of Counterclaim Defendants' argument seems to be an attempt to avoid application of the *per se* standard.  But NASCAR's allegations are adequate under the rule of reason standard as well.  *See* Doc. 120, at 19-23; Doc. 132, at 8-12.  And "the Court need not decide now whether *per se* or rule of reason analysis applies."  *In re High-Tech Emps. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012) (collecting cases); *Cont'l Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 565 (E.D. Va. 2000) ("Whether the agreement here at issue should be treated as *per se* unlawful under Section 1 must await the development of a factual record on the nature and effects of the restraint in the relevant market."); *CSR Ltd. v. Fed. Ins. Co.*, 40 F. Supp. 2d 559, 564-65 (D.N.J. 1998) ("At this early stage of the proceedings, the court does not find it necessary to determine which mode of analysis it will ultimately employ in evaluating the defendants' activities.").

daily during this expedited discovery process. The appropriate time to address this evidence is at the summary judgment stage or trial, as NASCAR has more than met the pleading standard. Moreover, the cases Plaintiffs primarily rely on from the music-licensing context are easily distinguished, and were not decided until after trial on the merits. *See* Doc. 132, at 8-10.

## V. THE RTA'S PURPORTED AMICUS BRIEF IS IMPROPER

The day this supplemental brief was due, the RTA's counsel requested that NASCAR consent to the RTA filing an "amicus" brief with respect to the Court's joinder question. NASCAR asked the RTA's counsel to provide some basic information to assess that request, including whether the RTA was operating under a common interest agreement with Plaintiffs' counsel and whether the RTA had shared a draft of the brief with Plaintiffs' counsel. The RTA declined to answer these questions. NASCAR's questions were important to assessing the propriety of any amicus brief from the RTA because the RTA has a history of working hand-in-glove with Plaintiffs' counsel. As early as February 2024—in the midst of the negotiations at the center of this litigation—the RTA retained Plaintiffs' counsel in a strategic effort to exert leverage over NASCAR and influence the course of negotiations. *See*, *e.g*., Doc. 136, ¶ 93. Thus, NASCAR was concerned the RTA's proposed "amicus" brief would simply parrot the views of 23XI and Front Row. To address these concerns, NASCAR asked counsel for the RTA to confirm that the brief would not address any issues other than the Court's question with respect to Rule 19 joinder.

The RTA's counsel represented to NASCAR's counsel that the RTA's brief would take no position on the merits, writing by email that "the brief addresses only the Rule 19 question," and later reiterating that "the brief covers only the Rule 19 issue." May 22, 2025 Emails from G. Skidmore. The brief the RTA filed only hours later completely belies those representations. Rather than stay within the confines of the joinder issue, the RTA's brief repeatedly attacks the merits of NASCAR's Amended Counterclaim, including parroting the Counterclaim Defendants'

arguments and characterizing NASCAR's Amended Counterclaim as "legally baseless," and "frivolous." Doc. 142-1 at 3, 7-9. It is clear that the RTA is not a true amicus or friend of the court. Instead, it is working to defend the interests of Plaintiffs 23XI and Front Row (who are also members of the RTA). Indeed, it is now clear why the RTA would not answer NASCAR's questions regarding whether the RTA was sharing its "amicus" brief with Winston & Strawn or NASCAR's question whether Winston & Strawn and counsel for the RTA are working pursuant to a claimed "common interest" agreement. The RTA's counsel appears to have worked with Winston & Strawn on its "amicus" brief, as it echoes the same merits arguments made by Winston & Strawn on behalf of the Plaintiffs. The Court can, of course, consider the views of the RTA if it wishes, but should be attuned to the fact that the RTA is a trade association trying to advocate for its members, two of which are parties in this litigation.

## CONCLUSION

NASCAR made an intentional choice to sue only 23XI, Front Row, and Curtis Polk for damages and conditional injunctive relief. NASCAR does not believe that non-party Charter holders need to be joined to this litigation, *unless* 23XI and Front Row are seeking to alter the terms of the Charters held by non-party racing teams. If 23XI and Front Row do not wish to seek such relief, then they should make a binding representation to the Court (and to NASCAR and the non-party Charter holders) that the scope of the relief is limited and does not impact the terms of any Charters signed by non-party Charter holders. Regardless of the approach Plaintiffs choose, NASCAR's Amended Counterclaim for damages and conditional injunctive relief should proceed.

Dated: May 22, 2025                    Respectfully submitted,

By:    */s/ Tricia Wilson Magee*
       Tricia Wilson Magee (N.C. Bar No. 31875)
       **SHUMAKER, LOOP, & KENDRICK, LLP**
       101 S Tryon Street, Suite 2200
       Charlotte, NC 28280
       Tel: 704-945-2911
       Fax: 704-332-1197
       tmagee@shumaker.com

       Christopher S. Yates*
       **LATHAM & WATKINS LLP**
       505 Montgomery Street, Suite 2000
       San Francisco, CA 94111
       chris.yates@lw.com

       Lawrence E. Buterman*
       **LATHAM & WAKINS LLP**
       1271 Avenue of the Americas
       New York, NY 10020
       lawrence.buterman@lw.com

       Anna M. Rathbun*
       David L. Johnson*
       Christopher J. Brown*
       **LATHAM & WATKINS LLP**
       555 Eleventh Street, NW, Suite 1000
       Washington, DC 20004
       anna.rathbun@lw.com
       david.johnson@lw.com
       chris.brown@lw.com

       * Admitted *pro hac vice*

       *Counsel for Defendants and Counterclaim
       Plaintiff*

## <u>ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION</u>

I hereby certify the following:

1.     No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2.     Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 22nd day of May, 2025.

*/s/ Tricia Wilson Magee*