UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE,<br><br>Defendants.<br><br>NASCAR EVENT MANAGEMENT, LLC,<br><br>Counter-Plaintiff,<br><br>v.<br><br>2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK,<br><br>Counter-Defendants. | No. 3:24-cv-886-KDB-SCR |

**NASCAR'S REQUEST FOR DISCOVERY-DISPUTE INTERVENTION
REGARDING SUBPOENAS TO NON-PARTY RACING TEAMS**

## I.     INTRODUCTION

NASCAR Event Management, LLC ("NASCAR") asks the Court to resolve a discovery dispute concerning Federal Rule of Civil Procedure 45 subpoenas issued to certain non-party Racing Teams.[1] As explained in Court on June 17, NASCAR wishes it did not need to bother the non-party Racing Teams who signed Charters and who are working with NASCAR to grow the sport. But Plaintiffs' claim to date has been that NASCAR does not "fairly" share "industry revenues," which puts the non-party Racing Teams' finances directly at issue. Whether, and exactly how, Plaintiffs' theory of harm will change now that Plaintiffs will not have 2025 Charters is unclear. Regardless, to defend itself against Plaintiffs' current claims and theory of damages, NASCAR subpoenaed the Racing Teams in April, seeking eleven categories of documents, including financial reports, for production by April 24, 2025. Following weeks of meet and confer effort, NASCAR narrowed its request to a single request for production: ordinary course team financial documents related to the costs, revenues, and profits of the Racing Teams. These team financial documents are critical to NASCAR's defense, because several major components of "industry revenues," such as team sponsorship revenues, are known only to the individual teams. Similarly, only the Racing Teams can provide cost information to rebut Plaintiffs efforts to argue that the NexGen car has increased, rather than reduced, parts costs.

NASCAR's final requests seek only audited or ordinary-course financial documents admittedly maintained by all racing teams, a discrete set of existing files that the Racing Teams can easily provide. But the Racing Teams decline to produce these records, primarily on

---

[1] The non-party teams are Joe Gibbs Racing, Hendrick Motorsports, Spire Motorsports IV, Trackhouse Racing, Penske Motorsports, Richard Childress Racing Enterprises, Wood Brothers Racing, Roush Fenway Keselowski Racing, Legacy Motor Club, Hyak Motorsports, Rick Ware Racing, and Haas Factory Team (collectively, "the Racing Teams").

1

confidentiality grounds—notwithstanding the Protective Order in this case. The Racing Teams propose, instead, to select which financial information to provide, to produce the data with modifications and redactions, anonymizing the information in ways that leads to questions about both admissibility at trial and usability by NASCAR's experts.

NASCAR proposed a confidentiality compromise to the Racing Teams, including extensive assurances beyond the case Protective Order. But NASCAR's proposal was declined. At this point, NASCAR either needs an order compelling the Racing Teams to produce their ordinary course financial statements from 2020 to the present (with NASCAR still willing to agree to additional confidentiality measures), or if the Court agrees with the Racing Teams that their financial statements are too confidential to be produced in discovery, the Court should order that non-party team financial information is irrelevant at trial, including Plaintiffs' arguments about industry revenue being shared "fairly."

## II.  THE RACING TEAMS SHOULD BE ORDERED TO PRODUCE ORDINARY COURSE FINANCIALS

### A.  Racing Team Financials Are Highly Relevant to Plaintiffs' Current Claims

NASCAR's final proposal to the Racing Teams was limited to NASCAR's most critical request: team cost and revenue information found in ordinary course audited financial statements. The requested data includes costs, revenues (including any sponsorship revenue), returns-on-investment, profits, sources of financing, and financial projections. All of this data is directly relevant to what appears to be Plaintiffs' theory of the case: whether and how the Charter system enhances or restricts competitive dynamics within the motorsports industry. Plaintiffs 23XI and Front Row have alleged that the NASCAR Charter Agreements are anticompetitive, including because their terms allegedly do not fairly share industry revenue with racing teams. *See, e.g.,* Doc. 107 at ¶ 71, *see also id.* at ¶¶ 16, 24, 75, 112. Until Plaintiffs disclaim this theory, financial

2

Case 3:24-cv-00886-KDB-SCR    Document 156    Filed 06/18/25    Page 3 of 10

data related to team costs, revenues, and profits must be evaluated. And this information is available nowhere else besides the Racing Teams.

