IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00886-KDB-SCR

2311 RACING LLC AND FRONT
ROW MOTORSPORTS, INC.,

Plaintiffs,

v.                                                    ORDER

NATIONAL ASSOCIATION FOR
STOCK CAR AUTO RACING,
LLC, ET AL.,

Defendants.

**THIS MATTER** is before the Court on Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. No. 175). On December 18, 2024, this Court granted Plaintiffs a preliminary injunction to allow 23XI and Front Row to "participat[e] in NASCAR Cup Series races as chartered teams while being permitted to pursue their [antitrust] claims in this action." Doc. No. 74 at 3. Defendants successfully appealed that ruling, with the Fourth Circuit deciding on June 5, 2025, that the Court erred in holding that Plaintiffs were likely to succeed on the merits of their Sherman Act, Section 2 claim based (solely) on the Charter Agreement's release provision and vacating the injunction. Doc. No. 151; *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 139 F.4th 404 (4th Cir. 2025). Plaintiffs filed a petition for rehearing and rehearing *en banc*, but that petition was denied on July 9, 2025. Doc. No. 173. Accordingly, the mandate ending the injunction took effect on July 16, 2025.

On July 14, 2025, Plaintiffs filed the pending motion seeking to stave off what they urge to be the dire consequences of no longer operating as a "chartered" team, including the likelihood

1

that NASCAR will quickly sell their charters to other racing teams, thereby for all practical purposes ending their existence as a realistic competitor in NASCAR's Cup Series. In support of their motion, Plaintiffs filed over 1500 pages of supporting documents and expert reports in addition to their legal brief. Defendants responded to Plaintiffs' motion promptly on July 16, 2025, together with their own extensive set of supporting materials. The timing of these filings, together with the expiration of the injunction and the immediate upcoming races in the Cup Series, put the Court in a difficult position. Still, the Court must do its best to consider the motion, even if that consideration can, at most, lead to only a temporary ruling.

First, in undertaking its consideration of a TRO, the Court has carefully reviewed and will of course follow the ruling of the Court of Appeals vacating the earlier injunction. When the Court entered that injunction in late December 2024 (just seven days after the case was reassigned to the undersigned judge), it sought to decide the motion on the narrowest grounds possible, both because of the lack of a developed evidentiary record on the parties' broader antitrust contentions and the exigency of the circumstances. In its decision, the Court of Appeals recognized the narrowness of this Court's ruling, quoting the Court's injunction order "emphasiz[ing] that it does not reach and expresses no opinion as to Plaintiffs' likelihood of success on their other Sherman Act claims…" and then making clear that it understood the District Court ruled only "[a]s to the single ground that the release violated the antitrust laws." *2311 Racing*, 139 F.4th at 409. Significantly, the Court of Appeals (after finding that ground standing alone insufficient) concluded, "[w]e express no view, however, on any aspect of the pending case beyond those stated herein with respect to the preliminary injunction." *Id*. at 10. Since December 2024, the Parties have engaged in extensive discovery and the record is more fully developed, allowing the Court to engage in a more complete

antitrust review, although, perhaps in keeping with the nature of the dispute, the Court remains on a "fast track."

The relationship of the Parties and the underlying facts have been previously explained in detail, and need not be repeated here. S*ee* Doc. No. 74 at 5-9. In this action, Plaintiffs contend that NASCAR has violated the Sherman Act, which makes "every person" who, alone or in concert with others, "monopolize[s] any part of the trade or commerce among the several States, or with foreign nations" guilty of a felony, and allows a civil plaintiff to bring a civil action when "injured in his business or property by reason of anything forbidden in [§ 2]." 15 U.S.C. §§ 2, 15(a). Most simply put, Plaintiffs' claim is that NASCAR's Cup Series is the only premier stock car racing series and NASCAR engaged in numerous instances of unlawful anticompetitive behavior to make and keep it that way.

The test for entering the extraordinary remedy of an injunction prior to trial is well-established. As recently described in *2311 Racing*, to grant a temporary or preliminary injunction, a court must conclude that the plaintiff made a clear showing that it "is *likely* to succeed on the merits — along with the risk of irreparable harm, the balance of equities, and the public interest." *2311 Racing*, 139 F.4th at 408 (emphasis in original) (quoting *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025)); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (requiring that a preliminary injunction be awarded only "upon a clear showing" of entitlement to relief). The standard is "heightened" to the extent Plaintiffs are seeking a "mandatory" injunction;[1] that is, one

---

[1] The injunctive relief sought by Plaintiffs is both "mandatory" and "prohibitory." As found by the Court of Appeals, if the Court were to grant their request to be permitted to race under the terms of the 2025 Charter Agreement that would be a "mandatory" injunction. *2311 Racing*, 139 F.4th at 408-09, 411. However, prohibiting NASCAR from transferring, selling or otherwise conveying the Charter spots Plaintiffs had been using prior to this dispute and have purchased would only involve a "prohibitory" injunction because, as argued by NASCAR, the "status quo" is that those

3

in which the Court orders that a party do some act rather than only refrain from taking action that alters the status quo. *Id*. at 408-09, 411.

