# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. | No. 3:24-cv-886-KDB-SCR <br><br> **Public Redacted Version** |
| NASCAR EVENT MANAGEMENT, LLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> 2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK, <br><br> Counter-Defendants. | |

## COUNTER-DEFENDANT 2311 RACING LLC D/B/A 23XI RACING'S ANSWER TO COUNTER-PLAINTIFF'S AMENDED COUNTERCLAIM

Counter-Defendant 2311 Racing LLC d/b/a 23XI Racing ("23XI") responds as follows to the allegations set forth in the May 8, 2025, Amended Counterclaim of NASCAR Event Management, LLC ("NASCAR" or "Counter-Plaintiff").

NASCAR's Amended Counterclaim is litigation gamesmanship, designed not only to try to intimidate 23XI and Front Row Motorsports, Inc. ("Front Row" or collectively with 23XI, "Plaintiffs") in their challenge to NASCAR's monopsony, but as a threat to any racing teams willing to challenge NASCAR. NASCAR's lead counsel used the filing of the original counterclaim as an occasion to conduct a press conference in which he delivered a warning that NASCAR will end the charter system that the racing teams depend on if Plaintiffs prevail in their antitrust claims. Indeed, NASCAR has threatened to use the Amended Counterclaim to seek relief removing one of the key terms of the 2025 Charter Agreement and the foundation of the charter system—guaranteed entry into NASCAR Cup Series races—for not only Plaintiffs, but also for all non-party-chartered race teams.

The Amended Counterclaim tries to rewrite history. NASCAR never challenged or objected to having joint negotiations with the racing teams over the terms of its Charter Agreements—which first occurred in 2015—until the filing of the Counterclaim. It cannot dispute that it voluntarily agreed to negotiate over common terms in the 2025 Charter Agreement with all the racing teams. And NASCAR cannot claim that there was ever any agreement by the racing teams or Counter-Defendant Curtis Polk ("Mr. Polk") that precluded it from engaging in individual negotiations with the racing teams. In fact, NASCAR admits that it did engage in individual negotiations with each of the chartered racing teams over the terms of the 2025 Charter Agreement. These admitted facts do not come close to supporting NASCAR's claim of a violation of Section 1 of the Sherman Act. The 2025 Charter negotiations resulted in an agreement that NASCAR has

1

continuously represented as being beneficial to NASCAR and the entire industry. *See, e.g.*, Order Denying NASCAR's Mot. to Dismiss, Dkt. No. 104 at 6; Order Denying NASCAR's Mot. to Stay, Dkt. No. 89 at 9 ("NASCAR . . . has repeatedly represented to the Court that those [charter] terms reflect a fair and beneficial deal for all concerned."). The Amended Counterclaim is baseless.

Except to the extent expressly admitted, 23XI denies each and every allegation in the Amended Counterclaim, including any allegations contained in its headings or footnotes. 23XI does not admit that any document purportedly cited, quoted, or referenced by the Amended Counterclaim is accurate, relevant, or admissible in this action, and 23XI reserves all objections regarding admissibility. 23XI further reserves the right to change, supplement, and amend this Answer and these Affirmative Defenses if and when new information is revealed to it. 23XI denies that Counter-Plaintiff is entitled to any relief. 23XI also explicitly reserves the right to sever and/or bifurcate any claims against it, and to seek a separate trial pursuant to Federal Rule of Civil Procedure 42(b).

## SPECIFIC RESPONSES TO NASCAR'S ALLEGATIONS

1.      Paragraph 1 mischaracterizes Plaintiffs' lawsuit against NASCAR and asserts argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 1, except it admits that Plaintiffs filed suit against NASCAR, that the first Charter Agreements were signed in 2016 and provided a specified amount of guaranteed revenue and entry into NASCAR Cup Series races, and that the Charter Agreements are transferable. 23XI admits that NASCAR provided the 2016 Charter Agreements to teams without receiving monetary consideration, but teams, like Front Row, had invested years of experience and millions of dollars into NASCAR before receiving a 2016 Charter Agreement.

2

2.      Paragraph 2 asserts argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 2, except it admits that Charter Agreements have brought value to NASCAR Cup Series race teams and to NASCAR itself.

3.      Paragraph 3 asserts legal conclusions and argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 3, except it admits that some teams have occasionally competed as open teams without Charter Agreements for selected Cup Series races.  23XI further admits that NASCAR's lower-level Xfinity Series and Craftsman Truck Series do not have charter agreements.

4.      Paragraph 4 asserts legal conclusions and argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 4, except it admits that the 2016 Charter Agreements expired on December 31, 2024.  23XI denies that race teams made any collective demands, but rather engaged in voluntary joint negotiations with NASCAR over the terms of the 2025 Charter Agreement in which each team made individual decisions about what terms to accept, just as NASCAR and the race teams did for the terms of the 2016 Charter Agreement.  23XI admits that 23XI and Front Row were the only two chartered teams that did not sign the 2025 Charter Agreement.

5.      Paragraph 5 mischaracterizes Plaintiffs' lawsuit against NASCAR and James France, and asserts legal conclusions and argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 5, except it admits that 23XI and Front Row did not sign the 2025 Charter Agreement.  23XI further admits that 23XI and Front Row brought suit against NASCAR and James France under Sections 1 and 2 of the Sherman Act, and are seeking treble damages, attorney's fees, and injunctive relief, but denies that Plaintiffs are seeking to have the Charter Agreements declared to be illegal.

3

6.	Paragraph 6 mischaracterizes Plaintiffs' lawsuit against NASCAR and James France, and asserts legal conclusions and argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 6.

7.	Paragraph 7 asserts legal conclusions and argument for which no response is required. To the extent that a response is required, 23XI denies the allegation in Paragraph 6, except it admits that 23XI purchased one charter in 2020 and another in late 2021. 23XI admits that Paragraph 7 purports to refer to a statement made in a news article, a written document that speaks for itself.

