# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. <br><br> NASCAR EVENT MANAGEMENT, LLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> 2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK, <br><br> Counter-Defendants. | No. 3:24-cv-886-KDB-SCR |

**PLAINTIFFS' POSITION ON DEFENDANTS' NOTICE REGARDING CHARTERS**

Plaintiffs 2311 Racing LLC d/b/a 23XI Racing ("23XI") and Front Row Motorsports, Inc. ("Front Row" and collectively with 23XI, "Plaintiffs"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 65, have moved this Court for entry of a preliminary injunction in their favor and against Defendants National Association for Stock Car Auto Racing, LLC, NASCAR Holdings, LLC, and NASCAR Event Management, LLC (collectively, "NASCAR") and James France (collectively with NASCAR, "Defendants").

1

Plaintiffs respectfully provide their position on Defendants' Notice and proposed voluntary commitments (Dkt. 205).

1. The stipulation offered by NASCAR does not moot Plaintiffs' Motion for Preliminary Injunction or eliminate Plaintiffs' irreparable harm if no relief is provided.

2. The goal of the preliminary injunction, as the Court noted, should be to provide the most certainty possible through a trial to both the parties and non-parties involved in NASCAR. Aug. 28, 2025, Hr'g Tr. at 18:9-19:5 (hereinafter "Hr'g Tr."). The way to do that is to issue an injunction preserving the status quo with respect to both the four charters previously issued to Plaintiffs and the two charters the Plaintiffs purchased from Stewart-Haas Racing. *Id.* at 17:21-18:8.

3. With a preliminary injunction that maintains status quo, if Plaintiffs prevail at trial and the Court orders NASCAR to provide the rights to six charters to Plaintiffs after a trial, NASCAR can do so without going through the right of first refusal and anti-dilution provisions of the Charter agreements which might impede Plaintiffs from obtaining these rights and add increased uncertainty to the current status quo. *See* Dkt. 176-10 at 10-14 (2025 Charter Agreement §§ 3.2, 3.3, 3.4). This is the commitment the Court required NASCAR to make to avoid a temporary restraining order. *See* Dkt. 189 at 1-2. Since NASCAR will not agree to continue that commitment through trial, a preliminary injunction by the Court is required.

4. As discussed in court and contrary to NASCAR's position in its Notice, a status quo injunction will not limit NASCAR's ability to bring new entrants into the sport for the 2026 NASCAR Cup Series season. Under the terms of the 2025 Charter Agreement, NASCAR would still be free to issue a new charter above the 36 issued charters to its new buyer or other buyers– up to 40 total charters. To issue a new charter, NASCAR would have to go through the right of

first refusal and anti-dilution requirements of the 2025 Charter Agreements. *See* Dkt. 176-10 at 10-14 (2025 Charter Agreement §§ 3.2, 3.3, 3.4). During the hearing, NASCAR rejected this exact suggestion from the Court, purportedly because of the adverse impact on charter scarcity for the other teams. Hr'g Tr. at 22:11-25. As the Court pointed out, however, there is no immediate change to the scarcity of the charters should NASCAR choose to issue a 37th charter now for the 2026 NASCAR Cup Season.

5. Under this scenario, if the Plaintiffs do not prevail at trial, NASCAR will have 31 chartered cars in the field for next season and scarcity will increase (not decrease). If Plaintiffs do prevail at trial and seek an injunction restoring their charter rights, that would be only a part of the injunctive relief that the Court will be granting to open up the market to competition so that the impact of having 37 charters is not likely to be of material concern to the other teams. It is not possible to determine now, prior to trial, the scope or precise contour of the injunctive relief that the Court will find appropriate, which is another reason for maintaining the status quo until a verdict is reached.

6. In any event, since the other teams have rights of first refusal and dilution protections for a 37th charter, an injunction keeping the status quo for the six charters that were operated by Plaintiffs is the least disruptive, most certain and fairest outcome for all of the teams. If NASCAR wishes to issue a new charter now for the 2026 season, it should do so as a 37th charter subject to the team protections set forth in the 2025 Charter Agreement.

7. Contrary to Defendants' statement below, the relief Plaintiffs are seeking is not a determination that they own the four charters offered to them. Instead, Plaintiffs are seeking to maintain the status quo that no one owns those charters which preserves this Court's ability to

3

fashion relief after trial, in the event Plaintiffs prevail, without interfering with the rights of others under the terms of the 2025 Charter Agreement.

8. Moreover, with respect to the charters Plaintiffs acquired from Stewart-Haas Racing ("SHR Charters"), NASCAR's Notice does not offer to maintain the status quo with respect to these two charters. In its proposed commitments, NASCAR is deeming those transactions as unwound, instead of acknowledging Plaintiffs still own the SHR Charters. NASCAR is offering no certainty and, under its proposed commitments, NASCAR would remain free to come back to the Court next week for permission to sell these two charters, even though they are the property of Plaintiffs unless and until the Court decides to unwind these transactions. Preserving the status quo requires Plaintiffs to maintain ownership of the SHR Charters through post-trial rulings.

9. Finally, Plaintiffs maintain their position that they will also suffer irreparable harm if they are not granted charter rights for the remainder of this season because of the risk of breach claims from their irreplaceable drivers and loss of sponsors in the absence of charter rights. *See* Dkt. 202 at 10; Dkt. 202-5; Dkt. 202-6; Dkt. 176 at 23-24; Dkt. 176-1 ¶ 15; Dkt. 176-2 ¶¶ 7–8.

10. In an effort to resolve the Motion for Preliminary Injunction so the Court would not have to rule, Plaintiffs proposed the following status quo resolution to Defendants. If NASCAR had made the below commitments and representations, Plaintiffs would have informed the Court that they were withdrawing the Motion, so the Court did not have to rule.

    a. NASCAR will not change Rule 7.9.1.1.C., which provides that up to six Open Teams will be eligible for starting grid positions based on the highest ranked Team Owner Points standings, for the remainder of the 2025 Cup Series Season.

b. NASCAR represents it will not issue, reissue, sell, convey, lease, transfer, or otherwise convey in any manner the six 2025 Charters offered to the Plaintiffs or purchased until the Court rules on any post-trial motions seeking a permanent injunction or other equitable relief.

c. NASCAR represents that it will not challenge the fact that Plaintiffs own the SHR Charters unless and until the Court orders the unwinding and sale of the SHR Charters. NASCAR will not seek to unwind and sell the SHR Charters before the Court rules on any post-trial motions seeking a permanent injunction or other equitable relief.

d. NASCAR represents it will not issue, sell, convey, or lease any additional Charters for the 2025 Cup Series season.

e. NASCAR represents it will not issue, sell, convey, or lease more than four (4) additional Charters for the 2026 Cup Series season.

   i. In the event NASCAR chooses to issue, sell, convey, or lease additional Charters for the 2026 Cup Series season prior to the Court ruling on any post-trial motions seeking a permanent injunction or other equitable relief, (a) the six 2025 Charters previously offered to the Plaintiffs or purchased will be counted in the total number of Charter Members; and (b) such transactions will be governed by and will trigger Sections 3.2 (Field Size), 3.3 (Anti-Dilution), and 3.4 (Charter Member Issuance or Reissuance) of the 2025 Charter Member Agreement. Stated differently and for clarity, in the event NASCAR chooses to issue, sell, convey, or lease additional Charters

5

for the 2026 Cup Series season during this period, the additional Charters will be Nos. 37 – 40.

    ii. In the event Charter Nos. 37 – 40 are created and issued and the Court orders NASCAR to provide the rights to the six 2025 Charters offered to the Plaintiffs or purchased, this transaction related to Plaintiffs and these six 2025 Charters will not be governed by and will not trigger Sections 3.2 (Field Size), 3.3 (Anti-Dilution), and 3.4 (Charter Member Issuance or Reissuance) of the 2025 Charter Member Agreement. Stated differently and for clarity, in the event NASCAR is ordered by the Court to issue, sell, convey, or lease additional Charters for the 2026 Cup Series season, the six 2025 Charters offered to or purchased by Plaintiffs will retain their place as six of the original 36 Charters.

    iii. In the event NASCAR is ordered by the Court to issue, sell, convey, or lease additional Charters for the 2026 Cup Series season to Plaintiffs, the six 2025 Charters previously offered to or purchased by the Plaintiffs will retain their rights to the car number, historical or championship points and any performance-related standards history outlined in Section 6.12 of the 2025 Charter Agreement.

11. Defendants, however, refused to make any changes to their commitments and representations, which left Plaintiffs with no choice other than to maintain their Motion for Preliminary Injunction to seek to preserve the status quo through the trial.

12. Defendants requested the following statement be included in Plaintiffs' Response: "NASCAR opposes the relief Plaintiffs seek, but stands by the voluntary commitments that NASCAR made in its Notice Regarding Charters, Doc. 205.  Plaintiffs' Notice goes far beyond what Plaintiffs requested in their injunction papers, far beyond addressing any purported irreparable harm that Plaintiffs have identified, and far beyond preserving the status quo.  See Docs. 175, 200; Hrg. Tr. 9:1-2 (Aug. 28, 2025) (Kessler) ("But we would not be seeking now to do anything other than to stop them from doing this.").  Their new requested relief violates the status quo by requiring any Charter NASCAR issues to be treated as if Plaintiffs hold Charters, even though the Charters "don't belong to them," as the Court has made clear.  Hrg. Tr. 7:2-4 (Bell, J.).  Plaintiffs' proposal also seeks to alter the contract rights of other organizations that accepted NASCAR's Charter offers, and thus implicates Rule 19 because those organizations are not before the Court.  Plaintiffs' Notice is also based on a false premise:  that Plaintiffs currently have or are entitled to Charter rights, and that there are "car number, historical or championship points" associated with Charters that Plaintiffs rejected a year ago."

\* \* \*

For all these reasons, as well as the reasons presented at the hearing and in the briefing, Plaintiffs ask the Court to rule on their Motion for Preliminary Injunction, which is necessary to maintain the status quo, prevent irreparable harm and not increase the current uncertainty that necessarily exists until a trial verdict has been rendered and rulings on post-trial motions have issued.

Dated: September 2, 2025                By:    */s/ Jeffrey L. Kessler*
                                                                                     Jeffrey L. Kessler
Neha Vyas
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
nvyas@winston.com

E. Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer E. Parsigian
Michael Toomey
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com


Josh Hafenbrack
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com

Benjamin S. Gordon
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
bgordon@winston.com

*Counsel for 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports Inc.*

## CERTIFICATE OF COMPLIANCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

*Counsel for 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFFS' POSITION ON DEFENDANTS' NOTICE REGARDING CHARTERS** was electronically filed using the Court's CM/ECF system, which will automatically send notice of this filing to counsel of record for all parties, including:

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Christopher S. Yates
Natalie W. Kaliss
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com
natalie.kaliss@lw.com

Robert B. McNary
**LATHAM & WATKINS LLP**
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
rob.mcnary@lw.com

Lawrence E. Buterman
Shayan Ahmad
Quinlan Cummings
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
shayan.ahmad@lw.com
quinlan.cummings@lw.com

Anna M. Rathbun
Christina R. Gay
David L. Johnson
Christopher J. Brown
Margaret E. Cohen
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
christina.gay@lw.com
david.johnson@lw.com
chris.brown@lw.com
margaret.cohen@lw.com

*Counsel for Defendants and Counterclaim Plaintiff*

                                                */s/ Jeffrey L. Kessler*
                                                   Jeffrey L. Kessler