## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. | Civil Action No. 3:24-cv-886-KDB-SCR <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **PUBLIC REDACTED VERSION** |
| NASCAR EVENT MANAGEMENT, LLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> 2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK, <br><br> Counter-Defendants. | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON MARKET DEFINITION AND MONOPSONY POWER

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

I.     Both Sides Have Pleaded a Relevant Input Market for the Services of Premier Stock Car Racing Teams ............................................................... 2

II.    Both Sides Offer Expert Testimony Supporting the Input Market for Premier Stock Car Racing ............................................................................... 3

     A.     Plaintiffs Have Carried Their Burden of Proof on Relevant Market with Dr. Rascher's Testimony ................................................................. 3

     B.     NASCAR's Expert Dr. Hubbard Opines in Support of the Same Relevant Input Market as Dr. Rascher .......................................................... 4

     C.     NASCAR's Expert Dr. Murphy Does Not Create a Material Dispute as to the Market Definition Opinions Shared by Both Dr. Hubbard and Dr. Rascher ......................................................................................... 5

III.    There Is No Genuine Dispute That NASCAR Is the Sole Purchaser of Premier Stock Car Racing Services .................................................................. 5

IV.    There Is No Genuine Dispute That the Relevant Market Has High Barriers to Entry ................................................................................................................ 7

LEGAL STANDARDS ...................................................................................... 8

ARGUMENT ..................................................................................................... 8

I.     There Is No Material Dispute That the Relevant Market Is the Input Market for Premier Stock Car Racing ................................................................... 10

     A.     NASCAR's Allegations in Its Amended Counterclaim Are Judicial Admissions of the Existence of a Relevant Input Market for Premier Stock Car Racing Services .............................................................. 10

     B.     Judicial Estoppel Prevents NASCAR from Disclaiming a Relevant Input Market for Premier Stock Car Racing Services ................................ 12

     C.     There Is No Material Dispute of Fact as to the Relevant Market ......................... 13

II.    The Undisputed Evidence Establishes NASCAR Has Monopsony Power in the Relevant Market .......................................................................................... 15

CONCLUSION ................................................................................................. 18

i

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................................8

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
    757 F.2d 523 (2d Cir. 1985)........................................................................................10

*Blackwell v. Warden of Lee Corr. Inst.*,
    2025 WL 1879372 (D.S.C. July 8, 2025) ...................................................................8

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007).......................................................................................17

*Calpetco 1981 v. Marshall Expl., Inc.*,
    989 F.2d 1408 (5th Cir. 1993) .....................................................................................2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).....................................................................................................8

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
    111 F.4th 337 (4th Cir. 2024) ................................................................................8, 16

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) .................................................................................9, 16

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)...................................................................................................18

*Evans v. Techs. Applications & Serv. Co.*,
    80 F.3d 954 (4th Cir. 1996) .........................................................................................8

*F.T.C. v. Surescripts, LLC*,
    665 F. Supp. 3d 14 (D.D.C. 2023) ...............................................................13, 15, 18

*Fairfield Resorts, Inc. v. Fairfield Mountains Prop. Owners Ass'n, Inc.*,
    2007 WL 1674105 (W.D.N.C. May 17, 2007), *report and recommendation*
    *adopted*, 2007 WL 2111379 (W.D.N.C. July 19, 2007).........................................13

*Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*,
    837 F. App'x 141 (4th Cir. 2020) ...........................................................................11

*Grice v. Baltimore Cnty.*,
    354 F. App'x 742 (4th Cir. 2009) ...........................................................................10

*J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*,
115 F. Supp. 3d 593 (D. Md. 2015) .................................................................2

*Jessup v. Barnes Grp., Inc.*,
23 F.4th 360 (4th Cir. 2022) ........................................................................10

*Klein v. Campbell*,
2023 WL 3845303 (4th Cir. June 6, 2023) ...............................................10

*Lowery v. Stovall*,
92 F.3d 219 (4th Cir. 1996) ........................................................................12

*Lucas v. Burnley*,
879 F.2d 1240 (4th Cir. 1989) ...................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ......................................................................................8

*Mil. Servs. Realty, Inc. v. Realty Consultants of Va., Ltd.*,
823 F.2d 829 (4th Cir. 1987) ........................................................................9

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
375 F. Supp. 3d 1058 (N.D. Cal. 2019), *aff'd*, 958 F.3d 1239 (9th Cir. 2020),
*aff'd sub nom. Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69 (2021).................9, 18

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Mfrs. & Traders Tr. Co.*,
137 F. App'x 529 (4th Cir. 2005) ...............................................................13

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
2018 WL 1524005 (N.D. Cal. Mar. 28, 2018).............................................11, 13, 15

*Servicetrends, Inc. v. Siemens Med. Sys., Inc.*,
870 F. Supp. 1042 (N.D. Ga. 1994) ...........................................................11

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001)........................................................................14

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*,
296 F. Supp. 3d 1142 (N.D. Cal. 2017) ....................................................13

*United States v. Dentsply Int'l, Inc.*,
399 F.3d 181 (3d Cir. 2005)........................................................................16

*United States v. Google LLC*,
778 F. Supp. 3d 797 (E.D. Va. 2025) ........................................................17

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) ............................................................................................8, 16

*VIA Design Architects, PC v. U.S. Dev. Co.*,
   2014 WL 5685550 (E.D. Va. Nov. 4, 2014) ...........................................................11

*Worsham v. Accts. Receivable Mgmt., Inc.*,
   497 F. App'x 274 (4th Cir. 2012) ..........................................................................10

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   587 F. Supp. 3d 356 (E.D. Va. 2022) ....................................................................13

**Statutes**

Sherman Act Section 1............................................................................................8, 9, 18

Sherman Act Section 2...............................................................................................8, 18

**Other Authorities**

Fed. R. Civ. P. 56(a) ......................................................................................................8

U.S. Dep't of Just. & Fed. Trade Comm'n, Merger Guidelines (Dec. 18, 2023)........................3, 4

iv

## INTRODUCTION

The parties do not dispute that an input market for the sale of premier stock car racing team services exists. There are two sides to this market: the sellers are premier stock car racing teams, and the buyers are premier stock car racing leagues or circuits. And although there are many sellers, there is only one buyer—NASCAR and its Cup Series. That is the market that Plaintiffs alleged, and it is also the market that NASCAR alleged in its amended counterclaim. And having relied on that market in opposing Plaintiffs' motion to dismiss the amended counterclaim, NASCAR cannot now reverse course and claim that the market does not exist.

These allegations are familiar to the Court, as is the congruence of the alleged markets. In denying Plaintiffs' motion to dismiss the amended counterclaim, the Court noted that NASCAR's alleged market "mirror[ed]" Plaintiffs' allegations. Dkt. 162 at 9. During oral argument on Plaintiffs' motion for a preliminary injunction, the Court asked Defendants' counsel if NASCAR's expert "defined the relevant market pretty much the same way [P]laintiffs had" because the Court's "opinion is he did." Aug. 28, 2025 Hr'g Tr. 43:18–25. Unsurprisingly, NASCAR's counsel's response failed to identify any meaningful difference in the markets. *See id.* 43:21–44:20.

There is also no dispute that NASCAR is the only purchaser of premier stock car racing team services. NASCAR executives repeatedly failed to identify a single stock car racing series that competes with the Cup Series. So did NASCAR's experts. With no other purchasers, it is undisputed that NASCAR has 100% share of the market for purchasing the services of premier stock car racing teams. Again, this is familiar to the Court, which already concluded that NASCAR has "monopsony power in the relevant market, which is the market for premier stock car racing teams in the United States." Dkt. 74 at 12. Now, months after Defendants made "only a cursory and unpersuasive argument against [that] finding," *id.* at 13 n.9, the factual record, NASCAR's experts, and NASCAR's own pleadings confirm that Plaintiffs' alleged input market exists, and

1

that NASCAR is the dominant, indeed, the only, buyer in that market. Because there is no genuine dispute regarding the relevant market or NASCAR's monopoly power, Plaintiffs' motion for partial summary judgment should be granted. Such a partial summary judgment ruling will narrow the issues for trial and simplify the case for the jury. *See J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 599 (D. Md. 2015) (partial summary judgment "serves the purpose of speeding up litigation by narrowing the issues for trial to those over which there is a genuine dispute of material fact") (internal quotation marks and citation omitted); *see also Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993) ("[Partial] summary judgment serves . . . to root out, narrow, and focus the issues, if not resolve them completely. Where . . . partial summary judgment is granted, the length and complexity of trial on the remaining issues are lessened[.]").

## STATEMENT OF FACTS

### I. Both Sides Have Pleaded a Relevant Input Market for the Services of Premier Stock Car Racing Teams

Plaintiffs have alleged the relevant market is the "input market for premier stock car racing teams," in which "NASCAR's Cup Series is currently the only" buyer. Dkt. 107 ("Amended Compl.") ¶¶ 119, 121. Similarly, NASCAR's amended counterclaim alleges that there is a "market for entry of cars into NASCAR Cup Series races." Dkt. 136 ("Amended Counterclaim") ¶ 126. These allegations directly match one another.

In opposing Plaintiffs' motion to dismiss its amended counterclaim, NASCAR argued that Plaintiffs' alleged market for premier stock car racing is equivalent to NASCAR's alleged market. *See* Dkt. 120 at 21 (arguing that "NASCAR's alleged market [cannot] be dismissed, if Plaintiffs' market is allowed to go forward"). The Court subsequently denied Plaintiffs' motion to dismiss, holding that NASCAR had alleged a plausible product market and finding that NASCAR's

2

"proposed market appears to mirror Plaintiff[s'] allegation that NASCAR controls the 'input market for premier stock car racing teams.'" Dkt. 162 at 9 (quoting Amended Compl. ¶ 119).

## II. Both Sides Offer Expert Testimony Supporting the Input Market for Premier Stock Car Racing

### A. Plaintiffs Have Carried Their Burden of Proof on Relevant Market with Dr. Rascher's Testimony

Through Dr. Rascher's expert testimony, Plaintiffs have established that there is an input market for premier stock car racing team services. Dr. Rascher's opinions establish that:

- Premier stock car racing is a distinct form of automobile racing in which highly specialized teams race unique cars and develop specialized knowledge and other intangible assets. Other types of motorsports like Formula 1 and IndyCar are not substitute purchasers of these specific stock car racing services. *See* Ex. 1,[1] July 13, 2025 Expert Rep. of Daniel A. Rascher ("Rascher Rep.") ¶¶ 29, 52, 58–59; *see also id.* ¶¶ 60, 67, 70, 72 (differences in economics); *id.* ¶ 81 (NASCAR exclusivity provision does not apply to, *inter alia*, open wheel motorsports because NASCAR did not consider them competitors to stock car races).

- NASCAR acquires premier stock car racing services from teams, all of which are independent entities, for events at race venues each season. *Id.* ¶¶ 8, 43.

- A small but significant, non-transitory decrease in NASCAR's payments ("SSNIP")[2] would not induce Cup Series teams to divert their services to the Xfinity Series, other stock car series, or alternative motorsports, thereby confirming

---

[1] Ex. _ refers to the exhibits to the concurrently filed declaration of Jeffrey L. Kessler in Support of Plaintiffs' Motion for Partial Summary Judgment and Motions to Exclude.

[2] For input markets, the test is for a small but significant, non-transitory decrease in price. *See* U.S. Dep't of Just. & Fed. Trade Comm'n, Merger Guidelines § 4.3.B (Dec. 18, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/2023_merger_guidelines_final_12.18.2023.pdf.

3

that premier stock car racing team services form a discrete nationwide input market. *Id.* ¶¶ 66–80 (Xfinity Series is not a substitute); *id.* ¶¶ 81–92 (other motorsports are not a substitute).

- Other general "investment" decisions are not substitutes for the Cup Series. *Id.* ¶¶ 94, 101. Investing in different markets instead of offering services in an input market is not substitution—it is withdrawal from the market. *Id.* ¶¶ 103, 114.

### B. NASCAR's Expert Dr. Hubbard Opines in Support of the Same Relevant Input Market as Dr. Rascher

NASCAR's expert, Dr. Hubbard, opines that NASCAR's counterclaim "



" Ex. 2, July 15, 2025 Expert Rep. of Dr. Thomas N. Hubbard ("Hubbard Rep.") ¶ 33 ("

"). Like Dr. Rascher, Dr. Hubbard uses the SSNIP[3] test to identify the relevant market. *Id.* ¶ 34; Ex. 1, Rascher Rep. ¶¶ 66–80. At his deposition, Dr. Hubbard testified that "

" (Ex. 3, Hubbard Tr. 49:22–23), which is virtually the same market defined by Dr. Rascher (*see* Ex. 1, Rascher Rep. ¶ 28 ("

")).

---

[3] The SSNIP test is also known as the Hypothetical Monopolist Test or HMT. *See* U.S. Dep't of Just. & Fed. Trade Comm'n, Merger Guidelines § 4.3.A (Dec. 18, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/2023_merger_guidelines_final_12.18.2023.pdf.

4

### C. NASCAR's Expert Dr. Murphy Does Not Create a Material Dispute as to the Market Definition Opinions Shared by Both Dr. Hubbard and Dr. Rascher

NASCAR offers another expert, Dr. Murphy, who discusses what he believes to be constraints on NASCAR's power, but he nowhere offers a competing market definition to that offered by Dr. Rascher and Dr. Hubbard. To the contrary, his report utilizes the input market definition offered in the Hubbard Report. *See, e.g.*, Ex. 4, Aug. 15, 2025 Expert Rep. of Professor Kevin M. Murphy ("Murphy Rep.") ¶¶ 58–65 (describing teams as "suppliers" of a necessary input for purchaser NASCAR Cup Series); *id.* ¶ 164 n.277. And Dr. Hubbard testified that he worked with Dr. Murphy on his expert report and agrees with all of its conclusions. Ex. 3, Hubbard Tr. 25:14–26:16. The only way this is possible is because Dr. Murphy does not disagree, or offer any alternative, to the relevant market identified by Dr. Hubbard (and Dr. Rascher). Ex. 9, Murphy Tr. 10:2–8 ( ██████████████████████████████████████████████████████ ); *id.* 19:21–25 (A. " ████████████████████████ ").

### III. There Is No Genuine Dispute That NASCAR Is the Sole Purchaser of Premier Stock Car Racing Services

The NASCAR Cup Series is the sole premier stock car racing series in the United States. It is also the most popular motorsports series in the United States. *See* Ex. 1, Rascher Rep. ¶ 115 n.148; Ex. 5, Prime Tr. 40:8–25. Premier stock car racing teams have no choice but to sell their services to NASCAR because there are no other buyers of premier stock car racing. Indeed, NASCAR executives were repeatedly unable to name *any* competitors to the Cup Series. Ex. 6, J. France Tr. 61:1–14



██████████████████████████████████████████████████████ ; *id.* 66:17–20 ██████████████████████████████████████████████████████ ; *id.* 295:20–296:1; Ex. 7, Phelps Tr. 128:23–129:14 ( ████████████████



); *see also* Ex. 5, Prime Tr. 139:2–8 ████████████████████████ Ex. 8, L. France Kennedy Tr. 97:8–12 (█████████████████████████████████ ████████████████████████████).

Further, at his deposition, Dr. Hubbard also could not identify any purchaser for the services of premier stock car racing teams in his input market, other than NASCAR. *See, e.g.*, Ex. 3, Hubbard Tr. 43:10–50:18 (failing to identify any other purchaser of premier stock car racing team services); *see id.* 44:21–22 (A. "████████████████████████"); *id.* 49:20–23 (Q. "████████████████████████████████████ ████████████████████████"); *see also* Ex. 2, Hubbard Rep. ¶ 33. For his part, Dr. Murphy testified that he did not disagree with anything in Dr. Hubbard's report, did not offer his own market definition in this case, and could not identify any other purchaser of the services of premier stock car racing teams. Ex. 9, Murphy Tr. 10:2–8; *id.* 19:21–25 (A. "████ █████████████████"); *id.* 21:5–25:10. He did, however, agree that both the claims and counterclaims in this case relate to "the input market." *Id.* 42:13–44:9 (A. "████████ ████████████████████████████████████ ██████████").

Finally, Dr. Rascher has provided confirming expert testimony that there are no other purchasers in the relevant input market other than NASCAR. Dr. Rascher concluded that ████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████████████ Ex. 1,

Rascher Rep. ¶ 116.

## IV. <u>There Is No Genuine Dispute That the Relevant Market Has High Barriers to Entry</u>

There is no genuine dispute that the relevant market is characterized by high barriers to

entry. NASCAR's own documents admit as much. *See* Ex. 10, NASCAR-00116200 at slide 3

(███████████████████████████████████████████████████████████████████

███████████████████████████████████████████"); Ex. 5, Prime

Tr. 84:15–85:5 (explaining that a competitor would be unlikely to find tracks if it wanted to be a

███████████████████████████████████████████████); Ex. 11,

NASCAR-00101820 at -840 (estimating $████ million cost for NASCAR to self-supply teams);

Ex. 8, L. France Kennedy Tr. 133:8–17 ████████████████████████████████

NASCAR has commanded a 100% share of the market for decades. Ex. 12, Sept. 8, 2025 Expert

Rebuttal Rep. of Edward A. Snyder ("Snyder Rebuttal Rep.") ¶ 9 ██████████████████

███████████████████████████; Ex. 13, July 15, 2025 Expert Rep. of Edward A. Snyder

("Snyder Rep.") ¶ 32.b ("███████████████████████████████████████

███████████████████████████████████████; *id.* ¶¶ 88–121

(comparative analysis demonstrated that other sports leagues all had more entry than NASCAR,

suggesting barriers to entry have harmed competition); Ex. 4, Murphy Rep. ¶ 96 ("██████████

███████████████████████████████████████████████████████████████

███████████████████████████████████"); Ex. 9, Murphy Tr. 25:11–26:4.

And Dr. Rascher's economic analysis confirms that the market has high barriers. Ex. 1, Rascher

Rep. ¶¶ 171–211, 226–29, 263–67; Ex. 14, Sept. 8, 2025 Expert Rebuttal Rep. of Daniel A.

Rascher ("Rascher Rebuttal Rep.") ¶¶ 105–64.

## LEGAL STANDARDS

This Court should grant summary judgment if "there is no genuine dispute as to any material fact," so that 23XI and Front Row are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). 23XI and Front Row must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is met, Defendants must affirmatively demonstrate the presence of a genuine issue of material fact that requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As the party opposing summary judgment, Defendants may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *see also Blackwell v. Warden of Lee Corr. Inst.*, 2025 WL 1879372, at *2 (D.S.C. July 8, 2025). Rather, Defendants must come forward with "specific, material facts" that give rise to a genuine dispute that must be resolved by the jury. *Blackwell*, 2025 WL 1879372, at *2. "The mere existence of a scintilla of evidence in support of the [non-movant]'s position" is insufficient to withstand the summary judgment motion. *Liberty Lobby*, 477 U.S. at 252.

## ARGUMENT

To establish a violation of Section 2 of the Sherman Act, absent a showing of monopoly power through direct evidence, Plaintiffs must establish, among other things, that NASCAR "possess[ed] . . . monopoly power in the relevant market." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 353 (4th Cir. 2024) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570 (1966)) (alterations in original). To establish a violation of Section 1 of the Sherman Act, Plaintiffs must likewise establish, among other things, "the relevant market" in which NASCAR has caused significant anticompetitive effects, as through the exercise of market

8

power. *See Mil. Servs. Realty, Inc. v. Realty Consultants of Va., Ltd.*, 823 F.2d 829, 832 (4th Cir. 1987) ("In proving a Section 1 violation, the plaintiff must show the market shares of the competitors in the relevant market" as well as the defendant's "market power."); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, 1096–97(N.D. Cal. 2019), *aff'd,* 958 F.3d 1239 (9th Cir. 2020), *aff'd sub nom. Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69 (2021).

The Court should grant partial summary judgment on the issues of relevant market and monopoly power because there is no material dispute that the input market for premier stock car racing is the relevant market or that NASCAR is the sole purchaser in that market—a durable 100% market share from which monopsony power should be inferred.[4] *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 451 (4th Cir. 2011) (noting that "courts have also focused on the durability of the defendant's market power" in ruling 70% market share by a company that had "long dominated" the relevant market could constitute monopoly power). The factual record, NASCAR's experts, and NASCAR's own pleadings in this litigation all confirm that summary judgment on these issues is warranted so that the remaining issues for trial can be narrowed and simplified for the jury.

---

[4] While Plaintiffs are also prepared to present direct evidence of NASCAR's monopsony power at trial, Plaintiffs are not moving for summary judgment on this alternative means of satisfying their burden of proof on this issue.

# I. There Is No Material Dispute That the Relevant Market Is the Input Market for Premier Stock Car Racing

## A. NASCAR's Allegations in Its Amended Counterclaim Are Judicial Admissions of the Existence of a Relevant Input Market for Premier Stock Car Racing Services

As the Court previously found in allowing NASCAR's amended counterclaim to proceed to discovery, NASCAR's own "proposed market appears to mirror Plaintiff[s'] allegation that NASCAR controls the 'input market for premier stock car racing teams.'" *See* Dkt. 162 at 9 (quoting Amended Compl. ¶ 119). Defendants cannot now have it both ways: having admitted the validity of Plaintiffs' alleged market, and NASCAR's 100% share of that market, through their own pleadings, Defendants cannot dispute the existence of that market and avoid summary judgment on this element of Plaintiffs' claims. *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 367 (4th Cir. 2022) (granting summary judgment where the nonmovant's pleadings admitted the issue, but the nonmovant tried to contradict its pleading through a declaration because "the only issue of fact is to determine which of the two conflicting" party statements is correct); *Grice v. Baltimore Cnty.*, 354 F. App'x 742, 746 (4th Cir. 2009) (affirming summary judgment based on admissions in a complaint).

NASCAR's pleading of the relevant market in support of its amended counterclaim constitutes a judicial admission that is "conclusive in the case unless the court allows it to be withdrawn." *Klein v. Campbell*, 2023 WL 3845303, at *15 (4th Cir. June 6, 2023) (internal quotation marks and citation omitted); *see also Worsham v. Accts. Receivable Mgmt., Inc.*, 497 F. App'x 274, 277 (4th Cir. 2012) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.") (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985)). "The general rule is that a party is bound by the admissions of his pleadings." *Grice*, 354 F. App'x at 746 (quoting *Lucas v.*

10

*Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989)); *see also VIA Design Architects, PC v. U.S. Dev. Co.*, 2014 WL 5685550, at *5 (E.D. Va. Nov. 4, 2014) ("[A]ssertions in a pleading generally constitute judicial admissions[.]"). Judicial admissions "go to matters of fact which, otherwise, would require evidentiary proof." *Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, 837 F. App'x 141, 145 (4th Cir. 2020).

In its amended counterclaim, NASCAR alleges that there is a "market for entry of cars into NASCAR Cup Series races." Amended Counterclaim ¶ 126. This allegation directly matches Plaintiffs' alleged "input market for premier stock car racing teams," of which "NASCAR's Cup Series is currently the only" buyer. Amended Compl. ¶¶ 119, 121. Recognizing this, in opposing Plaintiffs' motion to dismiss those claims, NASCAR affirmatively represented to the Court that Plaintiffs' alleged market for premier stock car racing is equivalent to NASCAR's alleged market "for entry of cars into NASCAR Cup Series race." *See* Dkt. 120 at 21 (arguing that "NASCAR's alleged market [cannot] be dismissed, if Plaintiffs' market is allowed to go forward"). The Court subsequently denied Plaintiffs' motion to dismiss the amended counterclaim, finding that NASCAR's "proposed market appears to mirror Plaintiff[s'] allegation that NASCAR controls the 'input market for premier stock car racing teams.'" Dkt. 162 at 9. NASCAR has thus admitted the existence of Plaintiffs' relevant market, and partial summary judgment should be granted on the basis of this admission alone. *Servicetrends, Inc. v. Siemens Med. Sys., Inc.*, 870 F. Supp. 1042, 1069–70 (N.D. Ga. 1994) (granting summary judgment for antitrust plaintiff on defendant's antitrust counterclaims where defendant argued, in its own defense, that relevant geographic market consisted of the entire United States, and therefore could not argue for purpose of its counterclaims that the relevant market consisted of smaller local markets); *see also NCAA Athletic Grant-in-Aid Cap*, 2018 WL 1524005, at *8 (N.D. Cal. Mar. 28, 2018) ("In the absence of any

11

material factual dispute, the [c]ourt will grant both parties' summary judgment motions on the issue of market definition.").

### B. Judicial Estoppel Prevents NASCAR from Disclaiming a Relevant Input Market for Premier Stock Car Racing Services

To the extent the Court finds that the factual allegations in NASCAR's amended counterclaim do not constitute a judicial admission, NASCAR should be judicially estopped from taking a contrary position now, having relied on this relevant market to assert its counterclaim. Again, NASCAR successfully convinced the Court to deny Plaintiffs' motion to dismiss its amended counterclaim by arguing that "NASCAR's alleged market [cannot] be dismissed, if Plaintiffs' market is allowed to go forward." Dkt. 120 at 21. It should be estopped from now seeking to prevent summary judgment on that relevant market.

Judicial estoppel is "a bar against the alteration of a factual assertion that is inconsistent with a position sworn to and benefitted from in an earlier proceeding." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) (citation omitted). The Fourth Circuit has recognized three distinct factors for the application of judicial estoppel. "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken [previously in] litigation. *Id.* at 224. "Second, the prior inconsistent position must have been accepted by the court." *Id.* And "[f]inally, the party sought to be estopped must have 'intentionally misled the court to gain unfair advantage,'" meaning the prior assertion was not "'based on inadvertence or mistake.'" *Id.* (citation omitted).

NASCAR's assertion of the market in its amended counterclaim is inconsistent with any argument against the validity of Plaintiffs' proposed relevant market, meeting the first factor. The Court accepted this factual position when it denied Plaintiffs' motion to dismiss (Dkt. 162 at 9), meeting the second factor. And NASCAR intentionally took this position to assert a counterclaim

12

and survive a motion to dismiss, which substantially increased the complexity and cost of the present litigation, burdening Plaintiffs, which meets the third factor. Because it would be inequitable to allow NASCAR, having intentionally asserted the existence of the relevant market in order to gain discovery and multiply Plaintiffs' costs, to now disclaim that market, NASCAR should be judicially estopped from doing so, and partial summary judgment should be granted on the relevant market issue in favor of Plaintiffs. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Mfrs. & Traders Tr. Co.*, 137 F. App'x 529, 531 (4th Cir. 2005) (affirming grant of summary judgment based on judicial estoppel from prior inconsistent pleading); *Fairfield Resorts, Inc. v. Fairfield Mountains Prop. Owners Ass'n, Inc.*, 2007 WL 1674105, at *10–12 (W.D.N.C. May 17, 2007) (granting summary judgment based on judicial estoppel from prior inconsistent pleading), *report and recommendation adopted,* 2007 WL 2111379 (W.D.N.C. July 19, 2007).

### C.  There Is No Material Dispute of Fact as to the Relevant Market

Even if NASCAR was not bound by its prior assertions in this case on market definition, the discovery record confirms the existence of a relevant market for premier stock car racing services. Because there is no material dispute of fact on this element, the Court should grant summary judgment on this issue.

Where, as here, there is no material dispute of fact as to the relevant market, "it is not uncommon for courts to decide market definition at the summary judgment stage." *F.T.C. v. Surescripts, LLC*, 665 F. Supp. 3d 14, 38, 44 (D.D.C. 2023) (granting summary judgment on market definition and market power); *In re Zetia (Ezetimibe) Antitrust Litig.*, 587 F. Supp. 3d 356, 366 (E.D. Va. 2022) (granting partial summary judgment on market definition); *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1176 (N.D. Cal. 2017) (same); *NCAA Athletic Grant-in-Aid Cap*, 2018 WL

1524005, at *8 ("In the absence of any material factual dispute, the Court will grant both parties' summary judgment motions on the issue of market definition").

Both undisputed qualitative and quantitative evidence supports the conclusion that the input market for premier stock car racing services is a relevant market. In the case of a monopsony, the relevant market "is not the market of competing sellers but of competing buyers. This market is comprised of *buyers* who are seen by *sellers* as being reasonably good substitutes." *Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) (Sotomayor, J.) (emphasis added) (citation omitted). As the Court has already found, premier stock car racing "is a distinct form of automobile racing with unique cars and highly specialized racing teams for which other types of motorsports like Formula 1 and IndyCar are not substitutes." Dkt. 74 at 12; *see also* Ex. 1, Rascher Rep. ¶¶ 29, 52–53, 58–60, 81, 94, 101, 103, 114.

This qualitative evidence is backed up by undisputed quantitative analysis. Ex. 1, Rascher Rep. ¶¶ 66–80 (applying SSNIP to determine Xfinity Series is not a substitute); *id.* ¶¶ 81–92 (applying SSNIP to determine other motorsports are not a substitute). NASCAR's own expert, Dr. Hubbard, applies the same quantitative methodology to establish the same market. *See* Ex. 2, Hubbard Rep. ¶ 33 ("███████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████"); *id.* ¶ 34 (acknowledging application of SSNIP).

NASCAR's other economic expert, Dr. Murphy, provides no alternative market definition or quantitative analysis to dispute Dr. Rascher or Dr. Hubbard's market definition. Ex. 9, Murphy Tr. 19:21–25 (A. "████████████████████████████████"). To the contrary, he cites Dr. Hubbard's analysis, which includes his input market definition, with favor. *See id.* 10:2–8 (████)

14

███████████████████████████████████████████████████ Ex. 4, Murphy

Rep. ¶¶ 58–65 (describing teams as "suppliers" of a necessary input for purchaser NASCAR Cup

Series); *id.* ¶ 164 n.277. This is not surprising, as Dr. Hubbard worked with Dr. Murphy on his

expert report, and supports all of its conclusions. Ex. 3, Hubbard Tr. 25:14–26:16. This congruity

is possible because Murphy does not disagree with or offer any alternative input market definition

to the relevant market supported by both Dr. Hubbard and Dr. Rascher. Ex. 9, Murphy Tr. 10:2–

8; *id.* 19:21–25 (A. "███████████████████████████). And Dr. Murphy agreed that both

the claims and counterclaims in this case relate to "the input market." *Id.* 42:13–44:9 (A. "███████

█████████████████████████████████████████████████████

████████████████████").

Based on this record, there is no genuine dispute of material fact on market definition, so

summary judgment on this issue is appropriate. *See Surescripts*, 665 F. Supp. 3d at 38 (granting

summary judgment on market definition and market power); *NCAA Athletic Grant-in-Aid Cap*,

2018 WL 1524005, at *8 (same).

## II.     The Undisputed Evidence Establishes NASCAR Has Monopsony Power in the Relevant Market

There is no genuine dispute that NASCAR is the only purchaser of premier stock car racing

services in the relevant market and therefore has a 100% market share, which it has maintained for

decades. Dkt. 74 at 12–13. Neither NASCAR's executives nor its experts have identified even a

single other purchaser of premier stock car racing team services in the relevant market. *See supra*

pp. 5–6. That leaves intact the Court's prior conclusions that "NASCAR's Cup Series is the only

premier stock car racing series in the United States," and that "NASCAR fully controls which race

teams can compete at the highest level of stock car racing – effectively, it has a 100% market

share." Dkt. 74 at 12. Dr. Hubbard could not identify any other purchaser in the relevant market

other than NASCAR. *See, e.g.*, Ex. 3, Hubbard Tr. 44:21–22 ("█████████████████ ████████████"); *id.* 49:20–23 (Q. "███████████████████████████ ███████████████████████████████████████████████"). Nor could Dr. Murphy identify any other purchaser of the services of a premier stock car racing team, other than NASCAR, to race in premier stock car racing events. *See* Ex. 9, Murphy Tr. 21:5–25:10.

The undisputed fact that NASCAR has a 100% market share in the relevant market is indirect evidence establishing that NASCAR has monopoly power. *See Grinnell*, 384 U.S. at 571 (87% market share sufficient showing of monopoly power); *Kolon*, 637 F.3d at 450–51 (4th Cir. 2011) (monopolization found where "defendant controlled seventy to one hundred per cent of the relevant market") (quotation marks and citation omitted). This undisputed fact is particularly compelling evidence of monopoly power given the undisputed fact that NASCAR has been the only purchaser in the relevant market for decades, demonstrating its power is durable and protected. Ex. 12, Snyder Rebuttal Rep. ¶ 9 ████████████████████████████████ ████████████████████; Ex. 13, Snyder Rep. ¶¶ 32.b, 88; Ex. 4, Murphy Rep. ¶ 96 ████ ████████████████████████████████████████████████████████ █████████████████████████████████████████ Ex. 9, Murphy Tr. 25:11– 26:4. Where, as here, a market participant's monopolistic share is shown to be durable, as by its maintenance for a significant period of time with few, if any, significant competitors, courts have routinely found monopoly power. *See Duke Energy*, 111 F.4th at 353 (monopoly power not at issue "'given [defendant's] durably high market share,' which 'stands at or approaching 90%'") (citation omitted); *Kolon*, 637 F.3d at 451 (over 70% market share by a company that had "long dominated" the relevant market could constitute monopoly power); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 188–89 (3d Cir. 2005) (reversing district court post-trial judgment of no market

16

power because defendant "has held its dominant share for more than ten years and has fought aggressively to maintain that imbalance," and noting that "[i]n evaluating monopoly power, it is not market share that counts, but the ability to *maintain* market share") (citation omitted) (emphasis in original); *United States v. Google LLC*, 778 F. Supp. 3d 797, 850 (E.D. Va. 2025) ("[T]he true measure of monopoly power lies not in a firm's high market share, but in its ability to maintain that share.").

Evidence of barriers to entry in the relevant market is likewise undisputed. The Court has recognized that "the barriers for others to enter the market (availability of large racing tracks, highly qualified racing car teams, etc.) are obvious." Dkt. 74 at 13–14. Those are precisely the kind of barriers such as "high capital costs, or technological obstacles, that prevent new competition from entering a market" in response to non-competitive pricing. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007). Discovery has confirmed these high capital costs and obstacles. NASCAR's internal documents highlight that ███████████████████ █████████████████████████████████████████████████ Ex. 15, NASCAR-00317548 at slide 5; *see also* Ex. 10, NASCAR-00116200 at slide 3 (███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████); Ex. 11, NASCAR-00101820 at -840 (estimating greater than $██ million cost to self-supply teams); Ex. 5, Prime Tr. 84:15–85:5 (explaining that a competitor would be unlikely to find tracks if it wanted to be a ██████████████████ ████████████████████████████████); *see also* Ex. 1, Rascher Rep. ¶¶ 171–211, 226–29, 263–67; Ex. 14, Rascher Rebuttal Rep. ¶¶ 105–64. Such barriers impede new competitors from entering the market.

Based on these undisputed facts of a long-lasting 100% market share in a relevant market, NASCAR's monopsony power is established. *See Surescripts*, 665 F. Supp. 3d at 48; *NCAA Athletic Grant-in-Aid Cap*, 375 F. Supp. 3d at 1097 ("Because of the absence of any viable substitutes[,] . . . [d]efendants hold monopsony power in all of these markets and exercise that power to cap artificially the compensation offered to recruits. This is reflected in the high degree of concentration found in the relevant market."). Indeed, it was because the chartered racing teams had no alternative purchaser for their services that NASCAR's executives concluded the teams would have no choice but to accept whatever charter terms NASCAR offered or not compete at all. Ex. 16, NASCAR-00465908 at -908 (Mr. Prime: ██████████████████████); Ex. 17, NASCAR-00331199 at -199 (Mr. Phelps: ██████████████████████████); *see also* Ex. 18, Marshall Tr. 234:14–235:25 ██████████████████████████

Finally, the durable 100% market share establishing monopsony power also requires a finding that NASCAR has market power for purposes of Plaintiffs' Section 1 claim, which requires a much lower relevant market share threshold than is needed to infer monopoly power. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992) ("Monopoly power under § 2 requires, of course, something greater than market power under § 1.").

## **CONCLUSION**

For all of the reasons set forth above, Plaintiffs' motion for partial summary judgment should be granted.

Dated: October 1, 2025

Respectfully submitted,

WINSTON & STRAWN LLP


By: /s/ Jeffrey L. Kessler
Jeffrey L. Kessler (*pro hac vice*)
Neha Vyas (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
nvyas@winston.com

E. Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer E. Parsigian (*pro hac vice*)
Michael Toomey (*pro hac vice*)
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

Josh Hafenbrack (*pro hac vice*)
Benjamin L. Rudofsky (*pro hac vice*)
**WINSTON & STRAWN LLP**

19

1901 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com
brudofsky@winston.com

Benjamin S. Gordon (*pro hac vice*)
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
bgordon@winston.com

*Counsel for Plaintiffs and Counter-Defendants 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc.*

# CERTIFICATE OF COMPLIANCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By:     */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

*Counsel for 2311 Racing LLC d/b/a 23XI*
*Racing and Front Row Motorsports, Inc.*

21

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** was electronically filed using the Court's CM/ECF system, and the sealed filings were served by email on the following counsel of records, including:

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Christopher S. Yates
Ashley M. Bauer
Natalie W. Kaliss
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com
ashley.bauer@lw.com
natalie.kaliss@lw.com

Robert B. McNary
**LATHAM & WATKINS LLP**
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
rob.mcnary@lw.com

Lawrence E. Buterman
Shayan Ahmad
Quinlan Cummings
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
shayan.ahmad@lw.com
quinlan.cummings@lw.com

Anna M. Rathbun
Christina R. Gay
David L. Johnson
Christopher J. Brown
Margaret E. Cohen
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
christina.gay@lw.com
david.johnson@lw.com
chris.brown@lw.com
margaret.cohen@lw.com

*Counsel for Defendants*

_____
*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler