# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. <br><br> —————————————— <br><br> NASCAR EVENT MANAGEMENT, LLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> 2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK, <br><br> Counter-Defendants. | No. 3:24-cv-886-KDB-SCR <br><br> **ORAL ARGUMENT REQUESTED** <br><br> [**PUBLIC VERSION**] |

## NASCAR'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

                                                                               **Page**

I.    PLAINTIFFS CANNOT SEEK ANY DAMAGES AT TRIAL ......................................... 1

      A.    Plaintiffs Admit They Cannot Recover Damages For Pre-October 2020 Conduct ............................................................................................................... 1

      B.    Plaintiffs' Damages Model Fails Because There Were No Overt Acts In 2021 ...................................................................................................................... 2

      C.    The Law Bars Plaintiffs' Damages Theory For 2022-2024 ..................................... 6

II.   PLAINTIFFS IDENTIFY NO DISPUTES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT FOR NASCAR ON OTHER ISSUES ............... 8

      A.    There Are No Material Disputes About NASCAR's Lack Of Market/Monopsony Power ........................................................................................ 8

      B.    Plaintiffs Fail To Identify Any Triable Antitrust Standing Dispute ....................... 10

      C.    Plaintiffs Undisputedly Released Their Claims ..................................................... 10

III.  PLAINTIFFS' OPPOSITION CONFIRMS THEY ARE NOT ENTITLED TO A JURY TRIAL ON THEIR SECTION 1 CLAIM ................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*,
   139 F.4th 404 (4th Cir. 2025) ...................................................................................................11

*Bendfeldt v. Window World, Inc.*,
   2017 WL 4274191 (W.D.N.C. Sept. 26, 2017) ...........................................................................9

*Bonjorno v. Kaiser Aluminum & Chem Corp.*,
   752 F.2d 802 (3d Cir. 1984) .........................................................................................................7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) .....................................................................................................................6

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .......................................................................................................................6

*Cont'l Ore. Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) .....................................................................................................................7

*Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
   141 F.4th 1075 (9th Cir. 2025) ...................................................................................................12

*CSX Transp., Inc. v. Norfolk Southern R.R. Co.*,
   114 F.4th 280 (4th Cir. 2024) ............................................................................................ *passim*

*Dickson v. Microsoft Corp.*,
   309 F.3d 193 (4th Cir. 2002) ..................................................................................................1, 12

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
   111 F.4th 337 (4th Cir. 2024) .......................................................................................................8

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
   504 U.S. 451 (1992) .....................................................................................................................9

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
   711 F.3d 68 (2d Cir. 2013) .........................................................................................................10

*Gibson v. Cendyn Grp., LLC*,
   148 F.4th 1069 (9th Cir. 2025) ...................................................................................................12

*Giordano v. Saks Inc.*,
   654 F. Supp. 3d 174 (E.D.N.Y. 2023), *aff'd sub nom. Giordano v. Saks & Co.*,
   2025 WL 799270 (2d Cir. Mar. 13, 2025) ...................................................................................3

*Howard Hess Dentassl Labs. Inc. v. Dentsply Int'l Inc.*,
 602 F.3d 239 (3d Cir. 2010)..................................................................................................12

*Klehr v. A.O. Smith Corp.*,
 521 U.S. 179 (1997).................................................................................................2, 3, 5

*LePage's Inc. v. 3M*,
 324 F.3d 141(3d Cir. 2003)....................................................................................................7

*McCloskey & Co. v. Wright*,
 363 F. Supp. 223 (E.D. Va. 1973) .........................................................................................4

*MCI Comm'ns v. Am. Tel. & Tel. Co.*,
 708 F.2d 1081 (7th Cir. 1983) ...............................................................................................7

*Murphy v. Jefferson Pilot Commc'ns Co.*,
 657 F. Supp. 2d 683 (D.S.C. 2008).......................................................................................4

*Omega World Travel, Inc. v. Trans World Airlines*,
 111 F.3d 14 (4th Cir. 1997) .................................................................................................11

*Queen City Pizza v. Domino's Pizza, Inc.*,
 124 F.3d 430 (3d Cir. 1997)...................................................................................................9

*R. J. Reynolds Tobacco Co. v. Philip Morris Inc.*,
 199 F. Supp. 2d 362 (M.D.N.C. 2002) ..................................................................................5

*Thompson Everett, Inc. v. Nat'l Cable Advert. LP*,
 57 F.3d 1317 (4th Cir. 1995) .................................................................................................5

*Todd v. Exxon Corp.*,
 275 F.3d 191 (2d Cir. 2001)...................................................................................................9

*White Mule Co. v. ATC Leasing Co. LLC*,
 540 F. Supp. 2d 869 (N.D. Ohio 2008)................................................................................10

*US Airways, Inc. v. Sabre Holdings Corp.*,
 938 F.3d 43 (2d Cir. 2019).....................................................................................................5

*Zenith Radio Corp. v. Hazeltine Res., Inc.*,
 401 U.S. 321 (1971)...............................................................................................................3

**STATUTES**

15 U.S.C. § 15................................................................................................................................6

In response to NASCAR's summary judgment motion, Plaintiffs concede they cannot seek damages for any pre-October 2, 2020 conduct under the law. This means, for example, that they cannot seek damages based on the Charter Agreements entered in 2016 and renewed in March 2020. Plaintiffs seek to sidestep this significant problem by asserting that NASCAR engaged in an anticompetitive "course of conduct." But by including time-barred conduct such as the 2016 Charters and pre-2020 track sanction agreements in this course of conduct (Doc. 243-1, Snyder Report ¶¶ 149-156), Plaintiffs and their expert committed the same error as the expert in *CSX Transportation, Inc. v. Norfolk Southern R.R. Co.*, 114 F.4th 280, 292 (4th Cir. 2024). Specifically, Plaintiffs' expert offers a damages theory that comingles time-barred conduct with more recent conduct and offers only an aggregate damages number. The jury thus has no way to award Plaintiffs damages, which means NASCAR's summary judgment motion should be granted.

The remainder of Plaintiffs' Opposition confirms other fatal defects with their claims. Plaintiffs do not identify any disputes of material fact that would preclude summary judgment for NASCAR on the issue of market/monopsony power or antitrust standing. And they offer no defense to their binding release of their claims in 2024. Finally, Fourth Circuit law bars their only defense of their Section 1 claim. Plaintiffs argue there is a triable dispute about whether various contracts, *in the aggregate*, harmed competition. But *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202-04 (4th Cir. 2002) requires Plaintiffs to prove that each individual agreement, on its own, harms competition and does not permit Plaintiffs to aggregate contracts to make that showing.

The Court should grant NASCAR's motion.

**I.      PLAINTIFFS CANNOT SEEK ANY DAMAGES AT TRIAL**

    **A.     Plaintiffs Admit They Cannot Recover Damages For Pre-October 2020 Conduct**

Plaintiffs admit they cannot seek damages based on conduct occurring prior to October 2,

2020. Doc. 265 ("Opp'n") at 2, 11, and 13. Thus, there is no question that Plaintiffs cannot recover any damages for harm based on the 2018 ARCA acquisition, the 2019 ISC acquisition, any track sanction agreements pre-dating October 2, 2020, or the 2016 Charter Agreement.[1] These concessions make clear partial summary judgment is appropriate.

This concession is fatal because Plaintiffs' expert, Dr. Synder, advances a damages theory that is based on elimination or "lessening" of time-barred conduct. Indeed, Dr. Synder's "course of anticompetitive conduct" includes the 2016 Charter, the 2018 acquisition of ARCA, the 2019 acquisition of ISC, and track sanction agreements signed before October 2, 2020. *E.g.*, Doc. 243-1, Synder Report ¶ 149. And his so-called "but for world" involves no exclusivity clauses in track sanction agreements and a "relaxed" Goodwill provision in the 2016 Charter. *Id.* at ¶¶ 150-53, 171, 174; Ex. 1, Snyder Tr. at 375:10-16. Changes to these admittedly time-barred acts are the basis for Dr. Synder claiming that a new competitor would have entered and teams supposedly would have received over ▮▮▮▮ more from 2021-2024. Even though Dr. Snyder says his analysis does not assume the ARCA and ISC acquisitions did not occur, his damages model is based on *changes* to that time-barred conduct. The law precludes this. There can be no recovery for time-barred conduct, full-stop. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997); *CSX*, 114 F.4th at 291-92.

**B.    Plaintiffs' Damages Model Fails Because There Were No Overt Acts In 2021**

Plaintiffs concede that they must identify a new overt act within the limitations period to trigger damages and that the only recoverable damages must be based on conduct within the limitations period. *See* Opp'n at 13. Plaintiffs' damages period begins in February 2021, the start of the season immediately after the limitations period began, through December 2024. Doc. 243-

---

[1]    This includes all Teams' extensions of the 2016 Charter entered by March 2020.

1, Snyder Report ¶ 174.[2]

The law is clear that Plaintiffs must identify a specific overt act tied to their 2021 damages that occurred within the limitations period. *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. 321, 338 (1971); *CSX*, 114 F.4th at 292 ("[A] plaintiff's recovery is limited to the damages caused by the injurious act." (cleaned up)).[3] In other words, Plaintiffs' recovery is limited to damages specifically caused by the injurious act within the limitations period. Moreover, the commission of an overt act "does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr*, 521 U.S. at 189 (internal citations omitted); *see also id.* at 190 ("[P]laintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."). Plaintiffs do not dispute this well-settled law, nor could they.

But Plaintiffs identify no overt act that occurred in late 2020 or 2021, meaning they cannot claim damages for anything in 2021. Plaintiffs point to four acts: (1) "Next Gen 7 restrictions in 2022;" (2) exclusionary provisions of the 2025 Charter Agreement; (3) post-2020 joinder agreements; and (4) track exclusivity restrictions. Opp'n at 13. Items (1) and (2) indisputably did not occur in 2021 and cannot therefore be the basis of claimed damages in 2021 and beyond. *Id.* And items (3) and (4), even if executed in 2021, legally cannot constitute an "overt act."

***Joinder Agreements.*** Claims based on the 2016 Charter provisions are long expired. *See Giordano v. Saks Inc.*, 654 F. Supp. 3d 174, 192 (E.D.N.Y. 2023), *aff'd sub nom. Giordano v. Saks & Co.*, 2025 WL 799270 (2d Cir. Mar. 13, 2025) ("The decision to enter the contract—the no-hire

---

[2] In an untimely opinion, Dr. Snyder proposed additional damages for January 1, 2025 through the end of 2025 premised on Plaintiffs not signing the 2025 Charter Agreement.

[3] As discussed in Section I.B, NASCAR does not challenge as time-barred the overt acts that Plaintiffs identify in 2022 and later. Those acts, however, cannot form the basis of any damages *in 2021*—as they had not yet occurred.

agreement—is the overt act that starts the limitations period." (internal quotation marks omitted)). And Plaintiffs have conceded that they "have brought no claim, and are seeking no damages, based on contractual restraints that NASCAR imposed prior to October 2020." Opp'n at 13.

Joinder agreements cannot resurrect time-barred claims because they are merely the assignment of Charter rights from one team to another. *See, e.g.*, Ex. 3, 23XI_0221838 at -839 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. An assignment of rights does not constitute an "overt act" that could restart the damages period. *See Murphy v. Jefferson Pilot Commc'ns Co.*, 657 F. Supp. 2d 683, 692 (D.S.C. 2008) ("Since an assignee stands in the shoes of its assignor, the relevant inquiry for when the statute of limitations began to run is . . . when [the assignor] knew or should have known of such a claim." (cleaned up)). "[T]he statute of limitations is directed to the *claims* sought to be asserted, not to the *parties* seeking to assert them. To allow the assignee to recommence the running of the statute, absent a new promise from the party sued, at the time of assignment, would defeat the purpose and design of the statute as a statute of repose." *McCloskey & Co. v. Wright*, 363 F. Supp. 223, 227 (E.D. Va. 1973) (emphasis added).

NASCAR merely assented to the assignment of Charter rights from one team to another. Nothing about the terms of the 2016 Charter changed, they were just assigned from one holder to another. This cannot constitute an overt act by NASCAR. *See CSX*, 114 F.4th at 289 ("mere silence or inaction from a defendant" does not restart the limitations period).

And Plaintiffs do not argue that their claim is based on *enforcement* of the exclusionary clauses in the 2016 Charter Agreements. Nor could they. It is undisputed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████ and ███████████████████ ███████████████████████████████████████████████████ Doc. 196-1, Phelps. Decl. ¶¶ 12-13. Plaintiffs' claim is thus based merely on the *existence* of the exclusionary provisions in the Charter Agreements—agreements that were executed in 2016. That cannot constitute an overt act. *See US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019) ("[P]erformance of a contract [i]s a manifestation of the "overt act," the decision to enter the contract, rather than an independent overt act of its own.").

***Sanction Agreements.*** Plaintiffs claim that NASCAR's inclusion of exclusionary provisions in various track agreements since 2021 constitutes an "overt act." This is wrong for multiple reasons. First, each of the agreements Plaintiffs cite were executed in 2022, not 2021. Opp'n at 5-6 (citing Pls.' Exs. 8, 9, and 12). Second, with the exception of one track, agreements for 2021 races were all executed *prior* to the limitations period and thus cannot form the basis of a timely claim. *See, e.g.*, Ex. 4, NASCAR-00349294 at -327; Ex. 5, NASCAR-00350593 at -630; Ex. 6, NASCAR-00352037; Opp'n at 13 (conceding that Plaintiffs bring no claim and seek no damages based on contracts NASCAR entered prior to October 2020). Third, the 8% of sanction agreements that *were* executed in 2021 for the next season ███████████████████ ███████████████. *See, e.g.*, Ex. 7, NASCAR-00353004 at -005 ███████████████ ███. "The Fourth Circuit has held that exclusive contracts terminable after thirty days to one year do not have substantial anticompetitive effects." *R. J. Reynolds Tobacco Co. v. Philip Morris Inc.*, 199 F. Supp. 2d 362, 391 (M.D.N.C. 2002) (citing *Thompson Everett, Inc. v. Nat'l Cable Advert.*, L.P., 57 F.3d 1317, 1326 (4th Cir. 1995)). Because these agreements are not exclusionary as a matter of law, they cannot constitute an "overt act" for any of Plaintiffs' claims. *See Klehr*, 521 U.S. at 189 (an "overt act" is a "part of the violation [] that injures the plaintiff"). Finally, a

sanction agreement signed in 2021 for a later season cannot lead to the damages claimed by Plaintiffs' expert whose theory requires entry and changes *before* the 2021 season began.

Plaintiffs forfeited and cannot recover damages for 2021. By their own admissions, any harm felt in 2021 stems from time-barred conduct that cannot form the basis of their damages.

### C. The Law Bars Plaintiffs' Damages Theory For 2022-2024

Plaintiffs have also forfeited any ability to recover damages for conduct occurring in 2022 or later. While NASCAR does not challenge this later conduct as time-barred, Plaintiffs still may not recover for such conduct because they have not shown *those acts* caused injury. Instead, their aggregated damages model at best melds actionable and inactionable conduct. This dooms Plaintiffs' claims, as no jury will be capable of calculating damages solely for actionable conduct.

Plaintiffs' argument that they need not disaggregate damages (Opp'n at 14-15) rests on a fundamental misunderstanding of the law. While a plaintiff need not disaggregate damages *among all the unlawful acts*, a plaintiff is required to prove that *unlawful* (not lawful or time-barred) acts actually caused the damages. Where damages flow from an undifferentiated mix of unlawful and lawful (or inactionable) conduct, plaintiffs have failed to meet their causation burden and cannot recover damages. *Comcast Corp. v. Behrend,* 569 U.S. 27, 35-38 (2013) (plaintiffs' model could not prove damages because it comingled actionable and non-actionable conduct); *see also* 15 U.S.C. § 15; *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."). Applied to the facts of this case, Plaintiffs *must* distinguish damages supposedly caused by inactionable conduct—such as the pre-limitations conduct for which Plaintiffs concede they cannot recover, the post-2020 items that cannot constitute an overt act, and any conduct the jury deems not anticompetitive— from any actionable conduct. It is undisputed that Plaintiffs' expert's model cannot do so.

Plaintiffs fail to account for this difference, and their reliance on *Cont'l Ore. Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962), *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003), and *Bonjorno v. Kaiser Aluminum & Chem Corp.*, 752 F.2d 802 (3d Cir. 1984), thus misses the mark. In each of those cases, there was no question that unlawful (as opposed to lawful or inactionable) conduct caused the damages. Thus, no disaggregation was needed. *See, e.g.*, *LePage*, 324 F.3d at 166; *Bonjorno*, 752 F.2d at 813.

The cases on which Plaintiffs rely stem from *MCI Comm'ns v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983), which makes Plaintiffs' error clear. As the *MCI* Court explained, "courts have always distinguished between proof of *causation* of damages and proof of the *amount* of damages. Thus, the courts have been consistent in requiring plaintiffs to prove in a reasonable manner the link between the injury suffered and the *illegal* practices of the defendant." *Id.* at 1161. This is because "[i]t is essential . . . that damages reflect only the losses directly attributable to *unlawful* competition." *Id.*; *see also id.* at 1162 (collecting cases). And "[t]here is nothing inconsistent between requiring *proof that damages were caused by illegal acts* and the rule that a plaintiff need not disaggregate damages among those acts found to be unlawful." *Id* at 1163. "When a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damage. This is precisely the type of 'speculation or guesswork' not permitted for antitrust jury verdicts. To allow otherwise would force a defendant to pay treble damages for conduct that was determined to be entirely lawful." *Id.* at 1162-63. Because they failed to "establish any variation in the outcome depending on which acts of [the defendant] were held to be legal and which illegal," the plaintiff's damages were overturned. *Id.* at 1163.

The Fourth Circuit's decision in *CSX* is directly on point. As the Court explained, "CSX's

election to proceed on a unitary theory seeking recovery for all anti-competitive acts, regardless of when they occurred, dooms its ability to present to the jury a non-speculative damages case arising from the 2015 conduct, the only damages for which a timely cause of action had accrued to CSX." *CSX*, 114 F.4th at 292.[4] Plaintiffs try to distinguish *CSX* on the ground that Plaintiffs here do not seek to recover for time-barred conduct. Opp'n at 16. But that is wrong. Their claimed damages are expressly predicated on *changes* to time-barred contracts. In any event, the relevant question is whether Plaintiffs' damages model is capable of disaggregating lawful (or inactionable) conduct from unlawful conduct and identifying harm only from allegedly unlawful conduct. It is undisputed that Plaintiffs' damages model cannot do this. And its inability to do so is fatal to Plaintiffs' damages claims.

## II. PLAINTIFFS IDENTIFY NO DISPUTES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT FOR NASCAR ON OTHER ISSUES

### A. There Are No Material Disputes About NASCAR's Lack Of Market/Monopsony Power

*First*, Plaintiffs argue that this Court has already "found that NASCAR possesses []monopsony power in the relevant market" during the preliminary injunction phase. Opp'n at 20, 21. But the law is clear that the pre-discovery statement has no relevance to a post-discovery summary judgment motion. Doc. 273 ("NASCAR Opp'n") at 16-17. This motion is based on the full factual and expert record and the conclusions that flow from the undisputed evidence. Plaintiffs were required to identify *evidence* that creates disputes of material fact. They have not.

*Second*, Plaintiffs argue that NASCAR is estopped from challenging the relevant market and market power because its counterclaim expert, Professor Hubbard, supposedly conceded Plaintiffs' product market was valid and that NASCAR has market power in it. Opp'n at 20-21,

---

[4] *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 354 (4th Cir. 2024), does not address damages.

22. Professor Hubbard did no such thing. NASCAR Opp'n at 11-14. Plaintiffs are alleging a buy-side monopsony market, whereas Professor Hubbard defined a sell-side conspiracy market for NASCAR's counterclaim. *Id.* Those are two very different markets as a matter of law; they are the "reverse" of each other. *Id.* (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001)).

*Third*, Plaintiffs argue that this case does not involve a "foremarket durable good" where a plaintiff is "'locked in' with respect to aftermarket for repairs, like in *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992)." Opp'n at 21. But NASCAR never argued that it did. Nor did NASCAR cite *Kodak*, which deals with the different fact pattern of aftermarket repairs. Rather, NASCAR pointed out that Plaintiffs' own expert, Dr. Rascher, equates the competitive landscape to a franchise-like framework (Doc. 21-1, Rascher Decl. ¶ 58). A well-settled body of law applies to franchise frameworks, which holds that a proper market definition includes options the potential franchisee had during the *pre-contract* stage. *Queen City Pizza v. Domino's Pizza, Inc.,* 124 F.3d 430, 440-41 (3d Cir. 1997); *Bendfeldt v. Window World, Inc.*, 2017 WL 4274191, *5 (W.D.N.C. Sept. 26, 2017) (market definition should not exclude "the broader market in which the franchise operates," particularly when the plaintiffs "knew from the moment they" entered the franchise arrangement that they might become "locked in"). Plaintiffs do not dispute this law, nor offer any contrary case.[5] And Plaintiffs do not dispute that they (and other similar sellers) had options other than NASCAR in the pre-contract stage. That means Plaintiffs' single-brand product market fails as a matter of law and they have failed to show there is any triable issue on relevant market or monopsony power. Doc. 236 ("Mot.") at 19-20.

---

[5] None of Plaintiffs' cases involved a situation where, like here, the undisputed evidence showed sellers had many options for buyers under the competitive paradigm Plaintiff's own expert adopted.

### B. Plaintiffs Fail To Identify Any Triable Antitrust Standing Dispute

Plaintiffs' response fails to overcome NASCAR's antitrust standing arguments. Plaintiffs do not dispute, for example, that they lack standing to assert any claims based on the 2025 Charters because they never signed those Charters. *Compare* Mot. at 17 *with* Opp'n at 19. Similarly, Plaintiffs do not address the track sanctions agreements at all, except to concede that they are not challenging them as excluded competitors. Opp'n at 18.

Instead, Plaintiffs argue that they have standing to assert their Section 2 claim based on *other* conduct, specifically the 2016 Charter. Opp'n at 17. However, as demonstrated above, the statute of limitations bars any claims based on the 2016 Charter, so it cannot be a basis for standing. *See supra* Part I. As to their Section 1 claim, Plaintiffs concede that they "are not pursuing a Section 1 claim based on the non-compete restrictions in the 2016 or 2025 Charter Agreements" (Opp'n at 24 n.15) and have not identified any other basis for standing.[6] Antitrust standing requires Plaintiffs to identify specific, non-time-barred anticompetitive conduct and to prove their alleged injuries flow from that conduct. *See Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013); *see, e.g., CSX*, 114 F.4th at 291-92 (considering antitrust injury separately for each anticompetitive action alleged). Plaintiffs have not even identified any such conduct, much less created any triable dispute on whether their supposed injuries flow from it.

### C. Plaintiffs Undisputedly Released Their Claims

Plaintiffs do not dispute that they signed Agreements with releases in February 2024 (Front Row) and March 2024 (23XI). *See* Doc. 236-18; *see* Ex. 8, 23XI_0070896 at -907. But they argue

---

[6] That some sellers have been found to have antitrust standing in monopsony cases, Opp'n at 16-17, is beside the point. Other cases, like *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 889-90 (N.D. Ohio 2008) (cited Mot. at 18)—which Plaintiffs do not address—hold otherwise. The circumstances of each case matter. And the undisputed facts and applicable law *here* demonstrate that Plaintiffs lack antitrust standing.

these releases do not bar their claims for two reasons.

*First*, they argue that NASCAR is estopped from relying on those releases because "NASCAR dropped the release language . . . in 2024." Opp'n at 19. But it is undisputed that Plaintiffs asked NASCAR to remove the release language from *future* Open Team Agreements *after* Plaintiffs had already signed their releases in February and March 2024. Ex. 2, FRM_0025875 at -875. By the time NASCAR agreed to change its Open Team Agreements for 2025 races, Plaintiffs had already released all of their claims in 2024. The fact that the 2025 Open Team Agreements do not have releases does not resurrect Plaintiffs' already-released claims.

*Second*, Plaintiffs argue that the releases do not apply to antitrust claims, a radical about-face from their prior argument. *See, e.g.*, Doc. 20-1 at 1; Doc. 22 at 1; Doc. 33 at 2. The Fourth Circuit understood the release to apply to antitrust claims and rejected an injunction to prohibit it. *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 139 F.4th 404, 410 (4th Cir. 2025). The releases cannot be "void as against public policy" (Opp'n at n.12) when the Fourth Circuit found "there is 'no prohibition in the statutes or in the policy behind the antitrust laws that prohibits the disclaimer of antitrust claims by a general release.'" *2311 Racing*, 139 F.4th at 410; *see also Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997).

### III. PLAINTIFFS' OPPOSITION CONFIRMS THEY ARE NOT ENTITLED TO A JURY TRIAL ON THEIR SECTION 1 CLAIM

Plaintiffs argue that because (according to them) they have shown there is a material dispute of fact as to whether NASCAR violated Section 2, they "necessarily" have created disputes of fact on every element of their Section 1 claim too. Opp'n at 22-23. On the element of harm to competition specifically, Plaintiffs argue that there is a reasonable dispute as to whether "the track and Next Gen 7 exclusivity restrictions," considered in the aggregate, "were designed to and did raise the barriers to entry for a rival series to compete against NASCAR and that, in turn helped

NASCAR to maintain its monopsony and pay Plaintiffs below competitive market rates for their services." Opp'n at 23. Plaintiffs misunderstand their burden under Section 1.

In a case like this one, that challenges a series of individual bilateral agreements (between NASCAR and teams and between NASCAR and tracks) under Section 1, the Fourth Circuit requires Plaintiffs to prove that *each* separate agreement, *by itself*, violates antitrust law and causes cognizable anticompetitive effects. In *Dickson*, 309 F.3d at 202-04, the Fourth Circuit held that the plaintiff failed to state a Section 1 violation based on Microsoft's series of exclusive licenses with original equipment manufacturers. The Court made clear that each individual license needed to be analyzed separately to determine whether the plaintiff alleged that each harmed competition. *Id.* at 205-07; *see also Howard Hess Dentassl Labs. Inc. v. Dentsply Int'l Inc.*, 602 F.3d 239, 255-56 (3d Cir. 2010) (under Section 1, plaintiff must allege that each agreement, by itself, harmed competition). Plaintiffs cannot prove a Section 1 violation by relying on supposed aggregate harm from multiple separate contracts. *Id.*

*Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 141 F.4th 1075, 1082 (9th Cir. 2025), did not address Plaintiffs' aggregation theory. Another recent Ninth Circuit decision did and, like the Fourth Circuit, held it was improper. *Gibson v. Cendyn Grp., LLC.*, 148 F.4th 1069, 1087 (9th Cir. 2025) (stating that "grouping of individual agreements could not be 'aggregated' for the purposes of determining whether together they acted as an unreasonable restraint of trade").

Plaintiffs offer no evidence that any individual challenged contract, judged on its own, meets all the required elements of Section 1, much less sufficient evidence to create a material dispute of fact. Their experts never studied this question and offered no opinions on it. Because Plaintiffs only defense of their Section 1 claim relies on a theory of "aggregate" harm the Fourth Circuit does not allow, NASCAR is entitled to summary judgment on the Section 1 claim as well.

Dated: October 20, 2025 Respectfully submitted,

By: /s/ Christopher S. Yates
Christopher S. Yates*
Ashley M. Bauer*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
ashley.bauer@lw.com
chris.yates@lw.com

Lawrence E. Buterman*
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com

Anna M. Rathbun*
David L. Johnson*
Christopher J. Brown*
Christina R. Gay*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
david.johnson@lw.com
chris.brown@lw.com
christina.gay@lw.com

Tricia Wilson Magee (N.C. Bar No. 31875)
**SHUMAKER, LOOP, & KENDRICK, LLP**
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Telephone: (704) 945-2911
Facsimile: (704) 332-1197
tmagee@shumaker.com

*Admitted *pro hac vice*

*Counsel for NASCAR and James France*

# ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 20th day of October, 2025.

/s/ *Christopher S. Yates*
Christopher S. Yates
Of Latham & Watkins LLP

## CERTIFICATE OF SERVICE

I certify that on October 20, 2025, a true and correct copy of the foregoing was served via Email on the below counsel of record for Plaintiffs 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc. and Counter-Defendant Curtis Polk.

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

E. Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer E. Parsigian
Michael Toomey
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

Eric S. Hochstadt
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 W 52nd Street
New York, New York 10019
Tel: (212) 506-5282
ehochstadt@orrick.com

/s/ *Christopher S. Yates*
Christopher S. Yates