# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING and FRONT ROW MOTORSPORTS, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> *Defendants*. <br><br> NASCAR EVENT MANAGEMENT, LLC, <br><br> *Counter-Plaintiff*, <br><br> v. <br><br> 2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK, <br><br> *Counter-Defendants*. | Civil Action No. 3:24-cv-00886-KDB-SCR |

### DRIVERS ADVISORY COUNCIL'S
### AMICUS CURIAE BRIEF

The Drivers Advisory Council ("DAC") respectfully submits this amicus curiae brief in the above-captioned matter between Plaintiffs 2311 Racing LLC d/b/a 23XI Racing ("23XI") and Front Row Motorsports, Inc. (collectively, "Plaintiffs"); Defendants National Association for Stock Car Auto Racing, LLC, NASCAR Holdings, LLC, NASCAR Event Management, LLC, and James France (collectively, "Defendants"); and Counter-Defendant Curtis Polk.

i

## INTRODUCTION

The drivers seek to have a sport that is unified, healthy and protects the interests of all the parties involved while giving the fans the best experience possible. The reality is that the drivers in many ways share the concerns of the parties in this case, but in other ways have their own unique perspective and experiences. The drivers quite literally drive the popularity of the sport. While this case may concern NASCAR and defendant team owners fighting over the future of the sport and TV revenue, without the drivers and the fans there is no future for NASCAR.

The Court recently ordered court-supervised mediation in this case to occur on October 21, 2025. The DAC, on behalf of the drivers, is concerned that the drivers' rights and interests will not be adequately considered and potentially be materially impacted by any resolution. The parties' filings to date recognize that the drivers have specific and separate economic rights in NASCAR and the charters at issue in the case. For example, in filings, the parties have acknowledged the drivers' direct economic interests, *i.e.*, the Drivers' Ambassador Program (the "DAP"). In addition to the DAP, the drivers have a direct stake in the sport that stands independent from the parties to this case.

The drivers have always been the focal point for the fans. To have any discussion or negotiation about the future of the sport without the drivers having an independent voice and being heard is unproductive. The DAC submits this amicus brief to provide the unique perspective and position of the drivers.

### A. The DAC Advocates for the Drivers

As the sport has evolved, the drivers have realized that they needed to work more collaboratively to better advocate for themselves. As a result, the drivers formed an initial advocacy group in 2015 and then the DAC in 2022. Membership in the DAC is voluntary for the drivers in NASCAR, the drivers potentially impacted by this lawsuit.

The DAC's mission as a non-profit, trade organization is to represent and advocate for NASCAR drivers. Among its many goals, the DAC seeks to improve driver safety, grow the sport, seek financial stability for the drivers, and communicate for drivers about critical issues. The DAC is governed by a director and board composed of current and former NASCAR drivers, enabling it to effectively understand driver concerns and ensure that its and the drivers' interests remain aligned.

B. **Perspectives In The Sport**

As Plaintiffs' amended complaint describes, there are three distinct groups in NASCAR—the drivers, owners, and NASCAR itself. The drivers have their own significant interests in the sport apart from their engagement with their team owners. *See, e.g.*, Am. Compl. ¶¶ 4, 45, 63, 71–72, 98, 112; Counterclaim ¶ 13 (Dkt. 135). The drivers certainly have their contractual commitments with their team owners (much like other professional athletes have with their owners), but they also have a responsibility to promote the sport globally and give the fans the best experience possible. Without the fans, the issues debated in this case are meaningless.

The promotion of the sport depends upon the drivers having a direct stake and interest in the overall success of NASCAR. The drivers historically have had a separate engagement with NASCAR and recently, with the DAP, have further deepened their commitment to promote the sport in a unified way. Plaintiffs' filings acknowledge that the drivers have their own separate "economic rights" that may be impacted and highlight the direct financial interest the drivers have in the sport and specifically the charter system. Beyond the DAP, the DAC seeks to promote the future stability of the drivers in the sport and ensure all parties are working toward shared goals. The drivers' direct interests in NASCAR must be protected in any resolution of this case.

Eleven years ago, the owners formally organized into the Race Team Alliance ("RTA") to advocate for their interests more effectively. The RTA has successfully negotiated for the owners

in a collective and unified manner. Plaintiffs are part of the RTA. The DAC on behalf of the drivers seeks to have its voice heard just like the RTA. The drivers currently have no way to be represented or present an accurate perspective of their position in this lawsuit and therefore submit this brief to assist the Court as the case progresses.

### C. The Drivers Have Significant Interests in NASCAR Including the Charters and the DAP

As part of representing drivers, the DAC seeks to advance and protect the drivers' financial stability and future. Recently, the drivers' stake in the sport expanded. One of the DAC's most significant accomplishments was negotiating the DAP: a new incentive payment for drivers directly from the charter agreements that took effect on January 1, 2025 ("2025 Charters"). The purpose of the DAP is to motivate the drivers to promote the sport more broadly and treat the drivers as true stakeholders in the future of NASCAR. The primary concept that the DAC proposed was building the DAP into the 2025 Charters. The DAP provides that NASCAR will compensate drivers based on a formula that is tied to each driver's efforts promoting of the sport. The expectation is the incentive plan structure will remain a part of the charter structure.

The DAP is a game changer for the drivers and helps promote the long-term health of the sport. The DAP will incentivize the drivers to directly promote the sport beyond their contractual arrangements with the owners and become even more involved stakeholders. This economic right is contained in the structure of the current charters which are expected to continue in 2026 and beyond. As this case has revealed, the DAP and other economic benefits for the drivers were debated between NASCAR and the owners. The development of the DAP demonstrates the independent position the drivers have in the sport and how the three sides can work together for the best interests of the sport and the fans. This independent position and relationship with the other parties must be protected going forward.

Regardless of whether the instant action is framed as an antitrust case or a dispute over contract terms in the 2025 Charters, the DAC seeks to advocate for the drivers' interests that may be impacted by this lawsuit. These interests extend well beyond the DAP. With the impending mediation, the DAC is concerned any potential agreement regarding the charter structure or revenue in the sport will impair the rights and interests of the drivers and threaten their overall security. The DAP is but one important component to increasing the sport's popularity and improving fan participation.

There is no question the drivers have a direct economic interest in the current charters via the DAP. *See Wash. Square Sec., Inc. v. Aune*, 253 F. Supp. 2d 839, 842 (W.D.N.C. 2003), *aff'd*, 385 F.3d 432 (4th Cir. 2004) (internal quotation omitted) (stating that a person is a third-party beneficiary to a contract under North Carolina law when the person demonstrates "1) the existence of a contract between two other persons; 2) that the contract was valid and enforceable; and 3) that the contract was entered into for [the person's] direct, and not incidental, benefit."). The current parties acknowledge these rights, as shown by 23XI's September 6, 2024, letter to NASCAR about the charter agreements stating, "[23XI] will accept the Driver Incentive Plan as proposed . . . and share in its cost off the top of the media rights payouts. . . ." *See* Kessler Decl. Ex. 4 (Dkt. 20-1). NASCAR's counterclaim and Plaintiffs' answers further discuss the DAP and the drivers' attendant rights. Counterclaim ¶ 114; Pls.' Answers ¶ 114. And the validity of the 2025 Charters is one of the central items challenged in this matter. *See, e.g.*, Am. Compl. ¶¶ 105–18 (setting forth alleged issues related to the 2025 Charters). There is an expectation that the DAP will be a part of the future charter structure and that the drivers, through the DAC, will have their voice heard on important issues that impact the drivers.

The drivers and crew members are an essential aspect of NASCAR's continued success.

The drivers are the stars of the sport. They put their health and safety at risk each weekend to pursue their passion and deliver a great product for the fans. The incredible finish at Talladega this past weekend underscores the point. Like other professional sports, the drivers are the ambassadors of stock car racing and have an independent interest and stake in the sport. The discussion about the future structure of NASCAR is not one with just NASCAR and the team owners at the table. The drivers are the critical third leg that enables the sport to be successful and exciting for the fans. The drivers should not become a bargaining chip between the owners and NASCAR but rather should serve as an independent group helping to promote the success and health of the sport. Ultimately, the drivers are uniquely positioned to bring new fans to the sport and with that effort, secure their own, independent position alongside NASCAR and the owners.

The drivers seek three overall objectives with any resolution of this case: **(1)** protect the long term interests for existing and future drivers in the sport; **(2)** provide a permanent and meaningful position for drivers collectively to have an independent voice on important issues in the sport; and **(3)** for all parties to act in the best interest of the fans to provide the best experience possible.

Respectfully submitted,

Dated: October 21, 2025

**MCGUIREWOODS LLP**

/s/ *Robert A. Muckenfuss*
Robert A. Muckenfuss (SBN #28218)
Kelly Warlich (SBN #51053)
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Tel: 704.343.2052
Fax: 704.444.8707
rmuckenfuss@mcguirewoods.com
kwarlich@mcguirewoods.com
*Attorneys for the Drivers Advisory Council*

## CERTIFICATE OF COMPLIANCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

/s/*Robert A. Muckenfuss*
Robert A. Muckenfuss

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically with the Clerk of Court for the Western District of North Carolina by using the CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

/s/<i>Robert A. Muckenfuss</i><br>
Robert A. Muckenfuss