# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

|  |  |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. | No. 3:24-cv-886-KDB-SCR |
| NASCAR EVENT MANAGEMENT, LLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> 2311 RACING LLC d/b/a 23XI RACING, FRONT ROW MOTORSPORTS, INC., and CURTIS POLK, <br><br> Counter-Defendants. |  |

## PARTIES' PROPOSED VERDICT FORMS

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

2311 RACING LLC d/b/a 23XI RACING, and
FRONT ROW MOTORSPORTS, INC.,

        Plaintiffs,

        v.

NATIONAL ASSOCIATION FOR STOCK
CAR AUTO RACING, LLC, NASCAR
HOLDINGS, LLC, NASCAR EVENT
MANAGEMENT, LLC, and JAMES FRANCE,

        Defendants.

No. 3:24-cv-886-KDB-SCR

NASCAR EVENT MANAGEMENT, LLC,

        Counter-Plaintiff,

        v.

2311 RACING LLC d/b/a 23XI RACING,
FRONT ROW MOTORSPORTS, INC., and
CURTIS POLK,

        Counter-Defendants.

## PLAINTIFFS' PROPOSED VERDICT FORM

*When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout.* **_Your answer to each question must be unanimous._**

\*  \*  \*

We, the jury, unanimously find as follows on the questions submitted to us, and we return them as our verdict in this case:

## PART I:  23XI AND FRONT ROW'S CLAIMS

### Count 1:  23XI and Front Row's Monopolization Claim

### Question 1:

Did 23XI and Front Row prove by a preponderance of the evidence, whether direct OR indirect, that NASCAR has monopoly power in a relevant market for the services of premier stock-car racing teams in the United States?

   YES_____    NO_____

*If you answered "YES" to Question 1, please proceed to* **Question 2.**

*If you answered "NO" to Question 1, please proceed to* **Count 2:  Unreasonable Restraint of Trade (Question 5(a) on page 4).**

### Question 2:

*Answer this question only if you answered "YES" to Question 1.*

Did 23XI and Front Row prove by a preponderance of the evidence that NASCAR willfully maintained its monopoly power by engaging in anticompetitive conduct with at least one overt anticompetitive act occurring since October 2, 2020?

   YES_____    NO_____

*If you answered "YES," please proceed to* **Question 3.**

*If you answered "NO," please proceed to* **Count 2: Unreasonable Restraint of Trade (Question 5(a) on page 4).**

## Question 3:

*Answer this question only if you answered "YES" to Question 2.*

Did 23XI and Front Row prove by a preponderance of the evidence that James France actively and knowingly directed, controlled, and/or ratified the conduct that you answered "YES" to in Question 2?

YES_____          NO_____

*Please proceed to* **Question 4(a).**

## Question 4(a):

*Answer this question only if you answered "YES" to Question 2.*

Did 23XI prove by a preponderance of the evidence that it was injured as a result of NASCAR's monopolization?

YES_____          NO_____

*Please proceed to* **Question 4(b).**

## Question 4(b):

*Answer this question only if you answered "YES" to Question 2.*

Did Front Row prove by a preponderance of the evidence that it was injured as a result of NASCAR's monopolization?

YES_____          NO_____

*Please proceed to* **Question 5(a)** *in* **Count 2: Unreasonable Restraint of Trade** *(this is the next question on the next page).*

2

*If you answered "YES" to Questions 4(a) and/or 4(b), you must also complete PART II: 23XI AND FRONT ROW'S DAMAGES.*

## Count 2:  23XI and Front Row's Unreasonable Restraint of Trade Claim

### Question 5(a):

Did 23XI and Front Row prove by a preponderance of the evidence the existence of a relevant market for the services of premier stock-car racing teams in the United States?

YES_____        NO_____

*If you answered "YES," please proceed to **Question 5(b).***

*If you answered "NO" to Question 5(a) and answered "YES" to Questions 4(a) and/or 4(b), please proceed to **PART II: 23XI AND FRONT ROW'S DAMAGES (page 7).** If you answered "NO" to Question 5(a), and Questions 4(a) and 4(b), please proceed to **PART III: NASCAR'S COUNTERCLAIM (page 9)**.*

### Question 5(b):

Did 23XI and Front Row prove by a preponderance of the evidence that NASCAR has market power in a relevant market that includes premier stock-car racing teams?

YES_____        NO_____

*If you answered "YES" to Question 5(b), please proceed to **Question 6(a)**.*

*If you answered "NO" to Question 5(b), and answered "YES" to Questions 4(a) and/or 4(b), please proceed to **PART II: 23XI AND FRONT ROW'S DAMAGES (page 7).** If you answered "NO" to Question 5(b), and Questions 4(a) and 4(b), please proceed to **PART III: NASCAR'S COUNTERCLAIM (page 9).***

4

**Question 6(a):**

Did 23XI and Front Row prove by a preponderance of the evidence that NASCAR knowingly entered into or enforced one or more agreements since October 2, 2020, that unreasonably restrained trade in a relevant market that includes premier stock-car racing teams?

YES_____          NO_____

*If you answered "YES" to Question 6(a), please proceed to **Question 6(b)**.*

*If you answered "NO" to Question 6(a), and answered "YES" to Questions 4(a) and/or 4(b), please proceed to **PART II: 23XI AND FRONT ROW'S DAMAGES (page 7)**. If you answered "NO" to Question 6(a), and Questions 4(a) and 4(b), please proceed to **PART III: NASCAR'S COUNTERCLAIM (page 9)**.*

**Question 6(b):**

*Answer this question only if you answered "YES" to Question 6(a).*

Did 23XI and Front Row prove by a preponderance of the evidence that James France actively and knowingly directed, controlled, and/or ratified the conduct that you answered "YES" to in Question 6(a)?

YES_____          NO_____

*Please proceed to **Question 7(a)**.*

**Question 7(a):**

*Answer this question only if you answered "YES" to Question 6(a).*

Did 23XI prove by a preponderance of the evidence that it was injured as a result of NASCAR's agreements in unreasonable restraint of trade?

YES_____          NO_____

*Please proceed to **Question 7(b)**.*

5

**Question 7(b):**

*Answer this question only if you answered "YES" to Question 6(a).*

Did Front Row prove by a preponderance of the evidence that it was injured as a result of NASCAR's agreements in unreasonable restraint of trade?

YES_____        NO_____

*If you answered "YES" to Questions 7(a) and/or 7(b), you must also complete **PART II: 23XI AND FRONT ROW'S DAMAGES (beginning on the next page).***

*If you answered "NO" to Questions 4(a), 4(b), 7(a), and 7(b), please proceed to **PART III: NASCAR'S COUNTERCLAIM (page 9).***

## PART II: 23XI AND FRONT ROW'S DAMAGES

**Damages for 23XI**

*Answer this Question 8 only if you answered "YES" for **Question 4(a) and/or Question 7(a)** above.*

## Question 8:

What amount of damages did 23XI prove by a preponderance of the evidence that it suffered as a result of conduct that you found violates antitrust law?

$_____

*Write out the amount in words:* _____

*Please proceed to **Damages for Front Row.***

**Damages for Front Row**

*Answer this Question 9 only if you answered "YES" to **Question 4(b) and/or Question 7(b)** above.*

**<u>Question 9:</u>**

What amount of damages did Front Row prove by a preponderance of the evidence that it suffered as a result of conduct that you found violates antitrust law?

$_____

*Write out the amount in words:* _____

*Please proceed to **PART III: NASCAR'S COUNTERCLAIM (the next question on the next page).***

# PART III:  NASCAR'S COUNTERCLAIM

## Question 10(a):

Did NASCAR prove by a preponderance of the evidence the existence of a relevant market for the entry of cars into NASCAR Cup Series races in the United States?

YES_____          NO_____

*If you answered "YES," please proceed to* **Question 10(b).**

*If you answered "NO" to Question 10(a) please proceed to* **Part V (page 13)**.

## Question 10(b):

Did NASCAR prove by a preponderance of the evidence that 23XI and Front Row have market power in a market for the entry of cars into NASCAR Cup Series races?

YES_____          NO_____

*If you answered "YES" to Question 10(b), please proceed to* **Question 11(a).**

*If you answered "NO" to Question 10(b), please proceed to* **Part V (page 13).**

## Question 11(a):

Did NASCAR prove by a preponderance of the evidence that 23XI knowingly entered into a conspiracy with two or more racing teams that unreasonably restrained trade in a relevant market for the entry of cars into NASCAR Cup Series races?

YES_____          NO_____

*Please proceed to* **Question 11(b).**

**Question 11(b):**

Did NASCAR prove by a preponderance of the evidence that Front Row knowingly entered into a conspiracy with two or more racing teams that unreasonably restrained trade in a relevant market for the entry of cars into NASCAR Cup Series races?

YES_____      NO_____

*Please proceed to* **Question 11(c).**

**Question 11(c):**

Did NASCAR prove by a preponderance of the evidence that Curtis Polk knowingly entered into a conspiracy with two or more racing teams, other than 23XI, that unreasonably restrained trade in a relevant market for the entry of cars into NASCAR Cup Series races?

YES_____      NO_____

*If you answered "YES" to Questions 11(a), 11(b) and/or 11(c),* ***please proceed to Question 12.***

*If you answered "NO" to each of Questions 11(a), 11(b) and 11(c), please proceed to* ***Part V (page 13)***.

**Question 12:**

*Answer this question only if you answered "YES" to Questions 11(a), 11(b) and /or 11(c).*

Did NASCAR prove by a preponderance of the evidence that it was injured as a result of a conspiracy you found was entered into in Questions 11(a), 11(b) and/or 11(c)?

YES_____      NO_____

*If you answered "YES" to Question 12, please proceed to **PART IV: NASCAR'S DAMAGES.***

*If you answered "NO" to Question 12, please proceed to **Part V (page 13).***

### PART IV:  NASCAR'S DAMAGES

*Only if you answered "YES" to **Question 12** above, please proceed to **Question 13** to determine NASCAR's damages.*

### Question 13:

What amount of damages did NASCAR prove by a preponderance of the evidence that it suffered as a result of the conduct that you found violates antitrust law?

$_____

*Write out the amount in words:* _____

*Please proceed to **PART V.***

## **PART V**

Your deliberations are complete.  Please sign the verdict form below.

Signed:

_____                            _____

     Jury Foreperson                                     Date

# NASCAR'S OBJECTION TO PLAINTIFFS' PROPOSED VERDICT FORM

Plaintiffs' proposed verdict form suffers many defects relating to both substance and structure. It should be rejected in favor of NASCAR's proposal.

***Substance.*** There are five key substantive issues with Plaintiffs' proposal.

*First*, Questions 1, 2, 4(a) and (4)b's references to "monopolization" or "monopoly power" are imprecise and confusing to the jury. Plaintiffs' complaint pleads a "monopsony" and that NASCAR engaged in "monopsonization" of the relevant market. Doc. 107 ¶¶ 138, 139, 144, 145, 146, 147, 148, 149, 151. A monopsony is a well-established legal category, and bringing a monopsony case comes with particular requirements. For instance, an entity with "monopsony power" seeks to "'restrict its input purchases below the competitive level,' thus 'reduc[ing] the unit price for the remaining input[s] it purchases." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320-21 (2007) (citation omitted) (alterations in original); *see also Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008) ("In a monopsony, the buyers have market power to decrease market demand for a product and thereby lower prices."); *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) ("A monopsony occurs when there is 'market power on the buy side of the market' and buyers consequently pay suppliers less than they would in a competitive market." (citation omitted)).

Plaintiffs should not be permitted to conflate a monopoly (with which jurors are likely familiar) with a monopsony, because a monopsony exists only in "unusual" or "exceptional" circumstances. *See Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1135 (10th Cir. 2002) (describing "unusual circumstance of an effective monopsony") (citation omitted); *Dyer v. Conoco, Inc.*, 49 F.3d 727, 1995 WL 103233, at *5 n.9 (5th Cir. 1995) (table) ("exceptional situation" for "monopsony" to "wield substantial power"); *cf. Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) (noting "danger in applying [market] factors mechanically in the context of monopsony"). It is important for jurors to keep these categories straight in their minds—both for evaluating the relevant market (e.g., from whose perspective the market should be considered), and for examining monopsony power (e.g., were prices *lower* rather than *higher*). Plaintiffs ought to be held to the case that they pled.

*Second*, Question 2 of Plaintiffs' form states that Plaintiffs need only to prove "that NASCAR willfully maintained its monopoly power by engaging in

1

anticompetitive conduct with at least one overt anticompetitive act occurring since October 2, 2020." That is wrong. The Sherman Act's statute of limitations provides that "[a]ny action to enforce any cause of action under [the Sherman Act] shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. The Supreme Court has made clear that a plaintiff can recover only for damages *caused* by a specific overt act within the limitations period. *Klehr v. A.O Smith Corp.*, 521 U.S. 179, 189 (1997) ("[T]he commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old over acts outside of the limitations period"). And the Supreme Court said in *Klehr* that "a plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Id.* at 190. The Fourth Circuit has also made clear that a cause of action "accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business," *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 114 F.4th 280, 286 (4th Cir. 2024) (citation omitted), and quoted *Klehr* on the impermissibility of bootstrapping, *id.* at 292. So Plaintiffs *cannot* point to only a single "overt anticompetitive act occurring since October 2, 2020" and then bootstrap earlier conduct onto that single act. Instead, the Sherman Act prevents Plaintiffs from recovering for any conduct prior to October 2, 2020 that caused injury to them and allows them to recover damages only for conduct *caused* by acts within the limitations period.

For that reason, it is critical that members of the jury think carefully about what conduct is anticompetitive and whether *that* conduct is time-barred or not. Defendants' proposal accomplishes that goal by clearly delineating the challenged conduct and then separately asking whether conduct that post-dates October 2, 2020 caused Plaintiffs any injury. Plaintiffs' proposal does not, thereby creating problems for determining the basis for the jury's verdict, including whether it relied in whole or in part on time-barred conduct.

While Plaintiffs have argued in favor of a free-floating "course of conduct" theory (relying on *Duke Energy*), that is inappropriate in this case. Plaintiffs' reliance on *Duke Energy* does not supplant the clear law discussed above with respect to statute of limitations for a simple reason: *Duke Energy* did not address the statute of limitations. *Duke Energy* held that "when a court is faced with allegations of a complex or atypical exclusionary campaign, the individual components of which do not fit neatly within pre-established categories, its application of such specific conduct tests would prove too rigid." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 354 (4th Cir. 354). Yet that approach was confined to the "context of the allegations in th[at] case," which

involved interrelated actions taken "simultaneously and to the same effect" to drive out a competitor. *Id.* at 354, 366 (emphasis omitted).

Plaintiffs' allegations here, by contrast, fall into a typical and well-defined category: refusals to deal in the form of exclusivity clauses. Indeed, the Fourth Circuit already recognized that typical categories apply in this very case. Plaintiffs argued on appeal that the Fourth Circuit should consider a so-called "course of conduct" under *Duke Energy*. Response Brief at 53-58, *2311 Racing LLC v. NASCAR*, 139 F.4th 404 (4th Cir. 2025) (No. 24-2245), 2025 WL 889040. But the Fourth Circuit rejected that approach and instead focused only on how there is "no prohibition" in the "antitrust laws that prohibits the disclaimer of antitrust claims by a general release." *2311 Racing LLC v. NASCAR*, 139 F.4th 404, 410 (4th Cir. 2025) (quoting *Va. Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262, 266 (4th Cir. 1971)). Plus, it is fundamental that "[t]wo wrong claims do not make one that is right," so Plaintiffs cannot "alchemize" these individual components "into a new form of antitrust liability." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009). That is why it is necessary to delineate the challenged conduct and ask the jury whether each piece of conduct is anticompetitive or not. Plaintiffs' form fails to do so, and therefore is lacking.

*Third*, Question 1's reference to "direct OR indirect" evidence of "monopoly power" under Section 2, when combined with Plaintiffs' proposed jury instructions arguing that they need not prove a relevant market if they can show "direct evidence," creates a problem. If this Court (as Plaintiffs wish) gives an instruction that "direct evidence" means that Plaintiffs do not have to prove a relevant market for their Section 2 claim, then Question 1 is nonsensical. In that world, the jury would not necessarily be finding that "NASCAR has monopoly power *in a relevant market*," as that question provides.

To be clear, this Court should not give such an instruction, because Plaintiffs' belief that a relevant market is not required for "direct evidence" under Section 2 is wrong. The Supreme Court has long held that a Section 2 monopolization claim requires "the possession of monopoly power *in the relevant market*." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966) (emphasis added); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 457 (1993) ("[I]t is beyond doubt that [a charge of monopolization] requires proof of market power *in a relevant market*." (emphasis added)). Recently, the Supreme Court held that it "must first define the relevant market" even where plaintiffs claimed to rely "exclusively on direct evidence" to prove anticompetitive effects for a Section 1 claim. *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018). Indeed, Plaintiffs' proposal mirrors the *dissent* in *Amex*,

which said "a discussion of market definition was legally unnecessary" where there was "direct evidence" of a Section 1 claim. *Id.* at 563 (Breyer, J., dissenting).

Fourth Circuit law also prevents Plaintiffs from arguing that "direct evidence" relieves them of their burden to establish a relevant market. *See, e.g.*, *Consul, Ltd. v. Transco Energy Co.*, 805 F.2d 490, 493 (4th Cir. 1986) ("Proof of a relevant market is the threshold for a Sherman Act § 2 claim. The plaintiff *must* establish the geographic and product market that was monopolized." (emphasis added)); *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 681 (4th Cir. 2016) (citing *Spectrum Sports* and describing "relevant market as a threshold issue for monopolization claims"). That is because without a "market definition," courts are unable "to discern the nature or extent of any anticompetitive injury that plaintiff and other similarly situated parties may be suffering." *It's My Party*, 811 F.3d at 681. Plaintiffs' proposal should be rejected on this ground.

If the Court agrees with Defendants on this point, then Plaintiffs' reference to "direct OR indirect" evidence in Question 1 is unnecessary. In that scenario, the jury instructions would explain that there are two different ways to prove monopoly power (either through direct evidence or through indirect evidence). Yet because both routes require proof of a relevant market, there is no need to add a reference to "direct or indirect" evidence in the verdict form.

*Fourth*, Questions 5(b) and 10(b) presume that a Section 1 plaintiff must show *both* the existence of a relevant market *and* market power. Again, that is wrong. The Supreme Court has held that proving anticompetitive effects can be done directly through "reduced output, increased prices, or decreased quality in the relevant market" *or* indirectly through "market power plus some evidence that the challenged restraint harms competition." *Amex*, 585 U.S. at 542. While *defining* a market is always necessary for a Section 1 claim, showing market *power* is *not* mandatory.

Fourth Circuit authority also directly contradicts Plaintiffs' approach. For example, *Oksanen v. Page Mem'l Hosp.*, holds that "a detailed inquiry into a firm's market power is *not essential* when the anticompetitive effects of its practices are obvious," and merely says that "[a]bsent … market power," a restraint is "*unlikely*" to succeed—not that it is *impossible* to do so. 945 F.2d 696, 709 (4th Cir. 1991). That is because the rule of reason requires inquiring into "all of the circumstances to determine whether a practice unreasonably restrains competition." *Valuepest.com of Charlotte, Inc. v. Bayer Corp.*, 561 F.3d 282, 287 (4th Cir. 2009). While that *includes* "market power," it *also* includes "specific information about the relevant

business and the restraint's history, nature, and effect." *Id.* Plaintiffs' proposal should be rejected for this reason too.

*Fifth*, Questions 6(a), 7(a), and 7(b)'s general references to "one or more agreements" or "NASCAR's agreements" is legally deficient. Plaintiffs are purporting to challenge a series of individual bilateral agreements in two different categories: (1) track sanction agreements between NASCAR and independent track owners, and (2) agreements between NASCAR and racing teams involving Next Gen car requirements. *See* Doc. 265 at 23-24. Under Section 1, Plaintiffs have to prove that *each* separate agreement, *by itself*, violates antitrust law and causes cognizable anticompetitive effects.

Governing Fourth Circuit law in *Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002), makes Plaintiffs' error clear. In *Dickson*, the Fourth Circuit rejected the idea that a series of agreements between Microsoft and equipment manufacturers was a single conspiracy and that it instead "amount[ed] to multiple conspiracies between the common defendant and each of the other defendants." *Id.* at 203; *id.* at 204 ("[A] wheel without a rim is not a single conspiracy."). Here, *Dickson* requires finding that a series of agreements between NASCAR and independent racetracks— or a series of agreements between NASCAR and racing teams—cannot simply be grouped together or aggregated.

In *Dickson*, the Fourth Circuit found it necessary to evaluate "the likelihood of a substantial anti-competitive harm caused by the two licensing agreements at issue (*considered individually*)." *Id.* at 207 (emphasis added); *see id.* at 207-09 (repeatedly emphasizing agreements should be "considered individually"); *id.* at 211 ("each licensing agreement must be treated as a separate conspiracy"). Other cases are in accord. *See, e.g.*, *Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc.*, 602 F.3d 239, 255-56 (3d Cir. 2010) (under Section 1, plaintiff must allege that each agreement, by itself, harmed competition); *Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069, 1087 (9th Cir. 2025) (stating that "grouping of individual agreements could not be 'aggregated' for the purposes of determining whether together they acted as an unreasonable restraint of trade"). Here, that means the jury must consider each of the challenged agreements individually. Plaintiffs' wholesale failure to offer evidence that any individual contract violates Section 1 is grounds for summary judgment on that count. *See* Doc. 283 at 11-12. But at minimum, Plaintiffs must prove—and the jury must find—that any such contracts individually violated Section 1.

**Structure.** Plaintiffs' proposal also has several problems with structure.

*First*, because Plaintiffs must prove their relevant market to succeed on their Section 2 claim (and cannot subvert that requirement through "direct evidence"), Plaintiffs must prove the same market to succeed for each of their claims, and a threshold relevant-market question is therefore appropriate. Plaintiffs' counsel admitted during the summary-judgment hearing that "if there is a relevant market, the input market for the racing teams that's established, that also applies to the Section 1 claim. We allege the same market. It's not a different market." Oct. 23, 2025 Tr. 70:9-12.

The district court in *North American Soccer League, LLC v. U.S. Soccer Federation, Inc.* required a threshold market question where the plaintiff's relevant markets were the same for its Section 1 and Section 2 claims. Jury Verdict at 2, 7, *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, No. 1:17-cv-05495 (E.D.N.Y. Feb. 3, 2025), ECF No. 538. This Court should do the same, as Defendants' verdict form proposes.

*Second*, Plaintiffs' proposal includes damages in two different places in a way that does not track the parties' proposed jury instructions. As Exhibit C of this Court's *Standing Order Governing Jury Selection and Instruction in Civil Cases* envisions, the jury instructions and the verdict form should be aligned. In this case, the proposed jury instructions provide for one set of damages instructions after all instructions relating to the parties' claims. That makes sense, as otherwise the Court would need to repeat a full set of damages instructions in what is already a lengthy and complicated jury charge. Defendants' proposed verdict form tracks the instructions, with damages questions in one place at the end of the form.

*Third*, Plaintiffs' brief mention of "October 2, 2020" in Questions 2 and 6(a) is confusing to the jury and misguided. The statute of limitations bars recovery for certain conduct and merits a separate question for each of Plaintiffs' claims. But Plaintiffs' proposal appears designed to gloss over this crucial safeguard for NASCAR, such that the jury hardly considers it. Defendants' proposed form, by contrast, includes separate questions on the statute of limitations.

*Fourth*, Plaintiffs' proposal combines the "agreement" element with the "unreasonable restraint" element of NASCAR's counterclaim in Question 6(a). But Plaintiffs' proposal ought to have a question regarding whether Mr. France ratified these agreements, and then a separate question about whether the challenged contractual provisions unreasonably restrain trade. Defendants' proposal takes this approach, which again tracks the structure of the parties' proposed jury instructions.

In addition, Plaintiffs' proposal fails to even separate the track sanction agreements from the Next Gen agreements, much less to require the jury to list each individual agreement that satisfies the elements of their Section 1 claim. That wrongly eliminates Plaintiffs' burden to show that each of these agreements unreasonably restrained trade.

7

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

2311 RACING LLC d/b/a 23XI RACING, and
FRONT ROW MOTORSPORTS, INC.,

        Plaintiffs,

        v.

NATIONAL ASSOCIATION FOR STOCK
CAR AUTO RACING, LLC, NASCAR
HOLDINGS, LLC, NASCAR EVENT
MANAGEMENT, LLC, and JAMES FRANCE,

        Defendants.

No. 3:24-cv-886-KDB-SCR

NASCAR EVENT MANAGEMENT, LLC,

        Counter-Plaintiff,

        v.

2311 RACING LLC d/b/a 23XI RACING,
FRONT ROW MOTORSPORTS, INC., and
CURTIS POLK,

        Counter-Defendants.

## NASCAR'S PROPOSED VERDICT FORM

*When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout.* **_Your answer to each question must be unanimous._**

\*　　　　\*　　　　\*

We, the jury, unanimously find as follows on the questions submitted to us, and we return them as our verdict in this case:

## PART I: 23XI AND FRONT ROW'S CLAIMS

## Question 1:

Did 23XI and Front Row prove that that the relevant antitrust market is limited to the services of premier stock-car racing teams in the United States?

YES_____　　　　　　NO_____

*If you answered "YES," please proceed to **Question 2**.*

*If you answered "NO," please proceed to **PART II: NASCAR'S COUNTERCLAIM (Question 11 on page 10).***

## Count 1: 23XI and Front Row's Monopsonization Claim

## Question 2:

*Answer this question only if you answered "YES" to Question 1.*

Did 23XI and Front Row prove that NASCAR possessed monopsony power in the relevant market for buying the services of premier stock-car racing teams in the United States?

YES_____　　　　　　NO_____

*If you answered "YES," please proceed to **Question 3**.*

*If you answered "NO," please proceed to **Count 2: Unreasonable Restraint of Trade (Question 7 on page 5).***

1

**Question 3:**

*Answer this question only if you answered "YES" to Question 2.*

Did 23XI and Front Row prove that NASCAR willfully obtained or maintained monopsony power in the relevant market for buying the services of premier stock-car racing teams in the United States by engaging in anticompetitive conduct?

YES_____          NO_____

*If you answered "YES," please proceed to* **Question 4(a).**

*If you answered "NO," please proceed to* **Count 2: Unreasonable Restraint of Trade (Question 7 on page 5).**

**Question 4(a):**

*Answer this question only if you answered "YES" to Question 3.*

Please answer "YES" or "NO" to each part.

Which of the following conduct did 23XI and Front Row prove was anticompetitive?

(i)     NASCAR's acquisition of ARCA:

YES_____          NO_____

(ii)     NASCAR's acquisition of ISC:

YES_____          NO_____

(iii)   The exclusivity provisions in track sanction agreements:

YES_____          NO_____

(iv)    NASCAR's adoption of Next Gen car requirements:

YES_____          NO_____

(v)     The Goodwill provision (Section 6.6) of the Charter Agreements:

2

YES_____          NO_____

*Please proceed to* **Question 4(b).**

## Question 4(b):

*Answer this question only if you answered "YES" to one or more parts of Question 4(a).*

Did 23XI and Front Row prove that James France actively and knowingly directed, controlled, and/or ratified the conduct that you answered "YES" to in Question 4(a)?

YES_____          NO_____

*Please proceed to* **Question 5(a).**

## Question 5(a):

*Answer this question only if you answered "YES" to Question 3 and "YES" to at least one part of Question 4(a).*

Did 23XI prove that it suffered injury to its business or property that was materially caused by NASCAR's monopsonistic anticompetitive conduct?

YES_____          NO_____

*If you answered "YES," please proceed to* **Question 5(b).**

*If you answered "NO," please proceed to* **Question 6(a).**

## Question 5(b):

*Answer this question only if you answered "YES" to Question 5(a).*

Did 23XI prove that its injury was caused by anticompetitive conduct that occurred after October 2, 2020 as opposed to anticompetitive conduct that occurred before October 2, 2020?

YES_____          NO_____

*Please proceed to **Question 6(a)**.*

## Question 6(a):

*Answer this question only if you answered "YES" to Question 3 and "YES" to at least one part of Question 4(a).*

Did Front Row prove that it suffered injury to its business or property that was materially caused by NASCAR's monopsonistic anticompetitive conduct?

YES_____            NO_____

*If you answered "YES," please proceed to **Question 6(b)**.*

*If you answered "NO," please proceed to **Count 2:  Unreasonable Restraint of Trade (Question 7 on page 5)**.*

## Question 6(b):

*Answer this question only if you answered "YES" to Question 6(a).*

Did Front Row prove that its injury was caused by anticompetitive conduct that occurred after October 2, 2020 as opposed to anticompetitive conduct that occurred before October 2, 2020?

YES_____            NO_____

*Please proceed to **Question 7** in **Count 2:  Unreasonable Restraint of Trade** (this is the next question on the next page).  If you answered "YES" to Questions 5(b) and/or 6(b), you must also complete PART III: DAMAGES.*

## Count 2: 23XI and Front Row's Unreasonable Restraint of Trade Claim

## Question 7:

*Answer this question only if you answered "YES" to Question 1.*

Did 23XI and Front Row prove that James France actively and knowingly directed, controlled, and/or ratified NASCAR's agreement to the exclusivity provisions in any of the challenged track sanction agreements between NASCAR and independent racetrack owners, and/or in any of the challenged agreements requiring Next Gen cars?

YES_____          NO_____

*If you answered "YES," please list each agreement that you found James France directed, controlled, or ratified:*

*Please proceed to* **Question 8(a).**

## Question 8(a):

*Answer this question only if you answered "YES" to Question 1.*

Did 23XI and Front Row prove that any challenged track sanction agreement between NASCAR and an independent track, judged on its own and not together with any other agreements, unreasonably restrained trade in the market for buying the services of premier stock-car racing teams in the United States?

YES_____          NO_____

*If you answered "YES," please list each and every track sanction agreement that you found, on its own, unreasonably restrained trade:*

*Please proceed to **Question 8(b)**.*

## Question 8(b):

*Answer this question only if you answered "YES" to Question 1.*

Did 23XI and Front Row prove that the contractual terms contained in any individual challenged Next Gen agreement, judged on its own and not together with any other agreements, unreasonably restrained trade in the market for buying the services of premier stock-car racing teams in the United States?

YES_____          NO_____

*If you answered "YES," please list each Next Gen agreement that you found, on its own, unreasonably restrained trade:*

*If you answered "YES" to Questions 8(a) and/or 8(b), please proceed to **Question 9(a).***

6

*If you answered "NO" to Questions 8(a) and 8(b), please proceed to* **PART II: NASCAR'S COUNTERCLAIM (page 10).**

**<u>Question 9(a):</u>**

*Answer this question only if you answered "YES" to Questions 8(a) and/or 8(b). Select all that apply.*

Did 23XI prove that it suffered injury to its business or property that was materially caused by any individual agreement, judged on its own and not together with any other agreements, that unreasonably restrained trade?

> YES (by the terms of one or more track sanction agreements, judged individually)_____
> YES (by the terms of one or more Next Gen agreements, judged individually) _____
> NO_____

*If you answered "YES," please list each agreement that you found, on its own, materially caused 23XI's injury:*

*If you answered "YES," please proceed to* **Question 9(b).**

*If you answered "NO," please proceed to* **Question 10(a).**

**Question 9(b):**

*Answer this question only if you answered "YES" to any part of Question 9(a). Select all that apply.*

Did 23XI prove that its injury was caused by an unreasonable restraint that occurred after October 2, 2020 as opposed to anticompetitive conduct that occurred before October 2, 2020?

YES (by the terms of one or more track sanction agreements, judged individually)_____

YES (by the terms of one or more Next Gen agreements, judged individually) _____

NO_____

*Please proceed to **Question 10(a)**.*

**Question 10(a):**

*Answer this question only if you answered "YES" to Questions 8(a) and/or 8(b). Select all that apply.*

Did Front Row prove that it suffered injury to its business or property that was materially caused by any individual agreement, judged on its own and not together with any other agreements, that unreasonably restrained trade?

YES (by the terms of one or more track sanction agreements, judged individually)_____

YES (by the terms of one or more Next Gen agreements, judged individually) _____

NO_____

*If you answered "YES," please list each agreement that you found, on its own, materially caused Front Row's injury:*

*If you answered "YES," please proceed to **Question 10(b)**.*

*If you answered "NO," please proceed to **PART II: NASCAR'S COUNTERCLAIM (page 10).***

### Question 10(b):

*Answer this question only if you answered "YES" to any part of Question 10(a). Select all that apply.*

Did Front Row prove that its injury was caused by an unreasonable restraint that occurred after October 2, 2020 as opposed to anticompetitive conduct that occurred before October 2, 2020?

> YES (by the terms of one or more track sanction agreements, judged individually)_____
> YES (by the terms of one or more Next Gen agreements, judged individually) _____
> NO_____

*Please proceed to **PART II: NASCAR'S COUNTERCLAIM (the next question on the next page).** If you answered "YES" to Questions 9(b) and/or 10(b), you must also complete PART III: DAMAGES.*

## PART II:  NASCAR'S COUNTERCLAIM

*Please answer Questions 11(a) and 11(b).*

### Question 11(a):

Did NASCAR prove that there was a conspiracy between or among two or more racing teams to fix the amount of money that NASCAR Cup Series entrants would be paid to race in the Cup Series?

YES_____          NO_____

*Plead proceed to **Question 11(b).***

### Question 11(b):

Did NASCAR prove that there was a conspiracy between or among two or more racing teams to set the non-price terms under which they would agree to supply NASCAR with Cup Series entrants?

YES_____          NO_____

*If you answered "YES" to Questions 11(a) and/or 11(b), please proceed to **Questions 12(a) through 12(c).***

*If you answered "NO" to both Question 11(a) and 11(b), please proceed to **PART III: DAMAGES (page 13) .***

### Question 12(a):

*Answer this question only if you answered "YES" to one or more of Questions 11(a) and/or 11(b).*

Did NASCAR prove that 23XI knowingly joined or participated in the conspiracy?

YES_____          NO_____

*Please proceed to **Question 12(b).***

**Question 12(b):**

Did NASCAR prove that Front Row knowingly joined or participated in the conspiracy?

YES_____          NO_____

*Please proceed to **Question 12(c).***

**Question 12(c):**

Did NASCAR prove that Curtis Polk knowingly joined or participated in the conspiracy?

YES_____          NO_____

*If you answered "YES" to one or more of Questions 12(a), 12(b) and/or 12(c), please proceed to **Question 13.***

*If you answered "NO" to Questions 12(a), 12(b) and 12(c), please proceed to **PART III: DAMAGES (page 13).***

**Question 13:**

*Answer this question only if you answered "YES" to one or more of Questions 12(a), 12(b), and/or 12(c).*

Did NASCAR prove that that the relevant antitrust market is limited to the entry of cars into NASCAR Cup Series races?

YES_____          NO_____

*If you answered "YES," please proceed to **Question 14.***

*If you answered "NO," please proceed to **PART III: DAMAGES.***

11

**Question 14:**

*Answer this question only if you answered "YES" to Question 13.*

Did NASCAR prove that that the conspiracy unreasonably restrained trade in the market for the entry of cars into NASCAR Cup Series races?

YES_____          NO_____

*If you answered "YES," please proceed to **Question 15.***

*If you answered "NO," please proceed to **PART III: DAMAGES.***

**Question 15:**

*Answer this question only if you answered "YES" to Question 14.*

Did NASCAR prove that it suffered injury to its business or property that was materially caused by the conspiracy?

YES_____          NO_____

*Please proceed to **PART III: DAMAGES.***

# PART III:  DAMAGES

**Damages for 23XI**

*Only if you answered "YES" to* **Question 5(b) and/or Question 9(b)** *above, please proceed to* **Question 16** *to determine damages.*

*If you answered "NO" or did not provide answers to Question 5(b) and Question 9(b), please proceed to* **Damages for Front Row**.

## Question 16:

What amount of damages did 23XI prove that it suffered as a result of conduct that you found violates antitrust law?

$_____

*Write out the amount in words:*

*Please proceed to* **Damages for Front Row.**

**Damages for Front Row**

*Only if you answered "YES" to **Question 6(b) and/or Question 10(b)** above, please proceed to **Question 17** to determine damages.*

*If you answered "NO" or did not provide answers to Question 6(b) and Question 10(b), please proceed to **Damages for NASCAR**.*

## Question 17:

What amount of damages did Front Row prove that it suffered as a result of conduct that you found violates antitrust law?

$\underline{\hspace{5cm}}$

*Write out the amount in words:* $\underline{\hspace{6cm}}$

*Please proceed to **Damages for NASCAR**.*

NASCAR's Proposed Verdict Form

**Damages for NASCAR**

*Only if you answered "YES" to **Question 15** above, please proceed to **Question 18** to determine damages.*

*If you answered "NO" or did not provide an answer to Question 15, please proceed to **PART IV.***

<u>**Question 18:**</u>

What amount of damages did NASCAR prove that it suffered as a result of the conduct that you found violates antitrust law?

$_____

*Write out the amount in words:* _____

*Please proceed to **PART IV.***

## <u>PART IV</u>

Your deliberations are complete.  Please sign the verdict form below.


Signed:


_____                                        _____
          Jury Foreperson                                                              Date

16

# PLAINTIFFS' OBJECTION TO NASCAR'S PROPOSED VERDICT FORM

Plaintiffs object to NASCAR's proposed verdict form because it is overly complicated, repeatedly misapplies the elements of the Sherman Act, and is heavily biased toward NASCAR. Below, Plaintiffs list the specific objections to NASCAR's verdict form, on a question-by-question basis.

## Part I: 23XI and Front Row's Claims

## Count 1: 23XI and Front Row's Monopsonization Claim

**Question 1**: NASCAR's verdict form question on the relevant market is wrong under the law for multiple reasons. First, Plaintiffs are not required to separately prove a market, with respect to their Section 2 monopoly maintenance claim, if they prove that NASCAR exercised monopoly power through direct evidence.[1] NASCAR's instruction thus misstates the law because it requires Plaintiffs to first prove a relevant market regardless of whether the jury concludes NASCAR has monopoly power based on direct evidence. Second, the jury only needs to find the existence of a relevant market; the jury need not find a market that, as NASCAR's instruction erroneously provides, is "limited to" the services of premier stock-car racing teams. The jury could conclude Plaintiffs have proven the relevant input market even if the teams or NASCAR also compete in different or broader markets as well. *United States v. Google*, 778 F. Supp. 3d 797, 845–46 (E.D. Va. 2025) ("The mere fact that a firm may be termed a competitor in the overall marketplace does not necessarily require that it be included in the relevant product market for antitrust purposes."); *F.T.C. v. Sysco Corp.,* 113 F. Supp. 3d 1, 30–31 (D.D.C. 2015) (similar); *F.T.C. v. Whole Foods Mkt.,* 548 F.3d 1028, 1040 (D.C. Cir. 2008) (similar).

**Question 2**: NASCAR's verdict form errs by breaking market definition and monopoly power into separate instructions for Plaintiffs' Section 2 claim, for the

---

[1] *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61 (1986) ("Since the purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition, 'proof of actual detrimental effects, such as a reduction of output,' can obviate the need for an inquiry into market power, which is but a 'surrogate for detrimental effects.'") (internal citation omitted); *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 482 (S.D.N.Y. 2016) ("[M]onopoly power may be established, not only by proof of a defendant's market share in a relevant market, but alternatively by direct evidence of a defendant's price control or exclusion of competitors from a particular market in a manner indicative of its possession of monopoly power."); *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 608 F. Supp. 3d 298, 314 (W.D.N.C. 2022) (same).

reasons described above. Courts frequently give streamlined verdict forms in Section 2 cases that require the jury to assess monopoly power and the relevant market together in a single instruction, as Plaintiffs propose here. *See, e.g.*, *Innovative Health LLC v. Biosense Webster, Inc.*, No. 8:19-cv-19984 JVS (KES), Dkt. No. 526, Special Verdict Form, at 2 (C.D. Cal. May 16, 2025); *Regeneron Pharms., Inc. v. Amgen Inc.*, No. 1:22-cv-00697-JLH, Dkt. No. 484, Jury Verdict Form, at 2 (D. Del. May 20, 2025).

Additionally, Plaintiffs object to NASCAR's use of the word "monopsony"—as opposed to the far more common term "monopoly"—in the verdict form. Jury instructions and verdict forms should be written in plain English in a manner that is easily understood by a lay jury.[2] Whereas monopoly is commonly understood, "monopsony" is an unfamiliar legal term and needlessly risks confusing the jury.

**Question 3**: NASCAR's Question 3 is incorrect and prejudicial in several respects. First, Plaintiffs do not allege that NASCAR unlawfully *obtained* a monopoly, so including "obtained" in Question 3 would needlessly confuse the issues with an irrelevant question. Second, the jury only must find that NASCAR willfully maintained a monopoly—not that it did so in the specific relevant market for premier stock-car racing teams. *See, e.g.*, *Innovative Health LLC v. Biosense Webster, Inc.*, No. 8:19-cv-19984 JVS (KES), Dkt. No. 526, Special Verdict Form, at 2 (C.D. Cal. May 16, 2025) ("Did Innovative prove by a preponderance of the evidence that Biosense violated Section 2 of the Sherman Act by creating or maintaining a monopoly through anticompetitive practices?"); *PepsiCo*, 315 F.3d at 107; *Duke Energy*, 608 F. Supp. 3d at 314; *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 99 F. Supp. 3d 610, 624 (D. Md. 2015).

**Question 4(a)**: Question 4(a) misapplies the law. Under *Duke Energy* and many other precedents, in a Section 2 case the jury must consider whether NASCAR's conduct was anticompetitive when considered as a whole—not whether

---

[2] *See* 1 Fed. Jury Prac. & Instr. Ch. 7 Appendix (6th ed.) (jury instructions are easier to understand when "[i]t substitutes plain English for unfamiliar words whenever possible."); Form and Content of Instructions, 9C Fed. Prac. & Proc. Civ. § 2556 (3d ed.) (Wright & Miller) ("It is axiomatic that the trial court should charge the jury in plain language. It should not use technical or obscure legal phrases if the legal rule can be stated in less formal words. If the court must use technical words that are not generally well understood, it should define them."); Aiding juror comprehension of the law, 2 Jurywork Systematic Techniques § 16:27 ("One concept in the ABA Principles that is not controversial is the idea that it is best if jury instructions are given in language that jurors can understand . . . At least thirty years of empirical research supports the view that jury instructions are written in a language intended for lawyers rather than laypersons and that jurors have difficulty understanding the instructions.").

individual acts, considered in isolation, were anticompetitive. NASCAR's Question 4(a) would require the jury to slice and dice NASCAR's conduct, and determine whether its restraints were individually anticompetitive judged in isolation, in precisely the manner that is prohibited by *Duke Energy*. *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 355 (4th Cir. 2024) ("[E]xclusionary conduct alleged under § 2 must be considered holistically" and "must always be analyzed 'as a whole'") (quoting P. Areeda & H. Hovenkamp, Antitrust Law ¶ 310c7 (4th & 5th eds. 2024)); *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) ("The relevant inquiry is the anticompetitive effect of 3M's exclusionary practices considered together."); *id.* at 166 ("3M's actions, taken as a whole, were found to violate § 2, thus making the disaggregation that 3M speaks of to be unnecessary, if not impossible.").

**Questions 5(a) and 6(a)**: NASCAR's Question 5(a) and 6(a) on injury are misleading and prejudicial in several respects. First, courts routinely provide verdict forms that simply ask whether the plaintiffs proved injury, as Plaintiffs' Question 4(a) does. *See, e.g.*, *In re Google Play Store Antitrust Litig.*, No. 3:31-md-02981-JD, Dkt. No. 861, Verdict Form, Questions 5, 9, 11 (no materiality requirement for causation in Section 1 and 2 claims); *Regeneron Pharms., Inc. v. Amgen Inc.*, No. 1:22-cv-00697-JLH, Dkt. No. 484, Jury Verdict Form, Special Interrogatory 3 (no materiality requirement for causation). NASCAR's Question 5(a) and 6(a) depart from this typical practice by inserting the word "materially," which is unnecessary. Second, Plaintiffs allege harm from NASCAR's monopoly as a whole, not by the discrete acts of "anticompetitive conduct" that NASCAR engaged in to maintain that monopoly. *E.g., Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th at 355; *LePage's Inc. v. 3M*, 324 F.3d at 162. As the direct sellers in the input market, Plaintiffs are "consumers"—not competitors—and they suffer harm not when the exclusionary acts occur but rather when NASCAR exercises its monopoly power to pay Plaintiffs a below-market compensation for their services. *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 114 F.4th 280, 286 (4th Cir. 2024) ("Although the business of a monopolist's rival may be injured at the time the anticompetitive conduct occurs, a purchaser, by contrast, is not harmed until the monopolist actually exercises its illicit power to extract an excessive price.") (quoting *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)).

**Questions 5(b) and 6(b)**: Questions 5(b) and 6(b) similarly imply that Plaintiffs must prove injury tied to discrete "anticompetitive conduct," rather than from NASCAR's unlawfully maintained monopoly. NASCAR's framing of the limitation period is also confusing and misleading. The question for the jury to resolve, with respect to the statute of limitations, is whether NASCAR has taken at

least one overt act to maintain its monopoly since October 2, 2020. *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 780 F. Supp. 322, 328 (M.D.N.C. 1991) ("A cause of action is not barred by the statute of limitations simply because anticompetitive conduct began outside the statutory period so long as some overt act injuring a plaintiff is committed within the limitations period."). NASCAR's questions as phrased are thus contrary to *Duke Energy* and *Berkey Photo* and are confusing and prejudicial.

## Count 2: 23XI and Front Row's Unreasonable Restraint of Trade Claim

**Question 7**: NASCAR's proposed ordering of Question 7 and Question 8 is likely to cause jury confusion. Asking the jury to determine whether Mr. France is personally liable for a Section 1 violation (Question 7) ***before*** determining whether NASCAR's agreements unreasonably restrained trade (Question 8) is illogical and does not align with the jury instructions, which base Mr. France's liability on first finding NASCAR liable. Further, NASCAR's Question 7 wrongly characterizes (in NASCAR's preferred terms) the specific contract provisions. The jury verdict form should only ask the jury whether the agreements unreasonably restrained trade; the verdict form does not need to characterize those agreements. *See, e.g.*, *Regeneron Pharms., Inc. v. Amgen Inc.*, No. 1:22-cv-00697-JLH, Dkt. No. 484, Jury Verdict Form, Question 3 (referring generally to a "tying arrangement"). Further, NASCAR's verdict form question is contrary to law because it would require the jury to identify "each agreement" that Mr. France directed, controlled, or ratified, which misstates the legal standard. To hold Mr. France personally liable, the jury only needs to find that he actively participated in the unlawful conduct. *In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 737 (E.D. Tenn. 2011) ("active and knowing" participation in anticompetitive scheme); *Brown v. Donco Enters., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986) ("It is undisputed that a corporation's officers and agents may be held individually liable for corporate actions that violate the antitrust laws if they authorize or participate in the unlawful act.").

**Questions 8(a) and 8(b))**: Question 8 errs in separating NASCAR's restraints on tracks and NextGen cars into separate instructions. The question the jury must answer is whether NASCAR's Section 1 restraints, considered together rather than in isolation, unreasonably restrained trade—which is how Plaintiffs' Question 6(a) frames the question. *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 539 (4th Cir. 1998) (considering whether the "*entire* transaction," which consisted of several discrete agreements and acts, constituted an "agreement" in constraint of trade) (emphasis in original); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1153 (9th Cir. 2019) ("Contrary to the defendants' argument, we are required to take a holistic look at how the interlocking agreements actually

impact competition."); *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("Plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."). Similarly, NASCAR's verdict form asks the jury to identify "each agreement" that "on its own materially caused" injury, which improperly compartmentalizes the analysis and misconstrues the nature of Plaintiffs' injuries.

**Questions 9(a), (b) and 10(a), (b)**: Questions 9 and 10 would force the jury to attribute Plaintiffs' injury to specific anticompetitive acts by NASCAR. For the reasons described earlier, that is incorrect: the track and NextGen 7 restraints were used by NASCAR to maintain its monopoly, and the unlawfully maintained monopoly allowed NASCAR to pay the teams below-market compensation.

## Part II: NASCAR's Counterclaim

**Counterclaim instructions general comments**: NASCAR's counterclaim verdict form questions improperly attempt to revive the *per se* claim that this Court has already dismissed and to otherwise shift its theories at the 11th hour. NASCAR frames the counterclaim verdict form questions as though its counterclaim were a *per se* price fixing case, even though the Court dismissed that claim under Rule 12(b)(6) and held that NASCAR's counterclaim must be adjudicated under the rule of reason. Dkt. No. 162 at 7–9 ("[T]he Counterclaim does not state a per se Sherman 1 claim and must be analyzed under the Rule of Reason test"). Moreover, in its counterclaim instructions, NASCAR entirely omitted the required verdict form question on market power (*compare with* Plaintiffs' Question (10(b)) and confusingly included the market definition verdict form question as the **last** question rather than the **first**. *See Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus., Inc.*, 889 F.2d 524, 528 (4th Cir. 1989) ("A threshold inquiry in any Rule of Reason case is whether the defendant had market power."); *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 709 (4th Cir. 1991).

**Questions 11(a) and (b)**: In Questions 11(a) and 11(b), NASCAR attempts to get two bites at the apple in asking the jury find a "conspiracy." The appropriate verdict form question is instead whether NASCAR has proven that each of the Counter Defendants entered into a conspiracy to restrain trade, not to break the conspiracy into two separate verdict form questions. *Compare with* Plaintiffs' Questions 11(a) and 11(b). The verdict should ask whether NASCAR proved that each team "knowingly entered into a conspiracy with two or more racing teams that unreasonably restrained trade in a relevant market for the entry of cars into NASCAR Cup Series races," as Plaintiffs' Instructions 11(a) and 11(b) provide.

Regardless, NASCAR's Question 11(a) and Question 11(b) are both improper. Question 11(a) improperly recasts the counterclaim as a *per se* price fixing conspiracy, which this Court already dismissed under Rule 12(b)(6), as described above. Question 11(b) asks the jury to decide a purported conspiracy apparently over "non-price terms"—even though the only injury and damages claims that NASCAR can present to the jury solely relate to NASCAR's purported overpayments to the teams under the revenue-sharing terms in the 2025 Charter Agreement. *See, e.g.,* Hansen Rep. ¶¶ 52–60.

**Questions 12(a) and 12(b)**: Questions 12(a) and 12(b) are improper and confusing. The jury must find each Counter Defendant participated in a conspiracy **to restrain trade**, not just an unspecified conspiracy. *See Broad. Music, Inc. v. Columbia Broad. Sys. Inc.*, 441 U.S. 1, 23 (1979) ("BMI") ("Not all arrangements among actual or potential competitors that have an impact on price are . . . unreasonable restraints."); *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 397 (7th Cir. 1989) ("There can be no restraint of trade without a restraint.") Further, NASCAR's questions are internally contradictory and likely to confuse the jury. Questions 11(a) and 11(b) ask the jurors to determine which of two separate conspiracies existed (neither of which is the purported joint-negotiations conspiracy that NASCAR adequately pled and has litigated in this case). But then Questions 12(a) and 12(b) ask whether the Counter Defendants participated in "the conspiracy."

**Question 12(c):** Question 12(c) improperly implies that Curtis Polk could have conspired with 23XI. Any verdict form question relating to Mr. Polk should make clear that, to hold him liable under Section 1, the jury must find that he conspired to restrain trade with at least one team other than 23XI. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) ("[C]orporate employees cannot conspire with each other or with the corporation.").

**Question 13**: Question 13 improperly places market definition at the end, rather than the beginning, of the verdict form questions relating to NASCAR's counterclaim. *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 709 (4th Cir. 1991) (in a section § 1 rule of reason case, plaintiffs must first "prove what market . . . was restrained"); *Cont'l Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 566 (E.D. Va. 2000) (same).

**Question 14**: Like Questions 12(a) and 12(b), Question 14 describes a singular, unspecified conspiracy, contradicting NASCAR's Questions 11(a) and 11(b) asking about two separate (improper) conspiracies. Notably, NASCAR has taken contradictory approaches to the verdict form questions for its Section 1

counterclaim versus Plaintiffs' Section 1 claim. For its counterclaim, NASCAR lumps the conspiracy all together when asking the jury to determine whether NASCAR has shown an unreasonable restraint of trade and injury. But when it comes to Plaintiffs' Section 1 claim, NASCAR's verdict form question would require the jury to find a restraint and injury that is tied to specific contract terms within specific agreements. *Compare* NASCAR Questions 9(a)-10(b) *with* NASCAR Question 14.

## Part III: Damages

Plaintiffs submit that the verdict form should ask the jury to determine Plaintiffs' damages (if any) at the end of the instructions that pertain to Plaintiffs' antitrust claims against NASCAR, and then ask the jury to determine NASCAR's damages (if any) at the end of the instructions that pertain to NASCAR's counterclaim.

Dated: October 27, 2025       Respectfully submitted,

By:   */s/ Ashley M. Bauer*
Ashley M. Bauer*
Christopher S. Yates*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8240
Facsimile: (415) 395-8095
ashley.bauer@lw.com
chris.yates@lw.com

Lawrence E. Buterman*
**LATHAM & WAKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Marguerite Sullivan*
Jennifer L. Giordano*
Anna M. Rathbun*
David L. Johnson*
Christopher J. Brown*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
marguerite.sullivan@lw.com
jennifer.giordano@lw.com
anna.rathbun@lw.com
david.johnson@lw.com
chris.brown@lw.com

Tricia Wilson Magee (N.C. Bar No. 31875)
**SHUMAKER, LOOP, & KENDRICK, LLP**
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Telephone: 704-945-2911
Facsimile: 704-332-1197
tmagee@shumaker.com

* Admitted *pro hac vice*

*Counsel for Defendants NASCAR and James France*

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler*
Neha Vyas*
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
nvyas@winston.com

E. Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer E. Parsigian*
Michael Toomey*
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111

Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto*
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

Josh Hafenbrack*
Benjamin L. Rudofsky*
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com
brudofsky@winston.com

Benjamin S. Gordon*
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
bgordon@winston.com

*Counsel for 2311 Racing LLC d/b/a
23XI Racing and Front Row
Motorsports, Inc*

Eric S. Hochstadt*
**ORRICK, HERRINGTON &
SUTCLIFFE LLP**
51 W 52nd Street

New York, New York 10019
Tel: (212) 506-5282
ehochstadt@orrick.com

*Counsel for Curtis Polk*

\* Admitted *pro hac vice*

## <u>ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION</u>

I hereby certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of NASCAR's verdict form and objection, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in NASCAR's objection has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 27th day of October, 2025.

*/s/ Ashley M. Bauer*
Ashley M. Bauer

I hereby certify the following:

1.  No artificial intelligence was employed in doing the research for the preparation of this Plaintiffs' verdict form and objection, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2.  Every statement and every citation to an authority contained in Plaintiffs' objection has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 27th day of October, 2025.

/s/ Jeffrey L. Kessler
Jeffrey L. Kessler

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **PARTIES' PROPOSED VERDICT FORMS** was electronically filed using the Court's CM/ECF system, which will automatically send notice of filing to all parties of record as follows:

Danielle T. Williams
dwilliams@winston.com

Jeffrey L. Kessler
jkessler@winston.com

Jeanifer Parsigian
jparsigian@winston.com

Michael Toomey
mtoomey@winston.com

Matthew DalSanto
mdalsanto@winston.com

*Counsel for Plaintiffs 23XI Racing and*
*Front Row Motorsports Inc.*

Eric Shaun Hochstadt
ehochstadt@orrick.com

*Counsel for Counterclaim Defendant*
*Curtis Polk*

This the 27th day of October, 2025.

/s/ Ashley M. Bauer
Ashley M. Bauer