UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. | No. 3:24-cv-886-KDB-SCR |

**PLAINTIFFS' RESPONSE TO JOINT MOTION FOR A PROTECTIVE ORDER FILED BY HENDRICK MOTORSPORTS, LLC, PENSKE RACING SOUTH, INC., RICK HENDRICK, ROGER PENSKE, AND HMS HOLDINGS, LLC (DKT. NO. 414)**

## INTRODUCTION

The Court should deny the extraordinary motion of Rick Hendrick and Roger Penske—who own two of the most storied NASCAR Cup Series teams—that seeks to block Plaintiffs from effectively deposing or cross-examining them so that they can voluntarily provide the sanitized trial testimony that they admit NASCAR CEO Jim France has asked them to provide. Depriving Plaintiffs of the right to depose and cross-examine Mr. Hendrick and Mr. Penske on indisputably relevant subjects would subvert the purposes of the Federal Rules and Plaintiffs' fundamental right to a fair trial.

Hendrick and Penske have made the choice to voluntarily testify at the trial, based on a personal agreement they reached with Mr. France arising out of their "decades-long relationship" with him. It may be true, as Mr. Hendrick and Mr. Penske say in their Motion, that "[n]either man wants to play any role in this lawsuit whatsoever and have made clear that they will not 'take sides' in this case." But ***NASCAR*** is the one dragging Mr. Hendrick and Mr. Penske into this trial—not Plaintiffs. It is NASCAR that included Mr. Hendrick and Mr. Penske on their trial witness list, despite counsel for the two men repeatedly telling Plaintiffs that Mr. Hendrick and Mr. Penske had no intention of testifying.

Having now made the voluntary choice to testify at NASCAR's behest, Mr. Hendrick and Mr. Penske cannot prevent Plaintiffs from taking their trial depositions (as this Court has already ordered) and having a full opportunity to cross-examine them, consistent with Federal Rule 611(b), on matters that bear on disputed issues or their bias and credibility as witnesses. Indeed, in their Motion, Mr. Hendrick and Mr. Penske cite no legal authority—not a single rule of procedure or case—that supports their request to preemptively limit Plaintiffs' deposition and cross-examination of the two men to the "high level" or "general" testimony contained in their declarations, which they drafted in conjunction with NASCAR's counsel in support of NASCAR's since-rejected

1

motion for summary judgment. Nor can confidentiality concerns negate Plaintiffs' right to depose and cross-examine these witnesses. Mr. Hendrick and Mr. Penske are no longer third-party bystanders, like they were when they opposed NASCAR's discovery requests for team financial information. Now, they have voluntarily agreed to testify at a public trial at the request of NASCAR, and they cannot prevent Plaintiffs from fully deposing and cross-examining them because that cross-examination may touch on commercially sensitive topics which they do not want to address, even though those topics bear directly on the testimony they are agreeing to provide at NASCAR's behest.

## FACTUAL BACKGROUND

**1.** Mr. Hendrick and Mr. Penske represent two of the longest-running and most successful teams in the NASCAR Cup Series. Dkt. No. 235-3, Declaration of Rick Hendrick ("Hendrick Decl.") at 2 ("Hendrick Motorsports holds the all-time records for both championships and points-paying race wins at the Cup Series level"); Dkt. No. 235-7, Declaration of Roger S. Penske ("Penske Decl.") at 2 ("Team Penske has been participating in NASCAR consecutively from 1991 and has won the last three Cup Series championships.").

**2.** NASCAR first disclosed Mr. Hendrick and Mr. Penske on its Rule 26(a)(1) disclosures as individuals likely to have discoverable information on September 10, 2025, more than two months after the close of fact discovery.[1] The next day, Plaintiffs reached out to counsel for Mr. Hendrick and Mr. Penske to inquire whether they had agreed to testify at trial. Their counsel

---

[1] NASCAR's prior Rule 26(a)(1) disclosures—on January 10, 2025, March 24, 2025, June 9, 2025, and June 30, 2025—did not disclose Mr. Hendrick or Mr. Penske as individuals likely to have discoverable information. Plaintiffs could have moved to prevent their testimony entirely, based on NASCAR's failure to disclose them, Dkt. No. 380 at 3–4, but instead only sought to depose them in order to have the opportunity for full and fair cross-examination.

responded that Mr. Hendrick and Mr. Penske had no intention to testify at trial and had not received a trial subpoena from NASCAR.

3. On October 3, 2025, NASCAR submitted declarations from Mr. Hendrick and Mr. Penske in support of their motion for summary judgment (which the Court subsequently denied, Dkt. No. 374). Dkt. No. 235-3, Dkt. No. 235-7. The declarations covered wide-ranging topics, including the teams' long histories of competing in NASCAR, the benefits of the charter system, NASCAR's Next Gen 7 car program, and the 2025 Charter Agreement negotiations—including why both teams signed the 2025 Charter Agreement after determining that NASCAR would not change its negotiating demands. Dkt. No. 235-7, Penske Decl. at 2 ("I signed the 2025 Charters because I felt that NASCAR was not going to move any further on their document"); Dkt. 235-3, Hendrick Decl. at 3 ("I ultimately decided that it was in the best interests of Hendrick Motorsports to move forward with the 2025 Charter Agreement as opposed to losing the Charter system altogether.").

After Mr. Hendrick and Mr. Penske submitted their declarations, Plaintiffs again reached out to counsel for the two men and asked if they intended to testify at trial. Counsel for Mr. Hendrick and Mr. Penske again said they did not intend to testify at trial.

4. On October 17, 2025, despite the above representations from counsel, NASCAR included Mr. Hendrick and Mr. Penske on their preliminary witness list for trial. Plaintiffs reached out to counsel for Mr. Hendrick and Mr. Penske a third time. Yet again, their respective counsel said they did not intend to testify at trial. Relying on these representations, Plaintiffs did not seek leave to depose Mr. Hendrick and Mr. Penske at that time in order to avoid imposing any unnecessary burden on the Court or third parties.

5.      Finally, on November 3, 2025, NASCAR again included Mr. Hendrick and Mr. Penske on their updated trial witness list. Once more, Plaintiffs immediately reached out to counsel for Mr. Hendrick and Mr. Penske. In a telephone conference that day, counsel informed Plaintiffs, for the first time, that Mr. Hendrick and Mr. Penske had agreed to testify at trial in response to the personal request of Mr. France.[2]

Just two days later, on November 5, 2025, Plaintiffs sought leave to depose Mr. Hendrick and Mr. Penske on November 5, 2025 (Dkt. No. 380). On a meet-and-confer that same day, counsel for Mr. Hendrick and Mr. Penske said they would only agree to trial depositions of the men if the depositions were limited to the process for submitting the declarations—such as when the declarations were requested, whether NASCAR prepared draft declarations for the witnesses, what the draft declarations said, and the extensive changes that were made to the draft declarations before they were submitted.

The Court granted Plaintiffs' request for trial depositions. Dkt. No. 381.

## ARGUMENT

The Court should reject Mr. Hendrick and Mr. Penske's motion for a protective order. Under the Federal Rules and controlling caselaw, Plaintiffs are entitled to depose Mr. Hendrick and Mr. Penske without preconditions—as this Court has already ordered—and to fully cross-examine them at trial. Moreover, Mr. Hendrick and Mr. Penske's confidentiality concerns about their team financial information cannot justify preventing Plaintiffs from cross-examining them in open court on a plainly relevant topic. If they have a proper basis to move to seal any of this

---

[2] To be sure, these topics are all relevant to the trial depositions and cross-examination. But as explained further below, the depositions and cross-examination cannot be *limited* to just those topics as doing so would deprive Plaintiffs of the ability to conduct a full and effective cross-examination of highly relevant subjects in response to their direct examinations by NASCAR.

4

information, they may do so subject to the strict requirements that the Court applies in considering such a motion.

## I.     Plaintiffs must have a full opportunity to depose Mr. Hendrick and Mr. Penske

A.    This Court has granted Plaintiffs' motion for trial depositions of Mr. Hendrick and Mr. Penske. Dkt. No. 381. Mr. Hendrick and Mr. Penske offer no legal basis for reversing the Court's decision.[3] Nor could they: Plaintiffs could have moved to exclude Mr. Hendrick and Mr. Penske from testifying entirely based on NASCAR's failure to disclose them as witnesses—at a minimum, Plaintiffs are entitled to the trial depositions that the Court has granted. *E.g., Commons of Grand Oaks Homeowners Ass'n v. Pa. Nat'l Mut. Cas. Ins. Co.,* 2020 WL 13616440, at *2 (D.S.C. Aug. 12, 2020) (granting defendant leave to depose late-disclosed witnesses to "counteract any potential unfairness"); *Rios v. Ramage*, 2020 WL 6802402, at *6 (D. Kan. Nov. 19, 2020) (same); *Iacono v. Int'l Bus. Machines Corp.,* 2019 WL 2949024, at *2 (C.D. Cal. May 7, 2019) (same). Plaintiffs cannot be forced to forgo a deposition and conduct blind cross-examinations of NASCAR's only third-party witnesses at trial based on NASCAR's failure to disclose these witnesses during fact discovery. Had these witnesses been disclosed earlier, Plaintiffs would have already deposed them during the fact discovery period without any pre-conditions or limitations on the scope of those depositions.

B.     Nor do Mr. Hendrick and Mr. Penske offer any legal basis for artificially limiting the scope of the trial depositions that the Court has ordered. Mr. Hendrick and Mr. Penske ask the Court to preemptively limit Plaintiffs to questioning them about the "high-level" statements in

---

[3] Plaintiffs do not understand how conducting the depositions by Zoom will save time, as Plaintiffs are willing to travel to Mr. Hendrick and Mr. Penske and presumably their counsel will be present in person to defend their depositions regardless. Nevertheless, Plaintiffs are happy to meet and confer with counsel for Mr. Hendrick and Mr. Penske about this issue, which they never raised prior to filing their Motion.

their declarations that they "cherry picked" with NASCAR's counsel and how they prepared those declarations. That request has no basis in the Federal Rules.

Under Rule 26(b)(1) and Rule 30, "deposition-discovery rules are to be accorded a broad and liberal treatment." *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977). Plaintiffs are entitled to question Mr. Hendrick and Mr. Penske at their trial depositions on any topic that is "germane to the subject matter of the pending action" and "therefore properly within the scope of discovery." *Ralston Purina Co.*, 550 F.2d at 973; *Gobena v. CourierNet Inc.*, 2021 WL 1917132, at *3 (W.D.N.C. Feb. 24, 2021) ("The broad discovery rules permit 'either party [to] compel the other to disgorge whatever facts he has in his possession.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Plaintiffs likewise are entitled to ask questions on topics that could speak to the bias or credibility of Mr. Hendrick and Mr. Penske. *Pete v. Big Picture Loans, LLC*, 2020 WL 3979662, at *3 (E.D. Va. July 14, 2020) ("Although discovery is not limitless, the scope of discovery is broad and easily encompasses questions regarding Pete's potential bias and credibility."). Examining these witnesses on questions of bias and credibility is especially relevant here as both witnesses have already revealed that they only agreed to testify for NASCAR in response to the personal request of Mr. France, based on their decades-long relationships. Plaintiffs are entitled to explore those relationships and how much influence Mr. France has over both of these witnesses, as this goes directly to their bias and credibility.

The Court, consistent with its prior order, should permit Plaintiffs to conduct full depositions of Mr. Hendrick and Mr. Penske, which are not subject to artificial limitations on the permissible topics and types of questions. *Rockwell v. Progressive Ins.*, 2025 WL 1370670, at *11 (D. Alaska May 12, 2025) ("Rule 30 makes clear that a deponent . . . may not unilaterally decide the scope of the questioning in a deposition."). Tellingly, Mr. Hendrick and Mr. Penske do not cite

6

any rule or a single case in support of their extraordinary request to constrain Plaintiffs' ability to depose them.[4]

Further, the topics covered by Mr. Hendrick and Mr. Penske's declarations are broad, including the charter system, the 2025 charter renewal negotiations and their acceptance of NASCAR's final terms, the economics of team ownership, NASCAR's NextGen program, Mr. Penske's ownership of the IndyCar series, and more. *See supra* p. 3. Plaintiffs are entitled to probe the basis for their declaration statements and their personal knowledge on all those topics—not just the "high level contents of their respective Declarations" (Mot. at 5)—along with any other topics that are relevant to the testimony they are going to present on NASCAR's behalf.

As just one example, Mr. Hendrick's partner in Hendrick Motorsports, Jeff Gordon, was a member of the Team Negotiating Committee, which, as the Court knows, negotiated the 2025 Charter Agreement on behalf of all the Race Team Alliance members with NASCAR. Mr. Gordon has stated publicly that, despite being one of the most successful and longest-running Cup Series teams, Hendrick Motorsports has not made a profit in **ten years**.[5] Plaintiffs are entitled to question Mr. Hendrick about those statements and the facts about Hendrick's financial condition and profitability under the charter system that Mr. Hendrick discusses in his declaration, as they bear

---

[4] Indeed, it is a sanctionable offense for counsel to impede a deposition by improperly instructing the witness not to answer questions on relevancy grounds. Fed. R. Civ. P. 30(d)(2) (when a party "impedes, delays, or frustrates the fair examination of the deponent," the court "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party"); *Ralston Purina*, 550 F.2d at 973 ("The questions put to Wagnon were germane to the subject matter of the pending action and therefore properly within the scope of discovery. They should have been answered and, in any event, the action of plaintiff's counsel in directing the deponent not to answer was highly improper.").

[5] Shane Walters, Racing News.com, *Jeff Gordon says Hendrick Motorsports hasn't made a profit in 10 years*, February 19, 2024, https://racingnews.co/2024/02/19/jeff-gordon-says-hendrick-motorsports-hasnt-made-a-profit-in-10-years/.

7

directly on whether NASCAR has exercised its monopoly power to pay the racing teams, including Mr. Hendrick's team, below-competitive-market compensation.[6]

## II. Plaintiffs must be allowed to fully cross-examine Mr. Hendrick and Mr. Penske

The Court also should reject Mr. Hendrick and Mr. Penske's request (Mot. at 5) to limit their "trial testimony to the high-level contents of their respective Declarations." Plaintiffs have a constitutional right to fully cross-examine the witnesses that NASCAR brings to trial. *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) (cross-examination is "the greatest legal engine ever invented for the discovery of truth.") (internal quotations and citations omitted); *Watkins v. Sowders*, 449 U.S. 341, 349 (1981) ("[U]nder our adversary system of justice, cross-examination has always been considered a most effective way to ascertain truth.").

Here again, Mr. Hendrick and Mr. Penske cite no authority that would allow them to reach a private agreement with NASCAR on the "high level" statements that are subject to examination at trial, and then prevent Plaintiffs from cross-examining them on any matters relevant to those statements that may bear on disputed issues or their bias and credibility. *Life Spine, Inc. v. Aegis Spine, Inc.*, 2023 WL 7919579, at *2 (N.D. Ill. Nov. 16, 2023) ("If [a party] wants to introduce evidence about [a topic] . . . it cannot pick and choose which evidence about [that topic] may be offered at trial.").

---

[6] To cite just a few more examples of the relevant subjects that Plaintiffs have a right to inquire into, Hendrick Motorsports and Team Penske are paid more than other Cup Series teams based on the combination of a historical revenue allocation formula and the fact that Hendrick Motorsports is allowed to have four chartered cars—as opposed to the typical three—which gives them a better cost structure than other teams. Dkt. No. 52-19, 2025 Charter Agreement at 64–67 (describing charter compensation structure). These facts are highly relevant to their testimony about the charter system and why they accepted the final terms offered by NASCAR for the 2025 Charter Agreement. Further, one of the reasons there is no cost cap for Cup Series racing teams is because Hendrick and Penske prefer not to have one for their own competitive advantage, as NASCAR senior executive Scott Prime testified at his deposition. All these subjects are highly relevant to the substance of the testimony they will present on behalf of NASCAR as well as their bias in favor of Mr. France and NASCAR for agreeing to give them these special preferences.

8

### III. Mr. Hendrick and Mr. Penske's confidentiality concerns cannot negate Plaintiffs' right to fully cross-examine them

Finally, the confidentiality concerns that Mr. Hendrick and Mr. Penske raise in their Motion cannot trump Plaintiffs' right to cross-examine NASCAR's trial witnesses. As this Court has repeatedly stated, this will be a public trial consistent with the First Amendment. *See, e.g.*, Dkt. No. 194 at 1 n.1; ("The Parties are again reminded that even though it has broadly permitted filings under seal, once the Court uses any of that 'confidential' information in discussing the merits (as it will likely need to do in ruling on the pending motion for a Preliminary Injunction and anticipated Motions for Summary Judgment) or the information is presented at trial, then it will become part of the public record, with the attendant consequences to all concerned."); Dkt. No. 206 Aug. 28, 2025 Hr'g Tr. at 76:18–20 (Judge Bell: "That's another thing people ought to think about when they go to trial. This is an open and public trial."). If Mr. Hedrick and Mr. Penske have any proper basis for filing a motion to seal, they may do so, but they may not deprive Plaintiffs of their rights to full cross-examination.

Indeed, Mr. Hendrick and Mr. Penske have little to complain about their having to testify in open court when they have **voluntarily agreed** to testify at trial—after repeatedly denying to Plaintiffs' counsel that they would do so, *see supra* pp. 2–3—upon reaching a personal agreement "in view of their decades-long relationship with Mr. France." Mot. at 3. Having voluntarily agreed to testify at NASCAR's request, Mr. Hendrick and Mr. Penske cannot selectively decide only to provide "high-level" testimony at trial, decided in consultation with NASCAR, and then claim that confidentiality concerns block Plaintiffs from conducting relevant cross-examination.

As noted, information on the finances of Hendrick Motorsports and Team Penske is directly relevant to their testimony about the economics of the charter system and why they decided to accept NASCAR's final terms for the 2025 Charter Agreement. NASCAR, at bottom, is seeking

9

to call these two third-party team witnesses who (according to their declarations) will testify that the 2025 Charter Agreement was a fair deal for them, *see* Dkt. No. 235-3, Hendrick Decl. at 3, Dkt. No. 235-7, Penske Decl. at 2, while Mr. Hendrick and Mr. Penske seek an order to prevent Plaintiffs from conducting effective cross-examination to show their actual economic conditions indicate that the charter terms did not give them an opportunity to earn a reasonable profit and that they are motivated to testify otherwise by the special considerations, like having the ability to own four charter teams, that Mr. France and NASCAR have granted them.[7]

Finally, Mr. Hendrick and Mr. Penske's references (Mot. at 7–8) to the Court's order on NASCAR's motion to compel the production of documents in response to its subpoena to the non-party teams are irrelevant. The circumstances have changed drastically since the Court ordered that the non-party teams only needed to submit anonymized and aggregated financial information in response to NASCAR's Rule 45 subpoenas. At that time, Mr. Hendrick and Mr. Penske were mere third-party bystanders who were not voluntarily agreeing to testify, at NASCAR's behest, at trial. Having made that voluntary decision to aid Mr. France and NASCAR, they have no basis to resist the scope of cross-examination and inquiry that all trial witnesses must face.

## **CONCLUSION**

For all these reasons, the Motion should be denied.

---

[7] Neither *Insulate Am. v. Masco Corp.*, 227 F.R.D. 427 (W.D.N.C. 2005) nor *In re Subpoena Duces Tecum Served on Duke Energy Corp.*, 2005 WL 2674938 (W.D.N.C. Oct. 18, 2005) (*see* Mot. at 6–7) support Mr. Hendrick's and Mr. Penske's confidentiality-based arguments as both cases involved disputes over the production of documents by third parties during the discovery process —not witnesses who have voluntarily agreed to testify at trial.

Dated: November 10, 2025             Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler*
Neha Vyas*
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
nvyas@winston.com

E. Danielle T. Williams (N.C. Bar No. 23283)
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer E. Parsigian*
Michael Toomey*
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com
Matthew R. DalSanto*
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

Josh Hafenbrack*
Benjamin L. Rudofsky*
**WINSTON & STRAWN LLP**
1901 L Street NW

11

Washington D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com
brudofsky@winston.com

Benjamin S. Gordon*
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
bgordon@winston.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc.*

**CERTIFICATE OF COMPLIANCE**

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

*Counsel for Plaintiffs 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFFS' RESPONSE TO JOINT MOTION FOR A PROTECTIVE ORDER FILED BY HENDRICK MOTORSPORTS, LLC, PENSKE RACING SOUTH, INC., RICK HENDRICK, ROGER PENSKE, AND HMS HOLDINGS, LLC (DKT. NO. 414)** was served via email on the following counsel of record:

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Christopher S. Yates
Ashley M. Bauer
Natalie W. Kaliss
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com
ashley.bauer@lw.com
natalie.kaliss@lw.com

Robert B. McNary
**LATHAM & WATKINS LLP**
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
rob.mcnary@lw.com

Adam Ross
Richard B. Fennell
Jennifer M. Houti
**JAMES, McELROY & DIEHL, P.A.**
525 North Tryon Street, Suite 700
Charlotte, NC 28202
aross@jmdlaw.com
rfennell@jmdlaw.com
jhouti@jmdlaw.com

Lawrence E. Buterman
Shayan Ahmad
Quinlan Cummings
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas New York, NY 10020
lawrence.buterman@lw.com
shayan.ahmad@lw.com
quinlan.cummings@lw.com

Anna M. Rathbun
Christina R. Gay
David L. Johnson
Christopher J. Brown
Margaret E. Cohen
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
christina.gay@lw.com
david.johnson@lw.com
chris.brown@lw.com
margaret.cohen@lw.com

Cary B. Davis
John R. Wester
**ROBINSON, BRADSHAW, & HINSON, P.A.**
600 South Tryon Street, Suite 2300
Charlotte, NC 28202
cdavis@robinsonbradshaw.com
jwester@robinsonbradshaw.com

*Counsel for Defendants and Non-Parties*

14

Case 3:24-cv-00886-KDB-SCR    Document 422    Filed 11/10/25    Page 15 of 16

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler