IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00886-KDB-SCR

| | |
|---|---|
| 2311 RACING LLC AND FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC; ET AL., <br><br> Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on numerous pretrial motions filed by both Plaintiffs and Defendants. The Court has carefully considered these motions, the Parties' briefs and exhibits and extensive oral argument on the motions from the Parties' counsel at a hearing on the motions on November 12, 2025. For the reasons discussed below, the Court resolves the motions as described at the hearing and/or summarized below.

### I. Daubert Motions

A. <u>Plaintiffs' Motion to Exclude the Testimony of Defendants' Expert Edwin Desser</u> (Doc. No. 219):

Plaintiffs have moved to exclude the testimony of Defendants' expert witness Edwin Desser, who Defendants intend to offer as an expert on sports broadcasting agreements and the valuation of those media rights. Also, his expert report contains an extensive narrative about NASCAR's history and his thoughts on their operations and leadership. Plaintiffs do not challenge Mr. Desser's sports media expertise. Instead, they argue that the valuation of NASCAR's media rights is not at issue and that his opinions about NASCAR are not based on his particular expertise.

1

To take the easier issue first, the Court agrees with Plaintiffs that Mr. Desser lacks the personal knowledge or expertise to narrate NASCAR's history or opine on their racing operations over the years. As discussed below, NASCAR will be permitted to present limited testimony about its history and other witnesses have more expertise to opine about NASCAR's "innovations and leadership," to the extent that testimony is relevant. Therefore, the Court will grant the motion with respect to Mr. Desser testifying about NASCAR's history and operations.

The second and more difficult issue relates to Mr. Desser's opinions on NASCAR's media rights, which he is qualified to express, but can only be presented to the jury to the extent they are relevant and not contrary to law. *Moore v. Equitrans, L.P.*, 27 F.4th 211, 223 (4th Cir. 2022) (finding that expert opinion that was "contrary to controlling law" was "irrelevant and unlikely to assist the jury"); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005), *as amended*, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005) ("Expert opinions that are contrary to law are inadmissible."). With respect to the governing law, there are a number of antitrust rules on which the Parties agree, but only in principle, and not as applied to Mr. Desser's testimony.

Specifically, there is no dispute that an antitrust defendant may not argue that "because of the special characteristics of a particular industry, monopolistic arrangements will better promote trade and commerce than competition." *Nat'l Soc. of Pro. Eng'rs v. United States*, 435 U.S. 679, 689–90 (1978) (rejecting defendant's argument that the challenged restraints "ultimately inure[] to the public benefit" and holding "that kind of argument … is not permitted by the Rule of Reason"). As a corollary, an antitrust defendant cannot argue that restraints in one market are justified because of benefits to participants in a different market (which Plaintiffs refer to as "cross-market balancing"). *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) (holding

2

that the freedom to compete "cannot be foreclosed with respect to one sector of the economy because certain private citizens or groups believe that such foreclosure might promote greater competition in a more important sector of the economy."); *Ohio v. NCAA*, 706 F. Supp. 3d 583, 596 (N.D.W. Va. 2023) ("As a matter of law, supposed benefits in the market for consuming college athletic events cannot counterbalance harms in the distinct, sport-specific markets for student-athlete labor.").

However, the Parties also acknowledge that a Sherman Act Section 2 defendant is permitted to prove its conduct was done for a legitimate business purpose. *See* Antitrust Law: An Analysis of Antitrust Principles and Their Application - Areeda and Hovenkamp, ¶ 1504 ("In applying the rule of reason, therefore, antitrust tribunals always consider defensive claims that an alleged restraint serves legitimate objectives - so-called redeeming virtues," but noting "the main problem lies in deciding which exculpatory claims are legitimate."); *Imaging Ctr., Inc. v. W. Maryland Health Sys., Inc.*, 158 F. App'x 413, 420 (4th Cir. 2005) (considering range of procompetitive benefits for "exclusive arrangements" including "'control of quality, control of cost, provision of services, ensuring the availability of services 24/7, 365 days a year, to ensure that the practitioners are highly qualified, and to minimize the disruption of services'").

Accordingly, the question before the Court with respect to Mr. Desser's "media rights" testimony is whether it falls into the prohibited "the restraints are ultimately better for everyone" bucket or the permitted "legitimate business purpose" bucket. Defendants argue that an "increase in media rights payments" provides a direct benefit to the racing Teams (and thus is procompetitive) so that any challenged restraint that increases media payments has a legitimate business objective. However, the facts show otherwise. The 2025 Charter Agreements do not give the Teams a direct share of NASCAR's broadcast revenue (in fact, NASCAR bargained to avoid

3

doing so); rather, the payments that NASCAR receives from its broadcast partners are most accurately viewed as one among several revenue streams that NASCAR receives (albeit a very significant one) and from which it then decides, as it sees fit, how much to pay the Teams, racetracks, etc. – along with how much profit to keep. Therefore, any increase in media rights payments provides only an indirect benefit to Chartered teams (and, of course, the benefits to non-Chartered teams from the prize money NASCAR decides to pay is even more attenuated).

Understanding the "increase in media rights" in this context, the Court concludes that Defendants' argument that an increase in media payments is "procompetitive" or a "legitimate business purpose" is really just an argument that all the industry participants are better off (either directly (NASCAR) or indirectly (the rest of the industry))[1] as a result of the various competitive restraints being challenged. As explained above, this argument is foreclosed by *Professional Engineers*. Therefore, Mr. Desser is not permitted to testify (nor are Defendants permitted to argue) that increasing media payments to NASCAR is itself a procompetitive justification for the conduct in dispute. However, Mr. Desser (or other witnesses) may – if otherwise qualified to do so – offer testimony that a particular alleged restraint is procompetitive. For example, Defendants have claimed that the Next Gen car requirements improve the quality of the racing product, lower costs, etc. Those are potential procompetitive justifications well within the ambit of a permissible defense to Section 2 liability.

While this ruling addresses whether Mr. Desser's proposed testimony regarding increasing the value of media rights payments may be presented as a liability defense, it does not resolve the question of whether the indirect benefit to Plaintiffs and other racing teams from an increase in

---

[1] Of course, even this indirect benefit is only a potential benefit, since it depends upon how much of the broadcast revenue NASCAR is willing to pay to the Teams, racetracks, etc.

broadcast revenues may be considered as a defense on the question of damages (i.e., there could arguably be less money in the "but..for" world to pay the teams). The Parties have not cited to the Court any authority on this perhaps unusual question and the Court has found none. Therefore, if Defendants want to present testimony relating to the valuation of NASCAR's media rights only for the purpose of defending Plaintiffs' damages claim (together with a clear limiting instruction explaining that it may not be considered for liability) then the Court will consider that proposed testimony at trial.

    B.    <u>Plaintiffs' Motion to Exclude the Proposed Expert Testimony of Defendants' Witness Stephen O'Donnell</u> (Doc. No. 232):

Plaintiffs seek to exclude the expert witness testimony of NASCAR executive employee Stephen O'Donnell. The Court will permit Mr. O'Donnell to testify in rebuttal to Plaintiffs' expert Mr. Frost (and to the extent he has other relevant testimony), but he must testify as a lay witness rather than being qualified as an expert.

    C.    <u>Plaintiffs' Motion to Partially Exclude the Testimony of Defendants' Expert Paul K. Meyer</u> (Doc. No. 233):

Plaintiffs' Motion to partially exclude the testimony of Defendants' expert witness Paul K. Meyer is granted in part and denied in part. Mr. Meyer is not permitted to testify regarding his financial analysis of Liberty Media (Formula 1) based on their non-public payment formula for racing teams. Otherwise, Plaintiffs' motion is denied. Plaintiffs' critique of Mr. Meyer's testimony goes to the weight rather than the admissibility of his testimony and may be explored on cross-examination.

    D.    <u>Defendants' Motion to Exclude the Expert Report and Testimony of Timothy Frost</u> (Doc. Nos. 237, 238, 267, 286)

Defendants' Motion to exclude the testimony of Plaintiffs' expert witness Timothy Frost is denied. Defendants' critique of Mr. Frost's testimony goes to the weight rather than the admissibility of his testimony and may be explored on cross-examination.

E. NASCAR's Motion to Exclude the Expert Report and Testimony of Dr. Daniel Rascher (Doc. Nos. 239, 240)

Defendants' Motion to exclude the testimony of Plaintiffs' expert witness Dr. Daniel Rascher is denied. Defendants' critique of Dr. Rascher's testimony goes to the weight rather than the admissibility of his testimony and may be explored on cross-examination.

F. NASCAR's Motion to Exclude the Expert Report and Testimony of Dr. Edward Snyder (Doc. Nos. 242, 243)

Defendants' Motion to exclude the testimony of Plaintiffs' expert witness Dr. Edward Snyder is denied. Defendants' critique of Dr. Snyder's testimony goes to the weight rather than the admissibility of his testimony and may be explored on cross-examination.

## II. Plaintiffs' Motions in Limine

A. To Exclude Legally Impermissible Evidence, Argument, and Testimony (Doc. No. 314):

Plaintiffs' first motion in limine raises the same issues discussed above with respect to Mr. Desser's testimony; that is, do Defendants' experts Mr. Desser and Dr. Murphy improperly opine on *industry* benefits resulting from competitive restraints in the relevant market (or on benefits created in a different market) or is their testimony properly directed to the procompetitive business justifications for NASCAR's conduct in the relevant market. Because specific testimony (other than the issues related to broadcast revenues ruled on above) is not before the Court, the Court will not definitively rule on what testimony may or may not be presented with respect to these issues beyond stating that the Court will apply the principles and ruling as to Mr. Desser to that testimony. The Court will exclude testimony that particular instances of NASCAR's conduct are

6

Case 3:24-cv-00886-KDB-SCR    Document 434    Filed 11/14/25    Page 6 of 12

procompetitive simply because they improve overall industry revenues, but permit testimony directed at the procompetitive business justifications for that conduct within the relevant market. Further, the Court will separately consider the alleged relevance of any proffered testimony on the question of damages.

    B.    <u>To Exclude Irrelevant and Inflammatory Evidence</u> (Doc. No. 321):

        1.    <u>Non-Party Owner Finances</u>

No party is permitted to present or elicit testimony or make arguments concerning the financial condition and wealth of the various owners of the Parties, including, but not limited to Mr. France, Mr. Jordan, Mr. Hamlin and Mr. Jenkins.

        2.    <u>Litigation Funding</u>

No party is permitted to present or elicit testimony or make arguments concerning the source of the litigation funding of any other party.

        3.    <u>Testimony of Eugene Mason</u>

If Eugene Mason, an employee of an entity related to Michael Jordan (but not 2311 Racing) is called to testify then the Court will address Plaintiffs' motion (while noting that Defendants will not be permitted to call Mr. Mason to testify if the Court believes that the primary purpose of his testimony is to present impeachment evidence rather than present affirmative testimony available from other witnesses).

        4.    <u>Front Row Motorsports' Charitable Donations</u>

Front Row Motorsports' financial condition, expenses and profits are relevant topics in this litigation and Defendants may ask otherwise permissible questions related to whether Front Row Motorsports has fully accounted for sponsorships and other expenses or revenues of the business

7

Case 3:24-cv-00886-KDB-SCR    Document 434    Filed 11/14/25    Page 7 of 12

in determining its profit or loss. However, Defendants may not present or elicit testimony or make arguments concerning the propriety of such accounting under the tax law.

C. <u>To Exclude Inflammatory Documents</u> (Doc. No. 324):

Plaintiffs seek to exclude certain documents and/or testimony that they contend is inflammatory and should be excluded under Federal Rule of Evidence 403. The Court resolves those challenges as follows:

1. Doc. No. 196-19, 23XI_0251839) – Denied
2. Doc. No. 196-31, 23XI_0250378 – Denied
3. Doc. No. 196-42, 23XI_0250392 – Granted
4. Doc. No. 196-37, 23XI_0025867 – Denied
5. Doc. No. 196-38, 23XI_0306956 – Granted
6. Doc. No. 196-54, 23XI_0250376 – Denied

D. <u>To Exclude Irrelevant and Untimely Historical Evidence</u> (Doc. No. 325):

Plaintiffs seek to preclude NASCAR from presenting an extended narrative of the long history of NASCAR together with numerous family photos, arguing both the lack of relevance and the fact that NASCAR limited discovery in this action to the period after 2014 (although a few documents prior to that date were produced). As stated in the pretrial hearing, the Court will permit NASCAR to very briefly describe its history through testimony in the same manner that an individual has a limited opportunity to "introduce" himself to the jury. In light of NASCAR's resistance to discovery prior to 2014 and to avoid a mini-trial over the historical narrative, the Court intends to police this testimony closely. If NASCAR wants to use any pictures to illustrate this testimony (rather than present a family album), they must be approved in advance by the Court.

E. <u>To Exclude References to Charters Being "Free"</u> (Doc. No. 327):

Plaintiffs ask the Court to preclude Defendants from referencing or arguing that the Charters were given "free" to the Teams. While the Court has explained that it questions the

8

Case 3:24-cv-00886-KDB-SCR   Document 434   Filed 11/14/25   Page 8 of 12

in determining its profit or loss. However, Defendants may not present or elicit testimony or make arguments concerning the propriety of such accounting under the tax law.

C. <u>To Exclude Inflammatory Documents</u> (Doc. No. 324):

Plaintiffs seek to exclude certain documents and/or testimony that they contend is inflammatory and should be excluded under Federal Rule of Evidence 403. The Court resolves those challenges as follows:

1. Doc. No. 196-19, 23XI_0251839) – Denied
2. Doc. No. 196-31, 23XI_0250378 – Denied
3. Doc. No. 196-42, 23XI_0250392 – Granted
4. Doc. No. 196-37, 23XI_0025867 – Denied
5. Doc. No. 196-38, 23XI_0306956 – Granted
6. Doc. No. 196-54, 23XI_0250376 – Denied

D. <u>To Exclude Irrelevant and Untimely Historical Evidence</u> (Doc. No. 325):

Plaintiffs seek to preclude NASCAR from presenting an extended narrative of the long history of NASCAR together with numerous family photos, arguing both the lack of relevance and the fact that NASCAR limited discovery in this action to the period after 2014 (although a few documents prior to that date were produced). As stated in the pretrial hearing, the Court will permit NASCAR to very briefly describe its history through testimony in the same manner that an individual has a limited opportunity to "introduce" himself to the jury. In light of NASCAR's resistance to discovery prior to 2014 and to avoid a mini-trial over the historical narrative, the Court intends to police this testimony closely. If NASCAR wants to use any pictures to illustrate this testimony (rather than present a family album), they must be approved in advance by the Court.

E. <u>To Exclude References to Charters Being "Free"</u> (Doc. No. 327):

Plaintiffs ask the Court to preclude Defendants from referencing or arguing that the Charters were given "free" to the Teams. While the Court has explained that it questions the

accuracy of that characterization (because the Teams took on significant obligations in connection with the Charters), it will not prevent Defendants from making the argument. The motion is denied.

F. To Exclude Arguments That Plaintiffs and Their Experts Have Not Contended That the Terms of the 2025 Charter Agreement Were Below Competitive Market Terms (Doc. No. 328):

The Parties disagree on whether Plaintiffs' experts contend that the terms of the 2025 Charter Agreement were below competitive market terms. The Court will not decide that dispute here; rather, Plaintiffs' motion will be denied, with the caveat that the Court will not hesitate to address misstatements of the facts or the law by counsel directly with the jury.

G. To Exclude Irrelevant and Inflammatory Attacks on Plaintiffs and Their Counsel (Doc. No. 330):

Plaintiffs ask the Court to order Defendants not to attack Plaintiffs' counsel or their witnesses for "purportedly manufacturing evidence" in connection with the Motion for Preliminary Injunction. This motion is granted with respect to any argument relating to the conduct of Plaintiffs' counsel. With respect to Plaintiffs' witnesses, the Court will hear any request to impeach a witness under FRE 608 relating to these issues at sidebar or otherwise outside the presence of the jury in advance of the questions being asked. Regarding the presentation of evidence that the RTA was represented by counsel and/or threatened litigation during the negotiations of the 2025 Charter Agreement, Defendants may ask about those unremarkable facts, without mentioning the name or initials of the firm or lawyers who represented the RTA (and any document used must be accordingly redacted).

H. To Exclude References to Treble Damages or Equitable Remedies (Doc. No. 332):

The Parties have each agreed not to present testimony or argument referring to the possibility of treble damages or specific equitable remedies, so the Court will grant the motion to that extent. However, this ruling is not intended to preclude Plaintiffs from testifying as to the

general reasons they filed the lawsuit (for example, in response to arguments from Defendants that they are motivated by greed).

I. <u>To Exclude Allegations of Spoliation and "Obstruction"</u> (Doc. No. 334):

At the pretrial hearing, Plaintiffs acknowledged that they had not sought a finding of "spoliation" from the Court, thereby effectively foreclosing any effort to present such an issue to the jury. Therefore, this motion will be granted. To the extent Defendants believe it is relevant and appropriate to ask Mr. Polk or other witnesses questions about "privilege" notations on documents or suggesting privileged conversations, then Defendants should first seek permission to raise those questions in a sidebar with the Court. If the Court allows such questioning, it will include a limiting instruction, explaining to the jury that privileged communications are permitted, there is no contention that any document was improperly withheld from Defendants, etc.

J. <u>To Exclude Argument That Plaintiffs' Agreement to or Purchase of a Charter Agreement is a Defense to Their Antitrust Claims</u> (Doc. No. 335):

Defendants have agreed not to argue that Plaintiffs' agreement to or purchase of a Charter Agreement is a defense to their antitrust claims; so, this motion is granted. However, this ruling does not preclude Defendants from questioning Plaintiffs about their purchase of the Stewart-Haas Charters.

### III. Defendants' Motions in Limine

A. <u>To Exclude Evidence, Argument and Testimony that Plaintiffs Represent or are Pursuing this Lawsuit for the Benefit of Non-Parties</u> (Doc. No. 301):

As discussed above, Plaintiffs will be permitted to testify why they brought the lawsuit, without making any representation that other Teams will benefit from any money damages awarded by the jury. Therefore, this motion is denied.

10

Case 3:24-cv-00886-KDB-SCR    Document 434    Filed 11/14/25    Page 10 of 12

B.  To Exclude Hearsay or Speculation Regarding Non-Party Teams Finances and Motivations for Signing the 2025 Charter Agreements (Doc. No. 303):

This motion is granted to the extent that hearsay testimony that is not supported by an appropriate exception will be excluded. By this ruling, the Court does not exclude or express an opinion as to the admissibility of any specific document or proposed testimony.

C.  To Exclude Evidence, Argument and Testimony that the Price Terms of the 2025 Charters would have been More Favorable to Plaintiffs in the But-For World (Doc. No. 305):

This motion is denied, without prejudice.

D.  To Exclude Evidence, Argument and Testimony Regarding Alleged Anticompetitive Conduct which Continues to Exist in Plaintiffs But-For World (Doc. No. 308):

The Court finds that the evidence sought to be excluded is relevant. The motion is, accordingly, denied.

E.  To Exclude Evidence, Argument and Testimony Regarding Contractual Release Provisions (Doc. No. 311):

Plaintiffs have agreed not to argue that the contractual release provisions in the Charter Agreements are unlawful so the motion will be granted. However, Plaintiffs may reference the contractual release provision in explaining why they did not sign the 2025 Charter Agreements.

F.  To Exclude Evidence, Argument and Testimony Containing Ad Hominem Attacks and Other Inflammatory Language (Doc. No. 316):

Defendants seek to exclude certain documents and/or testimony that they contend is inflammatory and should be excluded under Federal Rule of Evidence 403. The Court resolves the remaining challenges under this motion as follows:

1. Doc. No. 318-4 – Denied
2. Doc. No. 318, p. 6 – Granted

G. <u>To Exclude Evidence, Argument and Testimony Regarding the Court's Preliminary Injunction Order</u> (Doc. No. 319)

The Parties have agreed not to present testimony or argument related to the Court's Preliminary Injunction Order. To the extent Plaintiffs or their experts need to testify concerning alleged damages with respect to not being paid as Chartered teams during the 2025 Cup Series season, they should simply state that during a portion of the 2025 season they were not paid as Chartered teams without further explanation.

H. <u>To Exclude Certain Evidence, Argument and Testimony Regarding Tax Distributions</u> (Doc. No. 320):

The Court finds that the distributions NASCAR made to Mr. France and/or others is relevant evidence. Therefore, this motion is denied.

## IV. Deposition Designation Objections

To the extent that either of the Parties intend to introduce portions of the deposition of Jordan Bazant at trial, the Parties' respective objections are each overruled.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 14, 2025

*/s/ Kenneth D. Bell*

Kenneth D. Bell
United States District Judge