# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

|  |  |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. | No. 3:24-cv-886-KDB-SCR |

## PARTIES' PROPOSED VERDICT FORMS

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. | No. 3:24-cv-886-KDB-SCR |

## PLAINTIFFS' PROPOSED VERDICT FORM

*When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout.* **_Your answer to each question must be unanimous._**

\*       \*       \*

We, the jury, unanimously find as follows on the questions submitted to us, and we return them as our verdict in this case:

## PART I:  23XI AND FRONT ROW'S MONOPOLIZATION CLAIM

### Question 1:

Did 23XI and Front Row prove by a preponderance of the evidence that NASCAR willfully maintained its monopoly power by engaging in anticompetitive conduct?

YES_____NO_____

*If you answered "YES," please proceed to* **Question 2.**

*If you answered "NO," please proceed to* **PART III (the last page).**

### Question 2:

*Answer this question only if you answered "YES" to Question 1.*

Did 23XI and Front Row prove by a preponderance of the evidence that James France actively and knowingly directed, controlled, and/or ratified the conduct that you answered "YES" to in Question 1?

YES_____NO_____

*Please proceed to* **Question 3(a).**

**Question 3(a):**

*Answer this question only if you answered "YES" to Question 1.*

Did 23XI prove by a preponderance of the evidence that it was injured as a result of NASCAR's monopolization?

YES_____          NO_____

*Please proceed to **Question 3(b).***

**Question 3(b):**

*Answer this question only if you answered "YES" to Question 1.*

Did Front Row prove by a preponderance of the evidence that it was injured as a result of NASCAR's monopolization?

YES_____          NO_____

*If you answered "YES" to Questions 3(a) and/or 3(b), please proceed to PART II: 23XI AND FRONT ROW'S DAMAGES.*

*If you answered "NO" to both Questions 3(a) and 3(b), please proceed to PART III (the last page).*

## PART II:  23XI AND FRONT ROW'S DAMAGES

**Damages for 23XI**

*Answer this Question 4 only if you answered "YES" for **Question 3(a)** above.*

## Question 4:

What amount of damages did 23XI prove by a preponderance of the evidence that it suffered as a result of conduct that you found violates antitrust law?

$_____

*Write out the amount in words:* _____

*Please proceed to **Damages for Front Row.***

3

**Damages for Front Row**

*Answer this Question 5 only if you answered "YES" to **Question 3(b)** above.*

<u>**Question 5:**</u>

What amount of damages did Front Row prove by a preponderance of the evidence that it suffered as a result of conduct that you found violates antitrust law?

$_____

*Write out the amount in words:* _____

*Please proceed to **PART III.***

# **PART III**

Your deliberations are complete.  Please sign the verdict form below.

Signed:

_____          _____
          Jury Foreperson                                         Date

# NASCAR'S OBJECTION TO PLAINTIFFS' PROPOSED VERDICT FORM

Plaintiffs' proposed verdict form suffers from two key defects. It should be rejected in favor of NASCAR's proposal.

*First*, Questions 1, 3(a), and 3(b)'s references to "monopolization" or "monopoly power" (along with Part I's title) are imprecise and misleading. Plaintiffs' complaint pleads a "monopsony" and that NASCAR engaged in "monopsonization" of the relevant market. Doc. 107 ¶¶ 138, 139, 144, 145, 146, 147, 148, 149, 151. In short, it is undisputed that this is a monopsony case.

A monopsony is a well-established legal category, and bringing a monopsony case comes with particular requirements. For instance, an entity with "monopsony power" seeks to "'restrict its input purchases below the competitive level,' thus 'reduc[ing] the unit price for the remaining input[s] it purchases." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320-21 (2007) (citation omitted) (alterations in original). The Court recognized as much in its summary judgment order on relevant market and monopsony power. It noted that "the exercise of 'monopoly' power by a buyer in an 'input' market [is] 'monopsony' power." Doc. 374 at 1 n.1. It contrasted the "monopsony power of NASCAR" for Plaintiffs' claims with the "monopoly power of Plaintiffs" for NASCAR's counterclaim. *Id.* at 7 n.3. And it concluded that NASCAR "exercises *monopsony* power in the relevant market." *Id.* at 11 (emphasis added); *see also id.* at 1, 5, 10, 12 & n.7 (similar).

In addition, a monopsony exists only in "unusual" or "exceptional" circumstances. *See Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1135 (10th Cir. 2002) (describing "unusual circumstance of an effective monopsony") (citation omitted); *Dyer v. Conoco, Inc.*, 49 F.3d 727, 1995 WL 103233, at *5 n.9 (5th Cir. 1995) (table) ("exceptional situation" for "monopsony" to "wield substantial power"); *cf. Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) (noting "danger in applying [market] factors mechanically in the context of monopsony"). Plaintiffs should not be permitted to conflate a monopoly (with which jurors are likely familiar) with a monopsony. Yet their prior submissions make clear that this is *precisely* what Plaintiffs are trying to do. Plaintiffs objected to using the term "monopsony" solely because while a "monopoly is commonly understood, 'monopsony' is an unfamiliar legal term and needlessly risks confusing the jury." Doc. 299 at 41; *see also* Doc. 298 at 20 n.10 (same). But accuracy is hardly confusing. Plaintiffs should be held to the case that they pled, and the jury should be trusted to assess that case.

1

Indeed, Plaintiffs could have framed their case as challenging a monopoly: they could have argued (1) that NASCAR is the only "seller" of Charter agreements or (2) that NASCAR is the only seller of premier stock-car races. But they instead chose to bring a monopsony case focused on NASCAR's status as a buyer of team services. In so doing, Plaintiffs sought to avoid cases rejecting markets drawn around a single motorsport, arguing those cases were inapposite because they focused on different markets. Doc. 265 at 22 n.14 (Plaintiffs' summary judgment opposition citing *Brookins v. IMCA*, 219 F.3d 849, 854 (8th Cir. 2000); *Kentucky Speedway, LLC v. NASCAR, Inc.*, 588 F.3d 908, 917 (6th Cir. 2009); *Race Tires Am., Inc. v. Hoosier Racing Tire. Corp.*, 614 F.3d 57, 76-77 (3d Cir. 2010)). Plaintiffs cannot now turn away from the consequences of that earlier strategic choice.

*Second*, Plaintiffs' form wholly omits any reference to the statute of limitations. That is a serious issue. The Sherman Act's statute of limitations provides that "[a]ny action to enforce any cause of action under [the Sherman Act] shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. The Supreme Court has made clear that a plaintiff can recover only for damages *caused* by a specific overt act within the limitations period. *Klehr v. A.O Smith Corp.*, 521 U.S. 179, 189 (1997) ("[T]he commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old over acts outside of the limitations period"). And the Supreme Court said in *Klehr* that "a plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Id.* at 190. The Fourth Circuit has also made clear that a cause of action "accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business," *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 114 F.4th 280, 286 (4th Cir. 2024) (citation omitted), and quoted *Klehr* on the impermissibility of bootstrapping, *id.* at 292. In short, the Sherman Act prevents Plaintiffs from recovering for any conduct prior to October 2, 2020 that caused injury to them and allows them to recover damages only for conduct *caused* by acts within the limitations period.

For that reason, it is critical that members of the jury think carefully about what conduct is anticompetitive and whether *that* conduct is time-barred or not. Defendants' proposal accomplishes that goal by clearly delineating the challenged conduct and then separately asking whether conduct that post-dates October 2, 2020 caused Plaintiffs any injury. Plaintiffs' proposal does not, thereby creating problems for determining the basis for the jury's verdict, including whether it relied in whole

2

or in part on time-barred conduct. Indeed, Plaintiffs' proposal completely glosses over this crucial safeguard for NASCAR, such that the jury never considers it.

Plaintiffs' reliance on *Duke Energy* does not supplant the clear law discussed above with respect to statute of limitations for a simple reason: *Duke Energy* did not address the statute of limitations. The Fourth Circuit's opinion contains no mention of the limitations period. *See generally Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337 (4th Cir. 2024). Nor do the appellate briefs. *See generally* Opening Brief, *Duke Energy*, 111 F.4th 337 (4th Cir. 2024) (No. 22-2168), 2023 WL 2570166; Response Brief (No. 22-2168), 2023 WL 3505485; Reply Brief (No. 22-2168), 2023 WL 4350562.

Instead, *Duke Energy* was focused solely on the "anticompetitive conduct" element under Section 2. 111 F.4th at 343. And *Duke Energy* held that "when a court is faced with allegations of a complex or atypical exclusionary campaign, the individual components of which do not fit neatly within pre-established categories, its application of such specific conduct tests would prove too rigid." *Id.* at 354. Yet that approach was confined to the "context of the allegations in th[at] case," which involved interrelated actions taken "simultaneously and to the same effect" to drive out a competitor. *Id.* at 354, 366 (emphasis omitted).

Plaintiffs' allegations here, by contrast, fall into a typical and well-defined category: refusals to deal in the form of exclusivity clauses. Indeed, the Fourth Circuit already recognized that typical categories apply in this very case. Plaintiffs argued on appeal that the Fourth Circuit should consider a so-called "course of conduct" under *Duke Energy*. Response Brief at 53-58, *2311 Racing LLC v. NASCAR*, 139 F.4th 404 (4th Cir. 2025) (No. 24-2245), 2025 WL 889040. But the Fourth Circuit rejected that approach and instead focused only on how there is "no prohibition" in the "antitrust laws that prohibits the disclaimer of antitrust claims by a general release." *2311 Racing LLC v. NASCAR*, 139 F.4th 404, 410 (4th Cir. 2025) (quoting *Va. Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262, 266 (4th Cir. 1971)). Plus, it is fundamental that "[t]wo wrong claims do not make one that is right," so Plaintiffs cannot "alchemize" these individual components "into a new form of antitrust liability." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009).

While the Court's summary judgment order found that NASCAR was "not entitled to judgment on Plaintiffs' claims based on the statute of limitations" because there "was at least one alleged anticompetitive act within the statute of limitations," Doc. 374 at 14, it also recognized that the statute of limitations has continuing

relevance for this case (especially with respect to damages), *id.* at 14 n.8. It remains necessary to delineate the challenged conduct, to ask the jury whether each piece of conduct is anticompetitive or not, and to consider whether that conduct occurred within the limitations period—because that establishes whether or not the conduct can be a basis for Plaintiffs' claimed damages. Plaintiffs' form fails to ask these questions, and therefore is lacking.

4

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. | No. 3:24-cv-886-KDB-SCR |

## NASCAR'S PROPOSED VERDICT FORM

*When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout.*  ***Your answer to each question must be unanimous.***

\*        \*        \*

We, the jury, unanimously find as follows on the questions submitted to us, and we return them as our verdict in this case:

## PART I:  23XI AND FRONT ROW'S MONOPSONIZATION CLAIM

### Question 1:

Did 23XI and Front Row prove that NASCAR willfully obtained or maintained monopsony power in the market for buying the services of premier stock-car racing teams in the United States by engaging in anticompetitive conduct?

YES_____          NO_____

*If you answered "YES," please proceed to* ***Question 2.***

*If you answered "NO," please proceed to* ***PART II.***

### Question 2:

*Answer this question only if you answered "YES" to Question 1.  Please answer "YES" or "NO" to each part.*

Which of the following conduct did 23XI and Front Row prove was anticompetitive?

(i)     NASCAR's acquisition of ARCA:

YES_____          NO_____

(ii)    NASCAR's acquisition of ISC:

YES_____          NO_____

1

(iii)    The exclusivity provisions in track sanction agreements:

YES_____          NO_____

(iv)    NASCAR's adoption of Next Gen car requirements:

YES_____          NO_____

(v)    The Goodwill provision (Section 6.6) of the Charter Agreements:

YES_____          NO_____

*Please proceed to **Question 3**.*

## Question 3:

*Answer this question only if you answered "YES" to at least one part of Question 2.*

Did 23XI and Front Row prove that James France actively and knowingly directed, controlled, and/or ratified the conduct that you answered "YES" to in Question 2?

YES_____          NO_____

*Please proceed to **Question 4**.*

## Question 4:

*Answer this question only if you answered "YES" to Question 1 and "YES" to at least one part of Question 2.*

Did 23XI prove that it suffered injury to its business or property that was materially caused by NASCAR's monopsonistic anticompetitive conduct?

YES_____          NO_____

*If you answered "YES," please proceed to **Question 5**.*

*If you answered "NO," please proceed to **Question 7**.*

2

**Question 5:**

*Answer this question only if you answered "YES" to Question 4.*

Did 23XI prove that its injury was caused by anticompetitive conduct that occurred after October 2, 2020 as opposed to anticompetitive conduct that occurred before October 2, 2020?

YES_____          NO_____

*If you answered "YES," Please proceed to **Question 6**.*

*If you answered "NO," Please proceed to **Question 7**.*

**Question 6:**

*Answer this question only if you answered "YES" to Question 5.*

What amount of damages did 23XI prove that it suffered as a result of conduct that you found violates antitrust law?

$_____

*Write out the amount in words: _____*

*Please proceed to **Question 7**.*

**Question 7:**

*Answer this question only if you answered "YES" to Question 1 and "YES" to at least one part of Question 2.*

Did Front Row prove that it suffered injury to its business or property that was materially caused by NASCAR's monopsonistic anticompetitive conduct?

YES_____          NO_____

*If you answered "YES," please proceed to **Question 8**.*

*If you answered "NO," please proceed to **PART II**.*

## Question 8:

*Answer this question only if you answered "YES" to Question 7.*

Did Front Row prove that its injury was caused by anticompetitive conduct that occurred after October 2, 2020 as opposed to anticompetitive conduct that occurred before October 2, 2020?

YES_____          NO_____

*If you answered "YES," please proceed to **Question 9**.*

*If you answered "NO," please proceed to **PART II**.*

## Question 9:

*Answer this question only if you answered "YES" to Question 8.*

What amount of damages did Front Row prove that it suffered as a result of conduct that you found violates antitrust law?

$_____

*Write out the amount in words:* _____

*Please proceed to **PART II**.*

## **PART II**

Your deliberations are complete.  Please sign the verdict form below.


Signed:


_____                    _____
         Jury Foreperson                                                            Date

5

## PLAINTIFFS' OBJECTION TO NASCAR'S PROPOSED VERDICT FORM

Plaintiffs object to NASCAR's proposed verdict form because it is overly complicated, repeatedly misapplies the elements of the Sherman Act, and is heavily biased toward NASCAR. Below, Plaintiffs list the specific objections to NASCAR's verdict form, on a question-by-question basis.

### Part I: 23XI and Front Row's Monopsonization Claim

**Question 1**: NASCAR's Question 1 is incorrect and prejudicial in several respects. First, Plaintiffs do not allege that NASCAR unlawfully *obtained* a monopoly, so including "obtained" in Question 1 would needlessly confuse the issues with an irrelevant question. Second, the jury only must find that NASCAR willfully maintained a monopoly—not that it did so in the specific relevant market for premier stock-car racing teams. *See, e.g.*, *Innovative Health LLC v. Biosense Webster, Inc.*, No. 8:19-cv-19984 JVS (KES), Dkt. No. 526, Special Verdict Form, at 2 (C.D. Cal. May 16, 2025) ("Did Innovative prove by a preponderance of the evidence that Biosense violated Section 2 of the Sherman Act by creating or maintaining a monopoly through anticompetitive practices?"); *PepsiCo*, 315 F.3d at 107; *Duke Energy*, 608 F. Supp. 3d at 314; *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 99 F. Supp. 3d 610, 624 (D. Md. 2015).

Additionally, Plaintiffs object to NASCAR's use of the word "monopsony"—as opposed to the far more common term "monopoly"—in the verdict form. Jury instructions and verdict forms should be written in plain English in a manner that is easily understood by a lay jury.[1] Whereas monopoly is commonly understood and the term used by Congress in Section 2 of the Sherman Act, "monopsony" is an unfamiliar legal term that needlessly risks confusing the jury. And there is no substantive reason to use the obscure term over the familiar one, because a monopsony is just a buyer-side monopoly and the same elements and substantive legal analysis applies regardless of the label. *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320 (2007) ("[A] monopsony is to the buy side of the market what a monopoly is to the sell side and is sometimes colloquially called a 'buyer's monopoly.'").

---

[1] *See* 1 Fed. Jury Prac. & Instr. Ch. 7 Appendix (6th ed.) (jury instructions are easier to understand when "[i]t substitutes plain English for unfamiliar words whenever possible."); Form and Content of Instructions, 9C Fed. Prac. & Proc. Civ. § 2556 (3d ed.) (Wright & Miller) ("It is axiomatic that the trial court should charge the jury in plain language. It should not use technical or obscure legal phrases if the legal rule can be stated in less formal words.").

1

**Question 2**: Question 2 misapplies controlling law and should be rejected in its entirety. Under *Duke Energy* and many other precedents, in a Section 2 case the jury must consider whether NASCAR's conduct was anticompetitive when considered as a whole—not whether individual acts, considered in isolation, were anticompetitive. *See* Dkt. No. 374 at 13 ("a firm's exclusionary efforts must be considered in their totality") (citing *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 353-55 (4th Cir. 2024)). NASCAR's Question 2 would require the jury to slice and dice NASCAR's conduct, and determine whether its restraints were individually anticompetitive judged in isolation, in precisely the manner that is prohibited by *Duke Energy*. *Duke Energy*, 111 F.4th at 355 ("[E]xclusionary conduct alleged under § 2 must be considered holistically" and "must always be analyzed 'as a whole'") (quoting P. Areeda & H. Hovenkamp, Antitrust Law ¶ 310c7 (4th & 5th eds. 2024)); *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) ("The relevant inquiry is the anticompetitive effect of 3M's exclusionary practices considered together."); *id.* at 166 ("3M's actions, taken as a whole, were found to violate § 2, thus making the disaggregation that 3M speaks of to be unnecessary, if not impossible.").

Even if NASCAR's proposed verdict form question asking the jury about individual anticompetitive acts was proper (and it is not), NASCAR's list is misleading and prejudicial. The acquisitions of ARCA and ISC should not be included since Plaintiffs do not claim damages from those acquisitions; they are, instead, examples of pre-limitations exclusionary conduct that are relevant to the jury's determination of whether NASCAR's conduct, as a whole, was exclusionary and contributed to the maintenance of its monopoly during the limitations period. And with respect to the Next Gen program, Plaintiffs are not challenging "NASCAR's adoption of Next Gen car requirements," as NASCAR's verdict form incorrectly states—rather, Plaintiffs are challenging the specific exclusive-dealing restriction (first imposed in 2022) that prevents teams from using the Next Gen 7 cars in any rival series.

**Questions 4 and 7**: NASCAR's Questions 4 and 7 on injury are misleading and prejudicial in several respects.

*First*, courts routinely provide verdict forms that simply ask whether the plaintiffs proved injury, as Plaintiffs' Questions 3(a) and 3(b) do. *See, e.g.*, *In re Google Play Store Antitrust Litig.*, No. 3:31-md-02981-JD, Dkt. No. 861, Verdict Form, Questions 5, 9, 11 (no materiality requirement for causation in Section 1 and 2 claims); *Regeneron Pharms., Inc. v. Amgen Inc.*, No. 1:22-cv-00697-JLH, Dkt. No. 484, Jury Verdict Form, Special Interrogatory 3 (no materiality requirement for

causation). NASCAR's Questions 4 and 7 depart from this typical practice by inserting the word "materially," which is unnecessary.

**Second**, Plaintiffs allege harm from NASCAR's monopoly as a whole, not by the discrete acts of "anticompetitive conduct" that NASCAR engaged in to maintain that monopoly. *E.g., Duke Energy Carolinas*, 111 F.4th at 355; *LePage's Inc. v. 3M*, 324 F.3d at 162; *see also* Dkt. No. 374 at 13.

**Third**, NASCAR's description that the jury must find "*monopsonistic* anticompetitive conduct" (emphasis added) has no basis in the law. The question is simply whether NASCAR engaged in anticompetitive conduct to maintain its monopoly. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007) ("Anticompetitive conduct may take a variety of forms, but it is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits."); *Fed. Trade Comm'n v. Meta Platforms, Inc.*, 775 F. Supp. 3d 16, 55 (D.D.C. 2024) ("[A]nticompetitive conduct by a monopolist is simply conduct that maintains or expands its monopoly other than through competition on the merits."); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 274 (2d Cir. 1979) (same).

**Questions 5 and 8**: Questions 5 and 8 wrongly ask the jury to decide whether the statute of limitations bars Plaintiffs' Section 2 claim, based on the legally incorrect premise that Plaintiff must prove injury tied to discrete "anticompetitive conduct" within the limitations period. NASCAR's statute of limitations questions are foreclosed by the Court's summary judgment decision resolving that issue and a plain error of law under controlling caselaw in any event.

**First,** the Court already resolved NASCAR's statute of limitations defense at the summary judgment stage and held that NASCAR has "conceded that there was at least one alleged anticompetitive act within the statute of limitations," Dkt. No. 374 at 14, which is all that the law requires, *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 780 F. Supp. 322, 328 (M.D.N.C. 1991). There is therefore no question for the jury to resolve with respect to the statute of limitations. NASCAR's proposed verdict question is thus confusing, prejudicial, and contrary to the law of the case. *Arizona v. California*, 460 U.S. 605, 618 (1983) (The law-of-the-case doctrine recognizes that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

**Second**, NASCAR's instruction is contrary to the law in any event. Plaintiffs are direct sellers and thus the relevant "consumers" in the input market. *See* Dkt. No.

374 at 14-15. Accordingly, Plaintiffs suffer injury and accrue a claim when they receive below-market compensation from NASCAR as a result of NASCAR's unlawfully maintained monopsony, not when the "anticompetitive conduct" used by NASCAR to insulate its monopsony occurred. *CSX Transp., Inc. v. Norfolk S. Ry. Co.,* 114 F.4th 280, 290-91 (4th Cir. 2024) ("[U]nlike an excluded rival who is injured as soon as the exclusion begins, a customer is not injured until a sale occurs, and it suffers a new and accumulating injury each time a subsequent supracompetitive price is paid."); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979) ("Although the business of a monopolist's rival may be injured at the time the anticompetitive conduct occurs, a purchaser, by contrast, is not harmed until the monopolist actually exercises its illicit power to extract an excessive price."). NASCAR's verdict form Questions 5 and 8 are flatly contrary to and foreclosed by *CSX* and *Berkey Photo*.

*Third*, NASCAR's Questions 5 and 8 are also wrong because they would require the jury to tie Plaintiffs' injury to a specific anticompetitive act or acts used by NASCAR to maintain its monopsony. That is not correct: Plaintiffs' harm is caused by NASCAR's unlawfully maintained monopsony as a whole, which NASCAR exercised to pay Plaintiffs below-market compensation; Plaintiffs are not required to disaggregate their harm based on discrete exclusionary acts. *Cont'l Ore. Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("[T]he duty of the jury was to look at the whole picture and not merely at the individual figures in it."); *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) ("The relevant inquiry is the anticompetitive effect of 3M's exclusionary practices considered together."); *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 813 (3d Cir. 1984) (similar and noting: "[I]t would be extremely difficult, if not impossible, to segregate and attribute a fixed amount of damages to any one act"); P. Areeda & H. Hovenkamp, Antitrust Law ¶ 310c7 (4th & 5th eds. 2024) ("The fact finder should be permitted to consider the entire sum of unlawful exclusionary practices and their impact. Certainly for purposes of measuring damages such aggregation would be in order.").

Dated: November 18, 2025          Respectfully submitted,

By:    */s/  Ashley M. Bauer*
       Ashley M. Bauer*
       Christopher S. Yates*
       **LATHAM & WATKINS LLP**
       505 Montgomery Street, Suite 2000
       San Francisco, CA 94111
       Telephone: (415) 395-8240
       Facsimile: (415) 395-8095
       ashley.bauer@lw.com
       chris.yates@lw.com

       Lawrence E. Buterman*
       **LATHAM & WAKINS LLP**
       1271 Avenue of the Americas
       New York, NY 10020
       Telephone: (212) 906-1200
       Facsimile: (212) 751-4864
       lawrence.buterman@lw.com

       Marguerite Sullivan*
       Jennifer L. Giordano*
       Anna M. Rathbun*
       David L. Johnson*
       Christopher J. Brown*
       **LATHAM & WATKINS LLP**
       555 Eleventh Street, NW, Suite 1000
       Washington, DC 20004
       Telephone: (202) 637-2200
       Facsimile: (202) 637-2201
       marguerite.sullivan@lw.com
       jennifer.giordano@lw.com
       anna.rathbun@lw.com
       david.johnson@lw.com
       chris.brown@lw.com

Tricia Wilson Magee (N.C. Bar No. 31875)
**SHUMAKER, LOOP, & KENDRICK, LLP**
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Telephone: 704-945-2911
Facsimile: 704-332-1197
tmagee@shumaker.com

\* Admitted *pro hac vice*

*Counsel for Defendants NASCAR and James France*

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler\*
Neha Vyas\*
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
nvyas@winston.com

E. Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer E. Parsigian\*
Michael Toomey\*
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111

Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto*
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

Josh Hafenbrack*
Benjamin L. Rudofsky*
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com
brudofsky@winston.com

Benjamin S. Gordon*
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
bgordon@winston.com

*Counsel for 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc*

Eric S. Hochstadt*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 W 52nd Street

New York, New York 10019
Tel: (212) 506-5282
ehochstadt@orrick.com

*Counsel for Curtis Polk*

\* Admitted *pro hac vice*

## <u>ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION</u>

I hereby certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of NASCAR's verdict form and objection, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in NASCAR's objection has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 18th day of November, 2025.

*/s/ Ashley M. Bauer*
Ashley M. Bauer

I hereby certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of this Plaintiffs' verdict form and objection, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in Plaintiffs' objection has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 18th day of November, 2025.

/s/ Jeffrey L. Kessler
Jeffrey L. Kessler

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **PARTIES' PROPOSED VERDICT FORMS** was electronically filed using the Court's CM/ECF system, which will automatically send notice of filing to all parties of record as follows:

Danielle T. Williams
dwilliams@winston.com

Jeffrey L. Kessler
jkessler@winston.com

Jeanifer Parsigian
jparsigian@winston.com

Michael Toomey
mtoomey@winston.com

Matthew DalSanto
mdalsanto@winston.com

*Counsel for Plaintiffs 23XI Racing and
Front Row Motorsports Inc.*

Eric Shaun Hochstadt
ehochstadt@orrick.com

*Counsel for Counterclaim Defendant
Curtis Polk*

This the 18th day of November, 2025.

/s/ Ashley M. Bauer
Ashley M. Bauer