# Exhibit 122

# FILED UNDER SEAL

**Pursuant to the Text-Only Order granting Dkt. 229 Defendants' Motion to Seal, entered on 10/2/2025 at 8:14 a.m. and filed on 10/2/2025**

```
 1            IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF NORTH CAROLINA
 2                    CHARLOTTE DIVISION
                Case No. 3:24-cv-886-KDB-SCR
 3     ---------------------------------
       2311 RACING LLC d/b/a 23XI RACING,
 4     and FRONT ROW MOTORSPORTS, INC.,
 5          Plaintiffs,
       v.
 6     NATIONAL STOCK ASSOCIATION FOR
       STOCK CAR AUTO RACING, LLC and
 7     JAMES FRANCE,
 8          Defendants.
       ---------------------------------
 9
10                ** HIGHLY CONFIDENTIAL **
11           VIDEO 30(b)(1) and 30(b)(6) DEPOSITION
12          of Corporate Representative of NASCAR, LLC
13             Taken on behalf of the Plaintiffs of
14                       BRIAN HERBST
15                    Winston & Strawn LLP
16             300 South Tryon Street, Suite 1600
17                  Charlotte, North Carolina
18                        May 29, 2025
19                         8:07 a.m.
20
21
22
23
24     Reported by:   Audra Smith, RPR, FCRR, CRR
25     Video by:      Joel Ruiz
```

Veritext Legal Solutions
800.743.DEPO (3376)  calendar-carolinas@veritext.com  www.veritext.com
Case 3:24-cv-00886-KDB-SCR   Document 454-64   Filed 11/21/25   Page 2 of 14

1              APPEARANCES OF COUNSEL
2    ON BEHALF OF PLAINTIFFS:
3    WINSTON & STRAWN, LLP
     BY:  JOSHUA HAFENBRACK, ESQ.
4    BY:  ZACHERY L. ALEXANDER, ESQ.
     BY:  ROSA GIBSON, ESQ.
5    1901 L Street NW
     Washington, DC 20036
6    joshua.hafenbrack@winston.com
     zachery.alexander@winston.com
7    rosa.gibson@winston.com
8    ON BEHALF OF DEFENDANTS:
9    LATHAM & WATKINS, LLP
     BY:  DAVID L. JOHNSON, ESQ.
10   1271 Avenue of the Americas
     New York, NY 10020
11   david.johnson@lw.com
12   Also Present:  Amanda Oliver, Chief Legal Officer for NASCAR
13
14
15
16
17
18
19
20
21
22
23
24
25

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:24-cv-00886-KDB-SCR   Document 454-64   Filed 11/21/25   Page 3 of 14

1      A     Yes.
2      Q     And if you flip to page 119, page 6,
3 you see this is a signed version, correct?
4      A     Yes.
5      Q     And the term is on the first page of
6 this term sheet, the Bates 114.  It's
7 ██████████ per year, correct?
8      A     That's correct, with just the 2031
9 caveat.
10     Q     Yeah.  For the record, can you describe
11 how the 2031 caveat works?
12     A     Yes. ████████████████████

[Lines 13-24 redacted]

Veritext Legal Solutions
800.743.DEPO (3376)  calendar-carolinas@veritext.com  www.veritext.com
Case 3:24-cv-00886-KDB-SCR  Document 454-64  Filed 11/21/25  Page 4 of 14

1     Q    After you -- you can put that aside.
2          After you close the Amazon deal, you
3   sent your counterparty at Amazon a celebratory
4   bottle of wine and a decanter.
5          Do you recall that?
6     A    I'm guessing somebody in my group did.
7   But, yes, we did send gifts to the media partners.
8     Q    To all five?
9     A    I hope so.
10    Q    Okay.  What kind of wine, if you
11  recall?
12    A    I thought it was a whiskey actually,
13  but maybe it was wine.  I don't recall.
14    Q    Okay.  Did you have any involvement in
15  negotiating the 2025 charter agreement between
16  NASCAR and its teams?
17    A    I did not.
18    Q    You don't negotiate personally with the
19  RTA or the TNC about the charter terms?
20    A    No.
21    Q    You never negotiated with teams
22  individually either?
23    A    Not with -- not related to the charter
24  discussions.
25    Q    If you -- it looked like from your

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 3:24-cv-00886-KDB-SCR     Document 454-64     Filed 11/21/25     Page 5 of 14

1  Q    Okay.  And then you mentioned in your
2  answer you received questions or feedback from
3  broadcasters?
4  A    Yes.
5  Q    Which broadcasters asked questions or
6  provided feedback on comments by the teams?
7  A    Fox is the primary.
8  Q    Who?  Who at Fox?
9  A    It was the Fox senior team.
10 Q    Who?  Who, Eric Shanks?
11 A    Jordan Bazant was my main point of
12 contact.  Mark Silverman as well was involved.  I
13 don't know -- I believe Eric did raise it in a
14 2022 meeting, now that I think about it, but I'm
15 not completely sure.
16 Q    And did they raise these concerns in
17 sort of face-to-face or phone call meetings you
18 had when you were discussing the potential for
19 renewing the media rights deal?
20 A    I'm not sure when the concerns were
21 raised.  But either in person or phone calls most
22 likely.
23 Q    Okay.  Is there any -- to your
24 knowledge, any sort of written correspondence
25 where Fox raised concerns or questions about

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:24-cv-00886-KDB-SCR    Document 454-64    Filed 11/21/25    Page 6 of 14

1    statements or actions by the teams as relates to
2    media rights negotiation?
3         A    Fox wasn't the type of group that would
4    put a lot of that in writing.  So I don't believe
5    there's any written communication to that degree.
6    It was more in-person and phone calls.
7         Q    What questions or -- how you phrased
8    it?  What questions or what was the sort of nature
9    of the questions or feedback that they raised?
10        A    Tough to be too specific, honestly.  I
11   think a lot of it was a concern that NASCAR and
12   the teams were going to have to find a way to have
13   a path forward to avoid a fracture in the sport
14   similar to the PGA Tour and LIV.
15        Q    And when you say tough to be specific,
16   is that just because you don't remember exactly
17   what they told you?
18        A    Yes.
19        Q    I assume there were a lot of
20   negotiations back and forth.
21        A    It was -- yeah.  The incumbent window
22   opened in February; we closed in November.  So it
23   just took a long time.
24        Q    And apart from Fox, did any other
25   broadcast partners or potential broadcast partners

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:24-cv-00886-KDB-SCR    Document 454-64    Filed 11/21/25    Page 7 of 14

1      raise questions or issues around the teams?
2           A     So NBC talked broadly about the PGA
3      Tour-LIV issue because they were living with the
4      scheduling dynamic that happened when NBC -- or
5      sorry, the PGA Tour had to shift to these kind of
6      more signature events.  So it was top of mind, but
7      I don't remember with specificity a driver or team
8      objection from NBC.  It was more PGA Tour and LIV
9      related.
10          Q     You don't remember NBC referencing
11     controversy between the teams and NASCAR
12     specifically?
13          A     I don't remember a specific comment.  I
14     do not.
15          Q     But did Fox reference -- to the best of
16     your recollection, corporation's recollection, did
17     Fox reference any of the four instances that you
18     cited in your prior answer around actions that
19     teams took that affected the broadcast
20     negotiations?
21          A     In terms of if any of those four things
22     impacted the financials of the negotiation?
23          Q     No.  No.  When Fox was raising
24     questions or feedback, did they raise -- did they
25     raise questions or feedback about any of those

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 3:24-cv-00886-KDB-SCR   Document 454-64   Filed 11/21/25   Page 8 of 14

1   four instances of actions?
2        A    I believe the boycott of the Team Owner
3   Council meeting, I recall that one, and then
4   certainly the meeting that happened on the Fox lot
5   with the teams that was -- that got back to us, so
6   they certainly talked to us about that.
7        Q    What did Fox tell you about the meeting
8   between the teams and Fox?
9        A    That it was, I believe, Curtis Polk,
10  Jonathan Marshall, Steve Newmark, and there's one
11  person that I don't recall that was there.  The
12  nature of the discussion, I don't recall other
13  than the fact that there was a meeting.  So I
14  don't know if there was an objective from either
15  side.  I think Fox heard them out.
16       Q    You don't recall the nature of the
17  conversation or hearing about the nature of the
18  conversation?
19       A    I don't believe there was a very
20  lengthy recap that was provided to me after Fox
21  met with the teams.
22       Q    Did Fox ever convey to you in any way,
23  writing or verbally, that the amount that they
24  paid to NASCAR in the November 2023 agreement was
25  lower than it would have been because of the

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:24-cv-00886-KDB-SCR   Document 454-64   Filed 11/21/25   Page 9 of 14

1      actions by the teams and team owners during the
2      negotiations?
3             MR. JOHNSON:  Object to form.
4         A   So the Fox negotiation itself was as
5      lengthy as it comes.  It went from -- we started
6      first with Fox in February, in terms of their
7      incumbent window, and that agreement was signed
8      the day before the media rights announcement in
9      Nashville.  There was a period of time where Fox
10     wasn't talking to us at all around two months.  So
11     how much of that is related to team behavior
12     versus typical negotiating dynamic and posturing,
13     difficult to ascertain.
14  BY MR. HAFENBRACK:
15        Q   And my question is:  Do you have any
16     evidence you could point to where -- to conclude
17     that -- strike that.
18            Did you have -- are there any
19     instances, any communications you can point to
20     where Fox conveyed the viewpoint that the amount
21     they were willing to pay NASCAR was lower because
22     of these actions by the teams that you described
23     in your testimony?
24            MR. JOHNSON:  Object to form.
25        A   So those type of behind-the-scene

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:24-cv-00886-KDB-SCR   Document 454-64   Filed 11/21/25   Page 10 of 14

1  discussions are behind-the-scene discussions, so
2  I'm note privy to why Fox chooses to bid or not
3  bid as much as they do for a NASCAR media rights
4  deal.
5  BY MR. HAFENBRACK:
6      Q    You can't say one way or the other,
7  correct?
8      A    I believe there is a lot of factors in
9  a discussion like that.
10     Q    And with respect to the other media
11 partners, is the answer the same:  You don't have
12 any particular communications or documents you can
13 cite to to say that those teams paid less than
14 they would have because of the actions of the
15 teams?
16          MR. JOHNSON:  Object to form and just
17      restate my objection that this witness is not
18      privy to the discovery record that's been
19      designated confidential and highly
20      confidential by the plaintiffs.
21 BY MR. HAFENBRACK:
22     Q    You can answer.
23     A    What I would say, broadly speaking, is
24 that we -- this negotiation took longer than we
25 expected it to for sure.  It was harder than we

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:24-cv-00886-KDB-SCR   Document 454-64   Filed 11/21/25   Page 11 of 14

1  expected it to be.  The financials came in below
2  the financial target, and we had prospective media
3  rights partners like Amazon that bid later than we
4  expected them to bid.
5      Q    Came in lower than the 1.132 billion
6  financial target that you set internally?
7      A    That's correct.
8      Q    But came in higher than the independent
9  valuations that you commissioned from Sports Media
10  Advisors and Octagon, correct?
11      MR. JOHNSON:  Object to form and
12    timing, vagueness.
13      A    I believe you're talking about a Sports
14  Media Advisors document from 2018, and an Octagon
15  analysis from, I believe, 2021 that didn't
16  adequately capture the cable attribution.
17      If you look at the more recent
18  analysis, the CAA document, it's quite a wide
19  range in values, anywhere between 200 million and
20  $5 billion.  So I think that's probably the most
21  recent analysis, even though it's a pretty wide
22  range.
23  BY MR. HAFENBRACK:
24      Q    What evidence does NASCAR have that
25  media partners would have paid more in the

Veritext Legal Solutions
800.743.DEPO (3376)  calendar-carolinas@veritext.com  www.veritext.com
Case 3:24-cv-00886-KDB-SCR  Document 454-64  Filed 11/21/25  Page 12 of 14

1    sounds like.
2         A    Yeah.
3         Q    So the upper band of the valuation that
4    CAA performed in 2022 for the valuation of
5    NASCAR's media rights was approximately what?
6         A    The upper band, the highest achievable
7    outcome, which is, in my opinion, difficult to
8    attain, was -- it was $5 billion AAV.
9         Q    And what was the AAV that NASCAR
10   actually accomplished?
11        A    1.065 billion AAV.
12             MR. JOHNSON:  No further questions from
13        me.
14             MR. HAFENBRACK:  Thank you for your
15        time today.
16             THE WITNESS:  Thank you.
17             MR. JOHNSON:  While we're still on the
18        record, can we go ahead and designate that
19        transcript highly confidential, and we can
20        work to narrow that, but because of the media
21        partner information disclosed, we think
22        that's warranted here.
23             MR. HAFENBRACK:  Sure.
24             THE VIDEOGRAPHER:  The time on the
25        monitor is 3:38 p.m.  This concludes today's

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:24-cv-00886-KDB-SCR    Document 454-64    Filed 11/21/25    Page 13 of 14

```
 1   STATE OF NORTH CAROLINA )
 2   COUNTY OF FORSYTH       )
 3                REPORTER'S CERTIFICATE
 4            I, Audra Smith, Registered Professional Reporter
 5   in and for the above county and state, do hereby certify
 6   that the deposition of the person hereinbefore named was
 7   taken before me at the time and place hereinbefore set
 8   forth; that the witness was by me first duly sworn to
 9   testify to the truth, the whole truth and nothing but the
10   truth; that thereupon the foregoing questions were asked and
11   the foregoing answers made by the witness which were duly
12   recorded by me by means of stenotype; which is reduced to
13   written form under my direction and supervision, and that
14   this is, to the best of my knowledge and belief, a true and
15   correct transcript.
16            I further certify that I am neither of counsel to
17   either party nor interested in the events of this case.
18            IN WITNESS WHEREOF, I have hereto set my hand this
19   30th day of May, 2025.
20
21   [signature]
22   Audra Smith, RPR, CRR, FCRR
23   Notary Number: 201329000033
24   Commission Expires:  June 26, 2025
25
```

Veritext Legal Solutions
800.743.DEPO (3376)  calendar-carolinas@veritext.com  www.veritext.com
Case 3:24-cv-00886-KDB-SCR   Document 454-64   Filed 11/21/25   Page 14 of 14