# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

2311 RACING LLC d/b/a 23XI RACING, and
FRONT ROW MOTORSPORTS, INC.,

       Plaintiffs,

       v.

NATIONAL ASSOCIATION FOR STOCK
CAR AUTO RACING, LLC, NASCAR
HOLDINGS, LLC, NASCAR EVENT
MANAGEMENT, LLC, and JAMES FRANCE,

       Defendants.

No. 3:24-cv-886-KDB-SCR

## NASCAR'S MOTION TO SUPPLEMENT PROPOSED JURY INSTRUCTIONS

**INTRODUCTION**

During the first week of trial, Plaintiffs focused the vast majority of their case on the 2025 Charter negotiations. They did so even though they can claim no antitrust injury or damages under the 2025 Charters (because they chose not to sign them)—and even though antitrust law is not meant to be a backup plan for parties dissatisfied with contract negotiations. The Fourth Circuit made this clear in *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 283 (4th Cir. 2012), which holds that there is no antitrust claim where a defendant "proposed terms for a commercial relationship" but a plaintiff "was not satisfied with its terms." As the Fourth Circuit explained, "simply because GXS does not offer Loren Data the terms and conditions it desires does not mean that GXS has violated the antitrust laws." *Id.*

Plaintiffs' witnesses also repeatedly claimed that they were free to engage in exclusive agreements but NASCAR is not *because NASCAR is a monopolist*. *See* Tr. Vol. II-A at 298, 391-94 (Denny Hamlin); Tr. Vol. III-B at 820-24 (Robert Jenkins). That ignores law from the Fourth Circuit holding that "aggressive competition" does not create a Section 2 violation, *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 931 (4th Cir. 1990), and law that even a company with "monopsony power" is "generally free to bargain aggressively when negotiating the prices it will pay for goods and services." *W. Penn Allegheny Health Sys., Inc. v. Univ. of Pittsburg Med. Ctr.*, 627 F.3d 85, 103 (3d Cir. 2010).

Plaintiffs' witnesses also testified repeatedly about *Plaintiffs*' intent in bringing this lawsuit, which is beside the point. The actual question for the jury is whether *NASCAR's* conduct is anticompetitive. And Plaintiffs' focus on the track sanction agreements, the Goodwill provision in the Charters, and the Next Gen requirements implicate the bedrock principle that businesses

1

(even monopolists) are generally free to choose both the *parties* with whom they will deal and the *terms and conditions* of that dealing—a principle that ought to doom Plaintiffs' Section 2 claim.

At minimum, these issues require specific instructions to the jury. In order to conform to the evidence and argument presented at trial, NASCAR moves to supplement Defendants' previously proposed jury instructions with additional language in the instruction on anticompetitive conduct and with a related instruction on refusals to deal. Defendants request that these instructions be discussed at the upcoming charge conference and incorporated into the working draft circulated to counsel on November 24, 2025. Plaintiffs oppose this motion and intend to file an opposition.

**ARGUMENT**

*First*, Plaintiffs' case at trial has in significant part concerned the minutiae of contract negotiations between NASCAR and the teams from 2022 to 2024. Virtually every witness has focused on that timeframe, despite the fact that Plaintiffs did not enter 2025 Charters. *See, e.g.*, Tr. Vol. II-A at 265-272 (Denny Hamlin); Tr. Vol. II-B at 431-60, 499-519 (Scott Prime); Tr. Vol. III-B at 756-62 (Robert Jenkins); Tr. Vol. V-A at 1209-1218 (Heather Gibbs); Tr. Vol. V-B at 1259-62 (Michael Jordan); Tr. V-B at 1336-59 (Jonathan Marshall). Before trial, Plaintiffs repeatedly represented that the only aspect of the 2025 Charters that they were challenging as anticompetitive is the Goodwill provision. At summary judgment, they represented that only "expand[ing] the noncompete restrictions on teams that signed the 2025 Charter Agreement" was anticompetitive. Doc. 265 at 13; *see id.* at 2 (similar). And in their proposed jury instructions, they stated that this case is "about the affirmative exclusive-dealing contractual restraints that NASCAR has imposed on teams and tracks." Doc. 440 at 43 n.34.

Plaintiffs' choice to repeatedly invoke the 2025 Charter negotiations at trial implicates case law holding that "antitrust law is not a negotiating tool for a plaintiff seeking better contract terms." *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 573 (6th Cir. 2009). The Fourth Circuit in *Loren Data Corp. v. GXS, Inc.* held that where a defendant "proposed terms for a commercial relationship with" a counterparty, the "legitimate business justifications for the terms [that defendant] offer[ed]" meant that there was no anticompetitive conduct. 501 F. App'x 275, 283 (4th Cir. 2012). The same is true here: Just because NASCAR did not offer Plaintiffs "the terms and conditions [they] desire[] does not mean that [NASCAR] has violated the antitrust laws." *Id.* And courts frequently recognize that even a monopolist can compete or negotiate aggressively. *See Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 931 (4th Cir. 1990) ("aggressive competition" is not sufficient for a Section 2 violation); *W. Penn Allegheny Health Sys., Inc. v. Univ. of Pittsburgh Med. Ctr.*, 627 F.3d 85, 103 (3d Cir. 2010) ("A firm that has substantial power on the buy side of the market (*i.e.*, monopsony power) is generally free to bargain aggressively when negotiating the prices it will pay for goods and services."); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp.*, 592 F.3d 991, 998 (9th Cir. 2010) ("A monopolist, no less than any other competitor, is permitted and indeed encourage to compete aggressively on the merits."); *SuperTurf, Inc. v. Monsanto Co.*, 660 F.2d 1275, 1280 (8th Cir. 1981) ("A monopolist may not take measures with the purpose of preventing effective competition; it may, however, aggressively compete in the marketplace."). In light of this case law, Defendants have proposed additional language in the anticompetitive-conduct instruction as Exhibit 1.

*Second*, Plaintiffs have repeatedly testified about their reasons or purposes in bringing this lawsuit. Tr. Vol. II-A at 273-274 (Hamlin); Tr. Vol. III-B at 761-62 (Jenkins); Tr. Vol. V-B at 1258-63 (Jordan). But that testimony is irrelevant to whether NASCAR's conduct is

3

anticompetitive.[1]  That is because *Plaintiffs'* intent does not matter; only *NASCAR's* intent does. Under Section 2, to show that a defendant "willfully … sought to maintain" monopoly power, a plaintiff "must show 'that a jury could find no valid business reason or concern for efficiency'" in undertaking the challenged conduct.  *Oksanen v. Page Mem. Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991) (en banc).  Put differently, "valid business … reasons" mean that a plaintiff "fail[s] to demonstrate the monopolistic *intent* necessary for a section two claim."  *Id.* (emphasis added). And in fact, the Fourth Circuit in this very case stated that anticompetitive conduct is "conduct *intended* to 'exclude rivals on some basis other than efficiency.'"  *2311 Racing LLC v. NASCAR*, 139 F.4th 404, 410 (4th Cir. 2025) (emphasis added).

In short, *Plaintiffs'* motivations in bringing this lawsuit have no bearing on evaluating whether *NASCAR's* conduct was anticompetitive.  As a result, Defendants have proposed additional language on this point as Exhibit 2.

*Third*, Plaintiffs' case at trial has confirmed that the jury should be specifically instructed about refusals to deal and conditional refusals to deal in the form of exclusive-dealing requirements.  Plaintiffs' challenges regarding track sanction agreements, the Goodwill provisions in the Charters, and the Next Gen requirements all fall within these well-established categories of conduct evaluated in Section 2 cases.  Plaintiffs have elicited substantial testimony about each of these topics. *See, e.g.*,  Tr. Vol. II-B at 469-70, 477-79 (Prime); Tr. Vol. IV-B at 957-60, 970-86 (O'Donnell).

That testimony implicates governing law about refusals to deal—and about how exclusivity requirements are best understood as conditional refusals to deal.  In a pure refusal to deal, a party

---

[1] To be sure, testimony regarding Plaintiffs' potential motivations is relevant for the purpose of evaluating Plaintiffs' credibility.  But it is not relevant to the anticompetitive-conduct element of their Section 2 claim.

4

says " I won't do business with you."  Similarly, in a conditional refusal to deal, a party says "I won't do business with you *unless* you agree to these terms."  These categories are therefore "conceptually related" and "may overlap."  *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 453 (7th Cir. 2020).  Which is why when the Supreme Court explained the basic principle, it stated that "as a general rule, businesses are free to choose the *parties* with whom they will deal"—refusals to deal—"*as well as* the *prices, terms, and conditions* of that dealing"—conditional refusals to deal.  *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) (emphases added).  And why the Fourth Circuit in the very case quoted *linkLine* for that proposition with respect to the 2025 Charters' mutual releases.  *2311 Racing*, 139 F.4th at 410.  Like the releases, the Goodwill provisions (or the Next Gen requirements, for that matter) are simply another term or condition of NASCAR's dealing with the teams.

For that reason, refusals to deal and exclusive dealing are evaluated under a similar rubric. As to the former, the Supreme Court in *Aspen Skiing* approved of an instruction stating that a "refusal to deal … 'does not violate Section 2 if valid business reasons exist for that refusal.'" *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604-05 (1985)  And the Fourth Circuit noted the "legitimate business justifications for the terms [the defendant] offer[ed]" in rejecting a Section 2 claim involving a refusal to deal.  *Loren Data*, 501 F. App'x at 283.[2]  As to the latter, the Fourth Circuit has noted that the "valid business and patient care reasons" supporting exclusive radiology contracts defeated a Section 2 claim, *Imaging Ctr., Inc. v. W. Md. Health Sys., Inc.*, 158 F. App'x 413, 421 (4th Cir. 2005), and that the "legitimate business purposes" supporting

---

[2] Both *Aspen Skiing* and *Loren Data* were cited by Defendants in the parties' previous proposals. Doc. 298 at 75 n. 70; Doc. 440 at 41 n.33.  However, they were not included in the version circulated to counsel by the Court on November 24, 2025.  In light of how Plaintiffs are trying this case, Defendants reiterate the relevance of these cases.

5

exclusive sales rep contracts—as well as benefits an arrangement might have for "competing better with other media for advertising dollars"—led to a finding of no anticompetitive conduct, *Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317, 1325 (4th Cir. 1995).

Defendants respectfully request that the Court instruct the jury on this directly applicable law. Defendants previously proposed instructions specifically about refusals to deal and exclusive-equipment requirements to the Court, Doc. 440 at 41-46, which the Court has not included in its draft instructions circulated to counsel on November 24, 2025. Defendants continue to believe that all of those proposed instructions should be given. In addition, Defendants have proposed an alternative, single "Refusals To Deal" instruction as Exhibit 3 which explains these legal principles and is tailored to the evidence at trial.

## CONCLUSION

For these reasons, NASCAR respectfully requests that the Court supplement the proposed jury instructions with the language provided in Exhibits 1, 2, and 3. Plaintiffs are opposed to this request and intend to file an opposition.

Dated: December 8, 2025

Respectfully submitted,

By: */s/ Christopher S. Yates*
Christopher S. Yates*
Ashley M. Bauer*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com
ashley.bauer@lw.com

Lawrence E. Buterman*
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com

Marguerite Sullivan*
Jennifer L. Giordano*

6

Anna M. Rathbun*
David L. Johnson*
Christopher J. Brown*
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
marguerite.sullivan@lw.com
jennifer.giordano@lw.com
anna.rathbun@lw.com
david.johnson@lw.com
chris.brown@lw.com

John E. Stephenson Jr.*
**ALSTON AND BIRD LLP**
1201 West Peachtree Street NW Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7697
john.stephenson@alston.com

Tricia Wilson Magee (N.C. Bar No. 31875)
**SHUMAKER, LOOP, & KENDRICK, LLP**
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Telephone: (704) 945-2911
Facsimile: (704) 332-1197
tmagee@shumaker.com

*Admitted *pro hac vice*
*Counsel for NASCAR*

7

**ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION**

I hereby certify the following:

1.        No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase and Bloomberg;

2.        Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 8th day of December, 2025.

/s/ Christopher S. Yates
Christopher S. Yates

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed using the Court's CM/ECF

system, which will automatically send notice of filing to all parties of record as follows:

Danielle T. Williams
dwilliams@winston.com

Jeffrey L. Kessler
jkessler@winston.com

Neha Vyas
nvyas@winston.com

Jeanifer E. Parsigian
jparsigian@winston.com

Michael Toomey
mtoomey@winston.com

Matthew R. DalSanto
mdalsanto@winston.com

Josh Hafenbrack
jhafenbrack@winston.com

Benjamin L. Rudofsky
brudofsky@winston.com

Benjamin S. Gordon
bgordon@winston.com

*Counsel for Plaintiffs 23XI Racing and
Front Row Motorsports Inc.*

Eric S. Hochstadt
ehochstadt@orrick.com

*Counsel for Counterclaim Defendant Curtis
Polk*

This the 8th day of December, 2025.

/s/ *Christopher S. Yates*
Christopher S. Yates