UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| 2311 RACING LLC d/b/a 23XI RACING, and FRONT ROW MOTORSPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, NASCAR HOLDINGS, LLC, NASCAR EVENT MANAGEMENT, LLC, and JAMES FRANCE, <br><br> Defendants. | No. 3:24-cv-886-KDB-SCR |

**PLAINTIFFS' OPPOSITION TO NASCAR'S MOTION TO SUPPLEMENT PROPOSED JURY INSTRUCTIONS**

# INTRODUCTION

NASCAR's request to include three supplemental jury instructions presents both an improper attempt to recycle arguments that the Court has already considered and rejected and to prejudice Plaintiffs before the jury with misstatements of the law and mischaracterizations of Plaintiffs' claim. NASCAR's proposed supplemental instructions are wrong on the law, irrelevant, and likely to mislead and confuse the jury—particularly because they conflict with other instructions. NASCAR has not provided any basis for their inclusion, nor for the procedurally improper and late manner in which NASCAR has raised them.

The first instruction NASCAR requests is nothing more than an improper attempt to color the jury's perception of the litigation as a whole, making it out to be a "negotiating tool for a party seeking better contract terms." NASCAR's second instruction about Plaintiffs' motivations attempts to instruct the jury to disregard ambiguously defined testimony and evidence pertaining to "Plaintiffs' intent or purpose in bringing this lawsuit"—despite the Court denying NASCAR's motion in limine along these same lines. The instruction simultaneously seeks to place an additional burden on Plaintiffs to show NASCAR's intent, which is not an element of Plaintiffs' Section 2 claim. Finally, NASCAR's renewed request for a refusal to deal instruction continues to be inapplicable and irrelevant to the issues presented at trial, just as was the case when NASCAR proposed it in the parties' joint submission weeks ago. NASCAR mischaracterizes the law—relying on cases that considered refusals to deal among competitors—ignoring that Plaintiffs here are suppliers to a monopsonist.

None of NASCAR's three supplemental instructions should be included in the Court's final jury instructions.

1

# ARGUMENT

## I. NASCAR's Proposed Instruction Regarding Contract Negotiations Is Prejudicial and Misleading

In the parties' joint submission, NASCAR previously proposed similar language to its first supplemental instruction about parties being "free to choose the parties with whom [it] will deal." *See* Dkt. No. 440 at 52 ("For example, a decision to decline a contract offer is not an antitrust injury because competition has not been suppressed"), 41-44 (NASCAR's earlier refusal to deal instruction). The Court considered the proposals and did not include such language in its November 24, 2025 adaptation. Nothing has changed with respect to Plaintiffs' claims or the evidence admitted to date that merits any change to the Court's approach with respect to the jury instructions. Once more, Plaintiffs therefore object to this instruction as contrary to law, irrelevant, likely to confuse the jury, and prejudicial.

***First***, NASCAR's proposed language that "antitrust law is not a negotiating tool for a party seeking better contract terms" is prejudicial and misleads the jury about the nature of Plaintiffs' claims, improperly implying that Plaintiffs are using litigation as a negotiation tool, rather than to seek redress for antitrust injuries caused by NASCAR's anticompetitive monopoly maintenance and imposition of below competitive terms on its racing teams. Moreover, the Court's November 24 jury instructions already include the following language, in the appropriate context, that is sufficient to instruct the jury about NASCAR's ability to compete aggressively: "A monopolist also may compete aggressively and charge monopoly prices without violating the antitrust laws." *See* Court's November 24, 2025 Jury Instructions at 23. NASCAR's proposed instruction is therefore unnecessary and likely to confuse and mislead the jury.

***Second***, NASCAR's proposed instruction is nothing more than an abbreviated version of its refusal to deal instruction. As explained further below, this is not a case about NASCAR's

2

refusal to deal with a competitor (including because NASCAR does not have any competitors in the relevant market), and is instead about the exclusive-dealing contractual restraints that NASCAR has imposed on teams and tracks to foreclose competition from a rival series and maintain NASCAR's monopoly over the input market. *See infra* Section III. Plaintiffs are not alleging any refusal by NASCAR to deal with a competitor. Rather, as Plaintiffs have repeatedly represented, this trial concerns NASCAR's acquisitions and exclusive-dealing restrictions to foreclose competition—which are categorically different from a monopolist's unilateral refusal to directly deal with or assist a rival.

## II. NASCAR's Proposed Instruction Regarding Plaintiffs' Motivations Is Prejudicial, Confusing, and Contrary to Law

The three sentences NASCAR requests be added to the jury instructions regarding intent are each improper—presenting issues that have previously been litigated and considered by the Court, misstating applicable law, and contradicting the Court's other instructions.

***First***, NASCAR's proposed jury instruction regarding Plaintiffs' intent in bringing this litigation is an improper attempt to circumvent the motion in limine (Dkt. No. 302) that the Court previously denied (Dkt. No. 434). In its order, the Court held that "Plaintiffs will be permitted to testify why they brought the lawsuit, without making any representation that other Teams will benefit from any money damages awarded by the jury." Dkt. No. 434 at 10. Having lost on its attempt to prevent such testimony, NASCAR cannot now seek a new jury instruction to label such testimony as "not relevant," even though NASCAR simultaneously argues it is relevant to Plaintiffs' "credibility." Mot. at 3-4, 4 n.1.

Further, with respect to NASCAR's intent, NASCAR's proposed instruction again raises issues that had been presented to the Court with the parties' November 18, 2025 proposed jury instructions. *See, e.g.*, Dkt. No. 440 at 37 ("To find a violation of this element, you must determine

3

that NASCAR engaged in the challenged conduct with the intent to foreclose competition, to gain a competitive advantage, or to destroy a competitor."). The Court has already considered these arguments when it did not include NASCAR's proposals or use of the word "intent" in its November 24 instructions. Yet, NASCAR again attempts to misrepresent the law and propose misleading instructions that will confuse the jury. Its attempt at a second bite at the apple is thus improper.

**Second**, NASCAR's instruction that Plaintiffs must prove NASCAR "acted with the intent to willfully prevent competitors from entering the market" flatly misstates Section 2 law. *See* Mot. at 4 ("only *NASCAR's* intent [matters]"); Exhibit 2. Contrary to NASCAR's mischaracterizations, intent is not an element of a Section 2 monopolization claim, and NASCAR's proposed instruction that Plaintiffs must prove such an intent is a plain error of law. *E.g.*, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985) (in a Section 2 monopolization case, evidence of intent is not required but rather "is merely relevant to the question whether the challenged conduct is fairly characterized as 'exclusionary' or 'anticompetitive'"); *McGahee v. N. Propane Gas Co.*, 858 F.2d 1487, 1497 (11th Cir. 1988) ("A distinction between a monopolization claim and an attempt to monopolize claim is that proof of specific intent is required for attempt claims."); *Am. Football League v. Nat'l Football League*, 205 F. Supp. 60, 79 (D. Md. 1962) ("monopolization . . . does not require proof of specific intent"). NASCAR's (renewed) attempt to introduce the issue of "intent" to the question of its willful maintenance of its monopoly is confusing and will mislead the jury.

**Third**, NASCAR's proposed language contradicts other instructions the Court has included in its draft instructions—when it states that "Plaintiffs must prove that there are no valid business reasons for the challenged conduct." *See* Exhibit 2. NASCAR is wrong that conduct cannot be

4

exclusionary if it has *any* legitimate or valid business purpose. Even if a monopolist's acts have some legitimate purpose, a jury can find conduct is exclusionary if the monopolist's conduct, considered on the whole, has the effect of excluding competition and preserving the monopoly. *E.g., Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 355 (4th Cir. 2024) ("A monopolist bent on preserving its dominant position is likely to engage in repeated and varied exclusionary practices. Each one viewed in isolation might be viewed as de minimis or an error in judgment, but the pattern gives increased plausibility to the claim."); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007) ("Anticompetitive conduct may take a variety of forms, but it is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits."); *Fed. Trade Comm'n v. Meta Platforms, Inc.*, 775 F. Supp. 3d 16, 55 (D.D.C. 2024) ("[A]nticompetitive conduct by a monopolist is simply conduct that maintains or expands its monopoly other than through competition on the merits."); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 274 (2d Cir. 1979) (same).

Indeed, the Court has already included language to this effect in its November 24 jury instructions, and no additional instruction on these principles is necessary:

> A monopolist's conduct is unlawful where it involves anticompetitive acts unsupported by a valid business justification. That is, the acts or practices that result in the maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. You may not find that a company willfully maintained monopoly power through anticompetitive means if it has maintained that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a patent; or other legitimate competitive conduct.

Court's November 24, 2025 Jury Instructions at 23-24. NASCAR has not provided any justification for expanding this instruction.

5

### III. NASCAR's Proposed Instruction Regarding Refusals to Deal Continues to Be Irrelevant and Contrary to Law

As with its other proposed instructions, NASCAR recycles the instruction on refusals to deal it had proposed in the parties' earlier joint submission. *See* Dkt. No. 440 at 41-44. The Court has accordingly already been presented with this proposal, and the parties' respective positions, and decided not to include the instruction in the Court's November 24 instructions. NASCAR has not identified any compelling reason why the Court should change its position now. Accordingly, Plaintiffs once again object to this instruction as contrary to law, irrelevant, likely to confuse the jury, and prejudicial.

*First*, contrary to NACSAR's assertions (Mot. at 4-6), this is not a case about NASCAR's refusal to deal with a competitor—as NASCAR has no competitors[1]—and is instead about the affirmative exclusive-dealing contractual restraints that NASCAR has imposed on teams and tracks to foreclose competition from a rival series and maintain NASCAR's monopoly over the input market. NASCAR's reliance on the *Trinko* line of cases (Mot. at 5-6) is thus entirely inapplicable. *See Pac. Bell Tel.Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450-51 (2009) ("a firm with no antitrust duty to deal in the wholesale market has no obligation to deal under terms and conditions favorable to its ***competitors***") (citing *Verizon Commc'ns Inc. v. Law Offs. of Curtis v. Trinko, LLP*, 540 U.S. 398, 408 (2004)) (emphasis added).[2]

---

[1] *See* Dkt. No. 374 at 10 ("NASCAR effectively has a 100% market share"); Dkt. No. 231 at 7, 17-18 (no other purchaser for the services of premier stock car racing teams).

[2] NASCAR's reliance on *Aspen Skiing* and *Loren Data* fails for the same reason. Mot. at 5 n.2. In *Aspen Skiing*, the Supreme Court held that actions of the larger operator were appropriately held to violate Section 2 where they were not taken for legitimate business reasons, but for the purpose of injuring a competitor. *Aspen Skiing*, 472 U.S. at 608-10 ("the record in this case comfortably supports an inference that the monopolist made a deliberate effort to discourage its customers from doing business with its smaller rival"). *Loren Data*, on the other hand, is not a refusal to deal case at all, *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 283 (4th Cir. 2012) ("GXS has not refused to deal with Loren Data."), and nonetheless involves an essential facilities claim among two

6

Case 3:24-cv-00886-KDB-SCR     Document 483     Filed 12/09/25     Page 7 of 13

In *Trinko*, the Supreme Court held that "there is no duty to aid competitors" in the context of the highly regulated telecommunications industry. *Trinko*, 540 U.S. at 411 (2004). But here, Plaintiffs are not alleging any refusal by NASCAR to deal with a competitor (since there is none). Rather, this trial concerns NASCAR's acquisitions and exclusive-dealing restrictions to foreclose competition—which are categorically different from a monopolist's unilateral refusal to directly deal with or assist a ***rival***. Courts have repeatedly rejected the duty-to-deal defense when, as NASCAR has done, the monopolist has affirmatively interfered with competition in the relevant market by imposing contractual restraints on customers and suppliers. *E.g., New York v. Facebook, Inc.*, 549 F. Supp. 3d 6 (D.D.C. 2021) ("Again, these 'conditional dealing' schemes are thus categorically different from unilateral conduct that involves only the monopolist's competitors, such as its refusal to deal with them"); *U.S. v. Google LLC*, 778 F. Supp. 3d 797, 866 (E.D. Va. 2025) ("Courts have declined to extend a refusal-to-deal-with-rivals analysis to anticompetitive restraints that a monopolist places on its customers, as opposed to its competitors") (cleaned up); *id.* at 867 (distinguishing *Trinko* because Verizon refused to directly assist a competitor in the context of a "highly regulated industry in which state and federal regulators require the leading firms to share access to capital-intensive infrastructure," which was not at issue with Google's advertising technology business); *X Corp. v. Bright Data Ltd.*, 782 F.Supp.3d 770, 780-81 (N.D. Cal. Apr. 18, 2025) (holding that Twitter's requirement that customers not deal with data-scraping

---

competitors.[3] *See also Novell, Inc. v. Microsoft Corp.,* 731 F.3d 1064, 1076 (10th Cir. 2013) (Gorsuch, J.) ("[S]ection 2 misconduct usually involves some assay by the monopolist into the marketplace," such as by imposing exclusive dealing requirements, which is distinct from "purely unilateral conduct"); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020) ("A 'simple refusal to deal' is conduct where one firm 'refuses to deal no matter what,' whereas '[t]ying and exclusive dealing are two common examples' of 'conditional refusals to deal'—i.e., one firm will refuse to deal with another firm unless 'some condition is met.'") (quoting Herbert Hovenkamp, *FRAND and Antitrust*, 105 Cornell L. Rev. 1683, 1697 (2020).

7

competitors was distinct from a unilateral refusal to deal with those data-scraping competitors directly: "X Corp. is doing more than merely refusing to deal with scrapers. X Corp. is forcing its own customers not to deal with scrapers, in perpetuity, a much different problem under the Sherman Act.").[3]

**Second**, NASCAR's legitimate business purpose instruction is contrary to law. The question for the jury is whether NASCAR's actions, on the whole, have had the effect of foreclosing competition, or whether the competition was on the merits, not whether they were based on legitimate business reasons. *Duke Energy*, 111 F.4th at 353 ("a monopolist violates § 2 when it use[s] [its] monopoly power to foreclose competition, to gain a competitive advantage, or to destroy a competitor") (internal quotation marks omitted). The Court's November 24 jury instructions already address the issue of legitimate business justifications (at 23-24), and additional instructions on that issue will confuse and mislead the jury.

## CONCLUSION

For all these reasons, Defendants' request to supplement the Court's November 24, 2025 jury instructions should be denied.

---

[3] *See also Novell, Inc. v. Microsoft Corp.,* 731 F.3d 1064, 1076 (10th Cir. 2013) (Gorsuch, J.) ("[S]ection 2 misconduct usually involves some assay by the monopolist into the marketplace," such as by imposing exclusive dealing requirements, which is distinct from "purely unilateral conduct"); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020) ("A 'simple refusal to deal' is conduct where one firm 'refuses to deal no matter what,' whereas '[t]ying and exclusive dealing are two common examples' of 'conditional refusals to deal'—i.e., one firm will refuse to deal with another firm unless 'some condition is met.'") (quoting Herbert Hovenkamp, *FRAND and Antitrust*, 105 Cornell L. Rev. 1683, 1697 (2020).

8

Dated: December 9, 2025             Respectfully submitted,

WINSTON & STRAWN LLP

By:   */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler*
Neha Vyas*
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
nvyas@winston.com

E. Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer E. Parsigian*
Michael Toomey*
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com
mtoomey@winston.com

Matthew R. DalSanto*
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
mdalsanto@winston.com

Josh Hafenbrack*
Benjamin Rudofsky*
**WINSTON & STRAWN LLP**
1901 L Street NW

9

Washington D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com

Benjamin S. Gordon*
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
bgordon@winston.com

* Admitted *pro hac vice*

*Counsel for Plaintiffs 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc.*

## CERTIFICATE OF COMPLIANCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

*Counsel for Plaintiffs 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFFS' OPPOSITION TO NASCAR'S MOTION TO SUPPLEMENT PROPOSED JURY INSTRUCTIONS** was electronically filed using the Court's CM/ECF system, which will automatically send notice of this filing to counsel of record for all parties, including:

Tricia Wilson Magee
**SHUMAKER LOOP & KENDRICK, LLP**
101 S. Tryon St., Suite 2200
Charlotte, NC 28280
tmagee@shumaker.com

Christopher S. Yates
Natalie W. Kaliss
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com
natalie.kaliss@lw.com

Robert B. McNary
**LATHAM & WATKINS LLP**
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
rob.mcnary@lw.com

Lawrence E. Buterman
Shayan Ahmad
Quinlan Cummings
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
shayan.ahmad@lw.com
quinlan.cummings@lw.com

Anna M. Rathbun
Christina R. Gay
David L. Johnson
Christopher J. Brown
Margaret E. Cohen
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
anna.rathbun@lw.com
christina.gay@lw.com
david.johnson@lw.com
chris.brown@lw.com
margaret.cohen@lw.com

*Counsel for Defendants*

*Jeffrey L. Kessler*
Jeffrey L. Kessler