NASCAR has limited visibility into teams' financial metrics. Teams receive substantial revenue from sponsorships and other sources (e.g., providing support to other teams), separate from what they receive from NASCAR under the Charter Agreements. This sponsorship information is not shared with NASCAR, yet it contributes to the teams' financial health and competitive positioning. Omitting these revenues would leave out a major component of the industry revenue that Plaintiffs have placed at issue.

B.   **There Is Little Burden Associated with Producing the Financials**

The Racing Teams are sophisticated companies that maintain audited financial statements, income statements, cash flow statements, and other ordinary course financials. Production of these documents is not burdensome. *See, e.g.*, *Crete Carrier Corp. v. Sullivan & Sons, Inc.*, 2021 WL 3883907, at *5 (D. Md. Aug. 31, 2021) (finding fee schedules and other documents "if they exist, should be kept in the normal course of business. That is what businesses do—keep records in the normal course. The Court is not persuaded by movants' arguments regarding hardship itself.").

C.   **The Protective Order Suffices, But NASCAR Is Willing to Agree to Even Greater Protections**

The Racing Teams have declined to produce their ordinary course financial documents on confidentiality grounds. NASCAR appreciates the sensitivity of this information, but NASCAR is relying on the Protective Order when producing its financial information. This case's Protective Order offers the highest level outside counsel only protections for produced documents, more than adequately protecting the Racing Teams' confidential information. Designated documents cannot be shared with NASCAR, with disclosure restricted to outside counsel. Doc. 85 at 7. NASCAR, Mr. France, Mr. Polk and Plaintiffs all produced their own financials under these protections.

3

The Racing Teams' objections do not justify their refusal to produce these highly relevant and already existing documents, especially in light of the Protective Order, and NASCAR's assurances for maintaining additional protections to the maximum extent possible. *See, e.g.*, *Prodigious Ventures, Inc. v. YBE Hosp. Grp., LLC*, 2015 WL 7176350, at *5 (E.D.N.C. Nov. 10, 2015) (compelling production because "concerns regarding the production of confidential or proprietary information are allayed by the consent protective order entered by the court in this case"); *In re Motorsports Merchandise Antitrust Litig.*, 186 F.R.D. 344, 350 (W.D. VA Mar. 31, 1999) (finding that the case protective order adequately addressed confidentiality concerns). In meet and confer, NASCAR has offered to afford the Racing Teams' financial documents additional confidentiality protections beyond the Protective Order:

- Team information would be maintained solely at the offices of outside counsel, and its e-discovery vendor and outside experts.
- Teams would have two days' notice before use of any information in any filing or at trial, allowing the teams to file sealing motions, which NASCAR's counsel would join.
- NASCAR counsel would work with teams to avoid any disclosure, including committing not to display information publicly, and structuring examinations to avoid specifics.
- NASCAR counsel would certify destruction of information upon conclusion of the case.

The Protective Order, and these assurances, more than adequately resolve the team objections.

## III. THE RACING TEAMS' COUNTERPROPOSAL IS INADEQUATE

The Racing Teams have offered to produce anonymized, per-car averaged financial data to a third-party accounting firm. But the teams' counterproposal for selective, and indirect, production would not adequately allow NASCAR to defend itself. Necessary information would be obscured by the Racing Teams' anonymous aggregation proposal. For instance, NASCAR

4

must determine accurate sponsorship revenue and costs.  The best source for this information is the actual financials compiled by the Racing Teams during the relevant period.  Alternative data which has been modified before production using unknown methods would prevent NASCAR's experts from an accurate analysis.  Unlike data compiled under acceptable accounting standards, new figures aggregated and manipulated for litigation purposes introduce the real possibility of reallocation of costs and revenues.  For this reason, rebutting Plaintiffs' allegations regarding the profitability of teams under the Charter system requires the teams' ordinary course financials.

NASCAR counsel has already confirmed with ongoing discovery that blind reliance on anonymized, aggregated information would prevent an accurate assessment of team financials.  Plaintiff financials produced in discovery have made clear that the Plaintiff teams were profitable during the relevant Charter Agreement negotiations—contradicting the information provided by the teams to NASCAR during negotiations.  NASCAR cannot now agree to introduce another round of reallocation—and possible manipulation—for the Racing Teams' financial data.  The risk of incomplete information is just too high.  NASCAR's request for ordinary course financial documents under usual accounting standards is the reasonable and proportionate approach.

The Racing Teams' counterproposal raises more issues than it solves.  First, the proposal is more burdensome than NASCAR's proposal, which needs no additional calculations.  Second, production through an accounting firm raises unnecessary admissibility issues.  Introducing an intermediary, and removing identifying information, would be unnecessary with direct production to counsel.  Both issues would be avoided by simply producing the financial documents.

## IV. CONCLUSION

NASCAR respectfully requests that the Court either compel the Racing Teams to produce ordinary course financial information by June 26, 2025, or rule that such information is irrelevant.

Dated: June 18, 2025

Respectfully submitted,

By: */s/ Tricia Wilson Magee*
Tricia Wilson Magee (N.C. Bar No. 31875)
**SHUMAKER, LOOP, & KENDRICK, LLP**
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Tel: 704-945-2911
Fax: 704-332-1197
tmagee@shumaker.com

Christopher S. Yates*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8240
Facsimile: (415) 395-8095
chris.yates@lw.com

Lawrence E. Buterman*
**LATHAM & WAKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Anna M. Rathbun*
Christopher J. Brown*
Christina R. Gay*
David L. Johnson*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
anna.rathbun@lw.com
chris.brown@lw.com
christina.gay@lw.com

* Admitted *pro hac vice*

*Counsel for Defendants and Counterclaim Plaintiff*

6

## ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

      1.    No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Fast Case, and Bloomberg;

      2.    Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 18th day of June, 2025.

                                                                             */s/ Tricia Wilson Magee*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **NASCAR'S REQUEST FOR DISCOVERY-DISPUTE INTERVENTION REGARDING SUBPOENAS TO NON-PARTY RACING TEAMS** was electronically filed using the Court's CM/ECF system, which will automatically send notice of filing to all parties of record, and to counsel listed below for the Teams via email, as consented to by their Counsel:

Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
dwilliams@winston.com

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
jkessler@winston.com

Jeanifer Parsigian
Michael Toomey
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
jparsigian@winston.com
mtoomey@winston.com

Matthew DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
mdalsanto@winston.com

*Counsel for Counterclaim Defendants 23XI Racing, Front Row Motorsports Inc., and Curtis Polk*

Adam Ross and Jennifer Houti
**JAMES, MCELROY AND DIEHL**
*ARoss@jmdlaw.com and JHouti@jmdlaw.com*
*Counsel for Joe Gibbs Racing, LLC; Hendrick Motorsports LLC; Smith Racing, LLC d/b/a Hyak Motorsports; RPAC Racing LLC d/b/a LEGACY Motor Club; and Spire Motorsports IV, LLC*

John Morrow and AJ Horner
**WOMBLE BOND DICKINSON**
John.Morrow@wbd-us.com,
AJ.Horner@wbd-us.com
*Counsel for Richard Childress Racing Enterprises Inc.*

Bailey King
**BRADLEY**
bking@bradley.com
*Counsel for Haas Factory Team, LLC, and Rick Ware Racing, LLC*

Cary Davis and John Wester
**ROBINSON, BRADSHAW & HINSON**
cdavis@robinsonbradshaw.com,
JWester@robinsonbradshaw.com
*Counsel for Wood Brothers Racing, LLC; Roush Fenway Keselowski Racing, LLC; Penske Racing South, Inc.; and Penske Motorsports, LLC*

Tod Dodgen
**MAYNARD NEXSEN**
tdodgen@maynardnexsen.com
*Counsel for Trackhouse Racing, LLC*

This the 18th day of June, 2025.

                              */s/ Tricia Wilson Magee*