The absence of any of the four requirements for a TRO requires that the requested injunction be denied. After careful review, and notwithstanding the substantial showing that Plaintiffs have made with respect to the remaining factors (on which the Court will defer a final assessment until the decision on a Preliminary Injunction), the Court finds that based on two critical representations by NASCAR,[2] Plaintiffs cannot show the likelihood of imminent irreparable harm sufficient to support a TRO.

With respect to irreparable harm, Plaintiffs have expressed several concerns. First, they claim that the transfer of the Charter spots Plaintiffs had been using prior to this dispute and have purchased would "destroy their businesses" under the current Charter Agreement regime. This is a fair and significant fear; however, NASCAR has agreed that it "will not sell[3] any Charters before the Court can rule on Plaintiffs' motion for preliminary injunction." Similarly, Plaintiffs worry that denying them guaranteed entry into the field for upcoming races could adversely impact their competitive standing, including their ability to earn a spot in the playoffs. Again, a legitimate, potentially irreparable harm. Yet, akin to the sale of Charters, NASCAR represents to the Court that all of Plaintiffs' cars will qualify (if they choose to race) for the races in Dover and Indianapolis that will take place during the next 14 days, the initial length of time during which

---

Charters do not currently belong to Plaintiffs or anyone else. *See* Doc. No. 178 at 12; Doc. 162 at 6 n.10

[2] If these representations change prior to the Court's ruling on a Preliminary Injunction (for example, races are scheduled in which Plaintiffs do not have the same certainty of entry), the Court will immediately reconsider its denial of a TRO.

[3] While NASCAR used the term "sell" in making this representation, the Court understands NASCAR's agreement to be that it will not transfer or convey Charters in any manner, not just through a "sale." This Order is entered on that basis. If NASCAR intended otherwise, it is directed to immediately inform the Court prior to undertaking any transaction with respect to Charters.

4

the Court can enter a TRO under Rule 65. Therefore, Plaintiffs will not suffer any harm from being at risk of a failure to qualify for races until the Court rules on the Preliminary Injunction.

Finally, Plaintiffs say they face the threat of the irreparable loss of drivers and sponsor relationships and opportunities. With respect to drivers, the record stands in a different posture than it did prior to the season when the Court entered the earlier injunction. While Plaintiffs' drivers could have realistically terminated their contracts with Plaintiffs and/or been lured away by other teams, that prospect (although theoretically still conceivable) appears unlikely at this late stage of the season, and Plaintiffs have not offered evidence that any drivers are intending to do so in the next two weeks. Moreover, Plaintiffs have not established an imminent loss of sponsorships before the Preliminary Injunction can be decided (even if such a loss could not be compensated by money damages, *see* Doc. No. 74 at 18 n.13).[4]

In sum, Plaintiffs have failed to sufficiently establish irreparable harm to support entry of a TRO prior to the Court resolving the Motion for a Preliminary Injunction, and the Motion for a TRO is DENIED. With respect to the Preliminary Injunction, NASCAR's filings appear to assert that the Fourth Circuit and other authority has already held that they are effectively immune from antitrust scrutiny. The Court disagrees and therefore will permit the additional briefing NASCAR requested in the Parties' recent telephone conference with the Court. Towards that end, the Parties

---

[4] The Court recognizes that losing the ability to compete under the terms of the Charter Agreements will impact Plaintiffs financially with the loss of Pool Money, etc. However, those losses are calculable and, in the absence of a contention that the Plaintiffs cannot continue to race without those payments, cannot support a finding of sufficient irreparable harm. *See Thompson-McKoy v. UDR, Inc.*, No. 1:25-CV-00611-JRR, 2025 WL 1884775, at *2 (D. Md. July 8, 2025) ("Irreparable harm 'is suffered when monetary damages are difficult to ascertain or are inadequate.'") (quoting *Multi– Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994)).

are directed to confer and propose a further briefing and hearing schedule by Noon on July 18, 2025.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 17, 2025

Kenneth D. Bell
United States District Judge