8.	Paragraph 8 asserts legal conclusions and argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 8, except it admits that the Race Team Alliance ("RTA") consists of all chartered race teams and, through the Team Negotiation Committee ("TNC"), engaged in voluntary joint negotiations with NASCAR over the terms of the 2025 Charter Agreement, just as the RTA and NASCAR did for the 2016 Charter Agreement. 23XI further admits that certain teams individually chose to not attend a single "Team Owner Council" meeting with NASCAR, but denies that it was a "boycott." 23XI admits that Mr. Polk met with one NASCAR media partner, but denies that the meeting was intended to "affect ongoing NASCAR negotiations for a new media rights agreement."

9.	Paragraph 9 asserts legal conclusions and argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 9. 23XI admits that Paragraph 9 purports to refer to quotations from Supreme Court opinions, written documents that speak for themselves.

10.     23XI admits that it is a limited liability company organized under the laws of North Carolina, with its principal place of business in North Carolina, and that it is owned by entities under the control of Michael Jordan, Denny Hamlin, and Mr. Polk as set forth in Paragraph 10.

11.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11, and therefore denies those allegations on that basis.

12.     23XI admits that Mr. Polk is a co-owner of 23XI and regularly transacts business in North Carolina on behalf of 23XI.  The third and fourth sentences of Paragraph 12 assert legal conclusions and argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in the third and fourth sentences of Paragraph 12.

13.     Paragraph 13 asserts legal conclusions and argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 13, except it admits that Counter-Defendants compete with other race teams for the services of drivers as independent contractors.

14.     23XI admits the allegations in Paragraph 14.

15.     Paragraph 15 states legal conclusions and argument to which no response is required.  To the extent a response is required, 23XI admits that Counter-Plaintiff has filed its Amended Counterclaim pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.  23XI denies that anything it has done is anticompetitive or a violation of the antitrust laws, and denies that Counter-Plaintiff is entitled to any relief.

16.     Paragraph 16 states legal conclusions and argument to which no response is required.

5

17.     23XI admits that it has transacted business in the state of North Carolina, but denies that such transactions are related to Counter-Plaintiff's allegations.  23XI admits that Paragraph 17 refers to an article from NASCAR.com, a written document that speaks for itself.  The rest of Paragraph 17 states legal conclusions and argument to which no response is required.  To the extent that a response is required, 23XI denies those allegations, except it admits that 23XI's Airspeed facility is in Huntersville, North Carolina.

18.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18, and therefore denies those allegations on that basis.

19.     23XI admits that Mr. Polk has transacted business in the state of North Carolina, but denies that such transactions are related to Counter-Plaintiff's allegations.   The rest of Paragraph 19 states legal conclusions and argument to which no response is required.  To the extent that a response is required, 23XI denies those allegations.

20.     Paragraph 20 states legal conclusions and argument to which no response is required.  To the extent that a response is required, 23XI admits that Counter-Plaintiff filed its Amended Complaint alleging that venue for that Amended Counterclaim was proper in this Court.

21.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies them on that basis, except it admits that William ("Bill") France, Sr. formed NASCAR in 1948 in Daytona Beach, Florida.

22.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies them on that basis, except it admits Bill France also founded the International Speedway Corporation ("ISC") in 1953 and in 1957, ISC built the Daytona International Speedway.  23XI further admits that ISC was a public company, although over seventy percent of the voting stock was held by the France family, and by 2019, ISC

6

owned and operated 13 motorsports facilities. 23XI further admits that, on May 20, 2019, NASCAR announced that it would fully acquire ISC and take it private.

23.     23XI admits that stock car racing is a form of motorsports that gets its name from a time when racers raced production-model cars, but otherwise denies the allegations in Paragraph 23.

24.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies them on that basis, except it admits NASCAR is now considered one of the top motorsport series in the world.

25.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies them on that basis.

26.     23XI admits the allegations in Paragraph 26.

27.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the tracks that NASCAR owns, operates, or is licensed to promote, and otherwise denies the allegations in Paragraph 27.

28.     23XI admits that some Xfinity Series races are held on the same tracks as the Cup Series and have fewer laps than Cup Series races, but otherwise denies the allegations in Paragraph 28.

29.     23XI admits the allegations in Paragraph 29.

30.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and therefore denies them on that basis, except it admits that NASCAR racing series team ownership is open to any individual with a license to compete.

31.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, and therefore denies them on that basis.

7

32.     23XI denies the allegations in Paragraph 32, except it admits that NASCAR has held three Cup Series races at the Los Angeles Memorial Coliseum and three Cup Series races at the street course in Chicago.

33.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 regarding the tracks with which NASCAR contracts, and therefore denies those allegations on that basis.  23XI admits that NASCAR has held three Cup Series races at the Los Angeles Memorial Coliseum and three Cup Series races at the street course in Chicago, but otherwise denies the allegations in Paragraph 33.

34.     23XI admits that it does not directly pay for the costs of developing or maintaining racetracks, but otherwise denies the allegations in Paragraph 34.

35.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35, and therefore denies them on that basis, except it admits that NASCAR has a production facility in Charlotte, North Carolina.

36.     Paragraph 36 asserts argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 36.

37.     23XI admits the allegations in the first, second, fourth, and fifth sentences of Paragraph 37.  23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and sixth sentences of Paragraph 37 and therefore denies them on that basis.

38.     23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38, and therefore denies them on that basis.

39.     Paragraph 39 asserts argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 39, except it admits that teams

8

are heavily dependent on sponsorship revenue due to NASCAR's below-market terms in the 2016 and 2025 Charter Agreements. 23XI further admits that Paragraph 39 refers to an online article, a written document that speaks for itself.

40. 23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40, and therefore denies them on that basis.

41. Paragraph 41 asserts argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 41, except it admits that the "Generation 6" cars allowed for teams to customize parts and features, and that NASCAR's "Next Gen cars are made from standardized parts" as mandated by NASCAR. 23XI further admits that Paragraph 41 refers to an online article, a written document that speaks for itself.

42. 23XI admits the allegations in the first sentence of Paragraph 42. Sentences two and three of Paragraph 42 assert argument and legal conclusions for which no response is required, but to the extent that a response is required, 23XI denies the allegations in sentences two and three of Paragraph 42, except it admits that race teams compete with each other for drivers, sponsors, employees, and in the Cup Series. 23XI further admits that Paragraph 42 refers to statements from online articles, written documents that speak for themselves. 23XI otherwise denies the allegations in Paragraph 42.

43. Paragraph 43 asserts argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 43, except it admits that the RTA and NASCAR engaged in voluntary joint negotiations over the terms of the 2016 Charter Agreement, and that the RTA members discussed the proposed 2016 Charter Agreement among themselves and retained counsel in connection with the negotiations.

9

44. 23XI admits that the terms of the 2016 Charter Agreements provided guaranteed entry into each Cup Series race, specified the terms under which teams with 2016 Charter Agreements received money from NASCAR, and set the number of available positions in each Cup Series race at 40. 23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 regarding the negotiations of the 2016 Charter Agreements, and therefore denies them on that basis. 23XI denies the remaining allegations in Paragraph 44.

45. 23XI admits that the 2016 Charter Agreements designated certain revenues to be split 65% to promoters, 25% to competitors, and 10% to NASCAR and awarded certain revenues to teams based on performance and participation, but otherwise denies the allegations in Paragraph 45.

46. 23XI admits that Charter holders can sell their charters, subject to NASCAR's approval, and that at least two Charters have sold for amounts in excess of ten million dollars. 23XI further admits that NASCAR provided the 2016 Charter Agreements to teams without receiving monetary consideration, but teams, like Front Row, had invested years of experience and millions of dollars into NASCAR before receiving a 2016 Charter Agreement. 23XI admits that Paragraph 46 refers to an online article, a written document that speaks for itself. 23XI otherwise denies any remaining allegations in Paragraph 46.

47. 23XI admits the allegations in Paragraph 47.

48. The first and final sentences of Paragraph 48 state argument to which no response is required. To the extent a response is required, 23XI admits that 23XI and Front Row purchased charters from Stewart-Haas Racing, LLC. 23XI lacks knowledge or information sufficient as to whether Front Row has ever generated a profit from competing in NASCAR. 23XI admits that

Paragraph 48 refers to documents and articles that speak for themselves. 23XI denies the remaining allegations in Paragraph 48.

49. 23XI admits that the first sentence of Paragraph 49 purports to refer to a chart from GlobalData Intelligence Center, which shows estimated sponsorship revenue for NASCAR teams. 23XI admits that teams do not directly share sponsorship revenue with NASCAR, just as NASCAR does not share its sponsorship revenue with teams, and otherwise denies the allegations in Paragraph 49.

50. The first sentence of Paragraph 50 asserts argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in the first sentence of Paragraph 50, except it admits that teams earn sponsorship revenue. The second sentence of Paragraph 50 asserts argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in the second sentence of Paragraph 50, except it admits that the RTA, through the TNC, engaged in voluntary joint negotiations with NASCAR over the terms of the 2025 Charter Agreement. 23XI denies the remainder of Paragraph 50, except it admits that teams individually decided not to attend one Team Owner Council meeting.

51. 23XI denies the allegations in the first sentence of Paragraph 51. 23XI admits that the second sentence of Paragraph 51 purports to refer to an email from Denny Hamlin, a written document that speaks for itself. The third sentence of Paragraph 51 asserts argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in the third sentence of Paragraph 51. 23XI admits that it met with team principals from other Charter teams in July 2021, but otherwise denies the remaining allegations in Paragraph 51.

52.     23XI admits that RTA members discussed the 2025 Charter negotiations in February 2022.  23XI further admits that Paragraph 52 purports to refer to statements from a written document that speaks for itself.  23XI denies the remaining allegations in Paragraph 52.

53.     23XI admits that Paragraph 53 purports to quote a document that speaks for itself, and otherwise denies the allegations in Paragraph 53.

54.     23XI admits that the RTA, through the TNC, which was made up of Mr. Polk and three other RTA members, engaged in voluntary joint negotiations with NASCAR for the terms of the 2025 Charter Agreement, although each team retained its individual decision-making power and responsibilities, and also engaged in individual negotiations with NASCAR.  23XI denies the remaining allegations in Paragraph 54.

55.     Paragraph 55 asserts argument for which no response is required.  To the extent that a response is required, 23XI admits that the TNC engaged in voluntary negotiations with NASCAR over the terms of the 2025 Charter Agreement and presented proposals to NASCAR that had been approved by other teams, but denies that those negotiations were anticompetitive or a violation of the antitrust laws.  23XI denies the remaining allegations in Paragraph 55.

56.     Paragraph 56 asserts arguments and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 56, except it admits that as part of the TNC, Mr. Polk presented proposals to NASCAR for the 2025 Charter Agreement.  23XI denies that these proposals were anticompetitive or a violation of the antitrust laws.

57.     23XI admits that Paragraph 57 purports to refer to April 5, 2022 RTA Meeting minutes, a written document that speaks for itself.  23XI denies that these principles are ████████
████████ which was merely a shorthand for the principle that all well-managed teams should be

able to make a reasonable profit and compete for a championship. To the extent that Counter-Plaintiff alleges that ███████████ or these meeting minutes are evidence of anticompetitive conduct or a violation of the antitrust laws, 23XI denies those allegations. 23XI denies the remaining allegations in Paragraph 57.

58. 23XI admits that Paragraph 58 purports to refer to statements from an email thread, a written document that speaks for itself. To the extent that Counter-Plaintiff alleges this is evidence of anticompetitive conduct or a violation of the antitrust laws, 23XI denies those allegations. 23XI denies the remaining allegations in Paragraph 58.

59. 23XI admits that the TNC made a proposal to NASCAR in June 2022. The remainder of Paragraph 59 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in the second sentence of Paragraph 59, except it admits that the TNC asked for an increased revenue share for charter teams during voluntary joint negotiations with NASCAR over the terms of the 2025 Charter Agreement, and denies the remaining allegations in Paragraph 59.

60. 23XI admits that the TNC sent a letter to NASCAR on September 1, 2022, as alleged in Paragraph 60, and the written document speaks for itself.

61. Paragraph 61 asserts argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 61, except it admits that Paragraph 61 purports to refer to statements in a text thread, a written document that speaks for itself. 23XI denies that those communications were anticompetitive or a violation of the antitrust laws.

62. 23XI admits that the TNC met with NASCAR on September 22, 2022. The remainder of Paragraph 62 asserts argument for which no response is required. To the extent that

a response is required, 23XI admits that Paragraph 62 purports to refer to text messages from Mr. Polk, written statements that speak for themselves, but denies that those communications were anticompetitive or a violation of the antitrust laws. 23XI denies the remaining allegations in Paragraph 62.

63.     23XI admits that the TNC met with NASCAR periodically during 2022 to discuss the 2025 Charter Agreement, but otherwise denies the allegations in Paragraph 63.

64.     Paragraph 64 asserts legal conclusions and arguments for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 64.

65.     23XI admits that NASCAR proposed terms for the 2025 Charter Agreement on October 2, 2022, but otherwise denies the allegations in Paragraph 65.

66.     23XI admits that Paragraph 66 purports to refer to an October 5, 2022, text thread, a written document that speaks for itself, but denies that those communications were anticompetitive or a violation of the antitrust laws and otherwise denies the allegations in Paragraph 66.

67.     Paragraph 67 asserts argument for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 67, except it admits that NASCAR was able to engage in individual negotiations with teams regarding the terms of the 2025 Charter Agreement.

68.     23XI admits that the first, second, fourth, fifth, and sixth sentences of Paragraph 68 purport to refer to an email from the RTA's Executive Director, a written document that speaks for itself, but denies that the email is anticompetitive or a violation of the antitrust laws. The third sentence of Paragraph 68 asserts argument for which no response is required. To the extent that the third sentence of Paragraph 68 requires a response, 23XI denies the allegations in the third

sentence of Paragraph 68, except it admits that the TNC sought an increased revenue share for teams as part of the voluntary joint negotiations for the 2025 Charter Agreement. 23XI denies any remaining allegations in Paragraph 68.

69.     23XI admits that the TNC held a press conference in October 2022, but denies that the press conference was intended to "publicize [teams] dissatisfaction with the fact that NASCAR had not given in to their collective demands" as alleged in Paragraph 69. The October 2022 TNC press conference was intended to publicize the teams' frustration with NASCAR's positions during the negotiations for the 2025 Charter Agreement.

70.     23XI denies the allegation in the first sentence of Paragraph 70 that Mr. Polk ████ ████████████████████████████████████████ 23XI admits that the remainder of Paragraph 70 purports to refer to text messages from Mr. Polk, written statements that speak for themselves, but denies that those communications were anticompetitive or a violation of the antitrust laws.

71.     23XI admits the allegations in the first sentence of Paragraph 71. 23XI further admits that the second sentence of Paragraph 71 purports to refer to statements from online articles, written documents that speak for themselves, but denies that exploration of holding exhibition events outside of NASCAR "was 'just a leverage tool'" and any remaining allegations in Paragraph 71.

72.     23XI denies the allegations in the first sentence of Paragraph 72. 23XI denies that 23XI purchased a Charter "only a few months" after a publication of an article in October 2022. 23XI admits that portions of Paragraph 72 refer to statements from an online article, a written document that speaks for itself, and otherwise denies the remaining allegations in Paragraph 72.

73. 23XI admits that the 2016 Charter Agreement says ████████████ ███████████████████████████████████████████████████ ████████████████████████████" and that NASCAR sent out a notice of a meeting to be held on April 5, 2023. 23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 73 and denies those allegations on that basis, and denies any remaining allegations in Paragraph 73.

74. 23XI denies the allegations in Paragraph 74. The teams did not agree to a "boycott" of the Team Owner Council meeting, and instead the teams individually decided not to attend this particular Team Owner Council meeting without any agreement about attendance.

75. Paragraph 75 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 75, except it admits that 23XI did not attend the Team Owner Council meeting, and that other teams unilaterally decided not to attend the Team Owner Council meeting.

76. 23XI denies the allegations in Paragraph 76, except that it admits that NASCAR engaged in individual negotiations with teams regarding the terms of the 2025 Charter Agreement. NASCAR also continued to voluntarily engage in joint negotiations with the TNC for the terms of the 2025 Charter Agreement.

77. 23XI admits that NASCAR proposed Charter Agreement terms to the TNC on February 4, 2023, but otherwise denies the allegations in Paragraph 77.

78. 23XI admits that the TNC and NASCAR met virtually to discuss the terms of the Charter Agreement on or about March 24, 2023, but otherwise denies the allegations in Paragraph 78.

79.     Paragraph 79 asserts argument for which no response is required.  To the extent that a response is required, 23XI admits that Paragraph 79 purports to refer to statements made in a text thread, written statements that speak for themselves, but denies that those communications were anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 79.

80.     23XI admits that Paragraph 80 purports to summarize and characterize a December 22, 2023, written report from one member of the TNC, a written document that speaks for itself. 23XI denies any remaining allegations in Paragraph 80.

81.     23XI admits NASCAR provided the first full draft of the 2025 Charter Agreement after the close of business on Friday, December 22, 2023, but otherwise denies the allegations in Paragraph 81.

82.     The first sentence of Paragraph 82 asserts argument for which no response is required.  To the extent that a response is required, 23XI denies the characterization of the TNC and Mr. Polk's negotiations with NASCAR as "successful."  23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last two sentences of Paragraph 82 and denies the allegations on that basis, except it admits that teams received an increase in revenue in the 2025 Charter Agreement.

83.     Paragraph 83 asserts argument for which no response is required.  To the extent that a response is required, 23XI admits that teams sought permanent charters, but NASCAR refused.  23XI denies the remaining allegations in Paragraph 83.

84.     Paragraph 84 asserts argument for which no response is required.  To the extent that a response is required, 23XI admits that Paragraph 84 purports to refer to statements from Denny Hamlin from an online article, a written document that speaks for itself, and Mr. Hamlin's

podcast.  However, 23XI denies that teams threatened to "boycott" any NASCAR event or that any "boycott" occurred.  23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 84 and therefore denies them on that basis.

85.  Paragraph 85 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI admits that Mr. Polk spoke with a NASCAR broadcaster during the course of negotiations for the terms of the 2025 Charter Agreement, but denies that those discussions were "in furtherance of the conspiracy . . . to interfere with NASCAR's media rights negotiations," and otherwise denies the remaining allegations in Paragraph 85.

86.  Paragraph 86 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies that there was any conspiracy "to interfere with NASCAR's media rights negotiations."  23XI further denies that Counter-Defendants "deter[red] NASCAR from dealing with teams individually."  23XI asserts that NASCAR did in fact individually negotiate with teams over the terms of the 2025 Charter Agreement.  23XI denies any threat to "boycott" NASCAR races, and otherwise denies the remaining allegations in Paragraph 86.

87.  23XI admits that Paragraph 87 purports to refer to an email Mr. Polk sent to other members of the TNC, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 87.

88.  23XI admits that Paragraph 88 purports to refer to statements that the RTA Executive Director made in an October 26, 2023 email to the TNC, a written document that speaks

for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws. 23XI denies any remaining allegations in Paragraph 88.

89.     The first sentence of Paragraph 89 asserts argument for which no response is required. To the extent that a response is required, 23XI admits that the TNC communicated with race teams during the course of negotiations for the terms of the 2025 Charter Agreement, but denies that those communications were anticompetitive or a violation of the antitrust laws. 23XI admits that sentences two through four of Paragraph 89 purport to refer to statements that the RTA Executive Director made to a team on October 28, 2023, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 89.

90.     23XI admits that Paragraph 90 purports to refer to statements from a January 26, 2024 text chain between Mr. Polk, the RTA's Executive Director, and another TNC member, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 90.

91.     The first sentence of Paragraph 91 asserts argument for which no response is required. To the extent that a response is required, 23XI admits that NASCAR voluntarily agreed to negotiate the terms of the 2025 Charter Agreement through the TNC, but denies that Counter-Defendants prevented NASCAR from engaging in individual negotiations with teams. 23XI admits that sentences two and three of Paragraph 91 purport to refer to statements from Mr. Polk on February 13, 2024, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 91.

92.     Paragraph 92 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI admits that Paragraph 92 purports to refer to statements from a partially privileged email, but denies that the communication was anticompetitive or a violation of the antitrust laws, or any evidence of any illegal agreement, and otherwise denies the allegations in Paragraph 92.

93.     The first sentence of Paragraph 93 asserts argument for which no response is required.  To the extent that a response is required, 23XI denies the allegations in the first sentence of Paragraph 93.  23XI admits that sentences two through four of Paragraph 93 purport to refer to statements made by Mr. Polk in a February 21, 2024 text chain with other TNC members, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 93.

94.     23XI admits that Paragraph 94 purports to refer to a February 27, 2024 document, that speaks for itself, but denies that the communication and document were anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 94.

95.     23XI admits that Paragraph 95 purports to refer to a February 29, 2024 email, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws.  23XI further admits that ███████████████ is a shorthand for the concept that all well-managed teams should be able to make a reasonable profit and compete for a championship, but otherwise denies the allegations in Paragraph 95.

96.     The first sentence of Paragraph 96 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies that ██████ ███████████████████████████████████████████████████, and otherwise denies these allegations.  23XI further denies that ███████████████████

████████████████████████ as each team was able to make its own decision and engaged in individual negotiations with NASCAR. 23XI admits that sentences two through four of Paragraph 96 purport to refer to statements from an April 8, 2024 email, a written document that speaks for itself, but denies that the communication and document were anticompetitive or a violation of the antitrust laws. 23XI denies any remaining allegations in Paragraph 96.

97. 23XI admits that NASCAR requested, scheduled, and had individual negotiations with teams regarding the terms of the 2025 Charter Agreement. 23XI further admits that Counter-Defendants did not prevent any team from engaging in individual negotiations with NASCAR. 23XI admits that Paragraph 97 purports to refer to statements in an April 10, 2024, email, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws. 23XI denies any remaining allegations in Paragraph 97.

98. 23XI admits that NASCAR engaged in individual negotiations with teams regarding the terms of the 2025 Charter Agreement. 23XI further admits that the TNC was appointed by the RTA members to negotiate proposed terms of the 2025 Charter Agreement with NASCAR. 23XI denies the existence of any "agreement" among teams that was anticompetitive or a violation of the antitrust laws. 23XI admits that teams communicated with each other during the course of negotiations for the terms of the 2025 Charter Agreement, but denies those communications were anticompetitive or a violation of the antitrust laws. The last sentence of Paragraph 98 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in the last sentence of Paragraph 98, along with any remaining allegations in Paragraph 98.

99. 23XI admits that the TNC presented a proposal to NASCAR regarding the terms of the 2025 Charter Agreement on April 25, 2024, but denies that the proposal was anticompetitive,

based on any anticompetitive agreement, or a violation of the antitrust laws. Sentences four and five of Paragraph 99 assert argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies ████████████████████████████ ██████ and further denies the existence of any conspiracy or anticompetitive agreement in violation of the antitrust laws. 23XI denies any remaining allegations in Paragraph 99.

100. 23XI admits that Paragraph 100 purports to refer to statements in a May 1, 2024 email, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 100.

101. 23XI admits that NASCAR provided a draft of the 2025 Charter Agreement to the teams on or about May 28, 2024, but otherwise denies the allegations in Paragraph 101.

102. 23XI admits that Paragraph 102 purports to refer to statements from a May 30, 2024, email, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws, and otherwise denies the allegations in Paragraph 102.

103. 23XI admits that Paragraph 103 purports to refer to statements from a June 3, 2024 message from 23XI's President to Mr. Polk, a written document that speaks for itself, and otherwise denies the allegations in Paragraph 103.

104. 23XI admits that Paragraph 104 purports to refer to statements from a June 26, 2024 text chain between RTA's Executive Director and Front Row's General Manager, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws. 23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104, and denies the allegations on that basis.

105. The first sentence of Paragraph 105 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in the first sentence of Paragraph 105, except it admits that teams met regarding ███ ████████████████████████████████████████████, but denies that those meetings were anticompetitive or a violation of the antitrust laws. 23XI admits that Paragraph 105 purports to refer to statements from ████████████████████████████████████████, a written document that speaks for itself, but denies that the communication was anticompetitive or a violation of the antitrust laws. 23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 105 regarding ████████████████████ ██████████████, and denies the allegations on that basis.

106. 23XI admits that Paragraph 106 purports to refer to and characterize statements from a July 9, 2024 document circulated by the TNC to NASCAR and a proposed revised draft of the 2025 Charter Agreement, which are written documents that speak for themselves, but denies that the documents reflect any anticompetitive conduct or violations of the antitrust laws. 23XI denies any remaining allegations in Paragraph 106.

107. Paragraph 107 asserts argument for which no response is required. To the extent that a response is required, 23XI admits that Paragraph 107 purports to refer to July 31, 2024, and August 1, 2024, communications between 23XI executives and the RTA's Executive Director, written documents that speak for themselves, but denies that those communications were anticompetitive or a violation of the antitrust laws and otherwise denies the allegations in Paragraph 107.

108. 23XI admits that Steve Phelps sent a version of the 2025 Charter Agreement on August 14, 2024, with changes to the draft, including changes that apparently resulted from

NASCAR's negotiations with individual teams, but otherwise denies the allegations in Paragraph 108.

109. 23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109 about what NASCAR claims to have learned during the negotiations, and denies those allegations on that basis. 23XI denies the remaining allegations in Paragraph 109.

110. 23XI admits that NASCAR sent ███████████████████████████ the 2025 Charter Agreement to 23XI on August 14, 2024, and that NASCAR said this version of the 2025 Charter Agreement ███████████████████████████████████████ ███████████ 23XI denies any remaining allegations in Paragraph 110.

111. 23XI admits that Paragraph 111 purports to refer to a statement from 23XI's President to the RTA's Executive Director, a written document that speaks for itself, but otherwise denies the allegations in Paragraph 111.

112. 23XI admits that Paragraph 112 purports to refer to an August 16, 2024 text exchange between the RTA's Executive Director and Front Row's President, a written document that speaks for itself, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112, and denies the allegations on that basis.

113. 23XI admits that Paragraph 113 purports to refer to text messages between Denny Hamlin and Bob Jenkins, written documents that speak for themselves, but otherwise denies the allegations in Paragraph 113.

114. The first sentence of Paragraph 114 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI admits that NASCAR engaged in individual negotiations with teams regarding the terms of the 2025 Charter

Agreement and that NASCAR voluntarily agreed to joint negotiations with the TNC regarding the terms of the 2025 Charter Agreement, but otherwise denies the allegations in the first sentence of Paragraph 114. 23XI denies that NASCAR's voluntary joint negotiations with the TNC were anticompetitive or a violation of the antitrust laws. 23XI admits that sentences two through five refer to statements in an August 26, 2024 email from a TNC member to NASCAR, a written document that speaks for itself, but denies that the email was anticompetitive or a violation of the antitrust laws. 23XI admits that teams requested that NASCAR remove an anticompetitive "one-year non-compete at the end of the term of the proposed 2025 Charter Agreement" and that NASCAR ███████████████████████████, but NASCAR also ████████████ ████████████████████████████████████████████████. 23XI further admits that teams requested a most favored nations clause to ensure equal treatment of the teams in the 2025 Charter Agreement and that NASCAR ███████████████████. 23XI admits that some teams objected to NASCAR's proposal to interfere with teams' relationships with their drivers by implementing a "Driver Ambassador Program," and otherwise denies the remaining allegations in Paragraph 114.

115. 23XI admits that NASCAR provided 23XI with a draft 2025 Charter Agreement on August 30, 2024, but otherwise denies the allegations in Paragraph 115.

116. 23XI lacks knowledge or information sufficient to form a belief as to what other teams told NASCAR and therefore denies the allegations in Paragraph 116 on that basis. 23XI also denies that it threatened other teams in any way, and denies any remaining allegations in Paragraph 116.

117. 23XI lacks knowledge or information sufficient to form a belief as to the truth of allegations regarding NASCAR's understanding as to what other teams were told and therefore

denies the allegations in Paragraph 117 on that basis. 23XI also denies that it instructed teams to "drag out the negotiations" or "threatened boycotts of NASCAR races and events," and otherwise denies any remaining allegations in Paragraph 117.

118. 23XI admits the allegations in Paragraph 118. NASCAR sent teams the final version of the 2025 Charter Agreement on Friday, September 6, 2024, at 5:00 P.M. E.T. with a midnight deadline. NASCAR refused to make material changes after this September 6 take-it-or-leave-it offer.

119. 23XI admits that Paragraph 119 purports to refer to messages that Mr. Polk sent to other 23XI personnel on September 6, 2024, a written document that speaks for itself, but denies that those communications were anticompetitive or in violation of the antitrust laws.

120. 23XI admits the allegations in Paragraph 120.

121. 23XI admits that Paragraph 121 purports to quote an email that Mr. Polk wrote to Denny Hamlin, a written document that speaks for itself.

122. Paragraph 122 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 122, except it admits that the first sentence of Paragraph 122 purports to refer to a statement from an online article, a written document that speaks for itself.

123. Paragraph 123 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 123.

124. Paragraph 124 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 124.

125. Paragraph 125 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 125.

26

126. Paragraph 126 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 126.

127. Paragraph 127 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI admits that Roger Penske has a team in the Penske-owned IndyCar and IMSA, which is owned by NASCAR. 23XI admits that Front Row fields two trucks in the NASCAR Truck Series, but denies that Front Row fields two cars in the NASCAR Cup Series because to 23XI's knowledge, Front Row fields three cars in the NASCAR Cup Series. 23XI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last two sentences of Paragraph 127 and therefore denies them on that basis. 23XI denies any remaining allegations in Paragraph 127.

128. Paragraph 128 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 128, except it admits that NASCAR Cup Series teams compete against each other for sponsorship money, and that guaranteed entry into NASCAR Cup Series is valuable to NASCAR Cup Series teams. 23XI denies any remaining allegations in Paragraph 128.

129. Paragraph 129 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 129.

130. 23XI incorporates its responses to Paragraphs 1–82 as if fully stated herein.

131. Paragraph 131 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 131.

132. Paragraph 132 asserts argument and legal conclusions for which no response is required. To the extent that a response is required, 23XI denies the allegations in Paragraph 132.

133.    Paragraph 133 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 133.

134.    Paragraph 134 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 134.

135.    Paragraph 135 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 135.

136.    Paragraph 136 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 136.

137.    Paragraph 137 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 137.

138.    Paragraph 138 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 138.

139.    Paragraph 139 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 139.

140.    Paragraph 140 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 140.

141.    Paragraph 141 asserts argument and legal conclusions for which no response is required.  To the extent that a response is required, 23XI denies the allegations in Paragraph 141, except it admits that NASCAR seeks damages and injunctive relief[1] as part of its Amended Counterclaim.  23XI denies that NASCAR is entitled to any relief.

---

[1] As the Court has acknowledged, Counter-Plaintiff has dropped its requested injunctive relief to eliminate Section 3(a) from the 2025 Charter Agreement:

> While the Court agrees with Plaintiffs that this request for injunctive relief is not a proper responsive remedy to NASCAR's claims, and

## RESPONSE TO PRAYER FOR RELIEF

Counter-Plaintiff's Prayer for Relief contains no factual allegations and, therefore, no response is required. To the extent a response is required, 23XI denies that Counter-Plaintiff is entitled to the relief sought in the Amended Counterclaim or to any relief whatsoever.

23XI denies the allegations in the Amended Counterclaim, whether express or implied, that are not expressly admitted herein.

## RESPONSE TO DEMAND FOR JURY TRIAL

Counter-Plaintiff's Demand for Jury Trial does not require a response. To the extent a response is required, 23XI denies that Counter-Plaintiff has been harmed or is entitled to a trial by jury.

## AFFIRMATIVE AND OTHER DEFENSES

23XI asserts the following defenses with respect to the causes of action alleged in the Amended Counterclaim, without assuming the burden of proof or persuasion where such burden rests on Counter-Plaintiff. 23XI has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action. 23XI reserves the right to amend, or seek to amend, its Answer, including its affirmative and other defenses.

---

it raises difficult issues related to the necessity of adding the other racing teams as parties under Federal Rule of Civil Procedure 19, NASCAR represented at oral argument that it did not intend to pursue this relief in light of the Fourth Circuit's ruling denying Plaintiffs a Preliminary Injunction.

*See* Dkt. No. 162 at 10 (internal footnotes omitted).

29

**FIRST DEFENSE**

23XI pleads and asserts that Counter-Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands and *in pari delicto*. For most of NASCAR's history, teams competed under year-to-year contracts that provided no assurance of the long-term viability of a racing team. Because teams had no guaranteed entry into any Cup Series event, prize money (the only payment they received from NASCAR) was not a reliable revenue source, and teams had to depend primarily on individual team sponsorships. The system left teams in a constant state of financial vulnerability.

In 2015, the teams formed the RTA to try to negotiate a fairer deal between the teams and NASCAR. NASCAR agreed to engage in joint negotiations with the RTA to implement a new framework that would hopefully offer a more sustainable model for teams and ensure more stability for NASCAR. Those negotiations resulted in the 2016 Charter Agreement. While the teams still struggled because of the 2016 Charter Agreement's below-market terms as a result of NASCAR's unlawfully maintained monopsony power, the charter system provided teams with slightly more economic stability due to guaranteed spots in Cup Series races and guaranteed monetary payments.

Up until now, NASCAR has never claimed that these voluntary joint negotiations resulted in any harm to NASCAR or were illegal in any way. Nor has NASCAR argued that the charter system is bad for NASCAR. In fact, NASCAR's Commissioner Steve Phelps has called "the charter system [] a good thing for NASCAR and the growth of this sport."[2] Before its decision to file this Amended Counterclaim, NASCAR argued that the charter system "has led to an expansion

---

[2] *NASCAR President Reveals Charter Agreement Negotiation Details Amid Intense Legal Battle*, NEWSWEEK (Dec. 11, 2024), https://www.newsweek.com/sports/racing/nascar-president-reveals-charter-agreement-negotiation-details-amid-intense-legal-battle-1999524.

of the sport, which has in turn led to increased payments to teams Racing in the NASCAR Cup Series." *See* NASCAR's First Answer, Dkt. No. 58 at 37; *see also* June 17, 2025 Hr'g Tr. at 27:12–13 ("No, Your Honor, we are not alleging that the Charters themselves are the anticompetitive effect.").

Moreover, NASCAR has unlawfully maintained its monopsony power in violation of the Sherman Act and used that power to inflict below competitive market terms on Counter-Defendants and other racing teams.

To the extent Counter-Plaintiff now argues it has been harmed by the charter system or the Charter Agreements that it imposed through the exercise of unlawfully maintained monopsony power, it has unclean hands.

## SECOND DEFENSE

23XI pleads and asserts that Counter-Plaintiff's claims are barred in whole or in part because the claims are based on lawful conduct. Counter-Defendants' joint negotiating conduct was based on the pro-competitive benefits of jointly negotiating for common terms in the 2025 Charter Agreement on a voluntary basis with NASCAR in order to facilitate the NASCAR Cup Series without any restriction on individual negotiations.

## THIRD DEFENSE

23XI pleads and asserts that the Amended Counterclaim fails to state a claim upon which relief can be granted.

## FOURTH DEFENSE

23XI pleads and asserts that the Amended Counterclaim fails to allege or prove that Counter-Defendants possess market power in any legally cognizable relevant antitrust market.

**FIFTH DEFENSE**

23XI pleads and asserts that none of the conduct alleged in the Amended Counterclaim has unreasonably restrained trade.

**SIXTH DEFENSE**

23XI pleads and asserts that the Amended Counterclaim fails to allege any plausible harm to competition caused by the actions of 23XI or other Counter-Defendants.

**SEVENTH DEFENSE**

23XI pleads and asserts that any alleged harm to NASCAR is not actionable because it does not constitute harm to competition.

**EIGHTH DEFENSE**

23XI pleads and asserts that the Amended Counterclaim fails to allege any plausible conscious commitment to an unlawful scheme by 23XI or the other Counter-Defendants.

**NINTH DEFENSE**

23XI pleads and asserts that Counter-Plaintiff's claimed injuries are self-inflicted and that Counter-Plaintiff failed to mitigate its claimed damages.

**TENTH DEFENSE**

23XI pleads and asserts that Counter-Plaintiff has not alleged any non-speculative damages.

**ELEVENTH DEFENSE**

23XI pleads and asserts that Counter-Plaintiff is not an efficient enforcer of its claims because it has not been harmed and/or restrained by the conduct that Counter-Plaintiff alleges.

## TWELFTH DEFENSE

23XI pleads and asserts that to the extent Counter-Plaintiff's claims concern alleged conduct that took place more than four years ago, Counter-Plaintiff's claims are barred, in whole or in part, by the four-year statute of limitations for antitrust claims. Counter-Plaintiff's claims and allegations regarding the joint negotiations of the Charter Agreements date back to 2015 when NASCAR and the teams agreed to joint negotiations of the 2016 Charter Agreement, years before 23XI had any involvement in NASCAR.

Dated: July 21, 2025

Respectfully submitted,

By:     /s/ Jeffrey L. Kessler
        Jeffrey L. Kessler
        Neha Vyas
        **WINSTON & STRAWN LLP**
        200 Park Avenue
        New York, NY 10166
        Tel: (212) 294-6700
        Fax: (212) 294-4700
        jkessler@winston.com
        nvyas@winston.com

        Jeanifer E. Parsigian
        Michael Toomey
        **WINSTON & STRAWN LLP**
        101 California Street
        San Francisco, CA 94111
        Tel: (415) 591-1000
        Fax: (415) 591-1400
        jparsigian@winston.com
        mtoomey@winston.com

        E. Danielle T. Williams
        **WINSTON & STRAWN LLP**
        300 South Tryon Street
        16th Floor
        Charlotte, NC 28202
        Tel: (704) 350-7700
        Fax: (704) 350-7800

dwilliams@winston.com

Matthew R. DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

Josh Hafenbrack
**WINSTON & STRAWN LLP**
1901 L Street N.W.
Washington, D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com

Benjamin S. Gordon
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
bgordon@winston.com

*Counsel for 2311 Racing LLC d/b/a 23XI Racing*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **COUNTER-DEFENDANT 2311 RACING LLC D/B/A 23XI RACING'S ANSWER TO COUNTER-PLAINTIFF'S AMENDED COUNTERCLAIM** was electronically filed using the Court's CM/ECF system, which will automatically send notice of this filing to counsel of record for all parties, including:

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Christopher S. Yates
Natalie W. Kaliss
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com
natalie.kaliss@lw.com

Robert B. McNary
**LATHAM & WATKINS LLP**
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
rob.mcnary@lw.com

Lawrence E. Buterman
Shayan Ahmad
Quinlan Cummings
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
shayan.ahmad@lw.com
quinlan.cummings@lw.com

Anna M. Rathbun
Christina R. Gay
David L. Johnson
Christopher J. Brown
Margaret E. Cohen
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
christina.gay@lw.com
david.johnson@lw.com
chris.brown@lw.com
margaret.cohen@lw.com

*Counsel for Defendants and Counter-Plaintiff*

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler